David S. Golub, (*pro hac vice*)
Steven L. Bloch, (*pro hac vice*)
Ian W. Sloss, (*pro hac vice*)
Jennifer Sclar, (*pro hac vice*)
John Seredynski, (*pro hac vice*)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com

Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

***Attorneys for Plaintiffs and Putative Class***
[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JODY VILLANUEVA, on behalf of J.C.; ALEXIS DOUGLAS on behalf of A.J.; MARCELO MUTO on behalf of B.M.; HEATHER BRESETTE on behalf of L.F.; DARRYL MAULTSBY on behalf of D.M.; RYAN HOYT on behalf of D.R.H., D.W.H., and R.W.; VALERIE GATES on behalf of M.G.; LAMARTINE PIERRE, JR., on behalf of C.P.; ANGELA FAUCETT, on behalf of K.F.; and KAYLA JARAMILLO on behalf of J.W.,<br><br>Plaintiffs,<br>v.<br><br>BYTEDANCE LTD; BYTEDANCE INC; TIKTOK LTD; TIKTOK INC; TIKTOK LLC, TIKTOK PTE. LTD; and TIKTOK U.S. DATA SECURITY INC.,<br><br>Defendants. | Case No. 2:24-cv-06784-ODW (RAOx)<br><br><u>CLASS ACTION</u><br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

| | |
|---|---|
| **CONSOLIDATED ACTION FROM:**<br><br>A.A., a minor, by and through their guardian at litem, MARCELO MUTO; A.B., a minor, by and through their guardian at litem, HEATHER BRESSETTE; and A.C., a minor, by and through their guardian at litem, DARRYL MAULTSBY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK LTD.; TIKTOK INC.; TIKTOK PTE. LTD.; and TIKTOK U.S. DATA SECURITY INC.,<br><br>Defendants. | Case No: 2:24-cv-06784 ODW (RAOx) |
| JODY VILLANUEVA, on behalf of J.C.; ANGELA FAUCETT, on behalf of K.F.; and LAMARTINE PIERRE, JR., on behalf of C.P.,<br><br>Plaintiffs,<br><br>vs.<br><br>BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK LTD.; TIKTOK INC.; TIKTOK PTE. LTD.; and TIKTOK U.S. DATA SECURITY INC.,<br><br>Defendants. | Case No: 2:24-cv-07922 ODW (RAOx) |

Plaintiffs Jody Villanueva, on behalf of, J.C., Heather Bresette on behalf of L.F., Alexis Douglas on behalf of A.J., Angela Faucett, on behalf of K.F., Valerie Gates on behalf of M.G., Ryan Hoyt on behalf of D.R.H., D.W.H., and R.W., Kayla Jaramillo on behalf of J.W., Darryl Maultsby on behalf of D.M., Marcelo Muto on behalf of B.M., and Lamartine Pierre, Jr., on behalf of C.P., individually, and on behalf of all others similarly situated, hereby file suit against the Defendants listed above and allege the following based on personal knowledge, information and belief, the investigation of counsel, and public sources:

## NATURE OF THE ACTION

1. Per the Court's Minute Order on November 25, 2024, which consolidated *A.A. et al. v. Bytedance Inc. et al.*, Case No. 2:24-cv-06784-ODW (RAOx) (filed on August 9, 2024), with *Jody Villanueva et al. v. Bytedance Inc. et al.*, Case No. 2:24-cv-07922-ODW (RAOx) (filed on September 17, 2024), Plaintiffs hereby submit this Consolidated Class Action Complaint. *See* Minute Order, Dkt. No. 52.

2. This action arises out of Defendants' invasion of privacy and unfair business practices directed toward millions of children in the United States under the age of 13 in violation of the law and societal norms. Specifically, from March 28, 2019 forward (the "Class Period"), Defendants have knowingly permitted and encouraged children under the age of 13 to create user accounts on the TikTok app for the purpose of collecting intimate, deeply intrusive data points about them and their online behavior without notice and parental consent. Defendants use this unlawfully collected personal information ("Personal Information") for the purpose of providing personally curated content so that Defendants can serve them copious amounts of behavioral advertising and/or share their information with third parties. Defendants engaged in this unlawful behavior for one reason — profit. Indeed, children are so integral to Defendants' profitability, Defendants were unwilling or unable to cease their unlawful business practices in the face of a Permanent Injunction, with a Civil Penalty, that they entered into with the United States Government on March 27, 2019 (the "2019 Permanent

Injunction"). The 2019 Permanent Injunction prohibited Defendants from their continued collection and use of the Personal Information of children without verifiable parental consent.

3. Defendants ByteDance Ltd., ByteDance, Inc.; TikTok Inc., TikTok LLC, TikTok Ltd., TikTok Pte Ltd., and TikTok U.S. Data Security Inc. (collectively, "TikTok") operate one of the world's largest social media platforms that reaches millions of Americans under the age of 13.

4. TikTok's user base is disproportionately made up of children. From the outset, Defendants considered U.S. teens a "golden audience."[1]

5. Defendants know that TikTok is an attractive social media destination for children. Nonetheless, Defendants have a history of knowingly allowing children under 13 to create and use TikTok accounts without their parents' knowledge or consent, collecting extensive data from those children, and failing to comply with parents' requests to delete their children's accounts and personal information.

6. On February 27, 2019, the United States filed a Complaint against Musical.ly and Musical.ly, Inc., companies that had been acquired by TikTok in 2017, alleging that Defendants were unlawfully collecting and using the personal information of children in the operation of their free online video-sharing app. *United States of America v. Musical.ly* et. al., No. 2:19-cv-1439 (C.D. Cal. Feb. 27, 2019) (Dkt. No. 1).

7. One month later, on March 27, 2019, Musical.ly and Musical.ly, Inc., (respectively renamed TikTok Ltd. and TikTok Inc. in April 2019), entered into a Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief in the Central District of California. *United States v. Musical.ly,* et.al, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. March 27, 2019) (Dkt. No. 10). The order imposed a then record

---

[1] Paul Mozur, *Chinese Tech Firms Forced to Choose Market: Home or Everywhere Else*, N.Y. Times (Aug. 9, 2016), https://www.nytimes.com/2016/08/10/technology/china-homegrown-internet-companies-rest-of-the-world.html.

$5.7 million civil penalty for violations of the Children's Online Privacy Protection Act ("COPPA") Rule, 16 C.F.R. pt. 312, and Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45; required Defendants to destroy personal information of users under the age of 13; required Defendants to remove accounts of users whose age could not be identified; enjoined Defendants from violating the COPPA Rule; and required Defendants to retain certain records related to compliance with the COPPA Rule and the 2019 Permanent Injunction.

8. Musical.ly's quick resolution of the Complaint as well as its name change might have indicated an intent to reform its business practices with respect to the manner in which it handled the personal information of children. Unfortunately, that has not been the case.

9. When the United States brought its Complaint against Musical.ly in 2019, it alleged that the app had 65 million registered accounts in the United States. As of 2024, there are more than 170 million TikTok users in the United States. Clearly, TikTok continues to grow.

10. More specifically, TikTok continues to grow its audience of children. In July 2020, TikTok estimated that one-third of its 49 million daily users were 14 or younger.[2]

11. Though TikTok purports to require users creating accounts to report their birthdates, it has consistently and knowingly allowed children to bypass or evade the "age gate" and has continued to impermissibly collect, use, and share data from children who self-identify as being below the age of 13.

12. As a result of its continued violations of COPPA and its failure to abide by the terms of the 2019 Permanent Injunction, the Department of Justice filed a Complaint

---

[2] Raymond Zhong & Sheera Frenkel, *A Third of TikTok's U.S. Users May Be 14 of Under, Raising Safety Questions*, N.Y. Times (Aug. 14, 2020), https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.

on August 2, 2024 for Permanent Injunction, Civil Penalties, and Other Equitable Relief (the "DOJ Complaint") against TikTok, complaining of TikTok's continued wrongful collection and misuse of minors' Personal Information without parental consent in violation of COPPA and its obligations under the 2019 Permanent Injunction.

13. The DOJ Complaint alleges that throughout the Class Period, Defendants have: (1) knowingly created accounts for children and collected data from those children without first notifying their parents and obtaining verifiable parental consent; (2) failed to honor parents' requests to delete their children's accounts and information; and (3) failed to delete the accounts and information of users they know are children. The DOJ Complaint further alleges that its ability to assess the precise magnitude of Defendants' violations has been stymied by Defendants' failure to keep records demonstrating its COPPA compliance, as required by the terms of the 2019 Permanent Injunction.

14. The Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 501, *et seq*., protects children under 13 years old from having their personal information ("Personal Information") collected by operators of websites or online services directed to children, or operators with actual knowledge that they are collecting Personal Information online from children under 13, unless their parent has first given verifiable consent. Each time Defendants have collected a child's personal information without parental notice or verifiable consent or have failed to delete that information at the request of the child's parents or upon learning it was collected from a child whose parents were not notified or did not provide verifiable consent, Defendants violated COPPA.

15. COPPA violations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under section 18(a)(1)(B) of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 57a(a)(1)(B)." In other words, a violation of COPPA constitutes an unfair trade practice under Section 5 of the FTC Act. 15 U.S.C. § 45(a).

16. A majority of states, including California, Connecticut, Washington, New York, Michigan and Florida have enacted laws prohibiting unfair and/or unlawful business practices that are modeled after the FTC Act. These "Little FTC Acts" take interpretive guidance from the FTC Act. Defendants, by their unlawful collection and use of the Personal Information of children under the age of 13 without parental notice or consent have violated these Little FTC Acts.

17. Additionally, the conduct of TikTok constitutes unwarranted invasions of privacy in violation of the substantial protections California, Connecticut, Michigan, and Washington provide to their citizens. These states recognize the common law right to be free from intrusion upon seclusion, as formulated by § 652B of the Restatement (Second) of Torts, which prohibits intentional intrusion upon the solitude or seclusion of another or his or her private affairs or concerns. In addition, the California Constitution provides California citizens and residents an enumerated right to privacy.

18. Defendants' conduct a) violates the "Little FTC Acts" of California, Connecticut, Washington, Michigan, New York, and Florida; (b) violates the common law right to be free from intrusion upon seclusion in California, Connecticut, Michigan, and Washington, as well as New York Civil Rights Law §§ 50-51; (c); has resulted in Defendants' unjust enrichment at the expense of minor children in California, Connecticut, Washington, Michigan, New York, and Florida; and (d) violates the right to privacy enumerated in the California Constitution.

19. Accordingly, Plaintiffs, through their parents and guardians, bring this action for the relief asserted herein, on behalf of themselves and the Classes of similarly-situated minors whose privacy rights have, like Plaintiffs, been violated by Defendants, for damages, restitution, unjust enrichment, and appropriate injunctive and/or equitable relief to address Defendants' unlawful practices.

## PARTIES

### I. Plaintiffs

20. Plaintiff Jody Villanueva, on behalf of her child, J.C., a minor. Plaintiff Jody Villanueva and J.C. are residents and citizens of the State of California and natural persons. During the Class Period, J.C. created and used TikTok accounts (while under the age of 13) and regularly viewed content on the TikTok platform.

21. Plaintiff Alexis Douglas, on behalf of her child A.J., a minor. Plaintiff Alexis Douglas and A.J. are natural persons and residents and citizens of the State of California. During the Class Period A.J. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok Platform.

22. Plaintiff Marcelo Muto, on behalf of his child B.M., a minor. Plaintiff Marcelo Muto and B.M. are natural persons and are residents and citizens of the State of California. During the Class Period, B.M. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok Platform.

23. Plaintiff Heather Bresette, on behalf of her child L.F., a minor. Plaintiff Heather Bresette and L.F. are natural persons and residents and citizens of the State of Connecticut. During the Class Period L.F. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok Platform.

24. Plaintiff Darryl Maultsby, on behalf of his child D.M., a minor. Plaintiff Darryl Maultsby and D.M. are natural persons and residents and citizens of the State of Florida. During the Class Period D.M. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok Platform.

25. Plaintiff Ryan Hoyt, on behalf of his children D.R.H., D.W.H., and R.W., minors. Plaintiff Ryan Hoyt, D.R.H., D.W.H., and R.W. are natural persons and residents and citizens of the State of Michigan. During the Class Period, D.R.H., D.W.H., and R.W. created and used TikTok accounts (while under the age of 13) and regularly viewed content on the TikTok Platform.

26. Plaintiff Valerie Gates, on behalf of her child, M.G., a minor. Plaintiff Valerie Gates and M.G. are residents and citizens of the State of New York and natural persons. During the Class Period, M.G. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

27. Plaintiff Lamartine Pierre, Jr., on behalf of his child, C.P., a minor. Plaintiff Lamartine Pierre, Jr. and C.P. are residents and citizens of the State of New York and natural persons. During the Class Period, C.P. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

28. Plaintiff Angela Faucett, on behalf of her child, K.F., a minor. Plaintiff Angela Faucett and K.F. are residents and citizens of the State of Washington and natural persons. During the Class Period, K.F. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

29. Plaintiff Kayla Jaramillo, on behalf of her child J.W., a minor. Plaintiff Kayla Jaramillo and J.W. are natural persons and residents and citizens of the State of Washington. During the Class Period J.W. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok Platform.

**II. Defendants**

30. Defendant TikTok Inc. is a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. TikTok Inc. transacts or has transacted business in this District and throughout the United States.

31. Defendant TikTok LLC is a Delaware limited liability company with its headquarters at 5800 Bristol Parkway, Culver City, CA 90230. TikTok LLC wholly owns TikTok Inc.

32. Defendant TikTok U.S. Data Security Inc. is a Delaware corporation with its principal place of business shared with TikTok Inc and TikTok LLC. Tik Tok U.S. Data Security Inc. is a subsidiary TikTok Inc. and is described as the entity that "controls access to protected U.S. user data, content recommendation, and moderation systems" for U.S. consumers on the TikTok Platform. As such, TikTok U.S. Data

Security Inc. transacts or has transacted business in this District and throughout the United States.

33. Defendant ByteDance Ltd. is a Cayman Islands company with its headquarters in Beijing, China. ByteDance Ltd. created and owns the proprietary algorithm that underlies TikTok's "For You" feed. It has had offices in the United States and in other countries. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

34. Defendant ByteDance Inc. is a Delaware corporation with its principal place of business at 1199 Coleman Avenue, San Jose, CA 95110. ByteDance, Inc. is wholly owned by ByteDance, Ltd. ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

35. Defendant TikTok Pte. Ltd. is a Singapore company with its principal place of business at 1 Raffles Quay, #26-10, South Singapore 04583. Tik Tok Pte Ltd. Is the listed "seller" of the Tik Tok app in the Apple App Store, the Google Play Store and the Microsoft Store. A such, TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

36. Defendant TikTok Ltd. is a Cayman Islands company with its principal place of business in Singapore or Shanghai, China. TikTok Ltd. wholly owns TikTok LLC and TikTok Pte. Ltd. and is listed in the Apple App Store as the "developer" of the TikTok app. TikTok Ltd. transacts or has transacted business in this District and throughout the United States.

37. Collectively, Plaintiffs refer to Defendants TikTok Inc., TikTok LLC, TikTok U.S. Data Security Inc., TikTok Pte. Ltd., TikTok Ltd., ByteDance Ltd., and ByteDance Inc., as "Defendants' or "TikTok".

## III. Common Enterprise

38. Defendant ByteDance Ltd. is the parent and owner of ByteDance, Inc. and TikTok, Ltd. TikTok Ltd. owns TikTok LLC and TikTok Pte. Ltd. TikTok LLC owns TikTok Inc., which owns TikTok U.S. Data Security, Inc.

39. ByteDance Ltd. and TikTok Inc. executives, including Zhang Yiming, Liang Rubo, Zhao Pengyuan, and Zhu Wenjia, direct and control the company. Since 2019, ByteDance Ltd. and TikTok Inc. have supported and marketed the app in California and throughout the United States, including through the Apple App Store and the Google Play Store.

40. TikTok Pte. Ltd. serves the U.S. distributor of TikTok through the Apple App Store and the Google Play Store. TikTok, Ltd. is listed as the developer of the app in the Apple App Store and TikTok Pte. Ltd. is listed as the developer of the app in the Googe Play Store.

41. ByteDance Ltd. created the algorithm that drives the video recommendation engine on TikTok and maintains ownership of it.

42. The TikTok website is accessed through the tiktok.com domain, which is registered to TikTok, Ltd.

43. Since 2023, TikTok Inc. has transferred personal information of children to TikTok U.S. Data Security, Inc., which has maintained that data.

44. TikTok Inc.'s chief executive officers between 2020 and the present (Kevin Mayer, V. Pappas, and Shou Zi Chew), have simultaneously held senior positions at ByteDance Ltd., and ByteDance Ltd.'s chief executive officers (Zhang Yiming and Liang Rubo) have simultaneously served as directors of TikTok, Ltd. TikTok Inc.'s Global Chief Security Officer, Roland Cloutier, also served as cyber risk and data security support for ByteDance Ltd. ByteDance Inc. and TikTok Pte. Ltd.'s officers and directors have also overlapped with each other, and with officers and directors of TikTok Inc.

45. In April 2021, when Shou Chew was named CEO of TikTok Inc., he was serving as CFO of ByteDance Ltd. As CEO of TikTok Inc., Chew reports to the CEO of ByteDance Ltd. and is also paid by ByteDance Ltd. ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s CEO and TikTok Inc. employees participate in ByteDance Ltd.'s stock option plan.

46. ByteDance Ltd. and TikTok, Ltd. retain authority to approve or deny implementation of TikTok's "safety features." ByteDance Ltd. and TikTok, Ltd. employees also routinely sign contracts on behalf of TikTok Inc. ByteDance Ltd. controls TikTok Inc.'s e-commerce operations, and the leaders of TikTok Inc.'s e-commerce operations report directly to ByteDance Ltd.'s executives rather than TikTok Inc.'s own CEO. Further, TikTok Inc.'s head of human resources reports to ByteDance Ltd.'s head of human resources.

47. Prominent leaders of TikTok Inc. even state on their public LinkedIn profiles that they are employed by "ByteDance/TikTok."[3]

48. Upon information and belief, TikTok operates on a "shared services" model in which ByteDance Ltd. provides legal, safety, and privacy resources, including personnel. For instance, ByteDance Ltd. controls legal compliance and oversight at TikTok Inc. ByteDance Ltd.'s Global General Counsel, who reports to ByteDance Ltd.'s CEO, also oversees TikTok Inc.'s legal issues.[4] ByteDance Ltd.'s Director of Legal Affairs was designated as the point of contact along with outside counsel for the Federal Trade Commission to communicate with TikTok Ltd. and/or TikTok Inc. regarding TikTok's compliance with the stipulated order in *United States v. Musical.ly, et al.,* Case No. 2:19-cv-1439 (C.D. Cal.), involving the app that later became TikTok.

49. Further, all of Defendants' employees use a shared internal messaging system, Lark, where they can engage in chats and group chats with each other regardless of their formal company affiliation.

