**BRADLEY/GROMBACHER, LLP**
Kiley L. Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: kgrombacher@bradleygrombacher.com
*Attorney for Applicant Nick McKissick, on Behalf of A.M*

**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
Sin-Ting Mary Liu (Cal. Bar No. 282884)
Bryan F. Aylstock (Fla. Bar 78263)
D. Nicole Guntner (Fla. Bar 1028925)
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
Email: baylstock@awkolaw.com
Email: nguntner@awkolaw.com
Email: mliu@awkolaw.com
*Attorneys for Applicants Scott Humbert on behalf of E.H. and J.H.; Tonia Lightwine, on behalf of B.L.; Monroe Seigle, on behalf of M.S.; and Nick McKissick, on Behalf of A.M.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.A., a minor, by and through their guardian ad litem, Marcelo Muto; A.B., a minor, by and through their guardian ad litem Heather Bressette ; and A.C., a minor, by and through their guardian ad litem Darryl Maultsby, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>vs.<br><br>BYTEDANCE, INC.; BYTEDANCE LTD.; TIKTOK LTD.; TIKTOK INC.; TIKTOK PTE. LTD.; AND TIKTOK U.S. DATA SECURITY, INC.,<br>Defendants. | **Lead Case No.: 2:24-cv-06784-ODW-RAO**<br>**[Assigned to Hon. Otis D. Wright, II]**<br><br>**ADDITIONAL EXHIBITS TO AMENDNED NOTICE OF MOTION, BRIEF IN SUPPORT OF MOTION TO INTERVENE** |

# Exhibit 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

SCOTT HUMBERT, on behalf of E.H. and J.H., et al.,

*Plaintiffs*,

v.

BYTEDANCE INC., et al.,

*Defendants*.

Case No. 5:24-cv-00236-MW-MJF

## DEFENDANTS' MOTION TO TRANSFER VENUE

Defendants ByteDance Inc., ByteDance Ltd., TikTok Inc., TikTok Ltd., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. (collectively, "Defendants") move this Court to transfer this case to the U.S. District Court for the Central District of California. In support of this Motion, Defendants rely upon the supporting memorandum filed herewith and the declaration attached hereto, to which the Court's direction is respectfully directed.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument on their motion to transfer this case to the U.S. District Court for the Central District of California. Defendants estimate 30 minutes for oral argument.

Dated: December 17, 2024

Respectfully submitted,

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

DANIEL M. PETROCELLI
(*pro hac vice*)
dpetrocelli@omm.com
STEPHEN J. McINTYRE
smcintyre@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

GLENN BURHANS
(Fla. S.B. #605867)
gburhans@stearnsweaver.com
HANNAH MURPHY
hmurphy@stearnsweaver.com
(Fla. S.B. #1032759)
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
106 East College Avenue, Suite 700
Tallahassee, Florida 32301
Telephone: +1 850 580 7200
Facsimile: +1 850 329 4861

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(B), I hereby certify that Defendants' counsel conferred with Plaintiffs' counsel by telephone on December 11, 2024. Plaintiffs' counsel advised that Plaintiffs oppose the relief requested herein.

Dated: December 17, 2024

*<u>/s/ Daniel M. Petrocelli</u>*
Daniel M. Petrocelli

**CERTIFICATE OF SERVICE**

I certify that on December 17, 2024, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: December 17, 2024

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

| | |
|---|---|
| SCOTT HUMBERT, on behalf of E.H. and J.H.; TONIA LIGHTWINE, on behalf of B.L.; and MONROE SEIGLE, on behalf of M.S.,<br><br>*Plaintiffs*,<br><br>v.<br><br>BYTEDANCE INC., BYTEDANCE LTD., TIKTOK LTD., TIKTOK INC., TIKTOK PTE. LTD., and TIKTOK U.S. DATA SECURITY INC.,<br><br>*Defendants*. | Case No. 5:24-cv-00236-MW-MJF |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

Case 2:25-cv-04636-RA Document 67 Filed 01/17/24 Page 2 of 42

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

A. Other plaintiffs have already filed substantially similar actions against Defendants in the Central District of California. ..... 2

B. Plaintiffs subsequently filed this action, alleging substantially the same claims as the Central District of California class plaintiffs. ..... 5

C. Private plaintiffs filed additional copycat actions in other Districts. ..... 6

D. One set of plaintiffs is seeking centralization in the Northern District of California. ..... 6

LEGAL STANDARD ..... 7

ARGUMENT ..... 9

I. The Court should transfer this action to the Central District of California under the first-filed rule. ..... 9

A. The Central District of California class actions were filed first. ..... 10

B. The Central District of California class actions and this action involve closely overlapping parties. ..... 10

C. The Central District of California class actions and this action involve the same subject matter and overlapping issues. ..... 12

II. This case should be transferred to the Central District of California under 28 U.S.C. § 1404. ..... 13

A. This action could have been brought in the Central District of California. ..... 14

1. The Central District of California could exercise subject-matter jurisdiction over this action. ..... 15

2. Venue would be proper in the Central District of California. ..... 16

**TABLE OF CONTENTS**
**(Continued)**

**Page**


3. There are no issues with service of process in the Central District of California. ........................................ 17

B. The Section 1404 factors overwhelmingly favor transferring this action to the Central District Of California. ........................................ 19

1. The convenience of witnesses favors transfer. .............. 20

2. The locus of operative facts is in California, not in Florida. ........................................ 23

3. Trial efficiency and the interest of justice favor transfer. ........................................ 25

4. The convenience of the parties favors transfer. ............. 27

5. The availability of compulsory process favors transfer. ........................................ 28

6. The location of documents and access to sources of proof favor transfer. ........................................ 29

7. None of the remaining Section 1404 factors militate against transferring this action to the Central District of California. ........................................ 30

CONCLUSION ........................................ 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. United States*,
2006 WL 398400 (M.D. Fla. Feb. 16, 2006) ....................22

*Advantus, Corp. v. Sandpiper of Cal., Inc.*,
2019 WL 4751725 (M.D. Fla. Sept. 30, 2019) ....................25

*Amaya v. Victoria's Secret Stores, LLC*,
2009 WL 10667492 (S.D. Fla. Aug. 3, 2009).................... 20, 21, 26, 31

*Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*,
2012 WL 515879 (M.D. Fla. Jan. 26, 2012) ....................11

*Blue Gentian, LLC v. Tristar Prods., Inc.*,
2013 WL 12096361 (S.D. Fla. June 14, 2013) ....................10

*Bonilla v. United Brands Co.*,
2011 WL 13220120 (C.D. Cal. Mar. 21, 2011) ....................15

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
157 F. Supp. 3d 1219 (S.D. Fla. 2016)....................8

*Chapman v. Progressive Am. Ins. Co.*,
2017 WL 3124186 (N.D. Fla. July 24, 2017) .................... 8, 10

*Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*,
2017 WL 6760811 (S.D. Fla. Oct. 4, 2017)....................26

*Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*,
713 F.3d 71 (11th Cir. 2013)....................7

*Combs v. Fla. Dep't of Corr.*,
461 F. Supp. 3d 1203 (N.D. Fla. 2020).................... 31, 32

*Cung Le v. Zuffa, LLC*,
108 F. Supp. 3d 768 (N.D. Cal. 2015).................... 22, 31

*Duffy v. Gen. Motors, Inc.*,
2019 WL 3412171 (S.D. Fla. June 6, 2019) .................... 22, 25, 26

