David S. Golub, (pro hac vice)
Steven Bloch, (pro hac vice)
Ian W. Sloss, (pro hac vice)
Jennifer Sclar, (pro hac vice)
John Seredynski, (pro hac vice forthcoming)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com
sbloch@sgtlaw.com

Patrick Carey, (Bar No. 308623)
Mark Todzo, (Bar No. 168389)
**LEXINGTON LAW GROUP, LLP**
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

Eric Kafka (pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Karina Puttieva (SBN 317702)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kputtieva@cohenmilstein.com
jwaldman@cohenmilstein.com

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

J.C., a minor, by and through their guardian ad litem, JODY VILLANUEVA; A.J., a minor, by and through their guardian ad litem, ALEXIS DOUGLAS; B.M., a minor, by and through their guardian ad litem, MARCELO MUTO; L.F., a minor, by and through their guardian ad litem, HEATHER BRESETTE; D.M., a minor, by and through their guardian ad litem, DARRYL MAULTSBY; D.R.H., D.W.H., and R.W., minors, by and through their guardian ad litem, RYAN HOYT; M.G., a minor, by and through their guardian ad litem, VALERIE GATES; C.P., a minor, by and through their guardian ad litem, LAMARTINE PIERRE, JR.; K.F., a minor, by and through their guardian ad litem, ANGELA FAUCETT; and J.W., a minor, by and through their guardian ad litem, KAYLA JARAMILLO,

Case No.: 2:24-cv-06784-ODW-RAO

**RESPONSE IN OPPOSITION TO NONPARTIES' MOTION TO INTERVENE**

individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BYTEDANCE LTD; BYTEDANCE INC; TIKTOK LTD; TIKTOK INC; TIKTOK PTE. LTD; and TIKTOK U.S. DATA SECURITY INC.,

Defendants.

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 2
III. LEGAL FRAMEWORK .......... 5
IV. ARGUMENT .......... 5
  A. The TikTok children's data privacy actions are not properly part of the *In re Social Media Addiction* MDL .......... 6
  B. Movants fail to meet their burden to establish that a stay is appropriate. .......... 9
    1. A stay will damage Plaintiffs' ability to represent the interests of the class by delaying prosecution of this action and impeding coordination with the DOJ Action. .......... 10
    2. Movants fail to establish that they will suffer hardship or inequity in the absence of a stay. .......... 11
    3. The "orderly course of justice" is best served by allowing the parties to pursue alternatives to centralization before this Court. .......... 14
V. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re 3M Co. Lava Ultimate Prod. Liab. Litig.*, 222 F. Supp. 3d 1347 (J.P.M.L. 2016) ....................13

*Bennett v. Bed Bath & Beyond, Inc.*, 2011 WL 3022126 (N.D Cal. July 22, 2011) ....................12

*In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*, 804 F.Supp. 2d 1376 (J.P.M.L. 2011) ....................12, 13

*Calderon v. Cargill, Inc.*, 2013 WL 12205633 (C.D. Cal. Dec. 10, 2013)....................12

*Clinton v. Jones*, 520 U.S. 681 (1997)....................5

*Dependable Highway Exp., Inc., v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007) ....................5, 11

*Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920 (C.D. Cal. 2018)....................5, 10

*In re Gen. Motors LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*, 532 F. Supp. 3d 1413 (J.P.M.L. 2021) ....................13

*In re Gerber Probiotic Prods. Mktg. and Sales Pracs. Litig.*, 899 F. Supp. 2d 1378 (J.P.M.L. 2012) ....................12, 13

*In re Holiday Cruise Line Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1377 (J.P.M.L. 2015) ....................14

*In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372 (J.P.M.L. 2018) ....................12

*In re Hyundai & Kia GDI Engine Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341 (J.P.M.L. 2019) ....................13

*Landis v. North Am. Co.*, 299 U.S. 248 (1936)....................5, 11

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......... 5, 11

*In re NEC Networks, LLC, d/b/a CaptureRx Customer Data Sec. Breach Litig*
576 F. Supp. 3d 1375 (J.P.M.L. 2021) .......... 14

*In re Nelnet Servicing, LLC., Customer Data Sec. Breach Litig.*,
MDL No. 3053, 2022 WL 17843103 (J.P.M.L. Dec. 13, 2022) .......... 13

*In re Nine W. LBO Sec. Litig.*,
464 F. Supp. 3d 1383 (J.P.M.L. 2020) .......... 16

*Rivers v. Walt Disney Co.*,
980 F. Supp. 1358 (C.D. Cal. 1997) .......... 13

*Ryan v. Gencor Nutrients, Inc.*,
2015 WL 729868 (N.D Cal. Feb. 19, 2015) .......... 12

*In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*,
273 F. Supp. 3d 1357 (J.P.M.L. 2017) .......... 14