---

[3] Rachel Lee et al., *TikTok, ByteDance, and Their Ties to the Chinese Communist Party,* Submission to Australian Senate Select Committee on Foreign Interference through Social Media, 42 (March 14, 2023), https://t.co/ROPtMMud89.

[4] *ByteDance Appoints John Rogovin as Global General Counsel,* TikTok Newsroom (June 3, 2024), https://newsroom.tiktok.com/en-us/bytedance-appoints-john-rogovin-as-global-general-counsel.

50. TikTok Inc. CEO Chew stated to Congress on March 23, 2023 that employees of ByteDance Ltd. work on the TikTok platform and that he personally uses Lark to communicate "with employees at ByteDance [Ltd.]."[5]

51. According to a 2023 report prepared for the Australian Select Committee on Foreign Interference through Social Media, one ByteDance Ltd. insider has described TikTok Inc. as "not developed enough to be a self-contained business unit. Therefore…TikTok draws on personnel, experience, and methods of ByteDance's Douyin app, software, and commercial model to achieve 'technology accumulation and business breakthroughs.'"[6]

52. This same report gives examples of cross-hiring and concludes that ByteDance Ltd. Management considers TikTok to be interchangeable.[7]

53. Upon information and belief, TikTok maintains one centralized bank account for ByteDance Ltd.'s products, including TikTok.

54. At all relevant times, each Defendant acted individually and jointly with every other named Defendant committing all acts alleged in this Amended Complaint. At all relevant times, each Defendant acted: (a) as a principal; (b) under express or implied agency; and/or (c) with actual or ostensible authority to perform the acts alleged in this Amended Complaint on behalf of every other named Defendant.

55. Each Defendant knew, or should have known, that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Amended Complaint; facilitated the commission of hose unlawful acts; and intended to and did

---

[5] *See TikTok: How Congress Can Safeguard American Data Privacy and Protect Children from Online Harms Before H. Comm. On Energy and Commerce,* 118th Cong. 36, 96 (2023) (statement of Shou Chew, Chief Executive Officer, TikTok, Inc.).

[6] Lee, *supra,* note 3, at 42.

[7] *Id.*

encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

56. Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Consolidated Class Action Complaint. The conspiracy, common enterprise, and common course of conduct continue to the present.

**JURISDICTION AND VENUE**

57. This Court has general personal jurisdiction over Defendants TikTok, Inc., TikTok LLC, TikTok U.S. Data Security, Inc., and ByteDance, Inc. because their principal places of business are in California and because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this State.

58. TikTok carries out business activities and operations that are relevant to the conduct alleged in this Amended Complaint within California. Over the course of the Class Period, TikTok has held out its operations in Los Angeles as both its global headquarters and its headquarters for operations in the United States.

59. As of March 2024, 16 million people and 890,000 businesses in California actively use TikTok.[8]

60. Each of Defendants, while pursuing a common course of conduct and enterprise, has jointly engaged in actionable conduct in the State of California throughout the Class Period by, among others:

a. The conduct alleged in this Consolidated Class Action Complaint was developed and emanated from the Central District of California;

b. Los Angeles is one of TikTok's dual global headquarters and TikTok's Chief Operating Officer (for most of the Class Period) — who was responsible for the content, marketing, business intelligence, distribution

[8] *TikTok: The value of the app for consumers and business leaders in California*, Oxford Economics (March 2024), https://a-us.storyblok.com/f/1018266/x/2ecc5c0ed3/tiktok_factsheet_ca.pdf.

partnerships, and user operations — was based in TikTok's Culver City office;[9]

c. Defendants TikTok Inc. and TikTok LLC are California corporations with their principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230.

d. Marketing and promoting the TikTok app and platform to children in the State of California;

e. Exploiting the data of California children to sell advertising and increase revenue;

f. Selling and serving up ads to California children based on data unlawfully collected and exploited by Defendants;

g. Making representations to California consumers about user data collection including but not limited to misrepresentations about Kids Mode; and

h. Providing tools for businesses in California to advertise and market to children using behavioral advertising.

61. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d), because the amount in controversy for the Classes exceeds $5,000,000 exclusive of interest and costs, there are more than 100 potential class members, defined below, and minimal diversity exists because the majority of potential class members are citizens of a state different than Defendant.

62. This Court also has jurisdiction pursuant to 28 U.S.C §1332(d), because the amount in controversy exceeds $75,000 and is between citizens of different states. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial

---

[9] Dolores Quintana, *TikTok Soaring Ambitions: Expanding Culver City HQ Amidst Global Growth*, WestsideToday (Aug. 13, 2023), https://westsidetoday.com/2023/08/13/tiktoks-soaring-ambitions-expanding-culver-city-hq-amidst-global-growth/; *LA500 2023: Vanessa Pappas*, Los Angeles Business Journal (June 5, 2023),https://labusinessjournal.com/special-editions/la500/2023-la500/technology-2023/la500-2023-vanessa-pappas/.

portion of the conduct described in this Amended Complaint was carried out in this District.

## SUBSTANTIVE ALLEGATIONS

## FACTUAL BACKGROUND

### I. TikTok Collects and Exploits the Personal Information of Children

#### A. The TikTok Platform.

63. TikTok's predecessor Musical.ly launched in 2014. Musical.ly was a social media platform where users could create and share short lip-sync videos.

64. By 2016, New York Times tech reporter John Herrman wrote an article about the prevalence of children under the age of 13 on Musical.ly, explaining that "[w]hat is striking about the app, though, is how many of its users appear to be even younger than" than 13.[10] Mr. Herrman wrote:

> The app does not collect or show the age of its users, but some of its top-ranked users, whose posts routinely collect millions of likes, called hearts, appear from their videos and profile photos to be in grade-school. Until recently, the app had a feature that suggested users to follow based on their location. In New York, that feature revealed a list composed largely not just of teenagers, but of children.

65. The CEO of a social media advertising agency told the New York Times that with Muscial.ly users, "you're talking about first, second, third grade."[11]

---

[10] John Herrman, *Who's Too Young for an App? Musical.ly Tests the Limits,* N.Y. Times, Sept. 16, 2016, https://www.nytimes.com/2016/09/17/business/media/a-social-network-frequented-by-children-tests-the-limits-of-online-regulation.html.

[11] *Id.*

66. Musical.ly was very popular with children and teens. It had 60 million users, mostly in the United States, by 2017. A significant number of those users were under the age of 13.[12]

67. As Musical.ly was gaining popularity among elementary school kids in the United States, Beijing-based ByteDance Ltd. created TikTok in 2017.

68. On November 9, 2017, ByteDance Ltd. purchased Musical.ly for almost $1 billion. On August 2, 2018, TikTok merged with Muiscal.ly, consolidating the accounts and data into one application.

69. The TikTok platform allows users to create, upload, and share shortform videos. The TikTok app is free to download. It generates revenue for Defendants through advertising and eCommerce, including through the TikTok for Business platform, as well as in-app purchases of TikTok "coins" through the TikTok Shop.

70. TikTok's primary source of income is advertising revenue, earned by showing third-party advertisements to users on its platform.[13] The more data TikTok collects, the better it can target advertising space, which increases its revenue.[14]

71. Further, the more users TikTok has and the more TikTok is able exploit those users with advertising – which is enhanced through the design of the TikTok app — the more revenue TikTok earns.

---

[12] *See* Jon Russell & Katie Roof, *China's Bytedance is Buying Musical.ly in a Deal Worth $800M-$1B,* TechCrunch (Nov. 9, 2017), https://techcrunch.com/2017/11/09/chinas-toutiao-is-buying-musical-ly-in-a-deal-worth-800m-1b/#:~:text=The%20deal%20is%20undisclosed%20but,are%20based%20in%20the%20U.S.

[13] *See* Lydia Kibit, *How Does TikTok Make Money?*, GoBankingRates (Apr. 23, 2021), https://www.gobankingrates.com/money/business/how-does-tiktok-make-money/.

[14] *See* Zheping Huang, *TikTok Has a Few Main Ingredients for Making Money*, Bloomberg (June 28, 2022), https://www.bloomberg.com/news/newsletters/2022-06-28/how-does-tiktok-make-money-app-relies-on-a-few-main-ingredients (TikTok's algorithm helps it serve better targeted ads that have tripled its revenue).

72. TikTok's ability to exploit children on its Platform through the use of their Personal Information has been a resounding success. In 2023, TikTok's U.S. revenue hit a record $16 billion.[15]

73. Unfortunately, this success has come at the expense of children. Researchers estimate that 35% of TikTok's U.S. ad revenue is derived from children and teenagers.

74. In January 2024, TikTok reported that it had approximately 170 million monthly active users in the United States. That is more than half the population of the United States.

**B. TikTok is Directed at Children**

75. TikTok was, at all times throughout the Class Period, aware that minor children accessed and engaged with its platform and actively sought to increase viewing and engagement by children through content directed toward those children, while publicly representing that such minors were not permitted to access TikTok's adult version and were protected by TikTok Kid's version.

76. According to a survey conducted in the United States in 2022, 47% of respondents age 11 to 12 years were using TikTok.[16]

77. According to TikTok, in 2020 more than a third of its 49 million daily users in the United States were under 14 years old.[17]

78. TikTok's enormous child audience is something TikTok has worked hard to foster and grow.

---

[15] *TikTok's US Revenue Hits $16bln as Washington Threatens Ban, FT Reports,* Reuters (Mar. 15, 2024) https://www.reuters.com/technology/tiktoks-us-revenue-hits-16-bln-washington-threatens-ban-ft-reports-2024-03-15/.

[16] Stacy Jo Dixon, *Social media usage of pre-teens in the United States as of November 2022,* Statista (Dec. 4, 2023), https://www.statista.com/statistics/1417175/us-preteens-social-media-reach/.

[17] Raymond Zhong & Sheera Frenkel, *A Third of TikTok's U.S. Users May be 14 or Under, Raising Safety Quetsions,* N.Y. Times (Sept. 17, 2020), https://www.nytimes.com/2020/08/14/technology/tiktok -underage-users-ftc.html.

79. TikTok publicly hosts thousands of accounts that feature content from well-known child brands such as My Little Pony, Pokémon, Cartoon Network, Bluey, and Kidzbop. Each of these accounts contains child-oriented subject matter, characters, activities, music and other content.

80. For example, the My Little Pony TikTok account includes videos featuring animated ponies in bright colors interacting with other characters in ways that are designed to appeal to children. The account proclaims that "[e]very pony is encouraged to share their sparkle." Other videos have pony dolls that play with each other, often with "My Little Pony" songs playing in the background—it's hard to imagine this engagement campaign is directed at the 13+ audience.

81. TikTok hosts, maintains, and promotes thousands of accounts on TikTok that are dedicated to child models and child celebrities and influencers. For example, TikTok currently hosts an account for Eva Diana Kidisyuk, a 10-year-old child influencer. Her videos feature herself and her brother, and include children's songs and unboxing videos. Again, it is difficult to imagine that this material is intended for the 13+ audience.

82. TikTok knew that this child-directed content was on its platform. Each of the TikTok accounts mentioned above is a "verified" account, which means that TikTok independently reviewed the account upon receipt of an application, determined the account to be "[n]otable," and "confirmed the account belongs to the person or brand it represents."[18]

83. TikTok's algorithms are trained on data collected from users via the TikTok Platform and from third-party sources. Such data include videos viewed, "liked," or shared, accounts followed, comments, content created, video captions, sounds, and

---

[18] *Verified Accounts on TikTok,* TikTok, https://support.tiktok.com/en/using-tiktok/growing-your-audience/how-to-tell-if-an-account-is-verified-on-tiktok (accessed Dec. 13, 2024).

hashtags, as well as device and account settings such as language preference, country setting, and device type.

84. TikTok uses the copious amounts of data it collects from its child audience to feed them targeted, behavioral advertisements.

85. A few examples of the advertisers and advertisements that are shown on TikTok include an advertisement promoting a theatrical adaptation of the children's show, Bluey, an advertisement promoting a videogame adaption of the children's animated television show, SpongeBob Square Pants, and an advertisement for the video game Roblox, a game that is so popular among children that in April 2020, Roblox claimed that two-thirds of all U.S. children between the ages of 9 and 12 years old played Roblox.

86. Companies that sell media and merchandise to children are willing to pay TikTok enormous sums of money to advertise on its Platform because they know they can reach their target audience there.

### C. Defendants knowingly created accounts for children and collected children's data without parental notice or consent.

87. Since at least March 2019, Defendants have required that users input a birthdate when creating a TikTok account. This is also known as an age-gate.

88. Children who self-identify as under the age of 13 in the United States are offered what Defendants refer to as TikTok for Younger Users or "Kids Mode" (hereinafter "Kids Mode").

89. In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

90. Parents are neither notified nor asked to consent to the creation of an account in Kids Mode.

91. If a user indicates that he or she is over the age of 13, that user is permitted to create a regular account on TikTok.

92. Although age-gates are not fool-proof, in response to the DOJ's 2019 action, TikTok implemented a particularly flimsy age-gate that was designed to permit children to continue creating regular TikTok accounts. For instance, the age-gate TikTok implemented allowed children to make multiple attempts at creating an account. Until at least late 2020, a child who input an age below 13 could restart the account creation process to put in a different age. Thus, even though Defendants had actual knowledge of a child-user's age based on the prior attempt to create an account, Defendants permitted children to restart the account process and create regular accounts.

93. Another way children could avoid Defendants' woefully deficient age-gate was to use login credentials from third-party online services such as Instagram and Google. Defendants internally identified these TikTok accounts as "age unknown." This practice persisted until at least May 2022 — more than three years after TikTok entered into the 2019 Permanent Injunction designed to prevent its collection and use of the Personal Information of children.

94. These policies and practices led to the creation of millions of accounts for which Defendants did not know the age of the user.

95. TikTok's porous age-gate permitted it to continue collecting the Personal Information of children without parental consent, including first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and a profile image, as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created).

96. Over time, Defendants collected additional information from these child-users, including usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track user across different websites and platforms.

97. Defendants' practice of allowing children to sign up for a TikTok account using third-party credentials allowed children to create a TikTok account, gaining access to adult content and features of the general TikTok platform without providing age information. Without parental notice or consent, Defendants then collected and maintained vast amounts of personal information from the children who created and used these TikTok accounts.

98. Defendants did not start requiring all users to go through a TikTok age gate until at least 2022, closing what employees internally described in early 2021 as an age gate "loophole."

**D. Defendants collected personal information from "Kids Mode" accounts.**

99. Since at least March 2019, Defendants have offered in the United States what they refer to as TikTok for Younger Users or "Kids Mode" to children who identify themselves as being under 13 when they create an account. When a child inputs a birthday on the account creation screen that indicates that they are under 13, the platform states that the user is "about to access a TikTok experience designed just for you," and a Kids Mode account is created.

100. Despite representing that Kids Mode is an "experience designed" for children under 13, Defendants collect and maintain a username, password, and birthday (day, month, and year) from Kids Mode users. They have also collected several types of persistent identifiers from Kids Mode users without notifying parents or obtaining their consent, including IP address and unique device identifiers.

101. The COPPA Rule permits operators to collect a persistent identifier from children under certain circumstances without first obtaining verifiable parental consent, but only if no other personal information is collected and the identifier is used for the sole purpose of providing support for the online service's internal operations. See 16 C.F.R. § 312.4(c)(7). Defendants' collection and use of persistent identifiers from Kids

Mode users did not comply with this provision and went well beyond what was necessary to operate the TikTok platform.

102. During the Class Period, Defendants additionally collected dozens of other types of information concerning child users with Kids Mode accounts—including app activity data, device information, mobile carrier information, and app information—which they combine with persistent identifiers and used to amass profiles on children.

103. Defendants shared information they collected from children in Kids Mode, including persistent identifiers, with third parties without parental consent.

104. For example, Defendants shared this information with Facebook and AppsFlyer, a marketing analytics firm, in part to encourage existing Kids Mode users whose use had declined or ceased to use Kids Mode more frequently. Defendants called this process "retargeting less active users." This practice used children's personal information for reasons beyond support for the internal operations of Kids Mode and thus was not permitted by the COPPA Rule.

105. Separately, users in Kids Mode can send feedback to TikTok using an in-app "Report a Problem" function. When doing so, Defendants require the child to enter the child's email address.

106. Between February 2019 and July 2022, for example, Defendants collected over 300,000 problem reports from users in Kids Mode that included children's email addresses.

107. Defendants did not delete these children's email addresses after processing the reports, and thus retained these email addresses longer than reasonably necessary to fulfill the purpose for which the information was collected, in violation of the Rule. See 16 C.F.R. § 312.10. Defendants did not notify parents of this ongoing practice.

**E. Defendants ignored parent requests to delete child users' data.**

108. Defendants have allowed millions of children to create TikTok accounts outside of Kids Mode.

109. Despite the fact that regulation and the 2019 Permanent Injunction require Defendants to delete personal information collected from children at their parents' request, in many instances Defendants have obstructed parents' ability to make such requests and have failed to comply with these requests.

110. First, Defendants failed to create a simple process for parents to submit a deletion request. For example, the word "delete" does not appear in many of Defendants' online parental guidance materials, such as TikTok's "Guardian's Guide," the "Privacy and Security on TikTok" page, TikTok's "New User Guide," and other materials on tiktok.com such as the "Parental Controls Guide" and "The Parent's Guide to TikTok."

111. Second, TikTok required parents to navigate a byzantine process to request deletion of their child's account and information. For example, as recently as 2023, a parent visiting tiktok.com to request deletion of their child's TikTok account and information had to scroll through multiple webpages to find and click on a series of links and menu options that gave no clear indication they apply to such a request. Parents then had to explain in a text box that they are a parent who wanted their child's account and data to be deleted.

112. At times, Defendants also directed parents to send their requests to delete their children's accounts and personal information to an email address, then simply failed to respond in a timely manner to these requests, or simply failed to respond to them at all.

113. Even if a parent succeeded in submitting a request to delete their child's account and information, Defendants often did not honor that request — instead deferring to self-serving policies intended to prevent deletion of information. In response to each request, Defendants' staff would review the account for "objective indicators" that the account holder was under 13, or "underage," based on the user's handle, biography or "bio." Under Defendants' policy, an account would be identified as an underage account and deleted only if the reviewed elements contained an explicit

admission that the user was under 13—for example, "I am in first grade" or "I am 9 years old"— to determine whether a child was younger than 13.

114. If these policies were not triggered by Defendants' self-serving review, they would often require parents to re-submit the same information, or additional forms under penalty of perjury. If this secondary form was not completed, Defendants would not delete the minor's data.