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Game Controller Tech. LLC v. Sony Comput. Ent. Am. LLC*,
994 F. Supp. 2d 1268 (S.D. Fla. 2014)....................31

*Glen v. Am. Airlines, Inc.*,
2020 WL 13119933 (S.D. Fla. May 13, 2020) .................... 22, 23, 24

*Grillo's Pickles, Inc. v. Patriot Pickle, Inc.*,
2023 WL 9094237 (S.D. Fla. Nov. 9, 2023)....................27

*Hoffman v. Blaski*,
363 U.S. 335 (1960) ....................19

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011) ....................7

*In re Gen. Motors LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*,
532 F. Supp. 3d 1413 (J.P.M.L. 2021) ....................7

*In re World Wide Med. Tech. LLC*,
2012 WL 1252423 (N.D. Fla. Apr. 13, 2012)....................9

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ....................17

*Jongerius Panoramic Techs., LLC v. Google Inc.*,
2012 WL 13036199 (M.D. Fla. July 13, 2012)....................31

*Joseph v. McReady*,
2020 WL 13615158 (S.D. Fla. Mar. 23, 2020) ....................25

*Laskaris v. Fifth Third Bank*,
962 F. Supp. 2d 1297 (S.D. Fla. 2013)....................8

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005)....................9

*Marrero v. Laundress, LLC*,
2024 WL 478370 (M.D. Fla. Jan. 26, 2024) .................... 9, 10, 12

*MindbaseHQ LLC v. Google LLC*,
2021 WL 1923142 (S.D. Fla. May 13, 2021) ....................18

## TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Motorola Mobility, Inc. v. Microsoft Corp.*,
804 F. Supp. 2d 1271 (S.D. Fla. 2011)....................20

*MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*,
2022 WL 17484308 (S.D. Fla. Nov. 10, 2022)....................10

*Price v. U.S. Dep't of Just.*,
2018 WL 11397210 (S.D. Fla. May 21, 2018)....................29

*Rojas v. Am. Honda Motor Co.*,
2019 WL 6324616 (S.D. Fla. Nov. 26, 2019)....................15

*Savage v. Seterus, Inc.*,
2020 WL 230982 (S.D. Fla. Jan. 15, 2020)....................7

*Soldevilla v. Henkel Corp.*,
2022 WL 18464390 (S.D. Fla. Oct. 26, 2022).................... 12, 13

*Sonate Corp. v. Dunkin Brands Grp., Inc.*,
2023 WL 2624756 (M.D. Fla. Mar. 24, 2023)....................18

*Stokes v. Markel Am. Ins. Co.*,
2019 WL 8017457 (S.D. Fla. 2019)....................19

*Symantec Corp. v. V-Micro Inc.*,
2008 WL 11338120 (C.D. Cal. Apr. 3, 2008)....................21

*Thomas v. Nexion Health, Inc.*,
2016 WL 3057987 (D. Md. May 31, 2016)....................19

*TocMail Inc. v. Microsoft Corp.*,
2020 WL 12442001 (S.D. Fla. Oct. 15, 2020)....................29

*Trump v. Simon & Schuster, Inc.*,
2023 WL 5000572 (N.D. Fla. Aug. 4, 2023).................... 14, 28, 29, 30

*Vital Pharms., Inc. v. PhD Mktg., Inc.*,
2020 WL 6162794 (S.D. Fla. July 28, 2020)....................12

**Statutes**

28 U.S.C. § 1332(d)(2)....................14

Case 5:24-cv-04030-PAO-MJD Document 67 Filed 05/12/25 Page 13 of 42

# TABLE OF AUTHORITIES
# (Continued)

**Page(s)**

28 U.S.C. § 1332(d)(5)(B) ....................14

28 U.S.C. § 1391(b)(1)....................16

28 U.S.C. § 1391(b)(2)....................16

28 U.S.C. § 1391(b)(3)....................16

28 U.S.C. § 1404(a) .................... 7, 14, 15, 18

**Other Authorities**

Jurisdiction | Central District of California | United States District Court, https://www.cacd.uscourts.gov/jurisdiction ....................20

**Rules**

Fed. R. Civ. P. 4(d)(1)....................17

Fed. R. Civ. P. 45(c)(1)(A) ....................28

Fed. R. Civ. P. 45(c)(2)(A) ....................28

Fed. R. Civ. P. 45(c)(B)(ii) ....................28

# INTRODUCTION

This case is a tag-along to three earlier-filed cases that are pending in the Central District of California, and it should be transferred to that court under the "first-filed" rule or 28 U.S.C. § 1404. In the first-filed case, which was filed this past summer, the U.S. Department of Justice ("DOJ") alleges that Defendants'[1] TikTok platform collected and used children's personal information in a manner that violates the Children's Online Privacy Protection Act ("COPPA"), and that Defendants have violated an order that Judge Otis D. Wright II of the Central District of California issued in an earlier action. Shortly after DOJ sued, two sets of plaintiffs brought putative class-action claims against the same Defendants, also in the Central District of California, asserting that the very same conduct violates state privacy, unjust-enrichment, and unfair-competition laws. All three of these actions are pending before Judge Wright.

This case should join the first-filed lawsuits in the Central District of California. Plaintiffs make the same allegations, propose nearly identical classes, and assert the same claims as the previously filed class actions. It does not make sense to litigate this case in the Northern District of Florida while those actions are

[1] This brief refers to ByteDance Inc., ByteDance Ltd., TikTok Inc., TikTok Ltd., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. collectively as "Defendants." Unless otherwise noted, all emphasis is added to, and all quotation marks, citations, and alterations are omitted from, the quoted material.

litigated in the Central District of California. Under the "first-filed" rule, the Court should transfer this case to that District, where Judge Wright can coordinate these overlapping and closely related actions against Defendants.

In the alternative, transfer is warranted under 28 U.S.C. § 1404(a). Plaintiffs could have (and should have) filed this action in the Central District of California to begin with. The fact that key witnesses, parties, and evidence are located in California means it would be far more convenient and logical to litigate this case in that District. Failing to transfer this action to California will only compound costs, forcing Defendants and judicial officers to manage parallel cases in multiple Districts, which could eventually result in inconsistent judgments. In line with Section 1404's purposes, transferring this case to California will enhance convenience and efficiency and serve the interest of justice.

Put simply, this case does not belong in this Court. Defendants respectfully request that the Court transfer it to the Central District of California.

## FACTUAL BACKGROUND

### A. Other plaintiffs have already filed substantially similar actions against Defendants in the Central District of California.

Plaintiffs are not the first to bring claims based on the alleged conduct described in their Complaint. On August 2, 2024, DOJ filed a lawsuit against the same Defendants in the Central District of California, asserting a single claim under COPPA. Compl., *United States v. ByteDance Ltd.*, No. 2:24-cv-06535-

ODW-RAO (C.D. Cal. Aug. 2, 2024), Dkt. 1 ("DOJ Compl."). DOJ alleges that Defendants "knowingly allowed children under 13 to create and use TikTok accounts without their parents' knowledge or consent, have collected extensive data from those children, and have failed to comply with parents' requests to delete their children's accounts and personal information." *Id.* ¶¶ 2, 36-96.