**STATUTES AND OTHER AUTHORITIES**

15 U.S.C. § 56 .......... 11

28 U.S.C. § 1404 .......... 1, 4, 5, 6, 10, 12, 13, 14

28 U.S.C. § 1407 .......... 4,10 11,12 13,14,16

Fed R. Civ. P. 24 .......... 6

Fed R. Civ. P 17 .......... 3

Fed R. Civ. P 42 .......... 6, 10

L.R.11-6.1 .......... 19

L.R. 5-4.3.4 .......... 17

L.R. 17.1.1 .......... 3

J.P.M.L R. 1(d) .......... 13

Plaintiffs J.C., a minor, by and through their guardian ad litem, JODY VILLANUEVA; A.J., a minor, by and through their guardian ad litem, ALEXIS DOUGLAS; B.M., a minor, by and through their guardian ad litem, MARCELO MUTO; L.F., a minor, by and through their guardian ad litem, HEATHER BRESETTE; D.M., a minor, by and through their guardian ad litem, DARRYL MAULTSBY; D.R.H., D.W.H., and R.W., minors, by and through their guardian ad litem, RYAN HOYT; M.G., a minor, by and through their guardian ad litem, VALERIE GATES; C.P., a minor, by and through their guardian ad litem, LAMARTINE PIERRE, JR.; K.F., a minor, by and through their guardian ad litem, ANGELA FAUCETT; and J.W., a minor, by and through their guardian ad litem, KAYLA JARAMILLO, individually, and on behalf of all others similarly situated, (collectively, "Plaintiffs"), respectfully submit this opposition to the Amended Motion to Intervene and Stay This Action Pending Transfer to Multidistrict Proceeding (the "Motion") (Dkt. No. 66) filed by nonparties, Scott Humbert on behalf of E.H. and J.H.; Tonia Lightwine, on behalf of B.L.; Monroe Seigle, on behalf of M.S.; and Nick McKissick, on Behalf of A.M. ("Movants" or "Nonparties"), who are plaintiffs in two putative class actions pending in the Northern District of Florida, *Humbert, et. al., v. ByteDance, Inc., et. al.*, No. 5:24-cv-00236-MW-MJF (N.D. FL), and the Northern District of California, *McKissick. v. ByteDance, Inc., et al*, No. 3:24-cv-08051-JD (N.D. Cal).[1]

[1] Nonparty Kathleen Lanser, on behalf of A.L., also filed a Notice of Joinder in Support of this Motion. *See* Joinder in Motion to Intervene and Stay This Action Pending Transfer to Multidistrict Proceeding, Dkt. No. 60. Lanser is the plaintiff in another class action filed in the District of New Jersey, *Lanser v. ByteDance, Inc. et al.*, 2:24-cv-10818-SDW-AME (D.N.J.).

## I. INTRODUCTION

Rather than join Plaintiffs in the efficient prosecution of this action, Movants seek to intervene and halt the progress made in this case. Specifically, Movants ask the Court to stay this action pending the resolution of a petition for centralization filed with the Judicial Panel on Multidistrict Litigation ("JPML" or "the Panel"). That petition seeks to transfer and consolidate these actions with the sprawling *Social Media Addiction* MDL pending in another district and involving *different* parties, *different* facts, and *different* claims. TikTok, the United States Department of Justice, and Plaintiffs all opposed the MDL petition, and the Panel has not set a hearing date. In truth, this Motion has little to do with protecting the interests of the Movants, who, as they concede, are members of the class and have filed substantially similar claims. Rather, the Motion is a choreographed attempt by Movants' counsel, multiple of which are counsel in the *Social Media Addiction* MDL, to usurp control of this case by folding it into the MDL.

This procedural ploy is to the detriment of Plaintiffs and the putative class. First, TikTok's conduct at issue here is not, as outlined below, the focus (nor the subject) of the *Social Media Addiction* MDL. Any purported "overlap" with the factual allegations in the MDL is vastly overstated. Transferring and consolidating these actions with the sprawling *Social Media Addiction* MDL will result in substantial delay for Plaintiffs, Movants, and class members. Second, it is well settled that centralization in an MDL should, according to the JPML, be considered only after other options are exhausted, such as Section 1404 transfer. But here, Movants seek to flip the proper procedural approach on its head by having the JPML rule in the first instance before TikTok's pending Section 1404 transfer motions can be considered. These tactics—which are antithetical to the just and efficient prosecution of this action—should not be countenanced by the Court. Respectfully, the Court should deny the Motion and allow this litigation to proceed.

## II. BACKGROUND

On August 9, 2024, Plaintiffs filed *A.A. v. ByteDance Ltd.*, Case No. 2:24-cv-06784-ODW (C.D. Cal.), asserting claims under state privacy and consumer protection laws and for unjust enrichment arising out of TikTok's collection and use of the personal information of children under 13 in violation of COPPA. *See* Complaint, *A.A. v. ByteDance Ltd.*, Dkt. No. 1. Plaintiffs filed their case in the Central District of California because it was related to two existing cases filed by the Department of Justice before Judge Otis D. Wright II— *United States v. Musical.ly et al.*, Case No. 2:19-cv-1439-ODW and *United States v. ByteDance, Inc.*, Case No. 2:24-cv-06535-ODW (the "DOJ Action")—and because TikTok's conduct was developed in and emanated from the Central District of California. Indeed, Judge Wright retains jurisdiction over the "construction, modification, and enforcement" of the 2019 DOJ Action. *See* Order re Transfer (Related Cases), DOJ Action, Dkt. No. 25; Stipulated Order at 16, *United States v. Musical.ly et al.*, Case No. 2:19-cv-1439-ODW, Dkt. No. 10.