115. Defendants were aware this was occurring. For example, in a 2018 exchange, a high-level employee of Defendants explicitly acknowledged that Defendants had "actual knowledge" of children on TikTok upon receiving the first parental request, and yet did not delete children's accounts upon receiving the request. In the exchange, the former CEO of TikTok Inc. communicated about underage users on TikTok with the executive responsible for child safety issues in the United States. The employee in charge of child safety issues questioned why parents had to fill out a second form after they already provided the necessary information, noting: "Why we reply with this template everytime [sic] when we already have all the info that's needed? [I]n this case, we already have the username, the name of the reporter, and the age, yet we still reply with the template." He added that if the person reporting the account "doesn't reply then we have actual knowledge of underage user and took no action!"

116. Despite this awareness that they were failing to respect parents' deletion requests, Defendants continued using this flawed process through 2023.

117. In addition to using what they knew to be a flawed process to address parents' deletion requests, Defendants in many cases did not respond to parents' requests at all. As of late December 2020, Defendants had a backlog of thousands of emails dating back months requesting that TikTok delete individual children's accounts.

118. Defendants' inadequate policies and inaction led to numerous children continuing to maintain TikTok accounts even though their parents had asked Defendants to delete those accounts. In a sample conducted by the Department of Justice of approximately 1,700 children's TikTok accounts about which Defendants received

complaints and deletion requests between March 21, 2019, and December 14, 2020, approximately 500 (30%) remained active as of November 1, 2021. Several hundred of these accounts are likely still active and represent only a small fraction of the thousands of deletion requests Defendants received and failed to act on.

119. Compounding these problems, even when Defendants did delete a child's account and personal information at their parent's request, at least until recently, Defendants did nothing to prevent the same child from re-creating their account with the same device, persistent identifiers, and email address or phone number as before. This means that a child whose account has been removed could simply create a new account.

### F. Defendants did not delete children's accounts identified by their own systems.

120. Defendants purport to use technology, user reports, and human moderation to identify children's TikTok accounts so that those accounts and the information collected from them can be deleted. But Defendants know their processes and policies are deficient, and they fail to delete accounts and information that even their own employees and systems identify as belonging to children.

121. Since approximately 2020, Defendants have used "keyword matching" purportedly to identify children's accounts for deletion. Defendants' keyword matching process searches users' profiles for terms deemed likely to correspond to child accounts—for example, "4th grade" and "9 years old"—and submits accounts that include those terms for review and potential removal. Defendants' keyword matching practices have proven woefully deficient.

122. Defendants' human content moderators review accounts flagged as potentially belonging to children by the keyword matching process or by other methods. Similar to Defendants' restrictive approach to parental deletion requests, the content moderators who review accounts may delete them as belonging to children only if rigid criteria are satisfied.

123. Earlier versions of the policy were even more restrictive. For example, to mark and delete an account as underage, the policy between the spring of 2020 and early 2021 required an explicit admission of age, regardless of what videos the account had posted.

124. Additionally, Defendants' content moderators are not told why an account was flagged as possibly underage. If the policy's rigid criteria are not met, content moderators have no discretion to designate an account as underage; they must allow any such account to remain on the platform even if they know the account holder is in fact a child.

125. Defendants have also failed to allow content moderators sufficient time to conduct even the limited review they permit. TikTok often has tens of millions of monthly active users in the United States. Meanwhile, TikTok Inc.'s content moderation team included fewer than two dozen full-time human moderators responsible for identifying and removing material that violated all of its content-related policies, including identifying and deleting accounts of unauthorized users under age 13. At some points, TikTok's human moderators spend an average of less than 10 seconds on each review.

126. The deficiency of Defendants' policies is shown by the fact that regular TikTok accounts belonging to children can be easily found by searching for the same basic terms and variations used by Defendants' keyword matching algorithm. Some of these accounts have existed for long periods—able to garner hundreds of followers and hundreds or even thousands of "likes," a sign of approval by other TikTok users.

127. By adhering to these deficient policies, Defendants actively avoid deleting the accounts of users they know to be children. Instead, Defendants continue collecting these children's Personal Information, showing them videos not intended for children, serving them ads and generating revenue from such ads, and allowing adults to directly communicate with them through TikTok.

### G. TikTok had actual knowledge that it was collecting, storing and using the personal information of children under the age of 13.

128. Many accounts that belong to children come to Defendants' attention when one user reports another user's video as violating one of Defendants' policies. Those videos are then added to "video queues" and reviewed by human content moderators who review the videos to determine whether they comply with Defendants' policies. If those content moderators encounter a video that depicts a child under 13, they can apply labels to designate suspected child users, such as "Content Depicting Under the Age of Admission" or "Suspected Underaged User." These moderators can remove a specific video from TikTok, but they lack authority to delete or remove the account even if it is clearly the account of a child. Instead, by applying the labels, they refer the video to the separate content moderation team that assesses whether accounts belong to underage users (the "underage queue").

129. During the Class Period, however, the process did not work. Accordingly, when Defendants' moderators tagged specific videos as depicting a child under 13, the associated accounts were not actually referred to the team authorized to delete the associated account. Instead, those accounts remained live, and Defendants continued to collect and retain those children's personal information and to show them videos and messages from adult TikTok users.

130. Defendants conduct quality assurance reviews of the content moderation processes described above. The quality assurance reviews require content moderators to re-review a subset of previously reviewed accounts or videos. This process aims to identify instances in which TikTok content moderators incorrectly applied company policies to those accounts or videos.

131. Until at least September 2022, however, when Defendants' quality assurance analysts identified a specific account that a moderator incorrectly failed to flag for deletion as belonging to a child, Defendants did not then go back and delete the account. Instead, the account remained live. Accordingly, Defendants failed to delete

numerous children's accounts that their own quality assurance team specifically identified as belonging to children.

132. Even where accounts that satisfied Defendants' rigid criteria were identified as belonging to children, and were marked for deletion, Defendants failed to delete many of the accounts.

133. Internal communications reveal that Defendants' employees were aware of this issue. In a September 2021 online chat, for example, employees discussed the fact that accounts were being marked as banned for being underage but were not being deleted and suggested this had been occurring since mid-July 2020. One employee noted that she was seeing this "a lot" and "I run across usually like 3-4 accounts [like that] a day," while another noted "[t]hat shouldn't be happening at all or we can get in trouble … because of COPPA." TikTok knew that many of its account holders were under 13 years of age.

134. Although Defendants were unquestionably aware of the problem and were under a Court Order to keep records of their COPPA compliance, they failed to do so.

135. In addition to Defendants' unlawful collection and use of the Personal Information of children under 13, Defendants retain children's Personal Information long after they identify an account as belonging to a child and determine they should delete information related to the account. For example, Defendants retain app activity log data related to children for 18 months.

136. Defendants have retained children's Personal Information in numerous database locations long after purportedly deleting their accounts.

137. Similarly, Defendants retained profile photographs of users that Defendants knew to be children. For example, TikTok allows users to include in their videos another user's comment, which is displayed alongside the commenter's photograph and username. When Defendants did "delete" the account of a child, that child's comments remained in other users' posts, along with their photograph and username. These images

had unique identifiers that tied each child's photograph, username, and comment to an account that Defendants knew had been deleted because it belonged to a child.

138. Defendants' internal analyses show that millions of TikTok's U.S. users are children under the age of 13. For example, the number of U.S. TikTok users that Defendants classified as age 14 or younger in 2020 was millions higher than the U.S. Census Bureau's estimate of the total number of 13- and 14-year olds in the United States, suggesting that many of those users were children younger than 13.

139. Defendants and their employees have long known that children misrepresent their ages to pass through TikTok's age gate. For example, in 2020, a TikTok moderator recognized that Defendants maintain accounts of children despite the "fact that we know the user is U13," i.e., under age 13, so long as the child's profile does not admit that fact explicitly. Another employee admitted that TikTok moderators were required to ignore any "external information" indicating that a user under review is a child.

140. In another example, in a July 2020 chat, one of Defendants' employees circulated the profiles of numerous underage users he had identified "literally through one minute of scanning," noting "[t]his is incredibly concerning and needs to be addressed immediately."

141. Defendants have other methods available to them to identify and remove children's accounts from the TikTok platform -- but purposely do not use them. For example, TikTok has its own age-determining technology— "grade level." The grade level algorithm is based on users' online behavior and other metrics for purposes such as advertising. Unlike TikTok's age gate, this method is based on observable behaviors and not solely users' self-reported age. However, despite their knowledge of the violations of law alleged herein, Defendants have not used it to attempt to identify children on the platform for the purpose of removing accounts that violate COPPA.

142. In fact, Defendants have programmed grade level to avoid gaining knowledge that users were under 13. In 2020, Defendants' lowest age group band was

for ages under 15, meaning that it would not identify users as under 13 specifically. Defendants later revised this age cutoff so that the lowest age segment was under 16.

143. TikTok had actual knowledge that children under 13 were using TikTok yet did not obtain verifiable parental consent before collecting the Personal Information of those children in violation of COPPA, the FTC Act, and the consumer protection laws of many states. These acts also constituted an intrusion upon the seclusion of children under 13 as well as a violation of their reasonable expectation of privacy.

**H. TikTok made false claims to the FTC about its COPPA compliance.**

144. On June 12, 2020, TikTok Inc. stated to the FTC that "[o]n May 11, 2019…[it] took offline all US accounts that did not go through [its recently imposed] age gate. These accounts…were not accessible to the Company. TikTok did not use or disclose the information for any purpose." TikTok Inc. also stated that it "completed on May 24, 2020" the deletion of children's data as required by the 2019 Permanent Injunction. V Pappas, as "GM of TikTok," certified on TikTok Inc.'s behalf under penalty of perjury that the prior statement was true and correct.

145. According to the August 2, 2024 DOJ Complaint, after follow-up inquiry by the FTC, TikTok Inc. acknowledged that its June 12, 2020 claims had been false. In fact, TikTok Inc. retained and used data that it previously represented it "did not use," and was "not accessible" to it, and was "delet[ed]." That data included Personal Information and other data of child, teen, and adult users, including IP addresses, device IDs, device models and advertising IDs.

**II. Defendants Knowingly Collected and Exploited the Personal Information of Children Without Parental Consent in Violation of COPPA, State Unfair Trade Practices Statutes, and Common Law and Constitutional Prohibitions Against the Invasion of Privacy.**

**A. The Children's Online Privacy Protection Act of 1998.**

146. Congress passed COPPA, codified at 15 U.S.C. § 6501, *et seq.,* in 1998 in response to concerns that children's online activities were being tracked by operators of

websites and online services. COPPA is intended to "maintain the security of personally identifiable information of children collected online" and to "protect children's privacy by limiting the collection of personal information from children without parental consent."[19] The standards in COPPA have given rise to, and correlate with, accepted norms throughout society for defining the expectations of privacy for minor children.

147. COPPA applies to any operator of a commercial website or online service directed to children under 13 years of age that collects, uses, and/or discloses Personal Information from children. The FTC considers parties with actual knowledge that they are collecting Personal Information from users of a child-directed site or service as "operators" under COPPA.

148. COPPA "prohibits unfair … acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet." 16 C.F.R. § 312.1.

149. COPPA provides, in pertinent part, that:

> It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed [by the Federal Trade Commission]. 15 U.S.C. § 6502(a).

150. COPPA thus prohibits, *inter alia*, the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.5(c)(7), 312.2.

151. COPPA specifically requires an "operator" covered by COPPA to give notice to parents and obtain their verifiable consent before collecting children's Personal Information online. 16 C.F.R. §§ 312.4 and 312.5. This includes but is not limited to:

---

[19] 144 CONG. REC. S12787.

152. Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth by COPPA;

153. Providing clear, understandable, and complete notice of its information practices, including specific disclosures directly to parents; and

154. Obtaining verifiable parental consent prior to collecting, using, and/or disclosing Personal Information from children.

155. The FTC has interpreted "operators of website or online services directed to children" and "operators with actual knowledge that they are collecting personal information online from children under 13" "subject to strict liability for COPPA violations."[20]

156. Websites or online services that collect Personal Information from users of other child-directed websites or online services are deemed as "child-directed" if the website or online service "has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children." 16 C.F.R. § 312.2.

157. In order to determine whether a website or online service is "directed to children" the FTC will:

> [C]onsider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the

[20] Statement of Joseph J. Simons & Christine S. Wilson, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC*, Federal Trade Commission (Jan. 28, 2019), https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf.

> Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.
>
> 16 CFR § 312.2

158. In 2013, COPPA was enhanced (the "2013 COPPA Enhancement") to provide further protection for children against online tracking and to "giv[e] parents greater control over the online collection of their children's personal information." The 2013 enhancement widened the definition of children's "Personal Information" to include "persistent identifiers" such as cookies that track a child's activity online, geolocation information, photos, videos, and audio recordings.

> Thus, the COPPA Enhancement defines "Personal Information" to include:
>
> (1) A first and last name;
>
> (2) A home or other physical address including street name and name of a city or town;
>
> (3) Online contact information as defined in this section;
>
> (4) A screen or user name where it functions in the same manner as online contact information, as defined in this section;
>
> (5) A telephone number;
>
> (6) A Social Security number;
>
> (7) A persistent identifier that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;
>
> (8) A photograph, video, or audio file where such file contains a child's image or voice;
>
> (9) Geolocation information sufficient to identify street name and name of a city or town; or

(10) Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition."

Section 312.2 of COPPA Rule, 16 C.F.R. § 312.2.

159. The 2013 COPPA Enhancement was the culmination of two years of rulemaking by the FTC and reflected society's growing recognition of the surreptitious surveillance tactics used by advertising companies to track children online and advertise to them while using the internet.

160. By expressly including persistent identifiers and geolocation data in COPPA's definition of Personal Information, the FTC intended to deter advertising companies and internet operators such as TikTok from exploiting young children via tracking, profiling, and advertising online.

161. Personal information collected by TikTok from each user with a self-reported age of at least 13 on TikTok includes, but is not limited to, first and last name; online contact information; screen or user name functioning in the same manner as online contact information; telephone number; persistent identifiers (including IP address and "cookies"); photo, video, and audio files containing a child's image or voice; and unique device identifiers.

162. For users with a self-reported age under 13 years of age, for whom TikTok has irrefutable knowledge of a user's age, TikTok collects personal information, including persistent identifiers, app activity data, device information, mobile carrier information, and app information, without obtaining, or even attempting to obtain, prior parental permission.

163. TikTok uses information it collects from users on its 13+ experience to target personalized, behavioral advertisements, even though TikTok has actual knowledge that millions of these users are below the age of 13.

164. Some or all of the information that TikTok collects from children who use TikTok is "information concerning [a] child" regulated by the COPPA Rule. TikTok

combines this information with at least one persistent identifier that it collects from that same child.

165. By combining this "information concerning [a] child" with a persistent identifier collected by TikTok, that information becomes "personal information" under the COPPA Rule, and that information must be treated in compliance with the COPPA Rule. 16 C.F.R. § 312.3. In violation of COPPA, TikTok does not request or obtain parental consent prior to collecting this information from users under the age of 13.

166. TikTok provides insufficient notice on its website and app about the information it collects from children, how it uses that information, its disclosure practices and parents' rights to review or delete their children's information.

167. Despite TikTok's "actual knowledge" that millions of its users are under the age of 13 and the fact that TikTok is "directed to children," TikTok does not obtain verifiable parental consent before collecting, using, or disclosing the personal information of its child users (including users in "Kids Mode" and the 13+ experience).

168. COPPA and the COPPA Rule enumerate the minimum methods by which TikTok is required to obtain verifiable consent. *See* 15 U.S.C. § 6501(9) and 16 C.F.R. § 312.5(b)(2).

169. TikTok adheres to none of the rules and requirements with respect to parental consent.

170. Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of COPPA constitutes an unfair … act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

171. While COPPA does not itself provide a private right of action for individuals to seek redress for harms arising from COPPA violations, and contains a limited preemption clause barring the imposition of liability by states and local governments "inconsistent" with COPPA (15 U.S.C. § 6502(d)), the United States Court of Appeals for the Ninth Circuit has held that "COPPA's preemption clause does not bar

state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023).

172. Therefore, individuals harmed by conduct which violates COPPA such as the conduct described herein may seek redress for harms via state law causes of action.

**B. Defendants' tracking, profiling, targeting and exploitation of children without parental consent constitutes unfair and unlawful conduct.**

173. State legislatures across the country have enacted consumer protection statutes proscribing the same unfair and unlawful business conduct proscribed by the FTC Act and rules promulgated thereunder. These "Little FTC Acts" were often enacted for the specific purpose of supplementing the FTC's mission of protecting consumers from unfair and/or unlawful acts or practices by providing state citizens with a private right of action to seek redress for harm arising out of acts those acts which are also prohibited by the FTC Act, which lacks a private right of action.

174. Thus, the conduct which the FTC determined violated COPPA jointly carried out by Defendants as described above, not only constitutes "unfair" and therefore unlawful acts that violate COPPA and the FTC Act, but also constitutes "unfair" and therefore unlawful acts pursuant to the Little FTC Acts.

175. Specifically, the acts carried out by Defendants described above constitute "unfair" acts under the Little FTC Acts pursuant to which Plaintiffs bring claims because they caused substantial injury to Plaintiffs and those similarly situated by intrusively and invasively collecting and using their Personal Information without notice or parental consent in violation of COPPA, the FTC Act, and societal norms. These injuries could not be reasonably avoided by the vulnerable children under 13 years of age that TikTok targeted. Nor were the injuries to Plaintiffs and similarly situated children in the United States caused by TikTok Defendants outweighed by countervailing benefits to consumers.

**C. Defendants' tracking, profiling, targeting and exploitation of children without parental consent violated Plaintiffs' and Class members' reasonable expectations of privacy and is highly offensive.**

176. TikTok's conduct in violating the privacy rights and reasonable expectations of privacy of Plaintiffs and Class members by implementing a flawed-by-design age-gating system is particularly egregious because TikTok agreed to cease this behavior in the 2019 Permanent Injunction. Defendants' actions have violated norms and laws designed to protect children – a group that society has long recognized is vulnerable to exploitation and manipulation.

177. Parents' interest in the care, custody, and control of their children is one of the most fundamental liberty interests recognized by society. It has long been recognized that parents should maintain control over who interacts with their children and how.

178. Because children are more susceptible to exploitation than adults, society has recognized the importance of providing added legal protections for children, often in the form of parental consent requirements.

179. In fact, as discussed above, the FTC's enhancements of COPPA in 2013 reflect a specific concern with mobile app tracking and tracking internet users via persistent identifiers and reflect the offensiveness with which society regards this behavior.

180. Children develop the ability to use smartphones and tablets by the age of two.[21] Almost every family with a child younger than eight in America has a smartphone (95%) and/or tablet (78%) in the household.[22]

---

[21] Elyse Wanshel, *10 Reasons Why You Shouldn't Give a Child a Smartphone or Tablet*, Little Things (Oct. 20, 2015), https://littlethings.com/family-and-parenting/reasons-not-to-give-children-technology.

[22] Victoria Rideout, *The Common Sense Census: Media Use By Kids Age Zero To Eight*, Common Sense Media (2017) at 3, https://https://www.commonsensemedia.org/sites/default/files/research/report/csm_zerotoeight_fullreport_release_2.pdf.(accessed Dec. 16, 2024).