One week after DOJ filed its complaint, private plaintiffs sued the same Defendants in the same court based on the same alleged conduct. Compl., *A.A. v. ByteDance Inc.*, No. 2:24-cv-06784-ODW-RAO (C.D. Cal. Aug. 9, 2024), Dkt. 1 ("*A.A.* Compl."). The plaintiffs in *A.A.* were three minors who reside in California, Connecticut, and Florida, and who allegedly accessed the TikTok platform while under the age of 13. *Id.* ¶¶ 23-25. Like DOJ, they asserted that TikTok collected "personal information" from them without parental consent. *Id.* ¶ 11. But because COPPA does not provide a private right of action, the *A.A.* plaintiffs asserted claims for invasion of privacy, unjust enrichment, and unfair competition under California, Connecticut, and Florida law on behalf of putative classes of underaged TikTok users in those states. *Id.* ¶¶ 195-97, 209-318.

About a month later, parents and guardians representing minors in California, Washington, and New York filed a second follow-on class action in the Central District of California. Compl. ¶¶ 8-10, *Villanueva v. ByteDance Inc.*, No. 2:24-cv-07922-ODW-RAO (C.D. Cal. Sept. 17, 2024), Dkt. 1 ("*Villanueva*

Compl."). The *Villanueva* plaintiffs asserted claims for unjust enrichment and violations of California's and Washington's unfair-competition statutes, and sought to represent putative national, California, Washington, and New York classes. *Id.* ¶¶ 97, 113-51.

Judge Wright subsequently consolidated the *Villanueva* and *A.A.* actions. Minute Order, *A.A. v. ByteDance Inc.*, No. 2:24-cv-06784-ODW-RAO (C.D. Cal. Nov. 25, 2024), Dkt. 52. On December 16, 2024, the *A.A.* and *Villanueva* plaintiffs (collectively, the "C.D. Cal. class plaintiffs") filed a consolidated class-action complaint under the *Villanueva* caption. Consolidated Class Action Complaint ("*Villanueva* Cons. Compl."), *Villanueva v. ByteDance Ltd.*, No. 2:24-cv-06784-ODW-RAO (C.D. Cal. Dec. 16, 2024), Dkt. 53. The C.D. Cal. class plaintiffs once again closely track DOJ's allegations against Defendants. *Compare id.* ¶¶ 63-145 *to* DOJ Compl. ¶¶ 34-113. They still assert claims for invasion of privacy, unjust enrichment, and violations of consumer-protection and unfair-competition laws. *Id.* ¶¶ 333-602. They now seek to represent a nationwide class of persons who used TikTok while under 13, as well as California, Connecticut, Florida, Michigan, New York, and Washington classes. *Id.* ¶¶ 316-22.

That DOJ and the C.D. Cal. class plaintiffs sued in the Central District of California is not surprising. Three of the Defendants are based in California. Compl. ¶¶ 88-93; O'Connor Decl. ¶¶ 4, 7, 13. TikTok Inc. and TikTok U.S. Data

Security Inc. have principal places of business in Culver City, California, and ByteDance Inc.'s principal place of business is in San Jose, California. Compl. ¶¶ 88-89, 91; O'Connor Decl. ¶¶ 4, 7, 13. The remaining three Defendants are based outside the United States. Compl. ¶¶ 90, 92-93; O'Connor Decl. ¶ 16.

### B. Plaintiffs subsequently filed this action, alleging substantially the same claims as the Central District of California class plaintiffs.

Even though multiple actions were pending in the Central District of California, Plaintiffs filed this action in the Northern District of Florida on October 15, 2024. *See* Compl. All Plaintiffs here reside in Florida, though only one lives in this District. *See id.* ¶¶ 67, 74, 81. Just like the C.D. Cal. class plaintiffs, Plaintiffs are parents or guardians whose children allegedly accessed the TikTok platform while under the age of 13. *Id.* ¶¶ 67-68; *see Villanueva* Cons. Compl. ¶¶ 234-305.

As in the C.D. Cal. class actions, the focus of Plaintiffs' Complaint is the allegation that Defendants "collected and used [their children's] Personal Information without providing direct notice to their parents or gaining their parents verifiable consent." Compl. ¶ 3; *see Villanueva* Cons. Compl. ¶ 2. And similar to the C.D. Cal. class plaintiffs, they bring claims for invasion of privacy, unjust enrichment, and violations of Florida's unfair-competition law on behalf of putative nationwide and Florida classes. Compl. ¶¶ 95, 110-59; *see Villanueva* Cons. Compl. ¶¶ 319, 443-75.

Plaintiffs do not plead any facts connecting this suit to Florida other than their residence in the state.

### C. Private plaintiffs filed additional copycat actions in other Districts.

Weeks after Plaintiffs filed this case, other plaintiffs filed similar actions against the same Defendants in the Western District of Missouri, the Northern District of California, and the District of New Jersey. Compl., *Middleton v. ByteDance Inc.*, No. 4:24-cv-00742 (W.D. Mo. Nov. 15, 2024), Dkt. 1; Compl., *McKissick v. ByteDance Inc.*, No. 3:24-cv-08051 (N.D. Cal. Nov. 15, 2024), Dkt. 1; Compl., *Lanser v. ByteDance Inc.*, No. 2:24-cv-10818 (D.N.J. Nov. 27, 2024), Dkt. 1. Those complaints are near-verbatim copies of Plaintiffs' Complaint here. *See id.* Defendants intend to move to transfer those actions to the Central District of California as well.

### D. One set of plaintiffs is seeking centralization in the Northern District of California.

In early December, the *McKissick* plaintiffs filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking to centralize DOJ's case and the follow-on class actions in the Northern District of California. *See* Plaintiff Nick McKissick's Motion to Transfer Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial

Proceedings, *In re TikTok Minor Privacy Litig.*, MDL No. 3144 (J.P.M.L. Dec. 5, 2024). The motion is currently being briefed.[2]

On December 17, 2024, Plaintiffs filed a motion to stay this case pending the JPML's decision. Dkt. 15. As the Court ordered, Defendants will respond to Plaintiffs' stay motion by no later than 5:00pm ET on December 20. *See* Dkt. 16.

**LEGAL STANDARD**

This Court may transfer a pending action to another district pursuant to "first-filed" rule or, alternatively, under 28 U.S.C. § 1404(a). "The first-filed rule is a rule of equity," which provides that "when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78, 80 (11th Cir. 2013). "When the first-filed rule applies, the proper course is to transfer the second-filed case to the first-filed court to determine how the cases should proceed." *Savage v. Seterus, Inc.*, 2020 WL 230982, at *3 (S.D. Fla. Jan. 15, 2020). Courts weighing the application of the first-filed rule consider three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Chapman v. Progressive Am. Ins. Co.*, 2017

---

[2] The JPML has held that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Preferred solutions include transfer motions and "voluntary cooperation and coordination among the parties." *In re Gen. Motors LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*, 532 F. Supp. 3d 1413, 1415 (J.P.M.L. 2021).

WL 3124186, at *1 (N.D. Fla. July 24, 2017). The "party objecting to jurisdiction in the first-filed forum has the burden of demonstrating that compelling circumstances support an exception." *Id.*

Alternatively, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a); *see Laskaris v. Fifth Third Bank*, 962 F. Supp. 2d 1297, 1299 (S.D. Fla. 2013) (first-filed rule and Section 1404 are independent bases for transferring venue). In evaluating whether to transfer under Section 1404, courts employ a two-step process: First, courts determine "whether the action could have been pursued in the venue to which transfer is sought." *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016). Second, courts assess "whether convenience and the interest of justice require transfer." *Id.*

To assess the second prong under Section 1404, courts analyze a number of public and private factors, including "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and

the interests of justice, based on the totality of the circumstances." *In re World Wide Med. Tech. LLC*, 2012 WL 1252423, at *1 (N.D. Fla. Apr. 13, 2012).