Soon after the first private plaintiffs' action was filed, plaintiffs filed *Villanueva v. ByteDance, Inc.*, Case No. 2:24-cv-07922-ODW, in the Central District of California. *Villanueva* was likewise assigned to Judge Wright because it was related to both the *A.A.* action and the two DOJ actions. *See* Order re Transfer Pursuant to Gen. Order 21-01 (Related Cases), *Villanueva*, Dkt. No. 29. The *A.A.* and *Villanueva* plaintiffs immediately began working cooperatively to advance the interests of the classes of millions of children subjected to TikTok's conduct by (1) stipulating to consolidate their actions, which were consolidated by the Court (*A.A.*, Dkt. Nos. 41, 52); (2) working with TikTok's counsel to establish a schedule for filing the consolidated amended complaint and briefing on TikTok's response thereto (*A.A.*, Dkt. No. 42; *Villanueva*, Dkt. No. 31); (3) conferring with the DOJ and TikTok's counsel in response to the Court's directive to address whether the private *A.A.* and *Villanueva* actions should be consolidated with the related DOJ Action (*A.A.*, Dkt. No. 47; *Villanueva*, Dkt. No. 36)—and agreeing with the DOJ and

TikTok to establish methods of informal coordination of the actions (*A.A.*, Dkt. Nos. 47 and 48); and (4) filing the consolidated amended complaint on December 16, 2024 and a Corrected Consolidated Class Action Complaint on January 15, 2025 (*see J.C. v. ByteDance Ltd.*, Case No. 2:24-cv-06784-ODW (C.D. Cal.) (the "First-Filed Consolidated Action"), Dkt. Nos. 53, 73).[2]

Months after the initial *A.A.* and *Villanueva* complaints were filed, four tag-along actions were filed in other district courts around the country.[3] The four tag-along actions are based on the same or overlapping factual allegations and claims as the First-Filed Consolidated Action. And all four actions assert claims on behalf of overlapping or similar classes (*i.e.*, a nationwide class and several state-specific classes). *See* Compl., *Humbert*, Case No. 5:24-cv-00236 (N.D. Fl.), Dkt. No. 1; Compl., *McKissick*, Case No. 3:24-cv-08051 (N.D. Cal), Dkt. No. 1; Compl., *Middleton*, Case No. 4:24-cv-00742 (W.D. Mo.), Dkt. No. 1; Compl., *Lanser*, Case No. 2:24-cv-10818 (D.N.J.), Dkt. No. 1. Indeed, Movants candidly state that they "assert the same or similar claims based on multiple common factual allegations," and that the actions "involve common legal theories" by the "same or overlapping putative classes." Mot. at 9, 20. None of the four tag-along actions alleged any connection between TikTok's wrongful conduct and the districts in which the cases were filed, other than the plaintiff's residency.[4]

---

[2] On January 15, 2025, Plaintiffs in the First-Filed Consolidated Action filed a Corrected Consolidated Class Action Complaint ("CCAC") pursuant to the Court's January 6, 2025 Order, which instructed Plaintiffs to proceed as guardians ad litem pursuant to Federal Rule of Civil Procedure 17(c) and Local Rule 17.1.1. *See* Minute Order, Dkt. No. 62 (Jan. 6, 2025). As such, the case caption for the First-Filed Consolidated Action has changed to reflect the Plaintiffs' guardians ad litem. The case is now styled *J.C. v. ByteDance Ltd.*, Case No. 2:24-cv-06784-ODW (C.D. Cal.).

[3] *Humbert et al. v. ByteDance, Inc. et al.*, Case No 5:24-cv-00236 (N.D. Fl.) (filed Oct. 15, 2024); *McKissick v. ByteDance, Inc. et al.*, Case No 3:24-cv-08051 (N.D. Cal) (filed Nov. 15, 2024); *Middleton v. ByteDance, Inc. et al.*, Case No 4:24-cv-00742 (W.D. Mo.) (filed Nov. 15, 2024); and *Lanser v. ByteDance, Inc. et al.*, Case No 2:24-cv-10818 (D.N.J.) (filed Nov. 27, 2024).

[4] Tellingly, Movants' tag-along complaints—*Humbert* and *McKissick*— simply copied substantial portions of Plaintiffs' *Villanueva* complaint, including 49 consecutive paragraphs verbatim from

(continued…)

Despite the fact that the four tag-along actions were filed in October and November 2024—over two years after the *In re Social Media Addiction* MDL was centralized in the Northern District of California— none of the four tag-along actions were filed directly into the MDL. *See In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, MDL No. 3047, Case No. 22-md-3047-YGR ("*In re Social Media Addiction*"). Instead, Movants curiously waited for the undersigned counsel in the First-Filed Consolidated Action to move for appointment of interim class counsel before filing any motion for centralization before the JPML. *See* Notice of Mot. and Mot. for Appointment of Interim Class Counsel, First-Filed Consolidated Action, Dkt. No. 50 (filed Nov. 21, 2024). And on December 5, 2024, just two weeks after the class counsel motion was filed, Movants petitioned the JPML through McKissick's Motion to Transfer Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("JPML Motion"), MDL No. 3144.