181. Often, children are given their own devices, with one 2015 study finding that by age four, 75% of children had their own tablet, smartphone, or iPod.[23]

182. Nearly all parents in the United States (94%) say their children under 13 use online apps, with top apps used being video streaming (64%), video gaming (58%) and show/movie streaming (58%).[24]

183. Four in five parents (80%) whose children under 13 use online apps say they worry about their children's privacy when using those apps,[25] with the top concern (69%) being data tracking.[26]

184. Nearly 3 in 4 parents whose children under 13 use online apps (73%) say they are concerned about their children's location being tracked by those apps; those residing in urban or rural areas are more likely than those residing in suburban areas to share this sentiment (88% and 87% vs. 73%).[27]

185. More than three-quarters (77%) of parents are concerned about protecting their family's digital privacy.[28]

186. 73% of parents are concerned about personal data being collected by third parties, without their consent.[29]

---

[23] Alexis C. Madrigal, *Raised By YouTube*, The Atlantic (Nov. 2018), https://www.theatlantic.com/magazine/archive/2018/11/raised-by-youtube/570838/ ("[A] team of pediatricians at Einstein Medical Center, in Philadelphia, found that YouTube was popular among device-using children under the age of 2. Oh, and 97 percent of the kids in the study had used a mobile device. By age 4, 75 percent of the children in the study had their own tablet, smartphone, or iPod. And that was in 2015").

[24] *Children's Online Privacy: Harris Poll Recap,* Pixalate (Mar. 1, 2024), https://www.pixalate.com/blog/childrens-online-privacy-harris-poll-recap.

[25] *Id.*

[26] *Children's Privacy: Data Tracking Is a Big Concern for Parents, and Trust Levels in Companies Are Low,* CDP Institute (Jan. 24, 2023), https://www.cdpinstitute.org/news/childrens-privacy-data-tracking-is-a-big-concern-for-parents-and-trust-levels-in-companies-are-low/.

[27] *Children's Online Privacy, supra* note 24.

[28] *Polling Memo: Parents' Views on Childrens Digital Privacy and Safety*, Trusted Future https://trustedfuture.org/childrens-digital-privacy-and-safety (accessed Dec. 13, 2024).

[29] *Id.*

187. And parents also recognize the importance of protecting their children's identity (90%), location (88%), health data (87%), age (85%), school records (85%), and browsing history (84%).[30]

188. Additionally, a survey conducted by the Center for Digital Democracy ("CDD") and Common Sense Media of more than 2,000 adults found overwhelming support for the basic principles of privacy embedded in the California Constitution, state common law, as well as federal law.[31] The parents who were polled responded as follows when asked whether they agreed or disagreed with the following statements:

189. "It is okay for advertisers to track and keep a record of a child's behavior online if they give the child free content."

- 5 percent strongly agree
- 3 percent somewhat agree
- 15 percent somewhat disagree
- 75 percent strongly disagree
- 3 percent do not know or refused to answer

190. "As long as advertisers don't know a child's name and address, it is okay for them to collect and use information about the child's activity online."

- 3 percent strongly agree
- 17 percent somewhat agree
- 10 percent somewhat disagree
- 69 percent strongly disagree
- 1 percent do not know or refused to answer

---

[30] *Id.*

[31] *Survey on Children and Online Privacy, Summary of Methods and Findings*, Center for Digital Democracy, https://democraticmedia.org/assets/resources/COPPA-Executive-Summary-and-Findings-1635879421.pdf (accessed Dec. 13, 2024).

a. "It is okay for advertisers to collect information about a child's location from that child's mobile phone."

- 6 percent strongly agree
- 3 percent somewhat agree
- 7 percent somewhat disagree
- **84 percent strongly disagree**
- less than 1 percent do not know or refused to answer

b. "Before advertisers put tracking software on a child's computer, advertisers should receive the parent's permission."

- **89 percent strongly agree**
- 5 percent somewhat agree
- 2 percent somewhat disagree
- 4 percent strongly disagree
- less than 1 percent do not know or refused to answer

c. "There is a federal law that says that online sites and companies need to ask parents' permission before they collect Personal Information from children under age 13. Do you think the law is a good idea or a bad idea?"

- **93 percent said it was a good idea**
- 6 percent said it was a bad idea
- 1 percent did not know or refused to answer.

191. The proliferation of internet-connected device usage by children under 13, coupled with the concerns expressed by parents, and Defendants past acknowledgment of its failure to adequately protect children and its Court Ordered promise to remediate its practices, renders Defendants' conduct highly offensive and an egregious breach of social norms.

192. TikTok's unfair and unlawful collection of Personal Information substantially affects the amount of time minor children, including children under the age of 13, spend on TikTok.

193. By failing to (i) obtain parental consent, (ii) disclose to parents the nature and purpose of their data collection practices (and use of that data), and (iii) take other steps to preclude the capture of children's Personal Information, and by manipulating and exploiting the habits of minors for their economic gain, Defendants have breached the privacy rights and reasonable expectations of privacy of Plaintiffs' minor children and the millions of minors in the Classes who have used TikTok's platform, in contravention of privacy norms that are reflected in consumer surveys, centuries of common law, state and federal statutes, legislative commentaries, industry standards and guidelines, and scholarly literature.

### D. Targeting Children in Violation of COPPA and the 2019 Permanent Injunction Commercial Activity into Highly Offensive, Egregious Conduct.

194. Defendants' abject and intentional failure to abide by the terms of the 2019 Permanent Injunction to ensure its compliance with COPPA has resulted in the continued collection and exploitation of the Personal Information of children for profit and represents a stark departure from long-standing societal and legal traditions that are designed to protect minors from exposure to harmful and addictive activities and/or products. For decades, the United States has recognized the inherent vulnerability of children and has instituted robust regulatory frameworks to shield them from the harms associated with addictive substances and behaviors, such as tobacco, firearms, alcohol, and gambling.

195. These protections include age restrictions on the use of addictive or dangerous products such as tobacco, firearms, alcohol, and gambling *and* restrictions on advertising directed towards young children concerning the same. This dual pronged approach of restricting access/use and advertising is rooted in societal consensus that

children, by virtue of their developmental stage, require heightened safeguards to ensure their health, well-being, and future potential.[32]

196. The egregiousness of Defendants' conduct in knowingly and intentionally instituting an age-gating system that was designed to be by-passed by children under the age of 13, implementing policies and procedures that made it extremely difficult for parents to delete their children's personal information from TikTok, failing to use readily available tools to monitor the presence of underage users, and failing to document its COPPA compliance as it was *required* to do by the terms of the 2019 Permanent Injunction is manifest.

197. Defendants took affirmative steps to avoid the specific obligations they undertook to protect children as part of the resolution of a previous government complaint. Their deliberate and unlawful actions have caused substantial harm to plaintiffs for which they deserve compensation and injunctive relief that will require Defendants to (finally) comply with their obligations under COPPA.

## III. Plaintiffs and The Members of The Classes have Suffered Economic Loss and Injury as a Result of Defendants' Unfair and Deceptive Conduct.

198. Courts have recognized that internet users have a property interest in their Personal Information and that Personal Information is, thus, an asset with economic value.[33] Through their unfair and deceptive conduct, Defendants misappropriated the Personal Information of Plaintiffs and the members of the Classes, destroyed the

---

[32] *See, e.g. Family Smoking Prevention and Tobacco Control Act*, 21 U.S.C. §§ 387a-387u (restricting manufacture, marketing, and distribution of tobacco products to protect the public health generally and to reduce tobacco use by minors); *Stop Tobacco Access to Kids Enforcement (STAKE) Act,* Cal. Bus. & Prof. Code § 22958 (West 2023) (restricting sale of tobacco products in California to people 21 years of age or older); *National Minimum Drinking Age Act of 1984*, 23 U.S.C. § 158 (1984) (establishing minimum age requirement of 21 years old to drink alcohol).

[33] *See CTC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860, 44 Cal.Rptr.3d 823 (2006) ("A person's identifying information is a valuable asset."); *accord Facebook Tracking*, 956 F.3d 589, 600 (9th Cir. 2020) (citing *Lepe* and holding that the plaintiffs had suffered economic injury after Facebook allegedly took their personal information in a similar process to that alleged here).

principal aspect of the Personal Information that provided its value to Plaintiffs and the members of the Classes, and diminished the value of the Personal Information.

199. As a result of Defendants' unfair and deceptive conduct, Plaintiffs and the members of the Classes have, thus, suffered economic loss and injury in one or more of the following respects:

a. Defendants unlawfully took possession of and commercially exploited the Personal Information of Plaintiffs and the members of the Classes without their permission and without compensation; and

b. Defendants' unlawful collection and exploitation of the Personal Information of Plaintiffs and the members of the Classes have destroyed the private quality of the Personal Information and have deprived Plaintiffs and the members of the Classes of the ability to determine whether or not to keep their Personal Information private and when or if to sell their Personal Information -- valuable aspects of their rights of ownership that were of paramount importance to Plaintiffs and the members of the Classes in this case – and, thus, diminished the value of the Personal Information.

**A. Personal information is an asset that has economic value.**

200. The information TikTok collects and uses had and continues to have massive economic value. This value is well understood in the e-commerce industry, and Personal Information is now viewed as a form of currency.

201. Research on the market for Personal Information dates back well before the Class Period,[34] and demonstrates a growing consensus that consumers' sensitive and valuable Personal Information would become the new frontier of financial exploit.

202. Professor Paul M. Schwartz noted in the Harvard Law Review:

---

[34] Kenneth Laudon, *Markets and Privac*y, Communications of the ACM (1996), https://doi.org/10.1145/234215.234476.

> Personal information is an important currency in the new millennium. The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from the trend. Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information.[35]

203. Likewise, in *The Wall Street Journal*, former fellow at the Open Society Institute (and current principal technologist at the ACLU) Christopher Soghoian noted:

> The dirty secret of the Web is that the "free" content and services that consumers enjoy come with a hidden price: their own private data. Many of the major online advertising companies are not interested in the data that we knowingly and willingly share. Instead, these parasitic firms covertly track our web-browsing activities, search behavior and geolocation information. Once collected, this mountain of data is analyzed to build digital dossiers on millions of consumers, in some cases identifying us by name, gender, age as well as the medical conditions and political issues we have researched online.

204. As the thirst has grown for Personal Information,[36] it has become apparent that the world's most valuable resource is no longer oil, but instead consumers' data in the form of their Personal Information.[37]

---

[35] Paul M. Schwartz, Property, *Privacy and Personal Data*, 117 HARV. L. REV. 2055, 2056–57 (2004).

[36] *Exploring the Economic of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD Digital Economy Paper No. 220 at 7 (Apr. 2, 2013), http://dx.doi.org/10.1787/5k486qtxldmq-en; *Supporting Investment in Knowledge Capital, Growth and Innovation*, OECD, at 319 (Oct. 13, 2013), https://doi.org/10.1787/9789264193307-en, Pauline Glickman and Nicolas Glady, *What's the Value of Your Data?* TechChrunch (Oct. 13, 2015) https://techcrunch.com/2015/10/13/whats-the-value-of-your-data/; Paul Lewis and Paul Hilder, *Former Cambridge Analytica exec says she wants lies to stop*, The Guardian (March 23, 2018) https://www.theguardian.com/uk-news/2018/mar/23/former-cambridge-analytica-executive-brittany-kaiser-wants-to-stop-lies; Shoshanna Zuboff, *The Age of Surveillance Capitalism 166* (2019).

[37] *The world's most valuable resource is no longer oil, but data*, The Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longer-oil-but-data.

205. The cash value of the Personal Information unlawfully collected by TikTok during the Class Period can be quantified. For example, in a study authored by Tim Morey, researchers studied the value that 180 internet users placed on keeping personal data secure.[38] Contact information of the sort that TikTok requires was valued by the study participants at approximately $4.20 per year. Demographic information was valued at approximately $3.00 per year. However, web browsing histories were valued at a much higher rate: $52.00 per year. The chart below summarizes the findings:




206. Similarly, the study *Your Browsing Behavior for a Big Mac: Economics of Personal Information Online* by Juan Pablo Carrascal and colleagues employed a detailed methodology to understand how users their Personal Information in exchange for internet-based services.[39] Participants installed a browser plugin that logged their web browsing activities, including the URLs visited and the time of access.[40] The plugin

[38] Tim Morey, *What's Your Personal Data Worth?*, Design Mind (Jan. 18, 2011), https://web.archive.org/web/20131206000037/http://designmind.frogdesign.com/blog/what039s-your-personal-data-worth.html.

[39] Juan Pablo Carrascal et al., *Your Browsing Behavior for a Big Mac: Economics of Personal Information Online*, arXiv preprint arXiv:1112.6098 (2011), https://arxiv.org/abs/1112.6098.

[40] *Id.*

also categorized the websites into eight predefined categories: Email, Entertainment, Finance, News, Search, Shopping, Social, and Health and asked participants questions designed to gather information about their perceptions of privacy, their knowledge of how their Personal Information might be monetized, and their valuation of specific pieces of PI as they visited certain websites.[41] To calculate the value users placed on their Personal Information, Carrascal and colleagues employed a reverse second-price auction mechanism in which participants bid on the minimum amount of money they would accept to sell specific pieces of their Personal Information in exchange for internet-based services they were using.[42]

207. The results of Carrascal's study were the following Personal Information valuations:

a. Offline information (age address, economic stats): €25
b. Browsing History: €7
c. Interactions on social networks: €12
d. Search History: €2
e. Shopping Activity: €5

208. What these studies, and others[43] show is that individuals place an economic value on their Personal Information and are willing to engage in economic transactions in which grant access to their Personal Information in exchange for internet-based services. Defendants' unauthorized collection of Plaintiffs and Class members Personal Information deprived them of this opportunity.

---

[41] *Id.*

[42] *Id.*

[43] Jacopo Staiano et al., *Money Walks: A Human-Centric Study on the Economics of Personal Mobile Data*, arXiv preprint arXiv:1407.0566 (2014), https://arxiv.org/abs/1407.0566 (finding that location information is the most valued type of personal data, with a median value of approximately €25, and that participants showed significant sensitivity towards monetizing their personal information collected via mobile phones).

209. On the open market, Personal Information is often mined, compiled, and resold by data brokers. Further, there is a market for consumers to monetize Personal Information and the behavioral preferences that Defendants have usurped. Published analyses and studies have placed a value in excess of $200 on an individual's Personal Information.[44]

210. A child's Personal Information has equivalent (or potentially greater) value than that of an adult. It is well-established that children are more susceptible to being influenced by advertisements and often cannot tell the difference between content and advertisements in child-directed videos. And Defendants may be able to utilize children's Personal Information to show them behavior-targeted advertising for the duration of their lives.

211. Personal Information also has a value based on consumers' privacy interests. In a recent study by the Pew Research Center, 93% of Americans said it was "important" for them to be "in control of who can get information" about them. Seventy-four percent said it was "very important."[45] Eighty-seven percent of Americans said it was "important" for them not to have someone watch or listen to them without their permission.[46] Sixty-seven percent said it was "very important."[47] And 90% of

---

[44] Jamie Condliffe, *Can you Put a Price on Your Personal Data*, N.Y. Times (June 27, 2018), https://www.nytimes.com/2019/06/28/technology/data-price-big-tech.html.

[45] *Americans' Attitudes About Privacy, Security and Surveillance*, Pew Research Center (May 20, 2015), https://www.pewresearch.org/internet/2015/05/20/americans-attitudes-about-privacy-security-and-surveillance/#:~:text=93%25%20of%20adults%20say%20that,it%20is%20%E2%80%9Csomewhat%20important.%E2%80%9D.

[46] *Id.*

[47] *Id.*

Americans said it was "important" that they be able to "control[] what information is collected about [them]." [48] Sixty-five percent said it was very important.[49]

212. Likewise, in a 2011 Harris Poll study, 76% of Americans agreed that "online companies, such as Google or Facebook, control too much of our personal information and know too much about our browsing habits."[50]

213. During the Class Period, a number of platforms have appeared that allow consumers to directly monetize their own data and prevent tech companies from targeting them absent their express consent:

a. Brave's web browser, for example, will pay users to watch online targeted ads, while blocking out everything else.[51]

b. Loginhood allows individuals to earn rewards for their data and offers website owners privacy tools that allow site visitors to manage their data sharing preferences.[52]

c. Andrew Yang's "Data Dividend Project" aims to help consumers, "[t]ake control of your personal data. If companies are profiting from it, you should get paid for it."[53]

---

[48] *Id.*

[49] *Id.*

[50] Harris Interactive, *Majorities Think Some Online Companies Are Too Powerful*, PR Newswire (May 17, 2011), https://www.prnewswire.com/news-releases/majorities-think-some-online-companies-are-too-powerful-121986453.html.

[51] Brendan Hesse, *Get Paid to Watch Ads in the Brave Web Browser*, Lifehacker (April 26, 2019), https://lifehacker.com/get-paid-to-watch-ads-in-the-brave-web-browser-1834332279#:~:text=The%20model%20is%20entirely%20opt,and%20advertiser%20split%20the%20rest ("The model is entirely opt-in, meaning that ads will be disable by default. The ads you view will be converted into Brave's cryptocurrency, Basic Attention Tokens (BAT), paid out to your Brave wallet monthly").

[52] *About,* Loginhood, https://www.f6s.com/company/loginhood#about (accessed Dec. 16, 2024).

[53] *How Does It Work*, Data Dividend, https://www.datadividendproject.com/ ("Get Your Data Dividend…We'll send you $$$ as we negotiate with companies to compensate you for using your personal data."). (Accessed Dec. 12, 2024).

d. Reklaim (formerly known as "Killi") is a new data exchange platform that allows consumers to own and earn from their data.[54]

e. Similarly, BIGtoken "is a platform to own and earn from your data. You can use the BIGtoken application to manage your digital data and identity and earn rewards when your data is purchased."[55]

f. The Nielsen Company, famous for tracking the behavior of television viewers' habits, has extended its reach to computers and mobile devices through the Nielsen Computer and Mobile Panel. By installing the application on a consumer's computer, phone, tablet, e-reader, or other mobile device, Nielsen tracks the user's activity, enters that user into sweepstakes with monetary benefits, and allows the user to earn points worth up to $50 per month.[56]

214. Technology companies recognize the monetary value of users' Personal Information, insofar as they encourage users to install applications explicitly for the purpose of selling that information to technology companies in exchange for monetary benefits.[57]

---

[54] Reklaim Yours, https://www.reklaimyours.com/ (Accessed Dec. 12, 2024).

[55] *FAQ*, BIGtoken, https://web.archive.org/web/20201230225507/https://bigtoken.com/faq (Accessed Dec. 16, 2024) ("Third-party applications and sites access BIGtoken to learn more about their consumers and earn revenue from data sales made through their platforms. Our BIG promise: all data acquisition is secure and transparent, with consumers made fully aware of how their data is used and who has access to it.").