**ARGUMENT**

Both the first-filed rule and Section 1404 call for transferring this case to the Central District of California. Transfer is required under the first-filed rule because, when Plaintiffs filed this case, multiple lawsuits challenging the *same* alleged conduct by the *same* Defendants under the *same* legal theories—including an essentially identical putative class of Florida residents—were already pending in the Central District of California. Alternatively, the Court should transfer this case under Section 1404 because this action could have been filed in the Central District of California and the convenience of parties and witnesses and the interest of justice compel transfer to that District.

**I. The Court should transfer this action to the Central District of California under the first-filed rule.**

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). "The first-to-file rule does not require that the complaints be mirror images of each other." *Marrero v. Laundress, LLC*, 2024 WL 478370, at *3 (M.D. Fla. Jan. 26, 2024). With respect to class actions, the rule does not require that the named plaintiffs or even the class

definitions be exactly the same. *See MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*, 2022 WL 17484308, at *2 (S.D. Fla. Nov. 10, 2022). All that is needed is "a similarity or an overlapping in subject matter," *Marrero*, 2024 WL 478370, at *3, and "sufficiently similar" classes, *MSP Recovery*, 2022 WL 17484308, at *3.

Each of the first-filed rule's factors compels transferring this case to the Central District of California: (1) the C.D. Cal. actions were filed before this action; (2) the C.D. Cal. actions and this action involve the same Defendants and nearly identical putative classes; and (3) the C.D. Cal. actions and this action involve the exact same subject matter. *See Chapman*, 2017 WL 3124186, at *1.

### A. The Central District of California class actions were filed first.

The *A.A.* and *Villanueva* actions were filed on August 9, 2024 and September 17, 2024, respectively. *A.A.* Compl.; *Villanueva* Compl. Plaintiffs did not file this action until October 15, 2024—more than two months after *A.A.* was filed. The C.D. Cal. class actions were first-filed. *See Blue Gentian, LLC v. Tristar Prods., Inc.*, 2013 WL 12096361, at *1-2 (S.D. Fla. June 14, 2013) (transferring case to District where the first action had been filed two months earlier).

### B. The Central District of California class actions and this action involve closely overlapping parties.

The parties in the C.D. Cal. class actions and this action are also sufficiently similar to compel transfer under the first-filed rule. All three actions are directed at the same six Defendants. Compl. at p. 1; *Villanueva* Cons. Compl. at p. 1; *see also*

*Bankers Ins. Co. v. DLJ Mortg. Cap., Inc.*, 2012 WL 515879, at *2 (M.D. Fla. Jan. 26, 2012) (recommending transfer where first-filed case involved all but one of the same defendants as the second-filed case), *R. & R. adopted*, 2012 WL 523629 (M.D. Fla. Feb. 16, 2012).

And Plaintiffs, while different individually, all bring claims on behalf of similar purported classes. In both this action and the C.D. Cal. class actions, Plaintiffs propose virtually identical nationwide classes of "[a]ll United States residents (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without notifying their parents and obtaining verifiable parental consent beforehand." Compl. ¶ 95; *see Villanueva* Cons. Compl. ¶ 316.[3] Likewise, Plaintiffs' proposed Florida subclass is defined almost exactly the same as the C.D. Cal. class plaintiffs' proposed Florida class. *See* Compl. ¶ 95; *Villanueva* Cons. Compl. ¶ 319. And just as the C.D. Cal. class plaintiffs' class period runs from March 2019 to the present, *Villanueva* Cons. Compl. ¶ 314, Plaintiffs here solely allege conduct dating back to "March 2019," Compl. ¶¶ 25-26, 94-109.[4] The similarity of parties therefore weighs in favor of transfer.

---

[3] The *Villanueva* consolidated complaint inserts "first" between "without" and "notifying."

[4] Plaintiffs here fail to define a class period.

### C. The Central District of California class actions and this action involve the same subject matter and overlapping issues.

Transfer is proper under the first-filed rule because "the issues are similar and substantially overlap" between the three class actions. *See Soldevilla v. Henkel Corp.*, 2022 WL 18464390, at *2 (S.D. Fla. Oct. 26, 2022). Like the similarity-of-parties prong, "[t]he first filed rule does not require that the … issues involved be identical, only that they are sufficiently similar[] or substantially overlap." *Vital Pharms., Inc. v. PhD Mktg., Inc.*, 2020 WL 6162794, at *2 (S.D. Fla. July 28, 2020); *see Marrero*, 2024 WL 478370, at *3 (transferring case to first-filed jurisdiction where "the related cases [would] involve common inquiries" and "substantially overlapping subject matter"); *Soldevilla*, 2022 WL 18464390, at *2 (finding substantial overlap even where the later-filed action "assert[ed] additional claims that [were] not alleged in" the first-filed action).

The class actions all allege that the same conduct violates overlapping laws in the same ways. That's no surprise—the C.D. Cal. class actions and this case all concern the same facts alleged in DOJ's complaint. *See* Compl. ¶¶ 23-41; *Villanueva* Cons. Compl. ¶¶ 63-145. Thus, for example, the complaints each allege that Defendants failed to prevent children under 13 from accessing the TikTok platform by "pass[ing] through TikTok's age gate." Compl. ¶ 29; *Villanueva* Cons. Compl. ¶ 139. The complaints allege that, once a user has accessed the TikTok platform, Defendants collected information from those underage users. *See* Compl.

¶¶ 38-39; *Villanueva* Cons. Compl. ¶ 161. And each complaint alleges that Defendants collected that information without parental notice or consent. Compl. ¶ 37; *Villanueva* Cons. Compl. ¶ 14. The factual theories are the same across the cases.

There is also substantial overlap between Plaintiffs' causes of action and those asserted in the C.D. Cal. class actions: both complaints assert that Defendants' alleged conduct gives rise to invasion-of-privacy, unjust-enrichment, and unfair-competition claims—including claims under Florida's Deceptive and Unfair Trade Practices Act. Compl. ¶¶ 110-17, 126-59; *Villanueva* Cons. Compl. ¶¶ 333-602. Because "the issues are similar and substantially overlap," *Soldevilla*, 2022 WL 18464390, at *2, this final requirement favors transfer.

* * *

Since all three elements of the first-filed rule are satisfied, the Court should transfer this action to the Central District of California, where the first-filed actions are pending.

## II. This case should be transferred to the Central District of California under 28 U.S.C. § 1404.

Even if the first-filed rule were not satisfied, the Court should still transfer this action to the Central District of California under Section 1404. To start, this case could have been brought in the Central District of California—the California

court would have subject-matter jurisdiction over the action, venue would be proper in that District, and there would be no issues with service of process.

Moreover, Section 1404's convenience and interest-of-justice factors overwhelmingly favor transferring this case to the Central District of California. Among other reasons, the Court should grant this motion because the vast majority of relevant witnesses and evidence are located in California; Plaintiffs' allegations point to California as the focal point of this litigation; multiple Defendants—including the Defendant that provides the TikTok platform in the United States—are based in California; and transfer would conserve judicial resources and avoid duplicative litigation that could result in conflicting judgments.

**A. This action could have been brought in the Central District of California.**

As a threshold matter, this lawsuit "might have been brought" in the Central District of California. 28 U.S.C. § 1404(a). An action "might have been brought" in a District in which the court would have subject-matter jurisdiction over the action, venue is proper, and defendants would be amenable to service of process. *Trump v. Simon & Schuster, Inc.*, 2023 WL 5000572, at *5 (N.D. Fla. Aug. 4, 2023). The Central District of California meets all of these requirements.