In ordering responses to the JPML Motion, the Panel instructed the parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)." *See* Minute Order, Dkt. No. 5, MDL No. 3144 (Dec. 13, 2024). The DOJ (on behalf of the United States), the ten plaintiffs in the First-Filed Consolidated Action, and TikTok filed responses opposing transfer and consolidation of their cases with the *In re Social Media Addiction* MDL. *See* DOJ Opp'n, MDL No. 3144, Dkt. No. 21 (Exhibit A); First-Filed Plaintiffs' Opp'n, MDL

---

*Villanueva*'s factual allegations. *Compare* Compl. ¶¶ 26-74, *Villanueva*, Case No. 2:24-cv-07922-ODW, Dkt. No. 1 *with* Compl. ¶¶ 5–53, *Humbert*, Case No 5:24-cv-00236, Dkt. No.1; Compl. ¶¶ 5–53, *McKissick*, Case No 3:24-cv-08051, Dkt. No.1. The Movants' complaints even copied Plaintiffs' typographical errors. *Compare* Compl. ¶ 37, *Villanueva*, Case No. 2:24-cv-07922-ODW, Dkt. No. 1 (misspelling the word "created") *with* Compl. ¶ 17, *Humbert*, Case No 5:24-cv-00236, Dkt. No. 1 (same); Compl. ¶ 17, *McKissick*, Case No 3:24-cv-08051, Dkt. No. 1 (identical misspelling of the word "created" in the same sentence).

No. 3144, Dkt. No. 24 (Exhibit B); TikTok Opp'n, MDL No. 3144, Dkt. No. 26. (Exhibit C).

Separately, TikTok moved under the First-Filed Rule and Section 1404 to transfer all tag-along actions to this venue. *See Humbert*, Dkt. No.19; *McKissick*, Dkt. No. 14; *Middleton*, Dkt. No. 13; *Lanser*, Dkt. No. 16. The court in *Humbert* stayed the case but held that it would "not stay proceedings as to Defendants' motion to transfer" pending a resolution of the MDL petition. Order on Mot. to Stay, *Humbert*, Dkt. No. 21.

## III. LEGAL FRAMEWORK

"When considering whether to stay proceedings, courts consider (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 924 (C.D. Cal. 2018) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). However, "if there is even a fair possibility that the stay … will work damage to someone else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Exp., Inc., v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (internal quotations omitted). The party seeking a stay bears the burden of establishing its need. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)).

## IV. ARGUMENT

Movants ask the Court to stay these proceedings until the JPML has decided the pending centralization motion before the JPML. But Movants have requested transfer to a sprawling MDL in the Northern District of California brought on behalf of personal injury plaintiffs, school districts, and government entities, involving *different* claims and a host of social media defendants. Plaintiffs in the First-Filed Consolidated Action, the United States, and the TikTok Defendants have all opposed transfer to the *In re Social Media*

*Addiction* MDL. *See* Exhibits A–C. And as plainly demonstrated by those oppositions, transferring these actions to the *In re Social Media Addiction* MDL will fail to promote the just and efficient prosecution of these actions and result in substantial delay.[5]

Movants' Motion to Stay should be denied because Movants have failed to meet their burden to establish that a stay is appropriate. While Movants may be entitled to permissibly intervene in the First-Filed Consolidated Action pursuant to Fed. R. Civ. P. 24(b)(2), the better and more efficient course—and the one that would be beneficial to the interest of the class—would be for Movants to (1) transfer their cases to the Central District of California pursuant to Section 1404; and (2) consolidate their cases with the First-Filed Consolidated Action under Rule 42(a) of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1404; Fed. R. Civ. P. 42(a).

### A. The TikTok children's data privacy actions are not properly part of the *In re Social Media Addiction* MDL.

The TikTok children's data privacy actions simply do not belong in the *In re Social Media Addiction* MDL. For one, the subject matter of the *In re Social Media Addiction* MDL does not encompass Plaintiffs' privacy claims. The plaintiffs in the MDL allege that major social media companies deliberately designed platforms to exploit addictive behaviors on social media, resulting in harm such as depression, anxiety, and even wrongful death. *See* Mot. at Ex. 2, Dkt. No. 66-2 (Personal Injury Complaint). The complaint brought on behalf of private plaintiffs, duly named the "Personal Injury Complaint," devotes very little attention to the issues in this case and only briefly touches on claims about TikTok's awareness of users under the age of 13. *See id*. Its references to the *Musical.ly* action appear only in passing, and any allegations concerning "parental controls" focus on TikTok's "Family Pairing" tools, which are entirely absent from the children's privacy actions. *Id*. at ¶ 577–82.

[5] As an alternative to denying transfer and consolidation with the *In re Social Media Addiction MDL*, Plaintiffs in the First Filed Consolidated Action proposed that the Panel instead centralize the COPPA-based TikTok children's privacy actions in this District before this Court. *See* Ex. B at 11–13.