[56] Kevin Mercandante, *Ten Apps for Selling Your Data for Cash*, Best Wallet Hacks (Nov. 18, 2023), https://wallethacks.com/apps-for-selling-your-data/.

[57] Kari Paul, *Google launches app that will pay users for their data*, The Guardian (June 11, 2019), https://www.theguardian.com/technology/2019/jun/11/facebook-user-data-app-privacy- studay; Saheli Roy Choudhury and Ryan Browne, *Facebook pays teens to install an app that could collect all kinds of data,* CNBC (Jan. 30, 2019), https://www.cnbc.com/2019/01/29/facebook-paying-users-to-install-app-to-collect-data-techcrunch.html; Jay Peters, *Facebook will now pay you for your voice recordings,* The Verge (Feb. 20, 2020), https://www.theverge.com/2020/2/20/21145584/facebook-pay-record-voice-speech-recognition-viewpoints-pronunciations-app.

215. The California Consumer Protection Act ("CCPA") recognizes that consumers' personal data is a property right. Not only does the CCPA prohibit covered businesses from discriminating against consumers that opt-out of data collection, the CCPA also expressly provides that: "[a] business may offer financial incentives, including payments to consumers as compensation, for the collection of personal information, the sale of personal information, or the deletion of personal information." Cal. Civ. Code § 1798.125(b)(1). The CCPA provides that, "[a] business shall not use financial incentive practices that are unjust, unreasonable, coercive, or usurious in nature." Cal. Civ. Code § 1798.125(b)(4).

### B. Defendants have taken possession of and commercially exploited the personal information of plaintiffs and class members without permission and without compensation.

216. Defendants have unlawfully taken possession of and commercially exploited the Personal Information of Plaintiffs and Class members without their permission and without compensating them for the use of their assets.

217. Defendants' illegal and improper collection, use and retention of children's Personal Information also has given them a significant "first mover" advantage that cannot be undone. TikTok operates one of the most popular apps in the world, and as a result of its unlawful conduct, TikTok's algorithms now incorporate ill-gotten data from millions of children's account. The deep insights gleaned from these viewing sessions will enable TikTok to use the Personal Information of children for potentially the duration of their lives, and will solidify TikTok's dominance in the market for child-related content.

218. Defendants' exploitation of Plaintiffs' and Class members' Personal Information, without compensation, has caused Plaintiffs and the members of the Classes to suffer economic loss and injury.

219. Defendants' exploitation of Plaintiffs' Class members' Personal Information, without compensation, has caused Plaintiffs Class members to suffer ascertainable losses.

**C. The unlawful collection and exploitation of Plaintiffs' and Class members' Personal Information has deprived them of the value of protecting that information from being sold and exploited in the digital information marketplace, and has diminished its value, causing economic loss and injury.**

220. Defendants' unlawful collection and commercial exploitation of the Personal Information of Plaintiffs and Class members has deprived Plaintiffs and Class members of the right and privilege of ownership that was most important to them – the right to maintain the privacy of their Personal Information and NOT to sell it. Defendants' conduct has thus destroyed the fundamental quality of the asset and diminished its value to Plaintiffs and the Class members. And, for those Plaintiffs and Class members who would choose to sell their Personal Information in what is a well-established and readily available marketplace, Defendants' conduct has diminished the amount a knowledgeable buyer would be willing to pay for the Information.

221. Once a child's Personal Information has been collected and exploited by Defendants, it is no longer possible for the child or the child's parents to maintain the confidentiality of the data – the aspect of the data that provides the major component of its value to the children and their parents and that, correspondingly, determines the price a seller would be willing to accept – and that a buyer would need to offer – for the data. Researchers have explored the economic implications and market dynamics under such circumstances and have determined that Defendants' conduct thus diminishes the value of the child's Personal Information since a knowledgeable buyer of the data would understand that the data has been deprived of its primary value to the user and would

decrease the amount it would be willing to pay – and the amount the user would be willing to accept – for the data.[58]

222. The value of the Personal Information of Plaintiffs' and the members of the Classes has also been diminished by Defendants' wrongful conduct because, as a consequence of gathering the Personal Information of a massive number of child TikTok users, TikTok has been able to develop large subsets of TikTok users with correlated interests – *i.e.*, users who share interests in similar (or opposite) areas and who can be expected to respond similarly to behavioral advertising or to targeted programming.[59] Researchers have also studied the market dynamics in such a scenario for additional members of such subsets whose preferences correlate with other users in a given subset.[60] Because TikTok already possesses information from other members of the subset sufficient to identify user preferences, TikTok has less need for the Personal Information of additional subset members and the value of their Personal Information is, thus, decreased.[61]

223. In both of the above scenarios, the amount of compensation required to cause the user to expose (*i.e.*, sell) the data – and the amount of a buyer would need to

---

[58] Daron Acemoglu, Ali Makhdoum, Azarakhsh Malekian, and Asu Ozdaglar, Too Much Data: Prices and Inefficiencies in Data Markets, American Economic Journal: Microeconomics, 14(4), 218–256 (2022), https://www.aeaweb.org/articles?id=10.1257/mic.20200200 (accessed 7/14/24).

[59] *See, e.g.*, Mike McNeeley, *What is Google's Privacy Sandbox and How Can You Get Started?, Index Exchange*, https://www.indexexchange.com/2023/12/12/google-privacy-sandbox-get-started/ (accessed Dec. 16, 2024); Google Developers: Privacy Sandbox, *Privacy Sandbox relevance and measurement FAQs*, https://developers.google.com/privacy-sandbox/overview/relevance-and-measurement-faqs (accessed Dec. 16, 2024); *Privacy Sandbox: Private Advertising*, https://developers.google.com/privacy-sandbox/relevance/protected-audience (accessed Dec. 16, 2024).

[60] *Id*.

[61] Acemoglu et. al, *supra* note 58. See also, Jay Pil Choi, Doh-Shin Jeon and Byung-Cheol Kim, *Privacy and personal data collection with information externalities*, Journal of Public Economics, 173, 113–124 (2019).

offer — is diminished. And, because the user's data is now available to either TikTok or a competitor at a reduced price, the value of the correlated data of all of the other members of the subset is, likewise, diminished.

224. For children (or their parents) for whom the sole value of the Personal Information derives from maintaining user privacy, the economic value of the Personal Information has been completely destroyed by Defendants' collection and use of it.

225. Defendants' unlawful exploitation of the Personal Information of Plaintiffs and Class members has, thus, diminished the value of their Personal Information, causing Plaintiffs and Class members to suffer economic loss and injury for which Plaintiffs and Class members can never be made whole.

226. Defendants' unlawful exploitation of the Personal Information of Plaintiffs and the members of the Classes has, thus, diminished the value of their Personal Information, causing Plaintiffs and the members of the Classes to suffer ascertainable economic loss.

## IV. Equitable Relief is Necessary to Protect the Rights of Plaintiffs and the Members of the Classes and to Prevent Defendants from Profiting from their Wrongful Conduct.

227. Throughout the Class Period TikTok collected, used and stored COPPA-protected Personal Information from Plaintiffs and Class members without obtaining the verified parental consent required by COPPA for such collection and use.

228. TikTok's refusal to abide by the terms of the 2019 Permanent Injunction, as demonstrated by the DOJ's August 2, 2024 Complaint, means that TikTok continues to profit off its unlawful business practices at the expense of the privacy of children. Among other things detailed in the DOJ Complaint, TikTok has failed to implement adequate age gates, to identify and remove underage users of non-Kids Mode accounts, to delete data, even upon parental request, has taken steps to make deletion requests onerous, and has continued to collect data from purportedly deleted accounts.

229. Because of TikTok's continued unlawful conduct in collecting and storing the Personal Information of children under the age of 13, Plaintiffs and Class members are not only vulnerable to TikTok's fresh violations, but their previously collected data remains vulnerable to misuse by Defendants. These continuing harms have no adequate remedy at law.

230. Plaintiffs and Class members are likely to use TikTok in the future and seek protection from Defendants continuing violations of COPPA protections.

231. Furthermore, the 2019 Permanent Injunction does not require TikTok to forfeit the profits it realized from its wrongful exploitation of Plaintiffs' and Class members Personal Information, thus allowing TikTok to retain the enormous profits it obtained through its illegal use of Plaintiffs' and Class members' Personal Information. No remedy at law available to Plaintiffs and Class members reaches these profits or is available to prevent TikTok from retaining such profits. The law requires imposition of equitable orders of non-restitutionary disgorgement to prevent TikTok from profiting from their misconduct even without any showing of corresponding economic harm suffered by Plaintiffs and Class members from Defendants' receipt of such profits.

232. Money damages will not protect Plaintiffs and the Class members from the non-economic harms discussed herein posed by misuse of their Personal Information collected in violation of COPPA or TikTok's impermissible profit from its misconduct, and Plaintiffs and Class members, thus, have no adequate remedy at law. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery, Plaintiffs and Class members assert their claims for the equitable relief set forth herein as an alternative remedy pending a final determination of the availability of a remedy at law.

233. For these reasons, Plaintiffs and Class members seek entry of a permanent injunction (a) requiring TikTok to destroy all Personal Information of Plaintiffs and Class members in its possession that was collected in violation of COPPA; (b) requiring TikTok to notify each Plaintiff and Class member that his or her Personal Information

was collected and has been destroyed; (c) restraining TikTok from directly or indirectly using or benefitting from the Personal Information of Plaintiffs and Class members that it wrongly collected, including precluding the use of any profile of any Plaintiff or Class member developed in whole or in part based on such information in serving targeted or behavioral advertising; and (d) requiring TikTok's relinquishment of all ill-gotten gains.

## ALLEGATIONS RELATING TO PLAINTIFFS

### A. Plaintiff Jody Villanueva, on behalf of her child, J.C., a minor

234. This action is brought on J.C.'s behalf by Plaintiff Jody Villanueva.

235. During the Class Period, J.C. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok Platform.

236. J.C. created a TikTok account when J.C. was approximately 8 years old.

237. During the Class Period, Defendants collected J.C.'s Personal Information for the purpose of tracking J.C.'s activity and utilizing targeted advertisements.

238. Defendants never obtained consent from nor notified J.C.'s parent and legal guardian, Jody Villanueva, at any point prior to or during its collection and use of J.C.'s Personal Information.

239. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

240. J.C. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

### B. Plaintiff Alexis Douglas, on behalf of her child, A.J., a minor

241. This action is brought on A.J.'s behalf by Plaintiff Alexis Douglas.

242. During the Class Period, A.J. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

243. A.J. created a TikTok account when A.J. was approximately 10 years old.

244. During the Class Period, Defendants collected A.J.'s Personal Information for the purpose of tracking A.J.'s activity and utilizing targeted advertisements.

245. Defendants never obtained consent from nor notified A.J.'s parent and legal guardian, Alexis Douglas, at any point prior to or during its collection and use of A.J.'s Personal Information.

246. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

247. A.J. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

**C. Plaintiff Marcelo Muto, on behalf of his child, B.M., a minor.**

248. This action is brought on B.M.'s behalf by Plaintiff Marcelo Muto.

249. During the Class Period, B.M. created and used a Musical.ly account (while under the age of 13) that was later transferred to a TikTok account. B.M. viewed content on the TikTok Platform.

250. B.M. created a TikTok account when B.M. was no older than 12 years old.

251. During the Class Period, Defendants collected B.M.'s Personal Information for the purpose of tracking B.M.'s activity and utilizing targeted advertisements.

252. Defendants never obtained consent from nor notified B.M.'s parent and legal guardian, Marcelo Muto, at any point prior to or during its collection and use of B.M.'s Personal Information.

253. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

254. B.M. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

**D. Plaintiff Heather Bressette, on behalf of her child, L.F., a minor.**

255. This action is brought on L.F.'s behalf by Plaintiff Heather Bressette.

256. During the Class Period, L.F. created and used a TikTok Account (while under the age of 13) and viewed content on the TikTok Platform.

257. L.F. created a TikTok account when L.F. was approximately 11 or 12 years old.

258. During the Class Period, Defendants collected L.F.'s Personal Information for the purpose of tracking L.F.'s activity and utilizing targeted advertisements.

259. Defendants never obtained consent from nor notified L.F.'s parent and legal guardian, Heather Bressette, at any point prior to or during its collection and use of L.F.'s Personal Information.

260. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

261. L.F. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

**E. Plaintiff Darryl Maultsby, on behalf of his child, D.M., a minor.**

262. This action is brought on D.M.'s behalf by Plaintiff Darryl Maultsby.

263. During the Class Period, D.M. created and used a TikTok Account (while under the age of 13) and viewed content on the TikTok Platform.

264. D.M. created a TikTok account when D.M. was under 11 years old.

265. During the Class Period, Defendants collected D.M.'s Personal Information for the purpose of tracking D.M.'s activity and utilizing targeted advertisements.

266. Defendants never obtained consent from nor notified D.M.'s parent and legal guardian, Darryl Maultsby, at any point prior to or during its collection and use of D.M.'s Personal Information.

267. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

268. D.M. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

**F. Plaintiff Ryan Hoyt, on behalf of his children, D.R.H., D.W.H., and R.W., minors.**

269. This action is brought on D.R.H., D.W.H., and R.W.'s behalf by Ryan Hoyt.

270. During the Class Period, D.R.H., D.W.H., and R.W. each created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

271. D.R.H. created a TikTok account when D.R.H. was approximately 10 years old.

272. D.W.H. created a TikTok account when D.W.H. was approximately 11 years old.

273. R.W. created a TikTok account when R.W. was approximately 6 years old.

274. During the Class Period, Defendants collected D.R.H., D.W.H., and R.W.'s Personal Information for the purpose of tracking D.R.H., D.W.H., and R.W.'s activity and utilizing targeted advertisements.

275. Defendants never obtained consent from nor notified D.R.H., D.W.H., and R.W.'s parent and legal guardian, Ryan Hoyt, at any point prior to or during its collection and use of D.R.H., D.W.H., and R.W.'s personal information.

276. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

277. D.R.H., D.W.H., and R.W. are likely to use TikTok in the future and seek protection from Defendants continuing violations of COPPA protections.

**G. Plaintiff Valerie Gates, on behalf of her child, M.G., a minor.**

278. This action is brought on M.G.'s behalf by Plaintiff Valerie Gates.

279. During the Class Period, M.G. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

280. M.G. created a TikTok account when M.G. was approximately 11 years old.

281. During the Class Period, Defendants collected M.G.'s Personal Information for the purpose of tracking M.G.'s activity and utilizing targeted advertisements.

282. Defendants never obtained consent from nor notified M.G.'s parent and legal guardian, Valerie Gates, at any point prior to or during its collection and use of M.G.'s personal information.

283. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

284. M.G. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

**H. Plaintiff Lamartine Pierre, Jr., on behalf of his child, C.P., a minor.**

285. This action is brought on C.P.'s behalf by Plaintiff Lamartine Pierre, Jr.

286. During the Class Period, C.P. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok Platform.

287. C.P. created a TikTok account when C.P. was approximately 12 years old.

288. During the Class Period, Defendants collected C.P.'s Personal Information for the purpose of tracking C.P.'s activity and utilizing targeted advertisements.

289. Defendants never obtained consent from nor notified C.P.'s parent and legal guardian, Lamartine Pierre, Jr., at any point prior to or during its collection and use of C.P.'s Personal Information.

290. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

291. C.P. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

**I. Plaintiff Angela Faucett, on Behalf of her child, K.F., a minor.**

292. This action is brought on K.F.'s behalf by Plaintiff Angela Faucett.

293. During the Class Period, K.F. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok Platform.

294. K.F. created a TikTok account when K.F. was approximately 9 or 10 years old.

295. During the Class Period, Defendants collected K.F.'s Personal Information for the purpose of tracking K.F.'s activity and utilizing targeted advertisements.

296. Defendants never obtained consent from nor notified K.F.'s parent and legal guardian, Angela Faucett, at any point prior to or during its collection and use of K.F.'s Personal Information.

297. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

298. K.F. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

**J. Plaintiff Kayla Jaramillo, on behalf of her child, J.W., a minor**

299. This action is brought on J.W.'s behalf by Plaintiff Kayla Jaramillo.

300. During the Class Period, J.W. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

301. J.W. created a TikTok account when J.W. was approximately 10 years old.

302. During the Class Period, Defendants collected J.W.'s Personal Information for the purpose of tracking J.W.'s activity and utilizing targeted advertisements.

303. Defendants never obtained consent from nor notified J.W.'s parent and legal guardian, Kayla Jaramillo, at any point prior to or during its collection and use of J.W.'s Personal Information.

304. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting Personal Information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

305. J.W. is likely to use TikTok in the future and seeks protection from Defendants continuing violations of COPPA protections.

## TOLLING, ESTOPPEL AND RELATION BACK

### I. Discovery Rule Tolling

306. Plaintiffs and the Classes had no way of knowing about Defendants' conduct with respect to the collection and impermissible and unauthorized use of, and profit from, the Personal Information of Plaintiffs and the members of the Classes.

307. Neither Plaintiffs nor any other members of the Classes, through the exercise of reasonable diligence, could have discovered the conduct alleged herein as Defendants purported to be abiding by the terms of a Permanent Injunction that prohibited the subject conduct. Further, Plaintiffs and the members of the Classes did not discover and did not know of facts that would have caused a reasonable person to suspect, that Defendants were engaged in the conduct alleged herein.

308. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted by Plaintiffs and the Classes.

**II. Fraudulent Concealment Tolling**

309. By failing to provide notice of the collection and use of the Personal Information and obtain verifiable consent, in violation of COPPA and societal norms and conventions, Defendants concealed their conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Classes.

310. Upon information and belief, Defendants intended by their acts to conceal the facts and claims from Plaintiffs and members of the Classes. Plaintiffs and the members of the Classes were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes should be tolled.

**III. Estoppel**

311. Despite their duties and obligations under COPPA and the 2019 Permanent Injunction, Defendants failed to provide notice of the collection and use of the Personal Information and obtain verifiable consent in breach and violation thereof.

312. Defendants therefore are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

313. Plaintiffs re-allege and incorporate by reference all of the above allegations.

314. The Class Period is defined as March 28, 2019 to the present.

315. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

**I. National Class**

316. All Plaintiffs, through their respective parents and guardians, seek class certification for the common law claim of intrusion upon seclusion (under California

law), as well as a claim for unjust enrichment (under California law) on behalf of a National Class defined as follows:

> All United States residents (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

## II. The California Class

317. Plaintiffs B.M., A.J., and J.C., through their respective parents and guardians, seek class certification of a claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., a claim for violation of the State of California Constitution Right to Privacy, for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a California class defined as follows:

> All persons residing in the State of California (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

## III. The Connecticut Class

318. Plaintiff L.F., through their parent and guardian Heather Bressette, seek class certification for the violation of Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110b(a), *et seq*., common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a Connecticut class defined as follows:

> All persons residing in the State of Connecticut (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

## IV. The Florida Class

319. Plaintiff D.M., through their parent and guardian Darryl Maultsby, seek class certification for the violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq*., and unjust enrichment on behalf of a Florida class defined as follows:

> All persons residing in the State of Florida (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

**V. The Michigan Class**

320. Plaintiffs D.R.H., D.W.H., and R.W., through their parent and guardian Ryan Hoyt, seek class certification for the violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*., common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a Michigan class defined as follows:

> All persons residing in the State of Michigan who were 13 or younger when they used TikTok, and from whom Defendants collected and/or used Personal Information without first notifying and obtaining verified parental consent during the Class Period.