### 1. The Central District of California could exercise subject-matter jurisdiction over this action.

A federal court in the Central District of California would have subject-matter jurisdiction over this action to the same extent as this Court. Plaintiffs assert that the Court has subject-matter jurisdiction over their claims pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Compl. ¶ 63. A federal court has subject-matter jurisdiction under CAFA if (1) there are at least 100 members in all of the proposed classes, (2) plaintiffs' combined claims exceed $5 million, and (3) any class member is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B). If one federal court has jurisdiction under CAFA, another federal court would have jurisdiction as well. *See Rojas v. Am. Honda Motor Co.*, 2019 WL 6324616, at *3 (S.D. Fla. Nov. 26, 2019) (transfer of case originally filed in Southern District of Florida proper because "[t]he Central District of California would have subject matter jurisdiction over a case brought pursuant to CAFA"); *see also Bonilla v. United Brands Co.*, 2011 WL 13220120, at *2 (C.D. Cal. Mar. 21, 2011) ("As a federal district court, the [transferee court] also ha[d] subject matter jurisdiction" over CAFA action.).

Plaintiffs claim, albeit with some generality, that their lawsuit meets CAFA's jurisdictional requirements. Compl. ¶ 63. Plaintiffs allege that their proposed classes include "millions of minor individuals," *id.* ¶ 99; that their requested damages exceed $5 million, *id.* ¶ 63; and that all three named Plaintiffs

are citizens of Florida, *id.* ¶¶ 67, 74, 81, while no Defendant is a resident of Florida, *id.* ¶¶ 88-93. Although Defendants dispute that Plaintiffs can succeed in certifying a class or are otherwise entitled to relief, Plaintiffs' allegations, taken as true, indicate that a district court in the Central District of California could exercise subject-matter jurisdiction over Plaintiffs' claims.

**2. Venue would be proper in the Central District of California.**

This action also "might have been brought" in the Central District of California because venue would be proper in that District. 28 U.S.C. § 1404(a). Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or, if nothing else, in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. §§ 1391(b)(2), (3).[5] Under either of these provisions, Plaintiffs could have sued in the Central District of California.

Taking Plaintiffs' Complaint at face value, a "substantial part of the [alleged] events or omissions giving rise to [their] claim[s] occurred" in the Central District of California. *Id.* § 1391(b)(2). The Complaint takes aim at Defendants' alleged "failure [to] disclose that [they] collect[] and sell[] personally identifiable information ('PII') of millions of minor children, without the consent of the minors

[5] Though not relevant here, Section 1391(b) also provides that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

or their parents." Compl. ¶ 1. If that were true, this litigation's "center of gravity" would be TikTok Inc.'s headquarters in the Central District of California, given that TikTok Inc. is the entity that provides the TikTok platform to users in the United States. O'Connor Decl. ¶ 3. It is little wonder that DOJ and the *A.A.* and *Villanueva* plaintiffs filed in that district.

Even if Plaintiffs could claim that a "substantial part" of the alleged conduct occurred outside of the Central District of California—and, to be clear, their Complaint makes no allegations to that effect—venue would still be proper in the Central District of California because at least one "defendant is subject to [that] court's personal jurisdiction with respect to [this] action." 28 U.S.C. § 1391(b)(3). TikTok Inc. is a California corporation with its principal place of business in Culver City, California. Compl. ¶ 88. As such, TikTok Inc. would be subject to personal jurisdiction—and venue would be proper—in the Central District of California. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) ("Citizenship or domicile—or, by analogy, incorporation or principal place of business for corporations—also indicates general submission to a State's powers.").

**3. There are no issues with service of process in the Central District of California.**

Finally, Defendants are amenable to service of process in the Central District of California. "The starting point for an analysis of service of process in federal

courts is Federal Rule of Civil Procedure 4." *Sonate Corp. v. Dunkin Brands Grp., Inc.*, 2023 WL 2624756, at *2 (M.D. Fla. Mar. 24, 2023). Under Rule 4(d), "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1). To fulfill that duty, a defendant can waive service. *Id.*

Before Plaintiffs filed this action, Defendants waived service in the *United States*, *A.A.*, and *Villanueva* actions pursuant to Rule 4(d). *See* Waiver of Service, *United States v. ByteDance Ltd.*, No. 2:24-cv-06535-ODW-RAO (C.D. Cal. Aug. 2, 2024), Dkt. 15; Waiver of Service, *A.A. v. ByteDance*, No. 2:24-cv-06784-ODW-RAO (C.D. Cal. Aug. 9, 2024), Dkt. 22; Waiver of Service, *Villanueva v. ByteDance*, No. 2:24-cv-07922-ODW-RAO (C.D. Cal. Sept. 17, 2024), Dkt. 19. Defendants likewise waived service here. *See* Dkts. 3-8. Service of process therefore is not an issue in this case, and would not have been an issue if Plaintiffs had filed the case in the Central District of California. *See MindbaseHQ LLC v. Google LLC*, 2021 WL 1923142, at *2 (S.D. Fla. May 13, 2021) ("might have

been brought" element satisfied where "Defendant stated that it would be amenable to accepting service in California and would not challenge service").[6, 7]

* * *

Because a court in the Central District of California would have subject-matter jurisdiction over this action, venue would be proper in that District, and Defendants waived service, this action "might have been brought" in the Central District of California. 28 U.S.C. § 1404(a).

**B. The Section 1404 factors overwhelmingly favor transferring this action to the Central District Of California.**

Section 1404's convenience and interest-of-justice factors broadly favor transferring this action to the Central District of California. Most importantly, many party and nonparty witnesses reside in California; relevant evidence would be located in California; Plaintiffs' allegations make clear that the locus of operative facts is in California; and, given that other class-action lawsuits making nearly identical allegations to those in the Complaint are already pending in the

---

[6] *See also, e.g.*, *Stokes v. Markel Am. Ins. Co.*, 2019 WL 8017457, at *2-3 (S.D. Fla. June 28, 2019) ("might have been brought" element satisfied where defendant consented to service in transferee district); *Thomas v. Nexion Health, Inc.*, 2016 WL 3057987, at *2 (D. Md. May 31, 2016) ("might have been brought" element satisfied where defendant agreed to waive service).

[7] Defendants recognize that under *Hoffman v. Blaski*, 363 U.S. 335 (1960), the "might have been brought" factors are analyzed as of the time "a suit is commenced." *Id.* at 344. In this case, Defendants had already waived service in the DOJ, *A.A.*, and *Villanueva* actions *by the time* Plaintiffs filed this follow-on action asserting the same allegations against the same Defendants. It was therefore apparent that Defendants would be amenable to service in California at the time this suit was filed.

Central District of California, transfer would enhance efficiency, conserve resources, and reduce the potential for inconsistent judgments. The remaining Section 1404 factors do not militate against transfer.

The Court should transfer the action to the Central District of California.

**1. The convenience of witnesses favors transfer.**

"Courts have determined that the convenience of witnesses is one of the most important factors in determining whether granting transfer is appropriate." *Amaya v. Victoria's Secret Stores, LLC*, 2009 WL 10667492, at *4 (S.D. Fla. Aug. 3, 2009). Where, as here, a majority of likely witnesses are located in the proposed transferee District or "someplace convenient" to it, the convenience of witnesses favors granting a motion to transfer. *Id.* at *4-5; *see Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1277 (S.D. Fla. 2011).