Similarly, the legal claims in the Personal Injury Complaint have almost no overlap with the children's data privacy actions. The Personal Injury Complaint pleads violations of strict liability, negligence, fraud, wrongful death, and other product liability causes of action that seek to compensate individuals for *personal injury* losses. *See, e.g.*, Mot. at Ex. 2 at ¶ 20 ("Plaintiffs seek to recover damages from Defendants and hold them responsible for *personal injuries* resulting from their wrongful conduct." (emphasis added)). In contrast, the TikTok children's data privacy actions focus exclusively on privacy, do not contain any personal injury claims, and seek damages under state privacy and consumer protection laws and for unjust enrichment. The violations alleged are based entirely on TikTok's collection and use of the children's personal information. *See, e.g.*, Compl., Dkt. No. 1

The MDL also involves a host of different parties. For example, two TikTok defendants in this action, including the entity that is responsible for the security and operation of the TikTok platform (TikTok U.S. Data Security Inc., which is based in this District), are not named in the MDL Personal Injury Complaint, further demonstrating the lack of focus on privacy invasion in the MDL. By contrast, the MDL names an industry of defendants who operate social media platforms (in addition to TikTok), including Meta (which is the principal defendant in many of the actions in the vast MDL), Google, and Snapchat. More importantly, however, the plaintiffs are not even the same. The TikTok children's data privacy actions solely involve classes of children who were under 13 when they used TikTok, while the MDL involves both "children and adolescents" who used any of Meta's, Google's, Snapchat's, or TikTok's "products." Mot. at Ex. 2 at ¶ 3. Thus, adolescents over the age of 13 who, for example, used Facebook or YouTube, could file a claim in the MDL, but would not be part of any class in this action.

Moreover, in addition to being factually and legally distinct, the *In re Social Media Addiction* MDL also stands at a vastly different procedural posture. The MDL encompasses hundreds of cases, including 162 cases formally transferred to the MDL

from courts across the United States. *See* Conditional Transfer Order, *In re Social Media*, Dkt. No. 1392. The MDL has involved extensive motion practice (and rulings), substantial discovery, and is set to embark on pre-trial proceedings in preparation for bellwether trials. Thus, transferring the TikTok children's data privacy actions to the *In re Social Media Addiction* MDL will not only fail to promote the just and efficient prosecution of these actions, but will also undoubtedly result in substantial delay.

Movant nonetheless argues that the Personal Injury Complaint is related because the "negligence per se count specifically references the COPPA violation at issue in the DOJ's complaint as a basis for that claim." Mot. at 8. But "referencing" COPPA as the basis for a negligence per se claim does not transform the *In re Social Media Addiction* MDL into a privacy action. To the contrary, the Personal Injury Complaint specifically alleges that plaintiffs suffered *personal injury losses* as a result of Defendants' negligence per se, including "physical harm, emotional distress, past and future medical expenses, and pain and suffering." Mot. at Ex. 2 at ¶ 1018. Here, by contrast, Movant does not even plead negligence per se as a cause of action.

Similarly, Movant contends that because TikTok recently removed a California state court action to the *In re Social Media Addiction* MDL, the children's data privacy actions should follow. *See* Mot. 20. But one glance at that complaint—filed by the California Attorney General—demonstrates why that is not the case. *See* Mot. at Ex. 4, Dkt. No. 66-2 (California AG Complaint). Like the other complaints filed by state attorneys general in the *In re Social Media Addiction* MDL, the California AG Complaint focuses on how TikTok's design and algorithms are deliberately engineered to maximize the addictiveness of the platform for children and teenagers, leading to issues such as anxiety, depression, and body dysmorphia. The core of the California AG Complaint is that (1) TikTok is "intended to be addictive;" (2) the platform "is severely harmful to the physical and psychological well-being of young users;" and (3) that Defendants deceived the public about these alleged risks. *See id.* at ¶¶ 1–3, Dkt. No. 24-4. California spends

over two hundred paragraphs expounding that theory. *Id*. ¶¶ 53–282. Although a small section at the end of the 81-page complaint alleges that TikTok collects data from children without parental consent, *see id.* ¶¶ 283–326, the gravamen of the case concerns the allegations at the very heart of the *In re Social Media Addiction* MDL.

Lastly, the Northern District of California is the wrong venue for Plaintiffs' claims. Rather, Plaintiffs filed their action in the Central District of California for two significant reasons. First, because, *inter alia*, it was related to both (a) the 2019 DOJ Action that culminated in the 2019 Permanent Injunction; and (b) the 2024 DOJ Action based on TikTok's continued violations and defiance of the 2019 Permanent Injunction. And second, because TikTok's conduct was developed in and emanated from the Central District of California. Specifically, TikTok's dual global headquarters and U.S. operations headquarters are located in *this* District, and TikTok's Chief Operating Officer—who was responsible for the content, marketing, business intelligence, distribution partnerships, and user operations—was based in Los Angeles (Culver City, California). CCAC ¶¶ 31–33, 58–61. Defendant TikTok U.S. Data Security, Inc., which "controls access to protected U.S. user data, content recommendation, and moderation systems" on the TikTok platform, is also based in Los Angeles (Culver City, California). *See id*. at ¶ 33.