**V. The New York Class**

321. Plaintiffs C.P. and M.G. through their parents and guardians, seek class certification for the violation of the New York Civil Rights Law §§ 50-51, the New York Consumer Protection Law, N.Y. Gen. Bus. Law § 349, *et seq*., as well as a claim for unjust enrichment on behalf of a New York class defined as follows:

> All persons residing in the State of New York (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

## VI. The Washington Class

322. Plaintiffs K.F. and J.W., through their parents and guardians, seek class certification for the violation of the Washington Consumer Protection Act, Wash. Rev. Code. § 19.86.010, *et seq*, common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a Washington class defined as follows:

> All persons residing in the State of Washington (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

323. Plaintiffs reserve the right to modify or refine the Class definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

324. Excluded from the Classes are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

325. **Ascertainability**. The proposed Classes are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class. Further, the Classes can be identified through records maintained by Defendants.

326. **Numerosity (Rule 23(a)(1))**. The Classes are so numerous that joinder of individual members herein is impracticable. The exact number of members of the

Classes, as herein identified and described, is not known, but all public estimates confirm that TikTok has collected information on millions of children.

327. **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

a. Whether Defendants collected the Personal Information of children;

b. Whether Defendants had knowledge they were collecting the Personal Information of children;

c. Whether Defendants notified parents as required by COPPA prior to collecting the Personal Information of children;

d. Whether Defendants obtained verifiable parental consent as required by COPPA prior to collecting the Personal Information of children;

e. Whether the collection of Personal Information of children is highly offensive to a reasonable person;

f. Whether the collection of Personal Information of children without parental consent is sufficiently serious and unwarranted as to constitute an egregious breach of social norms;

g. Whether Defendants' conduct constituted an invasion of privacy based on common law protection against intrusion upon seclusion under the laws of California, Connecticut, Washington, Michigan, and Florida.

h. Whether Defendants' conduct constituted a violation of the California Constitution right to privacy;

i. Whether Defendants' conduct constituted a violation of Section 51 of the New York Civil Rights Law;

j. Whether Defendants' conduct constituted a violation of New York General Business Law Section 349;

k. Whether Defendants' conduct was unfair;

l. Whether Defendants' conduct was unlawful;

m. Whether Defendants' conduct violated the consumer protection acts of California, Connecticut, Washington, Michigan, New York and Florida;

n. Whether Plaintiffs and the Classes are entitled to monetary damages and the measure of those damages;

o. Whether the California Class is entitled to restitution and disgorgement;

p. Whether Defendants were unjustly enriched by their conduct under the laws of California, Connecticut, Washington, Michigan, New York and Florida;

q. Whether Plaintiffs are entitled to non-restitutionary disgorgement based on Defendants' unjust enrichment;

r. Whether Defendants fraudulently concealed their conduct; and

s. Whether Plaintiffs and the Classes are entitled to injunctive or other equitable relief.

328. **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Classes. Plaintiffs and members of the Classes (as applicable) suffered an invasion of privacy and injuries as a result of Defendants' wrongful conduct that is uniform across the Classes.

329. **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Classes.

330. **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The prosecution of separate actions by individual members of the Classes

would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

331. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

332. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief, if any, that may be awarded by the Court is appropriate as to the Classes as a whole.

Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## I. CALIFORNIA CLAIMS

### Claim 1

### CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY, Cal. Const. Art. 1, § 1.

**(Against All Defendants by Plaintiff Villanueva on behalf of J.C., Plaintiff Douglas on behalf of A.J., and Plaintiff Muto on behalf of B.M., and the California Class)**

333. Plaintiff Villanueva on behalf of J.C., Plaintiff Douglas on behalf of A.J., and Plaintiff Muto on behalf of B.M. ("California Plaintiffs"), and members of the California Class re-allege the foregoing allegations as if fully set forth herein.

334. The California constitution's right to privacy confers a privacy right of action to California Plaintiffs and California Class Members against private entities, such as Defendants.

335. Article, 1, section 1 of the California Constitution states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, *and privacy*."

336. The California Plaintiffs and members of the California Class possess a legally protected interest in their Personal Information as defined by COPPA, which includes first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

337. The California Plaintiffs and members of the California Class maintained a reasonable expectation of privacy that when using TikTok the Defendants would not collect and/or use their Personal Information.

338. The California Plaintiffs and members of the California Class's reasonable expectation of privacy was supported by COPPA's prohibition on TikTok collecting and/or using Personal Information from children under 13 unless TikTok directly notified their parents and obtained verifiable parental consent.

339. Defendants intentionally invaded the California Plaintiffs and California Class members' privacy by improperly collecting and using the California Plaintiffs' and

California Class members' Personal Information, without obtaining consent from the California Plaintiffs and California Class members.

340. Defendants intentionally invaded the California Plaintiffs and California Class members' privacy by improperly collecting and using the California Plaintiffs' and California Class members' Personal Information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

341. Defendants' invasion of the privacy of the California Plaintiffs and California Class members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on TikTok by the FTC, as well as the reforms required by the 2019 Permanent Injunction entered into by TikTok, which it has now been accused of violating.

342. Defendants' invasion of the privacy of the California Plaintiffs and California Class members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because TikTok uses the collected Personal Information for an improper purpose, including by targeting California Plaintiffs and California Class members with behavioral advertising.

343. None of the California Plaintiffs, members of the California Class, nor their parents and/or guardians consented to Defendants' collection and use of their Personal Information.

344. The California Plaintiffs and members of the California Class suffered actual and concrete injury as a result of Defendants' invasion of their privacy.

345. The California Plaintiffs and members of the California Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy,

restitution, disgorgement of profits made by Defendants as a result of their invasion of the California Plaintiffs and Class members' privacy, punitive damages, and any other relief that the Court may deem just and proper.

**Claim 2**

**CALIFORNIA INTRUSION UPON SECLUSION**

**(Against All Defendants by all Plaintiffs and the National Class, and by Plaintiff Villanueva on behalf of J.C., Plaintiff Douglas on behalf of A.J., and Plaintiff Muto on behalf of B.M., and the California Class)**

346. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class re-allege the foregoing allegations as if fully set forth herein.

347. Under California common law, the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class may assert a claim for intrusion upon seclusion.

348. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class possess a legally protected interest in their Personal Information as defined by COPPA, which includes first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

349. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class maintained a reasonable expectation that when using TikTok, the Defendants would not collect and/or use their Personal Information.

350. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class's reasonable expectation of privacy was supported by

COPPA's prohibition on TikTok collecting and/or using Personal Information from children under 13 unless TikTok directly notified their parents and obtained verifiable parental consent.

351. Defendants intentionally intruded upon the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class's seclusion by improperly collecting and using the California Plaintiffs' and California Class members' Personal Information, without obtaining consent from the California Plaintiffs and California Class members.

352. Defendants intentionally intruded upon the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class's seclusion by improperly collecting and using the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class's Personal Information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

353. Defendants' intrusion upon the seclusion of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on TikTok by the FTC, as well as the reforms required by the 2019 Permanent Injunction entered into by TikTok, which it has now been accused of violating.

354. Defendants' intrusion upon the seclusion of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because TikTok uses the collected Personal Information for an

improper purpose, including by targeting the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class with behavioral advertising.

355. None of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class, nor their parents and/or guardians consented to Defendants' collection and use of their Personal Information.

356. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class suffered actual and concrete injury as a result of Defendants' intrusion upon their seclusion.

357. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, restitution, disgorgement of profits made by Defendants as a result of their invasion of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class' privacy, punitive damages, and any other relief that the Court may deem just and proper.

## Claim 3

## CALIFORNIA UNFAIR COMPETITION LAW (UCL), Cal. Bus. & Prof. Code § 17200, *et seq*.

**(Against All Defendants by Plaintiff Villanueva on behalf of J.C., Plaintiff Douglas on behalf of A.J., and Plaintiff Muto on behalf of B.M., and the California Class)**

358. The California Plaintiffs and members of the California Class incorporate the foregoing allegations as if fully set forth herein.

359. The California Plaintiffs and members of the California Class are or were residents of California.

360. At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in California in that they each engaged in the advertising, offering for sale,

sale, and distribution of property or any other articles, commodities, or things of value in California.

361. Defendants each engaged in consumer-oriented acts through the offering, promotion, and/or distribution of the TikTok, which significantly impacted the public because TikTok is used nationwide, including in California, and there are millions of users, including the California Plaintiffs and members of the California Class.

362. Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL") broadly prohibits "unfair competition," which the UCL defines as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]"

363. California courts have noted that "the differences [between the UCL and FTC Act] are not of a degree to impair comparison" and that unfair acts respectively proscribed in the two statutes "appear practically synonymous." *People ex rel. Mosk v. Nat'l Rsch. Co. of Cal.*, 201 Cal. App. 2d 765, 773, 20 Cal. Rptr. 516, 521 (Ct. App. 1962). As a result, California courts deem "decisions of the federal court [construing the FTC Act] are more than ordinarily persuasive." *Id.*

364. Defendants violated Cal. Bus. & Prof. Code § 17200, *et seq*. by engaging in the "unlawful," "unfair," and "deceptive" business acts and practices proscribed by Cal. Bus. & Prof. Code § 17200, *et seq*. outlined herein.

365. Defendants engaged in "unlawful" business acts and/or practices by violating COPPA and the COPPA Rule. Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of the California Plaintiffs and members of the California Class without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice under the UCL. The harm these practices caused to the California Plaintiffs and California Class members outweigh their utility, if any.

366. Defendants engaged in "deceptive" advertising and statements by making material misrepresentations and omissions regarding the privacy violations and unlawful conduct and practices outlined herein that constituted deceptive trade acts or practices in violation of the UCL.

367. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 by representing to children who identified themselves as being under 13 that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

368. Defendants' representation is false and misleading. TikTok Kids Mode is not designed to be legally appropriate for children under 13. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by collecting and using their Personal Information without providing direct notice to their parents or obtaining parental consent.

369. Defendants' marketing of Kids Mode was deceptive — the inherent characteristics, content, and features of TikTok Kids Mode, including the representation that it is an "experience" designed for kids, along with the restrictions on uploading videos, posting information, or messaging other users, were plainly intended for and meant to attract children under 13, through which Defendants intended to and did collect Personal Information to serve these children behavioral advertising for substantial commercial gain.

370. As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their own collection of the Personal Information from the California Plaintiffs and California Class members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

371. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so

that TikTok could collect the Personal Information of those children for substantial commercial gain.

372. TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the Personal Information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the Personal Information of children.

373. Defendants are considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

374. In particular, Defendants systematically collected and used Personal Information from minor children in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c. Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

375. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Cal. Bus. & Prof. Code § 17200, *et seq*.[62]

376. Accordingly, Defendants engaged in unfair, unlawful, and deceptive trade acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

377. Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, the California Plaintiffs and members of the California Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

[62] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

378. Defendants willfully engaged in the unfair, unlawful, and deceptive acts described herein and knew or recklessly disregarded the fact that they violated Cal. Bus. & Prof. Code § 17200, *et seq*.

379. The California Plaintiffs and members of the California Class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to the California Plaintiffs and members of the California Class.

380. Plaintiffs have standing to bring these claims under the UCL. As a direct and proximate result of Defendants' unfair, unlawful, and deceptive acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., the California Plaintiffs and members of the California Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, "benefit-of-the-bargain" damages, the loss of the value and/or diminishment in value of their Personal Information, and the loss of the ability to control the use of their Personal Information.

381. As a direct and proximate result of TikTok's unlawful, unfair, and deceptive business acts and practices, California Plaintiffs and members of the California Class suffered "benefit-of-the-bargain" injuries and damages. The California Plaintiffs and members of the California Class did not receive the full benefit of the bargain, and instead received services from TikTok that were less valuable than the services they would have received if TikTok had abided by COPPA.

382. The California Plaintiffs and members of the California Class, therefore, were damaged in an amount at least equal to the difference in value of the TikTok service that the California Plaintiffs and members of the California Class received (for example. where TikTok collected and used children's Personal Information without notifying their parents or gaining their parents' consent) and the value of the TikTok service that Plaintiffs' minor children and Class Members would have received if TikTok had abided

by COPPA (and, for example, not collected and used children's Personal Information without notifying their parents or gaining their parents' consent).

383. As a direct and proximate result of TikTok's unlawful, unfair, and deceptive business acts and practices, Plaintiffs and Class Members also suffered "right to exclude" injuries and damages.

384. The California Plaintiffs and members of the California Class have a property interest in the Personal Information collected by TikTok. Plaintiffs Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their Personal Information.

385. The California Plaintiffs and members of the California Class's damages may also be measured by the amount of monetary compensation that TikTok would have to provide to parents to gain their consent to collect and use their children's Personal Information.

386. The California Plaintiffs and members of the California Class also suffered damages because the Defendants' unfair, unlawful, and deceptive acts and practices diminished the value of their Personal Information.

387. As outlined herein, there is tangible value in the California Plaintiffs' and members of the California Class's Personal Information. The California Plaintiffs and members of the California class have lost the opportunity to receive value in exchange for their Personal Information.

388. Defendants' monetization of the California Plaintiffs' and members of the California Class's Personal Information demonstrates that there is a market for their Personal Information.

389. The California Plaintiffs' and members of the California Class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

390. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek equitable relief to enjoin TikTok from continuing its unlawful, unfair, and deceptive practices and any other equitable relief necessary to secure the interests of the Class Members.

391. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs request that the Court restore to Plaintiffs and the Class, in the form of restitution, all money TikTok may have acquired as result of its unlawful, unfair, and deceptive business practices.

392. Defendants' retention of the California Plaintiffs' and members of the California Class's Personal Information presents a continuing risk to them as well as the general public. The California Plaintiffs and members of the California Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Cal. Bus. & Prof. Code § 17200, *et seq*. and applicable law, including restitution and attorneys' fees, as well as an injunction requiring Defendants to permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

393. Plaintiffs allege that they lack an adequate remedy at law. The restitution that Plaintiffs seek under the UCL is not the same remedy as disgorgement for unjust enrichment.

## Claim 4

## CALIFORNIA UNJUST ENRICHMENT

**(Against All Defendants by all Plaintiffs and the National Class, and by Plaintiff Villanueva on behalf of J.C., Plaintiff Douglas on behalf of A.J., and Plaintiff Muto on behalf of B.M., and the California Class)**

394. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class incorporate and reallege all allegations set forth above.

395. By virtue of the unlawful, unfair, and deceptive conduct alleged herein, Defendants have realized millions of dollars in revenue from their collection and use of

the Personal Information of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class through behavioral advertising and commercialization of Plaintiffs' Personal Information.

396. Defendants' ill-gotten gains were monetary benefits conferred upon Defendants by the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class. It would be inequitable and unjust to permit any of the Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class.

397. Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class, and allowing Defendants to retain the profits from their unlawful, unauthorized, and impermissible use of the Personal Information of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class would be unjust and contrary to public policy.

398. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class are therefore entitled to recover the amounts realized by the Defendants at the expense of the California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class.

399. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class do not seek recover in this claim for their own economic harm and have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the California

Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class assert their claim for non-restitutionary disgorgement as an alternative remedy.

400. The California Plaintiffs, members of the California Class, all Plaintiffs, and members of the National Class are entitled to non-restitutionary disgorgement of Defendants' ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten gains.

## II. CONNECTICUT CLAIMS

### Claim 5

### CONNECTICUT INTRUSION UPON SECLUSION

### (Against All Defendants by Plaintiff Bresette on behalf of L.F. and the Connecticut Class)

401. Plaintiff Bresette on behalf of L.F. and members of the Connecticut Class re-allege the foregoing allegations as if fully set forth herein.

402. L.F. and members of the Connecticut Class's Class possess a legally protected interest in their Personal Information as defined by COPPA, which includes first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

403. L.F. and members of the Connecticut Class maintained a reasonable expectation of privacy that when using TikTok the Defendants would not collect and/or use their Personal Information.

404. L.F. and members of the Connecticut Class's reasonable expectation of privacy was supported by COPPA's prohibition on TikTok collecting and/or using

Personal Information from children under 13 unless TikTok directly notified their parents and obtained verifiable parental consent.

405. Defendants intentionally intruded upon L.F. and Connecticut Class Members' seclusion by improperly collecting and using the L.F. and Connecticut Class Members' Personal Information, without obtaining consent from the Connecticut Plaintiffs and Connecticut Class members.

406. Defendants intentionally intruded upon L.F. and Connecticut Class Members' seclusion by improperly collecting and using L.F. and Connecticut Class Members' Personal Information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

407. Defendants' intrusion upon the seclusion of the L.F. and Connecticut Class Members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on TikTok by the FTC, as well as the reforms required by the 2019 Permanent Injunction entered into by TikTok, which it has now been accused of violating.

408. Defendants' intrusion upon the seclusion of L.F. and Connecticut Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because TikTok uses the collected Personal Information for an improper purpose, including by targeting L.F. and Connecticut Class Members with behavioral advertising.

409. Neither L.F., the members of the Connecticut Class, nor their parents and/or guardians consented to Defendants' collection and use of their Personal Information.

410. L.F. and Connecticut Class Members suffered actual and concrete injury as a result of Defendants' intrusion upon their seclusion.

411. L.F. and Connecticut Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, restitution, disgorgement of profits made by Defendants as a result of their invasion of the Connecticut Plaintiff and Class members' privacy, punitive damages, and any other relief that the Court may deem just and proper.

## Claim 6

### FOR DECEPTIVE AND UNFAIR PRACTICES IN VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT, Conn. Gen. Stat. § 42-110a, e*t seq.* (Against all Defendants by Plaintiff Bresette on behalf of L.F. and the Connecticut Class)

412. Plaintiffs reallege the allegations set forth in IV, V(d), and XII above.

413. This claim is asserted against Defendants pursuant to Conn. Gen. Stat. § 42-110a, *et. seq*.

414. The Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a, *et seq.,* declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

415. Pursuant to Conn. Gen. Stat. § 42-110g(a), any person who has suffered a loss as a result of a violation of CUTPA may bring an action to obtain a declaratory judgment that an act or practice violates CUTPA and to enjoin such person who has violated, is violating, or is otherwise likely to violate CUTPA.

416. Pursuant to Conn. Gen. Stat. § 42-110g(a), any person who has suffered a loss as a result of a violation of CUTPA may bring an action for actual damages, attorneys' fees, and court costs.

417. Plaintiffs and Defendants are each a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

418. Defendants through their conduct as described above, engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of their

trade and commerce, as defined in General Statutes § 42-110a(4), within the State of Connecticut.