In *Motorola Mobility*, for instance, a court in the Southern District of Florida transferred an action to the Western District of Washington on the ground that defendant "Microsoft is located in Washington," which meant "the majority of the witnesses who were involved with the products and patents at issue in the complaint are located in Washington." 804 F. Supp. 2d at 1277. Likewise, in *Amaya*, a court in the Southern District of Florida transferred a case to the Southern District of Ohio because the defendants were located in Ohio and employees "involved in the design, manufacture, marketing, testing, inspection, or

distribution of the allegedly defective apparel" were "either located in Ohio or are likely to reside someplace convenient to the Southern District of Ohio." 2009 WL 10667492, at *4.

TikTok Inc.'s and TikTok U.S. Data Security Inc.'s principal places of business are both in Culver City, California, Compl. ¶¶ 88-89, which is in the Central District of California.[8] TikTok Inc. provides the TikTok platform in the United States, and TikTok U.S. Data Security Inc. controls access to protected U.S. user data and monitors the security of the platform. O'Connor Decl. ¶¶ 3, 6. In light of these entities' functions, it only makes sense that many employees responsible for designing the TikTok platform, crafting Defendants' policies governing the collection and use of user data, and implementing Defendants' content-moderation systems and practices are based in the Central District of California. *See id.* ¶¶ 5, 8-10 (identifying relevant witnesses).

In contrast to the abundance of likely witnesses located in or "someplace convenient" to the Central District of California, *see Amaya*, 2009 WL 10667492, at *4-5, the only potential Florida witnesses are the named Plaintiffs and their minor children. Compl. ¶¶ 67, 74, 81. That is not enough to shift the convenience-

---

[8] *See Symantec Corp. v. V-Micro Inc.*, 2008 WL 11338120, at *1 (C.D. Cal. Apr. 3, 2008) ("Culver City, California … is located in the Central District of California."); *see also* Jurisdiction | Central District of California | United States District Court, https://www.cacd.uscourts.gov/jurisdiction (Central District includes Los Angeles County).

of-witnesses factor in Plaintiffs' favor. *See Duffy v. Gen. Motors, Inc.*, 2019 WL 3412171, at *2 (S.D. Fla. June 6, 2019) (recommending transfer where "the two named Plaintiffs … [were] the only witnesses located in Florida"), *R. & R. adopted*, 2019 WL 3408927 (S.D. Fla. June 25, 2019); *Adkins v. United States*, 2006 WL 398400, at *2 (M.D. Fla. Feb. 16, 2006) (transferring case where the plaintiff was the only witness in Florida). In any event, *only one* of the named Plaintiffs even resides in the Northern District of Florida. *See* Compl. ¶¶ 67, 74, 81. That, too, weighs against keeping the case here. *See Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015) (ordering transfer where "the majority of the named plaintiffs [did] not reside" in the District in which they sued).

Finally, in assessing the convenience of witnesses, courts "do[] not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *Glen v. Am. Airlines, Inc.*, 2020 WL 13119933, at *3 (S.D. Fla. May 13, 2020). Rather, "the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Id.* In cases like this, where Plaintiffs' claims hinge on Defendants' "creation and operation" of a web-based service that is accessible nationwide, Defendants' employees "are the witnesses who are crucial to [Plaintiffs'] case and will likely account for most of the testimony obtained in discovery and presented at trial." *See id.* The residences of customers who used the online service receive less

weight on the convenience-of-witnesses scale because "[t]hese witnesses cannot speak to Defendant's knowledge of its alleged" unlawful conduct. *See id.*

The convenience of the witnesses who are most relevant to Plaintiffs' case favors transferring this case to the Central District of California.

**2. The locus of operative facts is in California, not in Florida.**

Because Plaintiffs' Complaint challenges Defendants' operation of the TikTok platform, the alleged operative facts would have largely taken place in the Central District of California. As noted, TikTok Inc. provides the TikTok platform in the United States, and TikTok U.S. Data Security Inc. controls access to protected U.S. user data and monitors the platform's security—functions that go to the heart of Plaintiffs' claims. *See* O'Connor Decl. ¶¶ 3, 6. The truth of Plaintiffs' allegations, and the viability of their claims, will most likely rise or fall based on facts that transpired within these Culver City-based entities.

*Glen v. American Airlines* is instructive. There, "the crux of Plaintiff's claim [was] that Defendant [American Airlines] knowingly trafficked in Cuban Properties through its operation of Book AA Hotels[,] a website accessible nationwide," in violation of the Cuban Liberty and Democratic Solidarity Act. 2020 WL 13119933, at *1, *5. American Airlines moved to transfer the case to the Northern District of Texas, where its principal place of business was located. *Id.* at *2. In considering the locus of operative facts, the court noted that if the plaintiff's

allegations were true, American Airlines' trafficking "would have taken place at [its] headquarters in Texas, where [its] employees responsible for Book AA Hotels [were] located." *Id.* at *5. Moreover, the court held, "[t]he fact that Florida residents [were] among the customers who booked reservations at the Cuban Properties through Book AA Hotels does not transform Florida into the locus of operative facts of Defendant's alleged trafficking." *Id.* The court granted American Airlines' motion and transferred the case to Texas. *Id.* at *7.

The same reasoning warrants transferring this action to the Central District of California. Plaintiffs' Complaint targets the design and function of the TikTok platform—specifically, the platform's alleged collection and use of children's personal information. Compl. ¶ 1. Plaintiffs acknowledge that "TikTok is used nationwide." *Id.* ¶ 133. Indeed, they style their case as a "nationwide class action." *Id.* ¶ 94. It only makes sense that the locus of operative facts would be at TikTok Inc.'s and TikTok U.S. Data Security Inc.'s headquarters, "where … employees responsible for [the TikTok platform] are located." *See Glen*, 2020 WL 13119933, at *5. That "Florida residents are among the customers who" used the TikTok platform "does not transform Florida into the locus of operative facts," particularly given that the platform is "accessible nationwide." *See id.*

Plaintiffs may assert that the locus of operative facts is in Florida because their children accessed the TikTok platform in Florida. But a "[p]laintiff's

unilateral act of accessing" an online service in Florida does not turn Florida into the locus of operative facts. *See Joseph v. McReady*, 2020 WL 13615158, at *2 (S.D. Fla. Mar. 23, 2020). Where a product is available nationwide, the plaintiff's use or purchase of the product in a given District does not render that District the locus of operative facts. *See Duffy*, 2019 WL 3412171, at *3 ("[T]he place of purchase for a product offered nationwide does not give rise to a substantial interest in any single venue."). In *Advantus, Corp. v. Sandpiper of California, Inc.*, 2019 WL 4751725 (M.D. Fla. Sept. 30, 2019), for example, the court noted that "the related products were sold in Florida," but Florida was "no more relevant to this case than any of the other places nationwide" where the products were available. *Id.* at *34. Likewise here, the fact that the TikTok platform is available in Florida does not make this District any "more relevant to this case than any of the other places nationwide" where users may access the platform. *See id.*

Because the locus of operative facts is in the Central District of California, this Court should transfer the action to that District.