### B. Movants fail to meet their burden to establish that a stay is appropriate.

Movants have not met their burden to show that a stay is warranted. First, a stay will damage Plaintiffs' ability to represent the interests of the class by delaying the prosecution of this action and imperiling Plaintiffs' ability to coordinate discovery with the DOJ Action. Second, Movants fail to establish that they will suffer any hardship or inequity if the Court allows the First-Filed Consolidated Action to proceed because their interests are adequately protected here as members of the proposed classes and have filed substantially similar claims. Third, staying the First-Filed Consolidated Action would frustrate the "orderly course of justice," which provides that parties take steps "to pursue

alternatives to centralization," including "seeking Section 1404 transfer" *prior to consolidation in an MDL*.

***1. A stay will damage Plaintiffs' ability to represent the interests of the class by delaying prosecution of this action and impeding coordination with the DOJ Action.***

First, there is a high possibility of "damage which may result from the granting of [the] stay." *Gallion*, 287 F. Supp. 3d at 924. Specifically, a stay of this case will impair Plaintiffs' ability to represent the interests of the class by delaying the prosecution of this action along with the transfer and consolidation of the tag-along cases with the First-Filed Consolidated Action. Indeed, the TikTok Defendants have already moved under the First-Filed Rule and Section 1404 to transfer the handful of tag-along actions to the Central District of California. *See, e.g.*, Defs.' Mot. to Transfer Venue at 10, *Humbert*, Dkt. No. 19-1 (explaining that "[e]ach of the first-filed rule's factors compels transferring this case to the Central District of California: (1) the C.D. Cal. actions were filed before this action; (2) the C.D. Cal. actions and this action involve the same Defendants and nearly identical putative classes; and (3) the C.D. Cal. actions and this action involve the exact same subject matter").

Once transferred to this district, the Court may consent to transfer the related actions to its docket pursuant to the Central District of California's General Order in the Matter of Assignment of Cases and Duties to District Judges, and to consolidate the cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. But if the First-Filed Consolidated Action is stayed, transfer and consolidation will be stayed as well. This will, as a practical matter, impair the Court's ability to promote uniformity in rulings and decisions on similar legal and factual issues in the related actions, and to minimize duplication of efforts and resources.

Furthermore, a stay of the First-Filed Consolidated Action will impede Plaintiffs' ability to coordinate discovery with the DOJ Action. Section 1407, which authorizes centralization before the JPML, categorically exempts the DOJ Action from

centralization. *See* 28 U.S.C. § 1407(g) (exempting from centralization actions brought by the United States pursuant to 15 U.S.C. § 56). The Government's Case falls within the exemption to centralization established by 28 U.S.C. § 1407 because the United States is a "complainant" acting on referral from the FTC pursuant to 15 U.S.C. § 56 (as subsequently amended). *See* Ex. A at 1. Thus, if the First-Filed Consolidated Action is stayed while the DOJ Action proceeds through discovery, it will damage Plaintiffs' ability to coordinate discovery to aid in conducting the action. *See* Pls.' Resp. to the Court's Nov. 14, 2024 Order to Show Cause at 4, Dkt. No. 47.[6]

***2. Movants fail to establish that they will suffer hardship or inequity in the absence of a stay.***

Second, Movants fail to establish that they will suffer hardship or inequity if the Court allows the First-Filed Consolidated Action to proceed. "[A party seeking] a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255; *and see Dependable Highway*, 498 F.3d at 1066 ("[B]eing required to defend a suit [if the stay is vacated], does not constitute a 'clear case of hardship or inequity.'"); *Lockyer*, 398 F.3d at 1112 (same).

Movants state that a "stay would allow Applicants to avoid expending significant time and resources on litigation that may ultimately become duplicative, unnecessary, or moot if the Panel were to grant the Transfer Motion." Mot. at 27. But if Movants were genuinely focused on efficiency and conserving resources, they would have filed the four tag-along actions directly into the MDL. Instead, Movants waited for Plaintiffs in the

[6] It bears mentioning that Plaintiffs' inability to coordinate discovery with DOJ further highlights the *inefficiencies* that would result from consolidation of these actions with *In re Social Media Addiction* MDL. Specifically, the DOJ Action is already before *this* Court, and the process of establishing informal coordination between the First-Filed Consolidated Action and the DOJ Action has already begun. Transferring the TikTok children's data privacy actions to the MDL would undercut that progress. In contrast, informal coordination of discovery between the First-Filed Consolidated Action and the *In re Social Media Addiction* MDL—to the extent necessary—can readily be accomplished through TikTok's reproduction here of any relevant materials produced in the MDL.

First-Filed Consolidated Action to make substantial progress litigating this case in the Central District of California (including Plaintiffs moving for appointment of interim class counsel) before filing any motion for centralization before the JPML. Significant resources were expended before this Court, all while Movants waited months to file the JPML Motion.