419. Connecticut courts have held that "it is the intent of the legislature that in construing subsection (a) of this section, the commissioner [of consumer protection] and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))." *Heslin v. Connecticut L. Clinic of Trantolo & Trantolo,* 190 Conn. 510, 518, 461 A.2d 938, 942 (1983) as from time to time amended."

420. Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of L.F. and the Connecticut Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to L.F. and Connecticut Class members outweigh their utility, if any.

421. Defendants engaged in "deceptive" business acts and/or practices by making material misrepresentations and omissions regarding the privacy violations and unlawful conduct and practices outlined herein that constituted deceptive trade acts or practices in violation of CUTPA.

422. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 by representing to children who identified themselves as being under 13 that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

423. Defendants' representation is false and misleading. TikTok Kids Mode is not designed to be legally appropriate for children under 13. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by collecting and

using their Personal Information without providing direct notice to their parents or obtaining parental consent.

424. Defendants' marketing of Kids Mode was deceptive — the inherent characteristics, content, and features of TikTok Kids Mode, including the representation that it is an "experience" designed for kids, along with the restrictions on uploading videos, posting information, or messaging other users, were plainly intended for and meant to attract children under 13, through which Defendants intended to and did collect Personal Information to serve these children behavioral advertising for substantial commercial gain.

425. As outlined herein, Defendants at all times had actual knowledge of their non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their own collection of the Personal information from L.F. and Connecticut Class members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

426. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so that TikTok could collect the Personal Information of those children for substantial commercial gain.

427. TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the Personal Information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the Personal Information of children.

428. Defendants are considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

429. In particular, Defendants systematically collected and/or used Personal Information from minor children in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c. Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

430. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model

for the various consumer protection statutes in the several states, including Conn. Gen. Stat. § 42-110a, *et seq*.

431. Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Conn. Gen. Stat. § 42-110a, *et seq*. which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

432. Because Defendants knew or should have known that their conduct was deceptive and/or unfair under Conn. Gen. Stat. § 42-110b(a), their conduct was willful under Conn. Gen. Statutes § 42-110o.

433. These unfair and deceptive acts and practices have caused Plaintiffs and other similarly situated consumers and/or businesses to suffer losses of money and property.

434. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and other similarly situated consumers and/or businesses have suffered damages and are entitled to relief under CUTPA, including, but not limited to, actual damages, attorneys' fees, and costs.

435. Accordingly, Plaintiffs, individually and on behalf of all others similarly situated, thus seek (a) a declaration that Defendants' acts and practices as described above violate the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.;* (b) an award of actual damages; (c) an award of attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g(d); (d) an order enjoining Defendants from continuing to engage in the unfair and deceptive acts and practices described above; and any further relief the Court deems just and proper.

## Claim 7

## CONNECTICUT UNJUST ENRICHMENT

## (Against All Defendants by Plaintiff Bresette on behalf of L.F. and the Connecticut Class)

436. Plaintiff Bresette on behalf of L.F. and members of the Connecticut Class re-allege the foregoing allegations as if fully set forth herein.

437. By virtue of the unlawful, unfair, and deceptive conduct alleged herein, Defendants have each realized millions of dollars in revenue from their collection and use of the Personal Information of L.F. and Connecticut Class members through behavioral advertising and commercialization purposes derived from that Personal Information.

438. Defendants' ill-gotten gains were monetary benefits conferred upon Defendants by L.F. and members of the Connecticut Class. It would be inequitable and unjust to permit any of the Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of L.F. and members of the Connecticut Class.

439. Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by L.F. and members of the Connecticut Class through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information L.F. and members of the Connecticut Class, and allowing Defendants to retain the profits from their unlawful, unfair, unauthorized, and impermissible use of the Personal Information of L.F. and members of the Connecticut Class would be unjust and contrary to public policy.

440. L.F. and members of the Connecticut Class are therefore entitled to recover the amounts realized by each of the Defendants at the expense of L.F. and members of the Connecticut Class.

441. L.F. and members of the Connecticut Class do not seek recovery in this claim for their own economic harm and have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, L.F. and members of the Connecticut Class assert their claim for non-restitutionary disgorgement as an alternative remedy pending a final determination of the availability of a remedy at law.

442. L.F. and members of the Connecticut Class are entitled to non-restitutionary disgorgement of each Defendant's ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of each Defendant's ill-gotten gains.

## III. FLORIDA CLAIMS

### Claim 8

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA), Fla. Stat. Ann. § 501.201 *et seq*.

### (Against All Defendants by Plaintiff Maultsby on behalf of D.M. and the Florida Class)

443. Plaintiff Maultsby on behalf of D.M. and members of the Florida Class incorporate the foregoing allegations as if fully set forth herein.

444. D.M. and members of the Florida Class are or were residents of Florida and used TikTok while under the age of 13.

445. At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Florida in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Florida.

446. Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Florida, and there are millions of users, including D.M. and members of the Florida Class.

447. Fla. Stat. Ann. § 501.204(1) provides "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

448. Defendants violated Fla. Stat. Ann. § 501.204 by engaging in the deceptive or unfair acts or practices proscribed by Fla. Stat. Ann. § 501.204 outlined herein.

449. Defendants engaged in "unlawful" business acts and/or practices by violating COPPA and the COPPA Rule.

450. Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of Florida Plaintiffs and members of the Florida Class without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to D.M. and Florida Class members outweigh their utility, if any.

451. Defendants engaged in "deceptive" business acts and/or practices by making material misrepresentations and omissions regarding the privacy violations and unlawful conduct and practices outlined herein that constituted deceptive trade acts or practices in violation of the FDUTPA.

452. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 by representing to children who identified themselves as being under 13 that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

453. Defendants' representation is false and misleading. TikTok Kids Mode is not designed to be legally appropriate for children under 13. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by collecting and using their Personal Information without providing direct notice to their parents or obtaining parental consent.

454. Defendants' marketing of Kids Mode was deceptive — the inherent characteristics, content, and features of TikTok Kids Mode, including the representation that it is an "experience" designed for kids, along with the restrictions on uploading videos, posting information, or messaging other users, were plainly intended for and

meant to attract children under 13, through which Defendants intended to and did collect Personal Information to serve these children behavioral advertising for substantial commercial gain.

455. As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the Personal Information of D.M. and Florida Class members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

456. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so that TikTok could collect the Personal Information for substantial commercial gain.

457. TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the Personal Information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the Personal Information of children.

458. In particular, systematically collected and/or used Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, by:

a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c. Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

459. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Fla. Stat. Ann. § 501.201, *et seq*.[63]

460. Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Fla. Stat. Ann. § 501.204, *et seq*., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

461. Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits

---

[63] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

to consumers or competition. Further, D.M. and members of the Florida Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

462. Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Fla. Stat. Ann. § 501.204, *et seq*.

463. D.M. and members of the Florida Class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to D.M. and members of the Florida Class.

464. As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Fla. Stat. Ann. § 501.204, *et seq*., D.M. and members of the Florida Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of D.M. and members of the Florida Class.

465. As outlined herein, there is tangible value in D.M. and members of the Florida Class's Personal Information. D.M. and members of the Florida Class have lost the opportunity to receive value in exchange for their Personal Information.

466. Defendants' monetization of D.M. and members of the Florida Class's Personal Information demonstrates that there is a market for their Personal Information.

467. D.M. and members of the Florida Class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

468. Defendants' retention of D.M. and members of the Florida class's Personal Information presents a continuing risk to them as well as the general public. D.M. and members of the Florida Class seek relief for the injuries they have suffered as a result of

Defendants' unfair and unlawful acts and practices, as provided by Fla. Stat. Ann. § 501.204, *et seq*. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

**<u>Claim 9</u>**

**FLORIDA UNJUST ENRICHMENT**

**(Against All Defendants by Plaintiff Maultsby on behalf of D.M. and the Florida Class)**

469. Plaintiff Maultsby on behalf of D.M. and members of the Florida Class re-allege the foregoing allegations as if fully set forth herein.

470. By virtue of the unlawful, unfair, and deceptive conduct alleged herein, Defendants have each realized millions of dollars in revenue from their collection and use of the Personal Information of D.M. and Florida Class members through behavioral advertising and commercialization purposes derived from that Personal Information.

471. Defendants' ill-gotten gains were monetary benefits conferred upon Defendants by D.M. and members of the Florida Class. It would be inequitable and unjust to permit any of the Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of D.M. and members of the Florida Class.

472. Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by D.M. and members of the Florida Class through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information D.M. and members of the Florida Class, and allowing Defendants to retain the profits from their unlawful, unfair, unauthorized, and impermissible use of the

Personal Information of D.M. and members of the Florida Class would be unjust and contrary to public policy.

473. D.M. and members of the Florida class are therefore entitled to recover the amounts realized by each of the Defendants at the expense of D.M. and members of the Florida Class.

474. D.M. and members of the Florida Class do not seek recovery in this claim for their own economic harm and have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, D.M. and members of the Florida Class assert their claim for non-restitutionary disgorgement as an alternative remedy pending a final determination of the availability of a remedy at law.

475. D.M. and members of the Florida Class are entitled to non-restitutionary disgorgement of each Defendant's ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of each Defendant's ill-gotten gains.

## IV. MICHIGAN CLAIMS

### Claim 10

### MICHIGAN INTRUSION UPON SECLUSION

**(Against All Defendants by Plaintiff Hoyt on behalf of D.R.H., D.W.H., and R.W., and the Michigan Class)**

476. Plaintiff Hoyt on behalf of D.R.H., D.W.H., and R.W. ("Michigan Plaintiffs") and members of the Michigan Class re-allege the foregoing allegations as if fully set forth herein. The Michigan Plaintiffs and Michigan Class Members re-allege the foregoing allegations as if fully set forth herein.

477. The Michigan Plaintiffs and Michigan Class Members possess a legally protected interest in their Personal Information as defined by COPPA, which includes first and last name, age, email address, phone number, persistent identifiers for the

device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

478. The Michigan Plaintiffs and Michigan Class Members maintained a reasonable expectation of privacy that when using TikTok the Defendants would not collect and/or use their Personal Information.

479. The Michigan Plaintiffs and Michigan Class Members' reasonable expectation of privacy was supported by COPPA's prohibition on TikTok collecting and/or using Personal Information from children under 13 unless TikTok directly notified their parents and obtained verifiable parental consent.

480. Defendants intentionally intruded upon the Michigan Plaintiffs and Michigan Class Members' seclusion by improperly collecting and using the Michigan Plaintiffs' and Michigan Class Members' Personal Information, without obtaining consent from the Michigan Plaintiffs and Michigan Class Members.

481. Defendants intentionally intruded upon the Michigan Plaintiffs and Michigan Class Members' seclusion by improperly collecting and using the Michigan Plaintiffs' and Michigan Class Members' Personal Information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

482. Defendants' intrusion upon the seclusion of the Michigan Plaintiffs and Michigan Class Members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable

expectations, the fines imposed on TikTok by the FTC, as well as the reforms required by the 2019 Permanent Injunction entered into by TikTok, which it has now been accused of violating.

483. Defendants' intrusion upon the seclusion of the Michigan Plaintiffs and Michigan Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because TikTok uses the collected Personal Information for an improper purpose, including by targeting the Michigan Plaintiffs and Michigan Class Members with behavioral advertising.

484. Neither the Michigan Plaintiffs, members of the Michigan Class, nor their parents and/or guardians consented to Defendants' collection and use of their Personal Information.

485. The Michigan Plaintiffs and Michigan Class Members suffered actual and concrete injury as a result of Defendants' intrusion upon their seclusion.

486. The Michigan Plaintiffs and Michigan Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, restitution, disgorgement of profits made by Defendants as a result of their invasion of the Michigan Plaintiffs and Michigan Class members' privacy, punitive damages, and any other relief that the Court may deem just and proper.

**Claim 11**

**MICHIGAN CONSUMER PROTECTION ACT (MCPA),**

**Mich. Comp. Laws Ann. § 445.901, *et seq.***

**(Against All Defendants by Plaintiff Hoyt on behalf of D.R.H., D.W.H., and R.W., and the Michigan Class)**

487. The Michigan Plaintiffs and members of the Michigan Class incorporate the foregoing allegations as if fully set forth herein.

488. The Michigan Plaintiffs and members of the Michigan Class are or were residents of Michigan and used TikTok while under the age of 13.

489. Mich. Comp. Laws Ann. § 445.903 provides that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful[.]"

490. At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Michigan in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Michigan.

491. Defendants violated Mich. Comp. Laws Ann. § 445.903 by engaging in the deceptive or unfair acts or practices proscribed by Mich. Comp. Laws Ann. § 445.903 as outlined herein.

492. Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of the Michigan Plaintiffs and Michigan Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to the Michigan Plaintiffs and Michigan Class Members outweigh their utility, if any.

493. Defendants engaged in "deceptive" business acts and/or practices by making material misrepresentations and omissions regarding the privacy violations and unlawful conduct and practices outlined herein that constituted deceptive trade acts or practices in violation of the MCPA.

494. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 by representing to children who identified themselves as being under 13 that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

495. Defendants' representation is false and misleading. TikTok Kids Mode is not designed to be legally appropriate for children under 13. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by collecting and using their Personal Information without providing direct notice to their parents or obtaining parental consent.

496. Defendants' marketing of Kids Mode was deceptive — the inherent characteristics, content, and features of TikTok Kids Mode, including the representation that it is an "experience" designed for kids, along with the restrictions on uploading videos, posting information, or messaging other users, were plainly intended for and meant to attract children under 13, through which Defendants intended to and did collect Personal Information to serve these children behavioral advertising for substantial commercial gain.

497. Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Michigan, and there are millions of users, including the Michigan Plaintiffs and members of the Michigan Class.

498. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

499. As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the Personal Information of the Michigan Plaintiffs and the Michigan Class members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

500. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so that TikTok could collect the Personal Information for substantial commercial gain.

501. TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the Personal Information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the Personal Information of children.

502. In particular, Defendants systematically collected and/or used Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, by:

a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c. Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information

collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

503. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Mich. Comp. Laws. Ann. § 445.903, *et seq*.[64]

504. Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Mich. Comp. Laws. Ann. § 445.903, *et seq*., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

505. Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, the Michigan Plaintiffs and members of the Michigan Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

506. Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Mich. Comp. Laws. Ann. § 445.903, *et seq*.

507. The Michigan Plaintiffs and members of the Michigan Class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to the Michigan Plaintiffs and members of the Michigan Class.

---

[64] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

508. As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Mich. Comp. Laws. Ann. § 445.903, *et seq*., the Michigan Plaintiffs and members of the Michigan Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of the Michigan Plaintiffs and members of the Michigan Class.

509. As outlined herein, there is tangible value in the Michigan Plaintiffs' and members of the Michigan Class's Personal Information. The Michigan Plaintiffs and members of the Michigan Class have lost the opportunity to receive value in exchange for their Personal Information.

510. Defendants' monetization of the Michigan Plaintiffs' and members of the Michigan Class's Personal Information demonstrates that there is a market for their Personal Information.

511. The Michigan Plaintiffs' and members of the Michigan Class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

512. Defendants' retention of the Michigan Plaintiffs' and members of the Michigan class's Personal Information presents a continuing risk to them as well as the general public. The Michigan Plaintiffs and members of the Michigan Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Mich. Comp. Laws. Ann. § 445.903, *et seq*. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting

of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

**Claim 12**

**MICHIGAN UNJUST ENRICHMENT**

**(Against All Defendants by Plaintiff Hoyt on behalf of D.R.H., D.W.H., and R.W., and the Michigan Class)**

513. The Michigan Plaintiffs and members of the Michigan Class re-allege the foregoing allegations as if fully set forth herein.

514. By virtue of the unlawful, unfair, and deceptive conduct alleged herein, Defendants have realized millions of dollars in revenue from their collection and use of the Personal Information of the Michigan Plaintiffs and the Michigan Class members through behavioral advertising and commercialization of Plaintiffs' Personal Information.

515. Defendants' ill-gotten gains were monetary benefits conferred upon Defendants by the Michigan Plaintiffs and the members of the Michigan Class. It would be inequitable and unjust to permit any of the Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of the Michigan Plaintiffs and the members of the Michigan Class.

516. Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by the Michigan Plaintiffs and the members of the Michigan Class through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information of the Michigan Plaintiffs and members of the Michigan Class, and allowing Defendants to retain the profits from their unlawful, unauthorized, and impermissible use of the Personal Information of the Michigan Plaintiffs and the members of the Michigan Class would be unjust and contrary to public policy.

517. The Michigan Plaintiffs and the members of the Michigan Class are therefore entitled to recover the amounts realized by the Defendants at the expense of the Michigan Plaintiffs and the members of the Michigan Class.

518. The Michigan Plaintiffs and members of the Michigan Class do not seek recovery in this claim for their own economic harm and have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the Michigan Plaintiffs and members of the Michigan Class assert their claim for non-restitutionary disgorgement as an alternative remedy pending a final determination of the availability of a remedy at law.

519. The Michigan Plaintiffs and members of the Michigan Class are entitled to non-restitutionary disgorgement of Defendants' ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten gains.

## V. NEW YORK CLAIMS

### Claim 13

### NEW YORK CIVIL RIGHTS LAW §§ 50-51

### (Against All Defendants by Plaintiff Gates on behalf of M.G., Plaintiff Pierre on behalf of C.P., and the New York Class)

520. Plaintiff Gates on behalf of M.G. and Plaintiff Pierre on behalf of C.P. (the "New York Plaintiffs") and members of the New York Class re-allege the foregoing allegations as if fully set forth herein.

521. The New York Plaintiffs and members of the New York Class are or were residents of New York.

522. TikTok has violated N.Y. Civil Rights Law §§ 50-51 by invading the privacy of the New York Plaintiffs and members of the New York Class and misappropriating their likeness within the State of New York.

523. At no point did TikTok receive permission or consent, be it written or otherwise, to use the identities, photographs, likenesses, and Personal Information of Plaintiffs' minor children and members of the New York Class in connection with TikTok's business. TikTok nonetheless collected first and last name; online contact

information; screen or user name functioning in the same manner as online contact information; telephone number; persistent identifiers (including IP address and "cookies"); photo, video, and audio files containing a child's image or voice; and unique device identifiers. TikTok used the Personal Information it collected from children to aid in its tracking, profiling, and targeting of those children for lucrative behavioral advertising.

524. At relevant times, TikTok was aware that it never received the permission or consent of the New York Plaintiffs and members of the New York Class to use their identities, photographs, likenesses, and other Personal Information in connection with TikTok's business.

525. As outlined herein, TikTok at all times had actual knowledge of its own non-compliance with COPPA and other applicable privacy-related laws. Further, TikTok at all times had actual knowledge of its own collection of the Personal Information from the New York Plaintiffs and New York Class members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising for financial gain.

526. At no point did TikTok compensate the New York Plaintiffs or members of the New York Class for the unauthorized use of the identities, photographs, likenesses, and Personal Information of Plaintiffs' minor children and members of the New York Class in connection with TikTok's business.