**3. Trial efficiency and the interest of justice favor transfer.**

With the first-filed cases pending in the Central District of California, trial efficiency and the interest of justice favor transferring this action. As explained, there is substantial overlap between this case and the C.D. Cal. class actions, all of which borrow significantly from DOJ's complaint. *See supra* pp. 2-6. Courts have

held that the "most significant" factor weighing in favor of Section 1404 transfer is a pending action in the transferee jurisdiction that "alleges identical facts and overlapping claims[.]" *Duffy*, 2019 WL 3412171, at *3; *see Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*, 2017 WL 6760811, at *4 (S.D. Fla. Oct. 4, 2017) ("[C]ourts in this Circuit have transferred cases pursuant to § 1404(a) because of lawsuits involving substantially similar issues pending in other districts—even where the plaintiff was not a party to those other suits.") (collecting cases).

Permitting this action to proceed on a parallel path to *A.A.*, *Villanueva*, and the other follow-on class actions will result in numerous inefficiencies. It will cause the parties to expend resources on the same discovery in separate cases, when everything could have proceeded in a coordinated fashion in the Central District of California. *See Amaya*, 2009 WL 10667492, at *6 ("Based on the similarities between the complaints … , discovery will likely require a showing of identical information in each case."). Parallel proceedings will unnecessarily burden the court system by asking multiple courts across the country to oversee virtually identical litigations and make legal determinations regarding the same issues. *See Duffy*, 2019 WL 3412171, at *3 ("[C]onducting duplicative litigation in multiple venues is contrary to judicial economy."). And it will risk inconsistent outcomes, reducing public confidence in the court system. *See id.* ("[R]endering

inconsistent results may undermine the public's confidence in the judicial system to provide fair and equal outcomes.").

Given that the pending actions in the Central District of California allege that the same conduct by Defendants violates the law under the same theories of liability, the Court should transfer this action to the Central District of California for trial efficiency and in the interest of justice.

**4. The convenience of the parties favors transfer.**

For the reasons explained above, consolidating parallel actions into a single jurisdiction is more convenient for all parties involved. *See, e.g.*, *Grillo's Pickles, Inc. v. Patriot Pickle, Inc.*, 2023 WL 9094237, at *9-10 (S.D. Fla. Nov. 9, 2023) ("convenience [of] the parties would be better served if the action were transferred" because it would "prevent multiple actions involving the same witnesses and overlapping facts from being held in two jurisdictions"), *R. & R. adopted*, 2023 WL 8467269 (S.D. Fla. Dec. 7, 2023).[9] Moreover, litigating this case in the Northern District of Florida will require every Defendant, and every Plaintiff but Lightwine, to travel. In contrast, the Central District of California is home to two Defendants—including the Defendant that provides the TikTok platform in the United States. O'Connor Decl. ¶¶ 3-7.

[9] As noted, Defendants intend to seek to transfer the Western District of Missouri, Northern District of California, and District of New Jersey actions to the Central District of California.

This case is similar to *Trump v. Simon & Schuster*, where the plaintiff lived in the Southern District of Florida, one defendant lived in Washington, D.C., and the two remaining defendants lived in the Southern District of New York. 2023 WL 5000572, at *6. Recognizing that "the Northern District of Florida ha[d] no relationship to—and thus would not appear to be a convenient forum for—any of the parties involved in this case," the court concluded that the convenience-of-parties factor favored transfer to New York. *Id.* at *6, *9. That the plaintiff resided in a different judicial District in Florida—like two of the three Plaintiffs here—did not tip the convenience factor in the plaintiff's favor. *Id.* at *6. It made more sense to litigate the case where two of the three defendants were based, *id.*, just as it makes sense to litigate this case in the District where two of the three domestic Defendants (and the state where all three domestic Defendants) are based.[10]

**5. The availability of compulsory process favors transfer.**

A court in the Central District of California would have subpoena power over any former employees of Defendants who live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A), (2)(A).[11] On the other hand, a Florida court does not have the "power to compel attendance of out-of-state witnesses who

---

[10] It would also be more convenient for the foreign Defendants to litigate in the District where TikTok Inc. and TikTok U.S. Data Security Inc. are based.

[11] The Central District of California could also compel any former employees who live in that state to testify at trial if they "would not incur substantial expense." Fed. R. Civ. P. 45(c)(B)(ii).

Case 2:24-cv-80236-WPD Document 19-1 Filed on FLSD Docket 10/17/2024 Page 36 of 42

reside and work more than 100 miles away." *TocMail Inc. v. Microsoft Corp.*, 2020 WL 12442001, at *3 (S.D. Fla. Oct. 15, 2020). Given that TikTok Inc. and TikTok U.S. Data Security Inc. are based in the Central District of California, their former employees are much more likely to reside within the transferee court's subpoena power than within this Court's subpoena power. So this factor weighs in favor of a transfer to California as well.

#### 6. The location of documents and access to sources of proof favor transfer.

Due to the nature of Plaintiffs' claims, which challenge the operation of the TikTok platform, the vast majority of relevant evidence will be in Defendants' possession. And given that all U.S.-based Defendants are based in California—two of them in the Central District of California—the bulk of that evidence is very likely located in California. This factor favors transfer. *See Price v. U.S. Dep't of Just.*, 2018 WL 11397210, at *3 (S.D. Fla. May 21, 2018) (fact that defendant was "headquartered in the District of Columbia along with all the relevant documents and sources of proof" favored transfer to D.C.).[12]

[12] Defendants acknowledge that with "the advent of electronic discovery, most courts have recognized that the physical location of relevant documents is no longer a significant factor in the transfer inquiry." *Trump*, 2023 WL 5000572, at *6. Despite its reduced significance, this factor still favors transfer.

**7. None of the remaining Section 1404 factors militate against transferring this action to the Central District of California.**

Whereas each of the foregoing factors favors transferring this action to the Central District of California, none of the remaining Section 1404 factors warrants keeping the litigation here.

Beginning with *the Court's familiarity with the law*: "The forum's familiarity with the governing law is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Trump*, 2023 WL 5000572, at *8. This case does not involve complex questions of foreign law. And "to the extent that Florida law will govern certain of the causes of action … , district courts often have little trouble applying the law of other states." *Id.* Moreover, it bears noting that Plaintiffs allege that Defendants violated an order that Judge Wright issued in a prior case. Compl. ¶ 3. Not only is Judge Wright the most familiar with that order, the order itself provides that he retains jurisdiction over its "construction, modification, and enforcement." Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief, *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019), Dkt. 10. It only makes sense that Judge Wright should decide whether Defendants violated his own order.

Nor does *Plaintiffs' choice of forum* cut against transferring this case. While a plaintiff's choice of forum generally receives some degree of deference, "courts

have consistently held that a class representative's choice of forum is entitled to substantially less deference." *Amaya*, 2009 WL 10667492, at *3. Plaintiffs may live in Florida, but they purport to represent a *nationwide* class. Compl. ¶¶ 94-95. Further, "when the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff"—as is the case here—"the choice of forum is entitled to less consideration." *Amaya*, 2009 WL 10667492, at *4. And the fact that "the majority of the named plaintiffs do not reside" in this District "render[s] their choice of forum less significant." *Cung Le*, 108 F. Supp. 3d at 779; *see Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1214 (N.D. Fla. 2020) (similar). Plaintiffs' choice of forum is thus entitled to minimal weight and does not counsel against transfer.