More importantly, however, granting a stay here would flip the JPML's inquiry on its head. Specifically, it is well-settled that centralization is the "last solution after considered review of all other options." *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.,* 804 F.Supp. 2d 1376, 1378 (J.P.M.L. 2011). This is true even where "[t]here is no dispute that the[] cases share factual issues." *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018). And under Section 1407(a), the Panel may centralize pre-trial proceedings only "for the convenience of parties and witnesses" and to "promote the just and efficient conduct of such actions." *Id.* Thus, it should be this Court—in the first instance—that determines whether cases should be consolidated, not the JPML. This follows well recognized precedent that ruling on such motions to transfer "aid the Panel in its decision whether and where to centralize a given litigation." *See, e.g.*, *In re Gerber Probiotic Prods. Mktg. and Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012); *Ryan v. Gencor Nutrients, Inc.*, 2015 WL 729868, at *2-3, *6 (N.D Cal. Feb. 19, 2015) (same); *see also, Calderon v. Cargill, Inc.*, 2013 WL 12205633, at *2 (C.D. Cal. Dec. 10, 2013) (granting transfer motion and rejecting the "argument that the court should stay th[e] case pending a decision by the [JPML]" as "meritless"); *Bennett v. Bed Bath & Beyond, Inc.*, 2011 WL 3022126, at *2 (N.D Cal. July 22, 2011) (explaining that waiting for the JPML to decide a pending transfer motion "flips the proper procedural approach on its head").

On top of that, the JPML in fact has requested that the parties take steps "to pursue alternatives to centralization," including "seeking Section 1404 transfer" prior to consolidation in an MDL. *See* Minute Order, Dkt. No. 5, MDL No. 3144 (Dec. 13, 2024).

The Panel has recognized that "alternative means to Section 1407 centralization, such as transfer under Section 1404(a), are preferable," *In re Best Buy*, 804 F. Supp. 2d at 1378, and has repeatedly stated that centralization is not appropriate when there is a "reasonable prospect that that the multidistrict character of the actions here before us may be eliminated by" transfer under Section 1404. *In re Nelnet Servicing, LLC., Customer Data Sec. Breach Litig.*, MDL No. 3053, 2022 WL 17843103, at *1 (J.P.M.L. Dec. 13, 2022); *In re Gen. Motors LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*, 532 F. Supp. 3d 1413, 1414–15 (J.P.M.L. 2021) (same); *In re 3M Co. Lava Ultimate Prod. Liab. Litig.*, 222 F. Supp. 3d 1347 (J.P.M.L. 2016) (same); *In re: Gerber Probiotics Prod. Mktg., & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (same).

The Rules of the Judicial Panel on Multidistrict Litigation further reflect the Panel's preference that litigation continues in district court. For example, the Rules provide:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court. An order to transfer or remand pursuant to 28 U.S.C. § 1407 shall be effective only upon its filing with the clerk of the transferee district court.

JPML Rule 2.1(d); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ("[A] district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation." (citing Manual For Complex Litigation, Third, at 252 (1995)).

Movant's § 1407 Motion, in contrast, will not achieve efficiency, particularly because the delay would result in "little or no benefit to the parties or putative class members." *In re Hyundai & Kia GDI Engine Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1344 (J.P.M.L. 2019) (denying centralization). Altering or delaying the prosecution of the TikTok children's data privacy actions before this Court —led by the DOJ Action and the First-Filed Consolidated Action—would subvert the goals under

Section 1407. *See In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L. 2017) (noting "no reason to disrupt the parties' successful efforts at informal coordination when almost all parties agree that centralization would provide little or no benefit"); *see also, In re Holiday Cruise Line Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1377, 1378 (J.P.M.L. 2015) (similar); *In re NEC Networks, LLC, d/b/a CaptureRx Customer Data Sec. Breach Litig* 576 F. Supp. 3d 1375, 1376–77 (J.P.M.L. 2021) (similar).

***3. The "orderly course of justice" is best served by allowing the parties to pursue alternatives to centralization before this Court.***

Lastly, the "orderly course of justice"—"measured in terms of the simplifying or complicating" the issues—militates against a stay. As discussed above, this Court decides in the first instance whether transfer and consolidation of these actions is appropriate. *See, e.g.*, Minute Order, MDL No. 3144, Dkt. No. 5 (Dec. 13, 2024) (instructing the parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)"). TikTok has done just that by moving to transfer these tag-along actions to this district. And notably, the Court in the *Humbert* action, which has the matter *sub judice*, rejected counsel's request to stay a decision on the transfer motion pending a resolution of the MDL petition. *See* Order on Motion to Stay, *Humbert*, Dkt. No. 21.[7]

Staying the First-Filed Consolidated Action here to allow centralization before the *In re Social Media Addiction* MDL would be illogical. That MDL has been litigated for more than two years and has involved extensive motion practice (and rulings), substantial discovery, and is set to embark on pre-trial proceedings in preparation for bellwether trials. The MDL encompasses hundreds of cases, including 162 cases formally transferred

---

[7] In *McKissick*, however, the court entered a stay pending a decision by the JPML, which stands in contrast to the prevailing view. *See* Minute Order, *McKissick*, Dkt. No. 25 (Jan. 17, 2025).

to the MDL from courts across the United States. *See* Conditional Transfer Order, *In re Social Media Addiction*, Dkt. No. 1392. The cases, to the extent they involve claims against TikTok as a defendant (indeed, Meta is the principal defendant in many of the actions) center on and seek to remedy the physical and mental harm to adolescents caused by the addictive nature of the social media platforms through claims for negligence, products liability, and public nuisance.[8] *See* Transfer Order at 2, *In re Social Media Addiction*, Dkt. No. 1.