527. TikTok used the identities, photographs, likenesses, and Personal Information of the New York Plaintiffs or members of the New York Class in connection with its business for the purposes of trade. TikTok has received revenues and profits from unjustly and illegally collecting and using the identities, photographs, likenesses, or Personal Information of children under the age of 13 to build profiles and target advertisements to those children.

528. TikTok's primary source of income is advertising revenue, earned by showing third-party advertisements to users on its platform. TikTok generates this

revenue via tracking, profiling, and targeting advertising based on Personal Information it collects from children.

529. There is no valid privilege or authorization permitting TikTok to use the identities, photographs, likenesses, or Personal Information of the New York Plaintiffs or the New York Class members in relation to its business activities.

530. As a direct and proximate result of TikTok's violation of the rights of privacy and publicity under §§ 50 and 51 of the N.Y. Civil Rights Act, the New York Plaintiffs and members of the New York Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, *inter alia*, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

531. In addition, and pursuant to § 51 of the N.Y. Civil Rights Act, the New York Plaintiffs and members of the New York Class hereby request an Order permanently enjoining TikTok from violating their right to privacy and publicity.

**<u>Claim 14</u>**

**NEW YORK CONSUMER PROTECTION LAW**

**N.Y. Gen. Bus. Law § 349, *et seq*.**

**(Against All Defendants by Plaintiff Gates on behalf of M.G., Plaintiff Pierre on behalf of C.P., and the New York Class)**

532. The New York Plaintiffs and members of the New York Class re-allege the foregoing allegations as if fully set forth herein.

533. The New York Plaintiffs and New York Class Members are or were residents of New York.

534. At all times mentioned herein, Defendants engaged in "trade" or "commerce" in New York in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in New York.

535. Defendants engaged in consumer-oriented acts through the offering, promoting, and/or distributing of TikTok, which significantly impacted the public because TikTok is used nationwide, including in New York, and there are millions of users, including the New York Plaintiffs and New York Class Members.

536. N.Y. Gen. Bus. Law § 349(a) provides "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

537. Defendants violated N.Y. Gen. Bus. Law § 349 by engaging in the deceptive acts or practices proscribed by N.Y. Gen. Bus. Law § 349 outlined herein.

538. Defendants made material misrepresentations and omissions regarding the privacy violations and unlawful conduct and practices outlined herein that constituted deceptive trade acts or practices in violation of NY GBL § 349.

539. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 by representing to children who identified themselves as being under 13 that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

540. Defendants' representation is false and misleading. TikTok Kids Mode is not designed to be legally appropriate for children under 13. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by collecting and using their Personal Information without providing direct notice to their parents or obtaining parental consent.

541. Defendants' marketing of Kids Mode was deceptive — the inherent characteristics, content, and features of TikTok Kids Mode, including the representation that it is an "experience" designed for kids, along with the restrictions on uploading videos, posting information, or messaging other users, were plainly intended for and meant to attract children under 13, through which Defendants intended to and did collect

Personal Information to serve these children behavioral advertising for substantial commercial gain.

542. Defendants at all relevant times knowingly violated legal duties and public policy by collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' financial gain. As outlined herein, Defendants at all times had actual knowledge that TikTok Kids Mode was not compliant with COPPA and other applicable privacy-related laws; had actual knowledge and specifically intended to collect and maintain a username, password, and birthday (day, month, and year) from Kids Mode users as well as several types of persistent identifiers from Kids Mode users without notifying parents or obtaining their consent, including IP address and unique device identifiers; and had actual knowledge of its collection of this Personal Information and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

543. Defendants additionally collected dozens of other types of information concerning child users with Kids Mode accounts—including app activity data, device information, mobile carrier information, and app information—which they combine with persistent identifiers and used to amass profiles on children.

544. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair or deceptive acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the GBL.[65]

---

[65] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

545. New York Plaintiffs and the New York Class Members reasonably expected that Defendants would respect their privacy online, in accordance with their own policies and guidelines, statements, and representations, societal expectations and public policy, as well as state and federal statutes and regulations including COPPA and Federal Trade Commission regulations. As outlined herein, TikTok Kids Mode is marketed, promoted, and represented as suitable for children, predicated on, *inter alia*, (i) the representation that it is an "experience designed" for children under 13; and (ii) the restrictions in Kids Mode on a user's ability to upload videos, post information publicly, and message other users, which were designed for children.

546. At the same time, Defendants have (i) at all relevant times known that children under the age of 13 use Kids Mode, and (ii) sought to exploit, for commercial purposes and gain, the millions of children under the age of 13 using Kids Mode. Defendants' knowledge of the widespread use of TikTok by children and their concealment and failure to disclose the collection and/or use of Personal Information from such children and they were tracking, profiling, and targeting these children and/or profiting from this conduct through lucrative behavioral advertising, while at the same time promoting, representing, and purporting to ensure Kids Mode complies with law and societal expectation, are likely to and, in fact, did deceive the New York Plaintiffs and New York Class Members.

547. Defendants' misrepresentations and omissions were explicit and implicit. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers such as the New York Plaintiffs and New York Class Members about the terms under which they were using TikTok as well as the fact that Defendants were collecting and profiting from the Personal Information of children under the age of thirteen without their parents and guardians' knowledge or consent.

548. Defendants had a duty to disclose the above-described facts due to the important public interest in securing the privacy of young children's Personal Information and the fact that young children are unable to fully protect their own

interests. The New York Plaintiffs and New York Class Members placed trust in Defendants as reputable company which represents that it complies with applicable laws and societal interests in safeguarding children's Personal Information. Additionally, Defendants exclusively knew and understood the extent of their collection of Personal Information, and the New York Plaintiffs and New York Class Members could not reasonably have discovered—and were unaware of—Defendants' secret tracking, profiling, and targeting.

549. Defendants' conduct is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, the New York Plaintiffs and New York Class Members could not have reasonably avoided injury because Defendants took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers to their detriment.

550. Defendants willfully engaged in the deceptive acts described herein and knew or recklessly disregarded the fact that they violated NY GBL § 349.

551. The New York Plaintiffs and New York Class Members were harmed by Defendants' practices, which were a substantial factor and caused injury in fact and actual damages to the New York Plaintiffs and New York Class Members. As a direct and proximate result of Defendants' deceptive acts and practices in violation of NY GBL § 349, the New York Plaintiffs and New York Class Members have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including the loss of the value or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of the New York Plaintiffs and New York Class Members.

552. As outlined herein, the New York Plaintiffs' and New York Class Members' Personal Information has tangible value. The New York Plaintiffs and New

York Class Members have lost the opportunity to receive value in exchange for their Personal Information.

553. Defendants' monetization of the New York Plaintiffs and New York Class Members' Personal Information demonstrates that there is a market for their Personal Information.

554. The New York Plaintiffs and New York Class Members' Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

555. Defendants' retention of the New York Plaintiffs and New York Class Members' Personal Information presents a continuing risk to them as well as the general public.

556. The New York Plaintiffs and New York Class Members seek relief for the injuries they have suffered as a result of Defendants' deceptive acts and practices, as provided by NY GBL § 349 and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants, App developers and any other third parties, and other appropriate injunctive and/or declaratory relief.

**Claim 15**

**NEW YORK UNJUST ENRICHMENT**

**(Against All Defendants by Plaintiff Gates on behalf of M.G., Plaintiff Pierre on behalf of C.P., and the New York Class)**

557. The New York Plaintiffs and members of the New York Class re-allege the foregoing allegations as if fully set forth herein.

558. By virtue of the unlawful and unfair conduct alleged herein, Defendants have realized millions of dollars in revenue from their collection and use of the Personal

Information of the New York Plaintiffs and the New York Class members through behavioral advertising and commercialization of Plaintiffs' Personal Information.

559. Defendants' ill-gotten gains were monetary benefits conferred upon Defendants by the New York Plaintiffs and the members of the New York Class. It would be inequitable and unjust to permit any of the Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of the New York Plaintiffs and the members of the New York Class.

560. Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by the New York Plaintiffs and the members of the New York Class through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information of the New York Plaintiffs and members of the New York Class, and allowing Defendants to retain the profits from their unlawful, unauthorized, and impermissible use of the Personal Information of the New York Plaintiffs and the members of the New York Class would be unjust and contrary to public policy.

561. The New York Plaintiffs and the members of the New York Class are therefore entitled to recover the amounts realized by the Defendants at the expense of the New York Plaintiffs and the members of the New York Class.

562. The New York Plaintiffs and members of the New York Class do not seek recovery in this claim for their own economic harm and have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the New York Plaintiffs and members of the New York Class assert their claim for non-restitutionary disgorgement as an alternative remedy pending a final determination of the availability of a remedy at law.

563. The New York Plaintiffs and members of the New York Class are entitled to non-restitutionary disgorgement of Defendants' ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten gains.

## VI. WASHINGTON CLAIMS

**Claim 16**

**WASHINGTON INTRUSION UPON SECLUSION**

**(Against All Defendants by Plaintiff Faucett on behalf of K.F., Plaintiff Jaramillo on behalf of J.W., and the Washington Class)**

564. Plaintiff Faucett on behalf of K.F. and Plaintiff Jaramillo on behalf of J.W. (the "Washington Plaintiffs") and members of the Washington Class re-allege the foregoing allegations as if fully set forth herein.

565. The Washington Plaintiffs and Washington Class Members possess a legally protected interest in their Personal Information as defined by COPPA, which includes first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

566. The Washington Plaintiffs and Washington Class Members maintained a reasonable expectation of privacy that when using TikTok the Defendants would not collect and/or use their Personal Information.

567. The Washington Plaintiffs and Washington Class Members' reasonable expectation of privacy was supported by COPPA's prohibition on TikTok collecting and/or using Personal Information from children under 13 unless TikTok directly notified their parents and obtained verifiable parental consent.

568. Defendants intentionally intruded upon the Washington Plaintiffs and Washington Class Members' seclusion by improperly collecting and using the

Washington Plaintiffs and Washington Class Members' Personal Information, without obtaining consent from the Washington Plaintiffs and Washington Class Members.

569. Defendants intentionally intruded upon the Washington Plaintiffs and Washington Class Members' seclusion by improperly collecting and using the Washington Plaintiffs and Washington Class Members' Personal Information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

570. Defendants' intrusion upon the seclusion of the Washington Plaintiffs and Washington Class Members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on TikTok by the FTC, as well as the reforms required by the 2019 Permanent Injunction entered into by TikTok, which it has now been accused of violating.

571. Defendants' intrusion upon the seclusion of the Washington Plaintiffs and Washington Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because TikTok uses the collected Personal Information for an improper purpose, including by targeting Washington Plaintiffs and Washington Class Members with behavioral advertising.

572. None of the Washington Plaintiffs, members of the Washington Class, nor their parents and/or guardians consented to Defendants' collection and use of their Personal Information.

573. The Washington Plaintiffs and Washington Class Members suffered actual and concrete injury as a result of Defendants' intrusion upon their seclusion.

574. The Washington Plaintiffs and Washington Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, restitution, disgorgement of profits made by Defendants as a result of their invasion of the Washington Plaintiffs and Class members' privacy, punitive damages, and any other relief that the Court may deem just and proper.

**Claim 17**

**WASHINGTON CONSUMER PROTECTION ACT,**

**Wash. Rev. Code. § 19.86.010, *et seq***

**(Against All Defendants by Plaintiff Faucett on behalf of K.F., Plaintiff Jaramillo on behalf of J.W., and the Washington Class)**

575. The Washington Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

576. The Washington Plaintiffs, the Washington Class Members, and TikTok are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

577. TikTok committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.96.010.

578. TikTok engaged in consumer-oriented conduct by offering and promoting its TikTok social media platform.

579. Washington's Consumer Protection Act, Wash. Rev. Code § 19.86.010 *et seq*. ("CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

580. The Washington CPA instructs that, in construing the Washington CPA, the courts will be "guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters." Wash. Rev. Code § 19.86.920.

581. TikTok violated the Washington CPA by engaging in the "unlawful" business acts and practices alleged previously, and as further specified below.

582. TikTok engaged in "unfair" business acts and/or practices by violating COPPA and the COPPA Rule.

583. Defendants engaged in "deceptive" business acts and/or practices by making material misrepresentations and omissions regarding the privacy violations and unlawful conduct and practices outlined herein that constituted deceptive trade acts or practices in violation of the Washington CPA.

584. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 by representing to children who identified themselves as being under 13 that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

585. Defendants' representation is false and misleading. TikTok Kids Mode is not designed to be legally appropriate for children under 13. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by collecting and using their Personal Information without providing direct notice to their parents or obtaining parental consent.

586. Defendants' marketing of Kids Mode was deceptive — the inherent characteristics, content, and features of TikTok Kids Mode, including the representation that it is an "experience" designed for kids, along with the restrictions on uploading videos, posting information, or messaging other users, were plainly intended for and meant to attract children under 13, through which Defendants intended to and did collect Personal Information to serve these children behavioral advertising for substantial commercial gain.

587. TikTok violated Sections 312.3, 312.4, and 312.5 of COPPA, 16 C.F.R. §§ 312.3-5, by collecting and using Personal Information from Plaintiffs' minor children and Class Members without notifying their parents and obtaining verifiable parental consent.

588. TikTok's business practices alleged herein are unethical, unscrupulous, and substantially injurious to children, and thus constitute an unfair practice under the Washington CPA. The harm these practices caused to Plaintiffs' minor children and Class Members outweigh their utility, if any.

589. As a direct and proximate result of TikTok's unfair business acts and practices, Plaintiffs' minor children and Class Members were injured and lost money or property.

590. First, as a direct and proximate result of Tiktok's unfair business acts and practices, Plaintiffs' minor children and Class Members suffered "benefit-of-the-bargain" injuries and damages. Plaintiffs' minor children and Class Members did not receive the full benefit of the bargain, and instead received services from TikTok that were less valuable than the services they would have received if TikTok had abided by COPPA.

591. Plaintiffs' minor children and Class Members, therefore, were damaged in an amount at least equal to the difference in value of the TikTok service that Plaintiffs' minor children and Class Members received (where TikTok collected and used children's Personal Information without notifying parents or gaining their parents' consent) and the value of the TikTok service that Plaintiffs' minor children and Class Members would have received if TikTok had abided by COPPA (and not collected and used children's Personal Information without notifying parents or gaining their parents' consent).

592. Second, as a direct and proximate result of TikTok's unlawful, unfair, and deceptive business acts and practices, Plaintiffs' minor children and Class Members suffered "right to exclude" injuries and damages.

593. Plaintiffs' minor children and Class Members have a property interest in the Personal Information collected by TikTok. Plaintiffs' minor children and Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their Personal Information.

594. Plaintiffs' minor children and Class Members' damages may also be measured by the amount of monetary compensation that TikTok would have to provide to parents to gain their consent to collect and use their children's Personal Information.

595. Plaintiffs' minor children and Class Members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, actual damages, treble damages, attorney's fees and other relief allowable under Wash. Rev. Code § 19.86.090.

**Claim 18**

**WASHINGTON UNJUST ENRICHMENT**

**(Against All Defendants by Plaintiff Faucett on behalf of K.F., Plaintiff Jaramillo on behalf of J.W., and the Washington Class)**

596. The Washington Plaintiffs and members of the Washington Class re-allege the foregoing allegations as if fully set forth herein.

597. By virtue of the unlawful and unfair conduct alleged herein, Defendants have realized millions of dollars in revenue from their collection and use of the Personal Information of the Washington Plaintiffs and the Washington Class members through behavioral advertising and commercialization of Plaintiffs' Personal Information.

598. Defendants' ill-gotten gains were monetary benefits conferred upon Defendants by the Washington Plaintiffs and the members of the Washington Class. It would be inequitable and unjust to permit any of the Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of the Washington Plaintiffs and the members of the Washington Class.

599. Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by the Washington Plaintiffs and the members of the Washington Class through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information of the Washington Plaintiffs and members of the Washington Class, and allowing Defendants to retain the profits from their unlawful,

unauthorized, and impermissible use of the Personal Information of the Washington Plaintiffs and the members of the Washington Class would be unjust and contrary to public policy.

600. The Washington Plaintiffs and the members of the Washington Class are therefore entitled to recover the amounts realized by the Defendants at the expense of the Washington Plaintiffs and the members of the Washington Class.

601. The Washington Plaintiffs and members of the Washington Class do not seek recovery in this claim for their own economic harm and have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the Washington Plaintiffs and members of the Washington Class assert their claim for non-restitutionary disgorgement as an alternative remedy pending a final determination of the availability of a remedy at law.

602. The Washington Plaintiffs and members of the Washington Class are entitled to non-restitutionary disgorgement of Defendants' ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten gains.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of themselves and the proposed Classes, respectfully request relief as follows:

A. An order certifying this action as a class action, and certifying the Classes defined herein, designating Plaintiffs, as described above, as the representatives of the respective Classes defined herein, and appointing Plaintiffs' counsel as counsel for the Classes;

B. An order declaring that Defendants' actions, as described above constitute: (i) breaches of the common law claim of intrusion upon seclusion as to the intrusion upon seclusion claims set forth above; (ii) violations of the state consumer protection statutes set forth above; (iii) a violation of the right to

privacy under the California Constitution, Article I, Section 1; and (iv) that Defendants were unjustly enriched as a result of their actions.

C. A judgment awarding Plaintiffs and the members of the Classes appropriate relief, including actual, compensatory, and/or statutory damages, and punitive damages (as permitted by law), in an amount to be determined at trial;

D. A judgment awarding any and all equitable, injunctive, and declaratory relief as may be appropriate, including orders of disgorgement of Defendants' unlawful gains, and restitution;

E. A judgment awarding injunctive relief as set forth above, non-restitutionary disgorgement of profits and unlawful gains, and such other equitable relief as the Court may deem proper;

F. A judgment awarding all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action, and other relief as permitted by law;

G. Pre-judgment and post-judgment interest, as permitted by law; and

H. Grant such other legal and equitable relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Pursuant to Local Rule 5-4.3.4, by my signature below, I, Eric Kafka, attest that all other signatories concur in the filing's content and have authorized this filing.

Dated: December 16, 2024

By: */s/ Steven L. Bloch*

David S. Golub, (*pro hac vice*)
Steven L. Bloch, (*pro hac vice*)
Ian W. Sloss, (*pro hac vice*)
Jennifer Sclar, (*pro hac vice*)
John Seredynski, (*pro hac vice*)

**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com

Patrick Carey, (Bar No. 308623)
Mark Todzo, (Bar No. 168389)
**LEXINGTON LAW GROUP, LLP**
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

By: */s/ Eric Kafka*__________________________

Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Karina Puttieva (SBN 317702)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kputtieva@cohenmilstein.com
jwaldman@cohenmilstein.com

PAUL HOFFMAN (SBN 71244)
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
200 Pier Ave., Suite 226
Hermosa Beach, CA 90254
Telephone: (424) 297-0114
Facsimile: (310) 399-7040
hoffpaul@aol.com