Finally, the *relative means of the parties* does not weigh against transferring the action. While Defendants are corporate entities and Plaintiffs are individuals, that does not end the analysis. Regardless of whether Defendants have more resources at their disposal, there is no reason to believe that "litigating this suit in California would be cost-prohibitive" for Plaintiffs. *See Jongerius Panoramic Techs., LLC v. Google Inc.*, 2012 WL 13036199, at *4 (M.D. Fla. July 13, 2012) (finding relative-means factor "neutral" even though the defendants were "Fortune 100 companies"); *see also Game Controller Tech. LLC v. Sony Comput. Ent. Am. LLC*, 994 F. Supp. 2d 1268, 1275 (S.D. Fla. 2014) (finding relative-means factor

neutral where plaintiff did not claim it was "unable to bear the costs of litigation" if the action were transferred). Since Plaintiffs' means are unlikely to cause them to "abandon th[e] action" in the event of transfer, *see Combs*, 461 F. Supp. 3d at 1213, the parties' relative means does not militate against transfer.

## CONCLUSION

For the reasons stated herein, the Court should transfer this action to the Central District of California.

Case 4:24-cv-00436-MW-MJF Document 19-1 Filed 12/17/24 Page 40 of 42

Dated: December 17, 2024

Respectfully submitted,

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

GLENN BURHANS
(Fla. S.B. #605867)
gburhans@stearnsweaver.com
HANNAH MURPHY
hmurphy@stearnsweaver.com
(Fla. S.B. #1032759)
STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.
106 East College Avenue, Suite 700
Tallahassee, Florida 32301
Telephone: +1 850 580 7200
Facsimile: +1 850 329 4861

DANIEL M. PETROCELLI
(*pro hac vice*)
dpetrocelli@omm.com
STEPHEN J. McINTYRE
smcintyre@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorneys for Defendants ByteDance Inc., ByteDance Ltd., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

**LOCAL RULE 7.1(F) CERTIFICATION**

Pursuant to Northern District of Florida Rule 7.1(F), I certify that the foregoing Defendant's Memorandum in Support of Motion to Transfer contains 7,052 words, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F).

Dated: December 17, 2024

*<u>/s/ Daniel M. Petrocelli</u>*
Daniel M. Petrocelli

## CERTIFICATE OF SERVICE

I certify that on December 17, 2024, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: December 17, 2024

*<u>/s/ Daniel M. Petrocelli</u>*
Daniel M. Petrocelli

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

| | |
|---|---|
| SCOTT HUMBERT, on behalf of E.H. and J.H.; TONIA LIGHTWINE, on behalf of B.L.; and MONROE SEIGLE, on behalf of M.S.,<br><br>*Plaintiffs*,<br><br>v.<br><br>BYTEDANCE INC., BYTEDANCE LTD., TIKTOK LTD., TIKTOK INC., TIKTOK PTE. LTD., and TIKTOK U.S. DATA SECURITY INC.,<br><br>*Defendants*. | Case No. 5:24-cv-00236-MW-MJF |

**<u>DECLARATION OF BRIAN O'CONNOR</u>**

I, Brian O'Connor, declare as follows:

1. I am currently employed by ByteDance Inc. in the Business Department for Human Resources and Management. I have been employed by ByteDance Inc. since July 2021 and am based in ByteDance Inc.'s Culver City, California office. In addition to providing Human Resources and Management services for ByteDance Inc., I also provide these services for TikTok Inc. I have personal knowledge of the facts described below. If called as a witness, I could and would testify competently thereto.

2. I understand that Plaintiffs have filed a putative class action complaint against Defendants ByteDance Inc., ByteDance Ltd., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. (collectively, "Defendants"). I submit this Declaration in support of Defendants' motion to transfer this action to the Central District of California.

3. In the United States, the TikTok platform is provided by TikTok Inc.

4. TikTok Inc. is a California-incorporated company that has its principal place of business in Culver City, California. TikTok Inc. has multiple offices in California, among others around the country. TikTok Inc. has only one office in Florida, which is located in Miami.

5. As of December 16, 2024, TikTok Inc. employed 3,571 full-time employees in the United States, 2,075 of whom worked in California. The U.S. engineers employed by TikTok Inc. who are responsible for the technical design, development, maintenance, testing, operation, and functionality of the TikTok platform and backend system are primarily based in the company's California offices. TikTok Inc. does not employ engineers who are responsible for the technical design, development, maintenance, testing, operation, and functionality of the TikTok platform and backend system in Florida.

6. TikTok U.S. Data Security Inc. is a special purpose subsidiary of TikTok Inc., created to control access to protected U.S. user data and to monitor the security of the TikTok platform.

7. TikTok U.S. Data Security Inc. is a Delaware-incorporated company that has its principal place of business in Culver City, California. TikTok U.S. Data Security Inc. has no offices in Florida.

8. As of December 16, 2024, TikTok U.S. Data Security Inc. employed 2,325 full-time employees in the United States, 1,072 of whom worked in California. The U.S. engineers employed by TikTok U.S. Data Security Inc. who are responsible for developing policies and code to protect U.S. user data and secure the TikTok platform are primarily based in the company's California offices. TikTok U.S. Data Security does not employ engineers who are responsible for developing policies and code to protect U.S. user data and secure the TikTok platform in Florida.

9. Many current and former employees of TikTok Inc. and TikTok U.S. Data Security Inc. with knowledge relevant to this case are based in Los Angeles, California. For example, Jordan Shrader is a former employee of the Trust and Safety team at TikTok Inc. While employed at TikTok Inc., Ms. Shrader had responsibilities related to Defendants' practices and procedures regarding processing purported parents' or guardians' requests to access or delete alleged

underage users' information. When Ms. Shrader left the company, she resided in the Los Angeles area. Likewise, Eric Han is a former employee of TikTok U.S. Data Security Inc. who resided in the Los Angeles area when he left the company. Mr. Han's former job responsibilities related to Defendants' underage moderation policies and procedures. Tara Wadhwa is currently employed by the Trust and Safety team at TikTok Inc., and is based in Los Angeles. Ms. Wadhwa likewise has job responsibilities related to the implementation of Defendants' underage moderation policies and procedures.

10. Other employees of TikTok Inc. and TikTok U.S. Data Security Inc. with knowledge relevant to this case are based in the San Francisco Bay Area. These include Sandeep Grover, who is part of the Trust and Safety team at TikTok Inc. and has responsibilities regarding Defendants' practices and procedures concerning the TikTok platform's age gate and age assurance measures; and Mark Yeh, who is employed by TikTok U.S. Data Security Inc. and is knowledgeable about Defendants' underage moderation practices.

11. If any hard-copy documents related to the technical design, development, maintenance, testing, operation, and functionality of the TikTok platform or related to the protection of U.S. user data and security of the TikTok platform exist, such documents would be located in California as well.

12. One of TikTok Inc. and TikTok U.S. Data Security Inc.'s affiliated companies is ByteDance Inc.

13. ByteDance Inc. is a Delaware-incorporated company that has its principal place of business in San Jose, California. ByteDance Inc. has no offices in Florida.

14. The ultimate parent company of TikTok Inc., TikTok U.S. Data Security Inc., and ByteDance Inc. is ByteDance Ltd.

15. ByteDance Ltd. is also the ultimate parent company of TikTok Ltd. and TikTok Pte. Ltd.

16. ByteDance Ltd., TikTok Ltd., and TikTok Pte. Ltd. are not incorporated in the United States and do not have offices in this country. ByteDance Ltd. is a Cayman Islands company. TikTok Pte. Ltd. is a Singapore company. TikTok Ltd. is a Cayman Islands company.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 17th day of December, 2024 in Culver City, California.

DocuSigned by:
Brian O'Connor
BA53145F8506415...

Brian O'Connor

**CERTIFICATE OF SERVICE**

I certify that on December 17, 2024, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: December 17, 2024

*<u>/s/ Daniel M. Petrocelli</u>*
Daniel M. Petrocelli