No "order" or "justice" will come from transferring and consolidating the TikTok children's data privacy actions within the *In re Social Media Addiction* MDL, which would be impractical and inefficient given the advanced stage and complexity of the MDL's proceedings. *In re Social Media Addiction* involves diverse plaintiffs—individuals, school districts, and states—bringing claims against the social media platforms for the harmful physical and mental effects caused by the addictiveness of social media products. As evidenced by Case Management Order No. 18, substantial completion of document production was ordered by November 2024, fact discovery closes on April 4, 2025, expert reports and discovery are to be completed by August 27, 2025, and bellwether trials are to be identified and selected in 2025, with concomitant bellwether trial motion practice and pre-trial proceedings. *See* Case Management Order No. 18 at 2–5, *In re Social Media Addiction*, Dkt. No. 1290.

Given the volume of cases, extensive motion practice and discovery conducted to date, procedural and discovery posture, and broad allegations about the effects of social media addiction in the *In re Social Media Addiction* MDL, consolidating the TikTok

[8] *See, e.g.*, Mot. at Ex. 2 at 269 (seeking harm for physical pain and suffering, mental anguish, loss of enjoyment of life, emotional distress, expenses for hospitalizations and medical treatments, and…lost earnings and loss of earning capacity; damages to compensate for loss of consortium, companionship, services, society, love, and comforts, alteration to their marital or filial association, and mental anguish and emotional distress; and all damages available for wrongful death and survival); Sch. Dist. and Local Gov't Entities First Am. Master Compl., *In re Social Media Addiction*, Dkt. No. 729 at 315–16 (seeking damages and costs related to the public nuisance caused by the social media platforms).

children's data privacy actions with the existing MDL would fail to promote the just and efficient prosecution of these actions. It also threatens to result in substantial delay of the TikTok children' data privacy actions, rendering McKissick's Motion adverse to the purposes of § 1407 centralization.[9]

Transferring these cases to the *In re Social Media Addiction* MDL will also be counterproductive for the parties' discovery efforts. The Central District of California is the forum with the greatest nexus to the litigation—and the "center of gravity." *See, e.g., In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1385 (J.P.M.L. 2020) (selecting the forum with the strongest nexus to the plaintiffs' allegations, or the litigation's "center of gravity"). TikTok's conduct that is the subject of these actions was developed in and emanated from the Central District of California: TikTok's dual global headquarters and U.S. operations headquarters are located in this District and TikTok's Chief Operating Officer—who was responsible for the content, marketing, business intelligence, distribution partnerships, and user operations—was based in Los Angeles (Culver City, California). Additionally, defendant TikTok U.S. Data Security, Inc., which "controls access to protected U.S. user data, content recommendation, and moderation systems" on the TikTok platform is based in Los Angeles (Culver City, California). CCAC ¶¶ 33, 58–59, 61; *see also* TikTok Mot. to Transfer at 21, 23–25, *Humbert et al. v. ByteDance, Inc. et al.*, Case No 5:24-cv-00236 (N.D. Fl.), Dkt. No. 19.

The key evidence and witnesses are likely located in this District. And the 2019 DOJ Action that culminated in the 2019 Permanent Injunction, as well as the 2024 DOJ Action arising from TikTok's failure to abide by the Permanent Injunction, are pending in

[9] Indeed, as set forth in Case Management Order No. 18, *In re Social Media Addiction*, Dkt. No. 1290, the court "declined to fast-track resolution of the three class actions currently pending in the MDL," stating that, "[e]fficiency interests of the MDL urge that the Court maintain its current course, developed over two years of rigorous, carefully considered litigation." *Id.* at 6 (citing *Abraham v. Meta Platforms, Inc.*, Case No. 24-cv-04723).

the Central District of California. The discovery collected will be in this venue, with little overlap with the discovery collected in the *In re Social Media Addiction* MDL.

## V. CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Pursuant to Local Rule 5-4.3.4, by my signature below, I, Eric Kafka, attest that all other signatories concur in the filing's content and have authorized this filing.

Dated: January 21, 2025

Respectfully submitted,

By: /s/ Steven L. Bloch

David S. Golub, (pro hac vice)
Steven L. Bloch, (pro hac vice)
Ian W. Sloss, (pro hac vice)
Jennifer Sclar, (pro hac vice)
John Seredynski, (pro hac vice)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com
sbloch@sgtlaw.com

Patrick Carey, (Bar No. 308623)
Mark Todzo, (Bar No. 168389)
LEXINGTON LAW GROUP, LLP
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

By: /s/ Eric Kafka

Eric Kafka (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Karina Puttieva (SBN 317702)
Jenna Waldman (SBN 341491)
COHEN MILSTEIN SELLERS & TOLL

PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kputtieva@cohenmilstein.com
jwaldman@cohenmilstein.com

Paul Hoffman (SBN 71244)
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP
200 Pier Ave., Suite 226
Hermosa Beach, CA 90254
Telephone: (424) 297-0114
Facsimile: (310) 399-7040
hoffpaul@aol.com

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Plaintiffs, certifies that this brief contains 6,200 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 21, 2025

Respectfully Submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

By: *<u>/s/ Eric Kafka</u>*
Eric Kafka
Attorneys for Plaintiffs and Putative Class