DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
STEPHEN J. McINTYRE (S.B. #274481)
smcintyre@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

J.C., a minor, by and through their guardian ad litem, JODY VILLANUEVA; A.J., a minor, by and through their guardian ad litem, ALEXIS DOUGLAS; B.M., a minor, by and through their guardian ad litem, MARCELO MUTO; L.F., a minor, by and through their guardian ad litem, HEATHER BRESETTE; D.M., a minor, by and through their guardian ad litem, DARRYL MAULTSBY; D.R.H., D.W.H., and R.W., minors, by and through their guardian ad litem, RYAN HOYT; M.G., a minor, by and through their guardian ad litem, VALERIE GATES; C.P., a minor, by and through their guardian ad litem, LAMARTINE PIERRE, JR.; K.F., a minor, by and through their guardian ad litem, ANGELA FAUCETT; and J.W., a minor, by and through their guardian ad litem, KAYLA JARAMILLO, individually and on behalf of all others similarly situated,

Case No. 2:24-cv-06784-ODW(RAOx)

**DEFENDANTS' OPPOSITION TO AMENDED MOTION TO INTERVENE AND STAY**

Hon. Otis D. Wright II
Hearing Date: February 10, 2025
Time: 1:30 p.m.
Courtroom: 5D

Plaintiffs,

v.

BYTEDANCE LTD.; BYTEDANCE INC.; TIKTOK LTD.; TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; and TIKTOK U.S. DATA SECURITY INC.,

Defendants.

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. FACTUAL & PROCEDURAL BACKGROUND ..... 2
  A. The Department of Justice sued Defendants in this District, alleging violations of COPPA. ..... 2
  B. Private plaintiffs filed follow-on class actions, mirroring DOJ's factual allegations and theories. ..... 2
  C. Defendants have moved to transfer the later-filed class actions to this District. ..... 4
  D. The *McKissick* Applicants have moved to centralize the COPPA Actions in the Northern District of California. ..... 4
III. LEGAL STANDARDS ..... 5
IV. ARGUMENT ..... 6
  A. Applicants have not shown that they have a right to intervention. ..... 6
    1. Applicants have not complied with Local Rule 17-1.1. ..... 7
    2. Applicants have no "significantly protectable interest" in this litigation. ..... 7
    3. Disposition of this action will not impair or impede Applicants' ability to protect any interest they claim to have. ..... 9
    4. Even if Applicants had an interest in this litigation, it is not inadequately represented by the parties to this action. ..... 12
  B. Applicants have not demonstrated that a stay is appropriate. ..... 14
    1. The pendency of JPML proceedings does not itself warrant staying this litigation. ..... 14
    2. A stay is not necessary to conserve judicial resources. ..... 15
    3. The COPPA Actions and the cases pending in MDL No. 3047 advance different central theories. ..... 16
    4. Applicants are unlikely to be prejudiced absent a stay. ..... 20
    5. Applicants' purported concern for Defendants' burden does not favor a stay. ..... 21
V. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albert Fadem Tr. v. WorldCom, Inc.*, 2002 WL 1485257 (S.D.N.Y. July 12, 2002) .......... 11

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .......... 8, 12

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078 (9th Cir. 2022) .......... 7

*Calderon v. Clearview AI, Inc.*, 2020 WL 2792979 (S.D.N.Y. May 29, 2020) .......... 8, 11

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) .......... 9, 10

*Dang v. Honda Motor Co.*, 2015 WL 12830488 (M.D. Fla. Feb. 2, 2015) .......... 20

*Fishburn v. BP, PLC*, 2010 WL 2104624 (S.D. Ala. May 25, 2010) .......... 15, 16

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011). .......... 5

*Genna v. TransUnion, LLC*, 2023 WL 183903 (D. Nev. Jan. 12, 2023) .......... 14, 15, 16

*Hayes v. Umpqua Bank*, 2020 WL 8611117 (D. Or. Aug. 4, 2020) .......... 8

*In re Duke Energy Corp. Sec. Litig.*, 2002 WL 1933798 (S.D.N.Y. Aug. 20, 2002) .......... 14

*In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 637 F. Supp. 3d 1377 (J.P.M.L. 2022) .......... 17

*Nw. Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) .......... 13

*Rivers v. Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997) .......... 6, 14

*Smokey Alley Farm P'ship v. Monsanto Co.*, 2018 WL 278624 (E.D. Mo. Jan. 3, 2018) .......... 16, 20

## TABLE OF AUTHORITIES
**(continued)**


**Page(s)**

*Strumlauf v. Starbucks Corp.*,
2016 WL 3645194 (N.D. Cal. July 6, 2016) ... 16, 20

*SWEPI, LP v. Mora Cnty.*,
2014 WL 6983288 (D.N.M. Dec. 5, 2014) ... 11

*Terkel v. AT&T, Inc.*,
2006 WL 1663456 (N.D. Ill. June 9, 2006) ... 21

*Tobin v. Conopco, Inc.*,
2013 WL 1729845 (N.D. Cal. Apr. 22, 2013) ... 10, 11

*Travis v. Navient Corp.*,
284 F. Supp. 3d 335 (E.D.N.Y. 2018) ... 9

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ... 10

*Viet Bui v. Sprint Corp.*,
2015 WL 3828424 (E.D. Cal. June 19, 2015) ... 8, 9

**Statutes**

28 U.S.C. § 1441(a) ... 18

**Rules**

C.D. Cal. L.R. 17-1.1 ... 7

Fed. R. Civ. P. 23(c)(2)(B) ... 11

Fed. R. Civ. P. 23(e)(1) ... 11

Fed. R. Civ. P. 23(e)(4) ... 11

Fed. R. Civ. P. 23(e)(5) ... 11

J.P.M.L. R. 2.1(d) ... 15

## I. INTRODUCTION

The *McKissick* and *Humbert* plaintiffs—Applicants here—recently told two federal courts that they oppose litigating their respective cases against Defendants in the Central District of California.[1] Now they seek to intervene in this case. They claim to have an interest in this action, but in truth, their only interest is in halting the proceedings before this Court. According to Applicants, the Court should keep this case in a holding pattern because they think (or at least hope) that the Judicial Panel on Multidistrict Litigation ("JPML") will transfer the case to MDL No. 3047 in the Northern District of California. Their motion is misguided.

Applicants are probably wrong about how the JPML will rule, but the Court need not hazard a prediction to decide this motion. What matters here is that Applicants have not shown that they have any basis for intervening in this action. They do not point to any protectable interest in this case, much less an interest that is being impaired or inadequately represented by dint of this litigation proceeding. Applicants have filed their own cases against Defendants, and there is no reason they cannot seek to vindicate their purported interests through the prosecution of those actions. The Court should not permit Applicants to intervene here.

Nor should the Court stay this case. Applicants say that, in light of the JPML proceedings and the potential for transfer, anything this Court does in the next few months will be wasted. Nonsense. Not only will the Court's continued management of the case advance it toward a speedy resolution, the Court's efforts will benefit the parties and any potential transferee court alike. The Court and parties can minimize duplication among actions and guard against the risk of inconsistent judgments without grinding this action to a halt.

---

[1] For the sake of convenience, "Defendants" refers to Defendants ByteDance Inc., ByteDance Ltd., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. Unless otherwise noted, all quotations, citations, and alterations are omitted, and all emphases are added.

For the reasons articulated below, the Court should deny Applicants' motion to intervene in and stay this litigation.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. The Department of Justice sued Defendants in this District, alleging violations of COPPA.

On August 2, 2024, the U.S. Department of Justice ("DOJ") filed a complaint against Defendants in this District. Compl., *United States v. ByteDance Ltd.*, No. 2:24-cv-06535-ODW-RAO (C.D. Cal. Aug. 2, 2024), Dkt. 1 ("DOJ Compl."). DOJ alleges that Defendants knowingly collected and used personal information from children under age 13, in violation of the Children's Online Privacy Protection Act ("COPPA"). *Id.* ¶¶ 1-3. DOJ also alleges that, in certain respects, Defendants violated the 2019 Stipulated Order that this Court issued in the *Musical.ly* matter. *Id.* ¶ 3; *see* Stipulated Order for Civil Penalties, Permanent Inj., & Other Relief, *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019), Dkt. 10 ("2019 Stipulated Order"). DOJ asserts a single cause of action under COPPA, seeking civil penalties and injunctive relief. DOJ Compl. ¶¶ 115-25.

### B. Private plaintiffs filed follow-on class actions, mirroring DOJ's factual allegations and theories.

One week after DOJ sued, the *A.A.* plaintiffs filed a follow-on class-action complaint against the same Defendants in this District, replicating DOJ's allegations. *See* Compl. ¶¶ 32-94, Dkt. 1. In September, another set of private plaintiffs filed another class-action complaint against Defendants in this District. Compl., *Villanueva v. ByteDance Inc.*, No. 2:24-cv-07922 (C.D. Cal. Sept. 17, 2024), Dkt. 1. As in *A.A.*, the *Villanueva* complaint closely tracked DOJ's allegations against Defendants. *See id.* ¶¶ 34-74. The *A.A.* and *Villanueva* actions

were reassigned to this Court.[2]

On November 21, 2024, the *A.A.* and *Villanueva* plaintiffs ("Plaintiffs") filed a motion for appointment of interim class counsel. Not. of Mot. & Mot. for Appointment of Interim Class Counsel, Dkt. 50. Four days later, the Court consolidated the *A.A.* and *Villanueva* class actions. Civil Minutes – Gen. at 1, Dkt. 52. At the same time, the Court ordered a schedule whereby the *A.A.* and *Villanueva* Plaintiffs would file a consolidated class-action complaint and Defendants would move to dismiss or otherwise respond to that complaint. *Id.* at 1-2. Plaintiffs filed a consolidated complaint on December 16, 2024, Dkt. 53, and a corrected version of the consolidated complaint on January 15, 2025, Corrected Consolidated Class Action Compl., Dkt. 73 ("*J.C.* Compl.").

Like its predecessor complaints, the *J.C.* consolidated complaint largely mirrors DOJ's factual allegations and legal theories. For example, like DOJ, Plaintiffs allege that Defendants violated COPPA by knowingly allowing children under 13 to create accounts and access the portion of the TikTok platform that is intended for older users (the "13+ Experience"); by collecting personal information from children in the 13+ Experience and in the portion of the platform known as "Kids Mode"; by failing to uniformly honor parents' requests to delete child accounts and associated information; and by failing to remove suspected child users from the 13+ Experience. *J.C.* Compl. ¶¶ 64-146; *see* DOJ Compl. ¶¶ 34-105. Plaintiffs also allege that Defendants violated this Court's 2019 Stipulated Order. *J.C.* Compl. ¶¶ 195-98. But because COPPA does not provide a private right of action, Plaintiffs assert claims for invasion of privacy, unjust enrichment, and violations of state unfair-competition and consumer-protection laws. *Id.* ¶¶ 334-603.

---

[2] Order re Transfer (Related Cases), Dkt. 31; Order re Transfer Pursuant to Gen. Order 21-01 (Related Cases), *Villanueva v. ByteDance Inc.*, No. 2:24-cv-07922-ODW-RAO (C.D. Cal. Oct. 22, 2024), Dkt. 29.

After Plaintiffs filed the initial *A.A.* and *Villanueva* complaints, other plaintiffs filed additional follow-on class actions in the Northern District of Florida (*Humbert*), the Western District of Missouri (*Middleton*), the Northern District of California (*McKissick*), and the District of New Jersey (*Lanser*).[3] These later-filed actions "assert the same or similar claims" as the consolidated complaint in this case, "based on multiple common factual allegations and … involv[ing] common legal theories." Am. Not. of Mot., Br. in Supp. of Mot. to Intervene at 9, Dkt. 66 ("Mot."). "Each case involves the same or overlapping putative classes, and most include a putative Nationwide Class[.]" *Id.* at 24.

### C. Defendants have moved to transfer the later-filed class actions to this District.

In December 2024, Defendants filed motions to transfer each of the class actions filed outside of the Central District of California to this District.[4] Applicants here and plaintiffs in the other actions have opposed transfer to this District.[5]

### D. The *McKissick* Applicants have moved to centralize the COPPA Actions in the Northern District of California.

Last month, the *McKissick* plaintiff filed a motion with the JPML to centralize DOJ's case and the follow-on class actions (collectively, the "COPPA

[3] Compl., *Humbert v. ByteDance Inc.*, No. 5:24-cv-00236 (N.D. Fla. Oct. 15, 2024), Dkt. 1; Compl., *Middleton v. ByteDance Inc.*, No. 4:24-cv-00742 (W.D. Mo. Nov. 15, 2024), Dkt. 1; Compl., *McKissick v. ByteDance Inc.*, No. 3:24-cv-08051 (N.D. Cal. Nov. 15, 2024), Dkt. 1; Compl., *Lanser v. ByteDance Inc.*, No. 2:24-cv-10818 (D.N.J. Nov. 27, 2024), Dkt. 1.

[4] Defs.' Mot. to Transfer Venue, *Humbert v. ByteDance Inc.*, No. 5:24-cv-00236-MW-MJF (N.D. Fla. Dec. 17, 2024), Dkt. 19; Defs.' Mot. to Transfer to the Central Dist. of Cal., *Middleton v. ByteDance Inc.*, No. 4:24-cv-00742-FJG (W.D. Mo. Dec. 27, 2024), Dkt. 13; Defs.' Not. of Mot. & Mot. to Transfer, *McKissick v. ByteDance Inc.*, No. 3:24-cv-08051-JD (N.D. Cal. Dec. 27, 2024), Dkt. 14; Defs.' Not. of Mot. & Mot. to Transfer Venue to Central Dist. of Cal., *Lanser v. ByteDance Inc.*, No. 2:24-cv-10818-SDW-AME (D.N.J. Dec. 27, 2024), Dkt. 16.

[5] Pls. Mem. in Opp. to Defs.' Mot. to Transfer Venue, *Humbert v. ByteDance Inc.*, No. 5:24-cv-00236-MW-MJF (N.D. Fla. Dec. 31, 2024), Dkt. 24; Mem. in Opp. to Defs.' Mot. to Transfer to C.D. Cal., *Middleton v. ByteDance Inc.*, No. 4:24-cv-00742-FJG (W.D. Mo. Jan. 10, 2024), Dkt. 20; Pl.'s Opp. To Defs.' Mot. to Transfer, *McKissick v. ByteDance Inc.*, No. 3:24-cv-08051-JD (N.D. Cal. Jan. 10, 2025); Dkt. 22; Mem. in Opp. to Defs.' Mot. to Transfer & in Supp. of Cross-Mot. for Stay Pending JPML Decision, *Lanser v. ByteDance Inc.*, No. 2:24-cv-10818-SDW-AME (D.N.J. Jan. 21, 2025), Dkt. 25.

Actions") in a multidistrict litigation ("MDL Motion").[6] The *McKissick* plaintiff urges the JPML to transfer the COPPA Actions to an existing MDL pending before Judge Yvonne Gonzalez Rogers in the Northern District of California (MDL No. 3047), or to centralize the COPPA Actions in a brand-new MDL before Judge Gonzalez Rogers.

DOJ, Plaintiffs here, and Defendants all oppose centralization in the Northern District of California.[7] Other plaintiffs varyingly argue for centralization in the Northern District of California, the District of New Jersey, or the Northern District of Florida.[8] The JPML will likely hear the *McKissick* plaintiff's MDL Motion by March 27, 2025.

Purportedly due to the pending MDL Motion, plaintiffs in *Humbert* and *McKissick* filed the present motion to intervene in and stay this case ("Motion"). They ask the Court to stay this litigation pending a decision on the MDL Motion or, alternatively, to defer ruling on Plaintiffs' motion for appointment of interim class counsel. Mot. at 1-2. The *Lanser* plaintiff joins this Motion. Not. of Joinder in Supp. of Mot. to Intervene & for Stay, Dkt. 60.

## III. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 24(a)(2), an applicant can intervene as of right only where (1) the applicant's motion is timely, (2) the applicant has a "significantly protectable interest relating to the property or transaction which is the subject of the action," (3) "the disposition of the action may as a practical matter impair or impede [the applicant's] ability to protect that interest," and (4) the applicant's interest is "inadequately represented by the parties to the action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

---

[6] Applicants' Ex. 1, Dkt. 55-1 ("MDL Mot.").

[7] *See In re TikTok Inc. Minor Privacy Litig.*, MDL No. 3144 (J.P.M.L. Jan. 3, 2025), Dkts. 21 (DOJ's response), 24 (*J.C.* Plaintiffs' response), 26 (Defendants' response).

[8] *See In re TikTok Inc. Minor Privacy Litig.*, MDL No. 3144 (J.P.M.L. Jan. 3, 2025), Dkts. 23 (*Humbert* plaintiffs' response), 25 (*Lanser* plaintiffs' response).

As to a stay, "a district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Rather, the Court should issue a stay only if "it serves the interests of judicial economy and efficiency." *Id.* Courts look to three factors when considering a stay: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Id.*

## IV. ARGUMENT

Applicants seek to intervene in this case for the sole purpose of slowing it down. But that desire does not warrant intervention as a matter of right under Rule 24(a)(2), and Applicants offer no other valid reason to permit them to intervene in this case. And without a right to intervene, Applicants cannot seek a stay. In any event, their request for a stay is itself unfounded. This Court can continue to advance this case without wasting judicial resources and without prejudicing the parties or Applicants. To the extent Applicants contend that this Court's efforts would be for naught because the JPML is likely to transfer the COPPA Actions to MDL No. 3047, they are doubly wrong. The JPML is unlikely to centralize the cases in that MDL—but even if it did, any rulings, orders, or other activity that takes place in this action will assist the eventual transferee court.

The Court should deny Applicants' Motion in full.

### A. Applicants have not shown that they have a right to intervention.

Applicants have not shown that they have any right to intervene in this litigation. For one, because they have not complied with Local Rule 17-1.1, which governs guardians ad litem, the Court should strike their Motion. But even setting that deficiency aside, Applicants do not point to any protectable interest that has

been impaired or inadequately represented. Rather, Applicants seek intervention for an improper purpose—to stall this litigation entirely, or at least to defer the Court's decision on Plaintiffs' motion for appointment of interim class counsel. Under relevant case law, that does not cut it: Applicants, as mere putative class members, have no interest in Plaintiffs' action at this early stage of litigation; this litigation will not impair Applicants' purported interests because they can continue to prosecute their own actions; and Applicants' interests are not inadequately represented because Plaintiffs have the same objectives as Applicants. For these reasons, the Court should not permit Applicants to intervene.

**1. Applicants have not complied with Local Rule 17-1.1.**

As this Court recently held, a minor child seeking to litigate in the Central District of California must file an application for guardian ad litem status at the time of the minor's first appearance. Civil Minutes – Gen., Dkt. 62; *see* C.D. Cal. L.R. 17-1.1. Applicants are minor children who are purportedly represented by their guardians. Mot. at 1. Because they have not filed applications for guardian ad litem status in this Court, the Court can and should strike their Motion. *See* Civil Minutes – Gen., Dkt. 62 (striking consolidated complaint).

**2. Applicants have no "significantly protectable interest" in this litigation.**

Noncompliance with Local Rule 17-1.1 aside, Applicants do not even explain what a "significantly protectable interest" is, let alone show that they have one in this litigation. An intervention applicant must show an interest that is "protectable under some law[,] and that there exist[s] a relationship between the legally protected interest and the claims at issue." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022). "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims

*actually will affect* the applicant." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003).

Applicants flunk this requirement. They say they have an interest in this litigation because they have their own lawsuits challenging the same conduct alleged in this case. Mot. at 7-10. Yet they never bother to tie that fact to any significantly protectable interest. Particularly where, as here, no classes have been certified, courts have *rejected* the argument that the existence of competing class actions is sufficient to give a putative class member in one action the right to intervene in the other. *See, e.g.*, *Hayes v. Umpqua Bank*, 2020 WL 8611117, at *3 (D. Or. Aug. 4, 2020) (denying intervention because, prior to class certification, the would-be intervenor's interests were "contingent upon future events" and thus "too attenuated to justify intervention"); *Calderon v. Clearview AI, Inc.*, 2020 WL 2792979, at *1, *4-5 (S.D.N.Y. May 29, 2020) ("Unless and until (1) a class is certified; (2) [a named plaintiff] is found to be an appropriate class representative, and (3) his counsel are deemed appropriate class counsel, the only legally cognizable interest [the intervention applicant] has is in his own claim.").

In *Viet Bui v. Sprint Corp.*, 2015 WL 3828424 (E.D. Cal. June 19, 2015), for example, would-be intervenors argued that they had a "significant protectable interest" in a separate class action because the two cases alleged the same legal violations, sought the same relief, and proposed overlapping classes. *Id.* at *2. The court disagreed, holding that because "no class ha[d] been certified" in either case, "the interest that Proposed Intervenors claim[ed] to have [was] speculative." *Id.* As the Court further recognized, the applicants had no valid interest in intervening for the purpose of "prevent[ing] the action from going forward." *Id.*

So too here. Similar to the applicants in *Viet Bui*, Applicants assert that they have a significant protectable interest in *A.A./Villanueva* because the actions "assert the same or similar claims," make "multiple common factual allegations," and "will

involve common legal theories." Mot. at 9. And as in *Viet Bui*, the proposed classes in the two actions overlap. *See id.* at 20 ("Each case involves the same or overlapping putative classes[.]"). But because "no class has been certified in the present case, or in the [*McKissick* or *Humbert*] case[s]," Applicants' interest in this action is "speculative" at best. *See Viet Bui*, 2015 WL 3828424, at *2; *see also Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 343 (E.D.N.Y. 2018) ("[T]he rights of proposed intervenors and their putative class are simply not implicated at this time, and proposed intervenors' argument that they could be implicated if and when a class is certified is too hypothetical to meet the requirements of Rule 24(a).").

While the Motion is no model of clarity, Applicants also appear to argue that they have an interest in this litigation because they believe the JPML will centralize the case in MDL No. 3047. Mot. at 9. But that argument does not get any further: it is just another way of saying that Applicants' interest "is to prevent the action from going forward," *see Viet Bui*, 2015 WL 3828424, at *2, pending the JPML's decision. As *Viet Bui* recognized, "[i]ntervention as of right is not available" to applicants who merely seek to slow an action down. *Id.*

Because Applicants have failed to establish that they have a significantly protectable interest in this litigation, the Court should deny their Motion.

**3. Disposition of this action will not impair or impede Applicants' ability to protect any interest they claim to have.**

Nor have Applicants shown that if this action proceeds, their ability to protect their purported interests would be impaired or impeded. "Even if this lawsuit would *affect* the proposed intervenors' interests, their interests might not be *impaired* if they have 'other means' to protect them." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). Because of that, an intervention applicant does not satisfy the "impairs or impedes" requirement where he is a class member who can opt out of or object to any proposed classwide relief, *Tobin v.*

*Conopco, Inc.*, 2013 WL 1729845, at *2 (N.D. Cal. Apr. 22, 2013), or where he is able to file his own lawsuit to protect his rights, *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002). Applicants are both.

*United States v. City of Los Angeles* is instructive. In that case, the federal government alleged that the City of Los Angeles and Los Angeles Police Department ("LAPD") engaged in a pattern or practice of excessive force, false arrests, and improper searches and seizures. *Id.* at 396. A number of individuals sought leave to intervene, arguing that they suffered from the same police misconduct at issue in the case and therefore had a stake in the institutional reforms coming out of the litigation. *Id.* at 397. But the Ninth Circuit disagreed, holding that the intervention applicants' interests were not impaired because the litigation did not prevent any individual subjected to LAPD's practices from initiating suit against LAPD to remedy that harm or to commence reform efforts. *Id.* at 402.

Likewise here. That Plaintiffs have initiated litigation challenging Defendants' alleged practice of collecting and using personal information from children under age 13 does not prevent Applicants from bringing their own cases challenging the same alleged conduct. Indeed, Applicants have *already* filed their own complaints and are actively prosecuting them—including by opposing Defendants' motions to transfer those cases to the very jurisdiction in which Applicants now seek to intervene.[9] *City of Los Angeles* is dispositive—because Applicants have "other means" to protect their interests, *Lockyer*, 450 F.3d at 442, and have filed other lawsuits to protect those interests, their interests are not impaired by this litigation, *see City of Los Angeles*, 288 F.3d at 402.

Also consider *Tobin v. Conopco*. In that case, a plaintiff brought claims against Ben & Jerry's for its use of the term "All Natural," when certain ingredients

[9] *See* Pls. Mem. in Opp. to Defs.' Mot. to Transfer Venue, *Humbert v. ByteDance Inc.*, No. 5:24-cv-00236-MW-MJF (N.D. Fla. Dec. 31, 2024), Dkt. 24; Pl.'s Opp. to Defs.' Mot. to Transfer, *McKissick v. ByteDance Inc.*, No. 3:24-cv-08051-JD (N.D. Cal. Jan. 10, 2025); Dkt. 22.

were allegedly non-natural. 2013 WL 1729845, at *1. A plaintiff who had brought another case alleging the same theory of liability moved to intervene in the *Tobin* action. *Id.* The applicant argued that the *Tobin* litigation would impair or impede her ability to protect her interests because the *Tobin* parties could enter a settlement that the applicant would have no ability to control. *Id.* at *2. The court disagreed—"if the Court ultimately were to approve a settlement, [the applicant] could opt out or object. Thus, her interests would be protected." *Id.*

The same reasoning applies here. Federal Rule of Civil Procedure 23 gives class members a way to protect their interests in class-action litigation with which they disagree, including by objecting or opting out before classwide relief is ordered. *See* Fed. R. Civ. P. 23(c)(2)(B); (e)(1), (4)-(5). Those procedures protect Applicants' interests, as putative class members, in this case as well.

Applicants suggest that Plaintiffs' pending motion for appointment of interim class counsel somehow impairs any protectable interest Applicants claim to have. Mot. at 11. But "[R]ule 24(a) focuses on the potential intervenors and not on their counsel." *SWEPI, LP v. Mora Cnty.*, 2014 WL 6983288, at *41 (D.N.M. Dec. 5, 2014). Applicants cite no authority for their position, and in fact, courts have *rejected* the notion that intervention for the purpose of interfering with proposed class leadership is proper. *See Calderon*, 2020 WL 2792979, at *4 (denying intervention where "[the intervention applicant] is using intervention as a vehicle to fight for control of what he anticipates will be a hotly contested lawsuit … and assuming all of these cases end up in a single district …, his lawyer is fighting for the right to be lead counsel"); *Albert Fadem Tr. v. WorldCom, Inc.*, 2002 WL 1485257, at *2 (S.D.N.Y. July 12, 2002) ("The filing of a motion before the [JPML] does not require this Court to defer its consideration of the motions for consolidation and *appointment of lead plaintiff*…. It would be detrimental to the

interests of the proposed class.”). Applicants’ suggestion that the pending motion for appointment of class counsel impairs their interests should be rejected.

**4. Even if Applicants had an interest in this litigation, it is not inadequately represented by the parties to this action.**

Even if Applicants had a significantly protectable interest in this litigation (they do not) and even if that hypothetical interest were impaired or impeded by this litigation (it is not), intervention would *still* be inappropriate unless Applicants can show that their interests are inadequately represented by Plaintiffs. They fail to make that showing as well.[10]

Courts consider three factors in determining the adequacy of representation: “(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor’s arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.” *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). “The most important factor” in determining adequacy of representation is whether the interests of the parties align—“[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.” *Id.* In other words, where the applicant’s interest is “identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation.” *Id.*

Applicants do not address Plaintiffs’ objectives or attempt to make a compelling showing that Plaintiffs’ representation is inadequate. Instead, Applicants argue that *Defendants’* motion to transfer and *Defendants’* refusal to agree with the MDL Motion are evidence that Applicants’ interests are not

[10] Nothing herein should be construed as an admission that Plaintiffs or their counsel are adequate representatives for purposes of Federal Rule of Civil Procedure 23(a)(4).

adequately protected. Mot. at 10. Applicants focus on the wrong party—it should come as no surprise that Defendants do not share the same interests as Applicants.

But Plaintiffs in this case *do* share Applicants' interest. Plaintiffs' and Applicants' "ultimate objective[s]" are the same—they each seek money damages for and injunctive relief from Defendants' alleged collection and use of personal information from children under 13 who gained access to the TikTok platform by misstating their ages. *Compare J.C.* Compl. ¶ 3, p. 121, *with Humbert* Compl. ¶¶ 1-2, p. 36; *McKissick* Compl. ¶¶ 1-2, p. 37; *and Lanser* Compl. ¶¶ 1-2, p. 26. And they seek certification of practically identical nationwide classes. *Compare J.C.* Compl. ¶¶ 317, 320, *with Humbert* Compl. ¶ 95; *McKissick* Compl. ¶ 80; *and Lanser* Compl. ¶ 81; *see also* Mot. at 20 (recognizing that the class actions involve "the same or overlapping putative classes").

While differences in strategy would not be sufficient to justify Applicants' intervention in any event, *see Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), it also bears noting that the claims Plaintiffs are pursuing here overlap with the claims Applicants assert in their own actions. *Compare J.C.* Compl. ¶¶ 334-603 (asserting claims for invasion of privacy, unjust enrichment, and violations of unfair-competition and consumer-protection laws), *with Humbert* Compl. ¶¶ 110-159 (asserting claims for invasion of privacy, unjust enrichment, and violations of Florida's unfair-competition law); *McKissick* Compl. ¶¶ 95-168 (asserting claims for unjust enrichment, invasion of privacy, and California's unfair-competition law); *and Lanser* Compl. ¶¶ 96-115 (asserting claims for invasion of privacy and unjust enrichment).

Applicants have thus failed to show that their interests in this litigation (if there were any) would be inadequately represented by Plaintiffs.

* * *

Applicants have failed to put forward any relevant evidence or authority showing that intervention is warranted. The Court should deny the Motion.

**B. Applicants have not demonstrated that a stay is appropriate.**

Without demonstrating that intervention is appropriate, Applicants have no standing to ask this Court to stay the action. But even if Applicants were entitled to intervene, Applicants have not shown that a stay is warranted. The filing of an MDL motion does not trigger a stay, and there is no reason to institute one here. The Court's efforts to advance this case while the MDL Motion is pending—a period of just a few months—will benefit the parties and, if ultimately applicable, the MDL court. The Court and parties can guard against duplicative litigation and potential inconsistent rulings without a wholesale stay. Finally, Applicants do not point to any realistic prejudice that they or the parties will incur absent a stay. In these circumstances, the Court should keep the action moving forward.

**1. The pendency of JPML proceedings does not itself warrant staying this litigation.**

Applicants insist that when a "JPML petition is pending, … the ordinary course is to stay the action pending the decision of the panel." Mot. at 10; *see id.* at 12-14. That's not right. As noted, the Court "should not automatically stay" a case upon the filing of an MDL motion. *Rivers*, 980 F. Supp. at 1360; *see Genna v. TransUnion, LLC*, 2023 WL 183903, at *1-2 (D. Nev. Jan. 12, 2023) (denying motion to stay, noting that "an action is not automatically stayed upon the filing of the MDL Motion"); *In re Duke Energy Corp. Sec. Litig.*, 2002 WL 1933798, at *1 (S.D.N.Y. Aug. 20, 2002) ("The Court concludes that the filing of a motion before the MDL Panel does not require this Court to defer its consideration of the motions for appointment of lead plaintiff and lead counsel or in any other way defer the progress of this case.").

In fact, the JPML's rules make clear that "the pendency of a motion … before the Panel pursuant to 28 U.S.C. § 1407 does *not* affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." J.P.M.L. R. 2.1(d). And so, contrary to Applicants' argument, even when a centralization motion has been filed with the JPML, the expectation is that the district courts will continue to advance the individual actions in the interim. This Court should do so here.

**2. A stay is not necessary to conserve judicial resources.**

Applicants next argue that the Court should stay this action because, if the JPML "transfer[s] this action to another court or judge, any efforts expended by this Court on pretrial proceedings would most likely be replicated by the [transferee] judge[.]" Mot. at 13; *see id.* at 12-14 (arguing that a stay will "conserv[e] judicial resources"). But Applicants never explain what efforts, specifically, would be wasted or replicated absent a stay. Given that the JPML will likely hear the MDL Motion by late March,[11] it is unlikely that the Court will issue significant rulings or engage in extensive case management before the JPML rules. *See Genna*, 2023 WL 183903, at *2 ("[T]he imminent [JPML] hearing also demonstrates little need for a stay."); *Fishburn v. BP, PLC*, 2010 WL 2104624, at *2 (S.D. Ala. May 25, 2010) ("[T]he likelihood of adjudication of any merits issues prior to late July (when the MDL Panel will hear the motions to transfer) appears quite slim[.]").

Nor would any efforts undertaken by the Court be "for naught," as Applicants claim. Mot. at 14. Rather, "it would benefit both the parties and the transferee court (assuming there is one) to have a clear picture of the issues joined and the defenses raised, with briefing of any threshold legal issues already

[11] The *Humbert* Applicants represented to the Northern District of Florida court that, as "the next JPML Hearing is scheduled for January 30, 2025, … the JPML will soon determine whether to coordinate this and the other cases" that are subject to the MDL Motion. Pls.' Mot. to Stay Pending Transfer to Multidistrict Proceeding & Incorporated Mem. of L. at 3, *Humbert v. ByteDance Ltd.*, No. 5:24-cv-00236-MW-MJF (N.D. Fla. Dec. 17, 2024).

completed, at the time of any transfer order by the MDL Panel." *See Fishburn*, 2010 WL 2104624, at *2; *see also Smokey Alley Farm P'ship v. Monsanto Co.*, 2018 WL 278624, at *4 (E.D. Mo. Jan. 3, 2018) (in denying motion to stay pending JPML decision, noting that "if this Court rules on the motions to dismiss, the Court might resolve some claims for the JPML, or a subsequent transferee court"). Since the COPPA Actions "assert the same or similar claims" and hinge on "common legal theories," Mot. at 9, any rulings or orders that this Court issues would likely help clarify the issues for all parties and courts involved.

Assuming the parties ever do encounter a risk of "duplicative or inconsistent rulings" or "unnecessary litigation," *id.* at 13, the parties and the Court can manage those risks without a full stay of the case. *See Smokey Alley*, 2018 WL 278624, at *3 ("[T]he Court may address such issues as they arise to avoid an unnecessary stay at this time and the possibility of future inconsistent obligations for the parties."). For example, parties could file "narrowly tailored motion[s]" to mitigate specific risks. *See Genna*, 2023 WL 183903, at *2 ("If a danger of inconsistent rulings or duplicative issues arises, TransUnion may file a narrowly tailored motion to stay discovery."). Or the Court itself can stay particular facets of the litigation as necessary. *See Strumlauf v. Starbucks Corp.*, 2016 WL 3645194, at *2 (N.D. Cal. July 6, 2016) (staying depositions, but otherwise denying motion to stay case during pendency of JPML proceedings).

Because staying this case is not necessary to conserve judicial resources, the Court should not stay the action on that basis.

### 3. The COPPA Actions and the cases pending in MDL No. 3047 advance different central theories.

At the heart of Applicants' request for a stay is the argument that this Court should not take any action in the COPPA Actions pending before it because the JPML is likely to centralize those actions in MDL No. 3047. Mot. at 14-20. But the

Court need not predict how the JPML will rule to determine whether a stay is appropriate. And Applicants' argument, such as it is, is premised on an incorrect factual assertion: that "the core facts and claims pending in this Court are already largely encompassed by MDL No. 3047." *Id.* at 14. In reality, there is not significant overlap between the COPPA Actions and the cases pending in MDL No. 3047.

MDL No. 3047—captioned *In re Social Media Adolescent Addiction/Product Liability Litigation*—was initiated more than two years ago. The MDL targets four corporate families: Meta, Google, Snap, and Defendants here. *See* Applicants' Ex. 2 ¶¶ 25-47, Dkt. 55-2 ("MDL Master Compl."). As the MDL's name suggests, and as the JPML recognized, the MDL plaintiffs broadly allege that "defendants' social media platforms are defective because they are designed to maximize user screen time, which can encourage addictive behavior in adolescents." *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 637 F. Supp. 3d 1377, 1378 (J.P.M.L. 2022). That much is clear from the first paragraph of the MDL master personal-injury complaint, which asserts that "American children are suffering an unprecedented mental health crisis fueled by Defendants' addictive and dangerous social media products." MDL Master Compl. ¶ 1. The vast majority of the 1,093-paragraph-long complaint is devoted to that theory.

The central focus of MDL No. 3047 thus stands in contrast to the subject matter of the COPPA Actions, which, as Applicants put it, centers on allegations that "TikTok collects and sells personally identifiable information ('PII') of millions of minor children, without the consent of the minors or their parents." Mot. at 1. Applicants do not, and could not, point to any allegation in the COPPA Actions that deals with the supposedly addictive nature of the TikTok platform or personal injuries stemming from the use of that platform. As the *McKissick*

Applicant admits in his MDL Motion, the COPPA Actions "do not allege social media addiction." MDL Mot. at 7.

Applicants nonetheless insist that, like the COPPA Actions, the MDL master complaint makes allegations about Defendants' "age verification measures," "parental controls," and supposed knowledge that "children are ubiquitous" on the TikTok platform. Mot. at 14. These characterizations vastly overstate the extent of the overlap between MDL No. 3047 and the COPPA Actions. The MDL complaint devotes just *10* of 1,093 paragraphs specifically to the TikTok platform's "age verification measures" and just *one* paragraph to Defendants' alleged knowledge of child users on the TikTok platform. MDL Master Compl. ¶¶ 555, 567-76. And the MDL complaint's allegations about "parental controls" have nothing to do with the COPPA Actions; those allegations are directed to the TikTok platform's "Family Pairing" feature and related functions (*id.* ¶¶ 577-82), which the COPPA Actions do not even mention.[12]

Applicants next argue that Defendants' recent removal of a state-court case to the Northern District of California shows that the COPPA Actions are related to MDL No. 3047. Mot. at 16-20. Wrong again. To begin, Applicants' observation that Defendants removed the case "not to the Central District of California, but to the Northern District of California," *id.* at 18, is a *non sequitur*. As Applicants recognize, the California Attorney General filed the case in Santa Clara County, *id.* at 20, which is in the Northern District. Defendants therefore could *only* remove the case to the Northern District. *See* 28 U.S.C. § 1441(a) (action must be removed to "the district and division embracing the place where such action is pending").

[12] Consistent with its focus on alleged addiction and related harms to youth, the MDL master complaint asserts a long list of product-liability claims—mostly strict liability and negligence—as well as claims for wrongful death, loss of consortium, and consumer protection. MDL Master Compl. ¶¶ 832-1093. Just two of the complaint's 18 claims are premised, in part, on alleged COPPA violations. *Id.* ¶¶ 962.d, 1010.

That Defendants moved to relate California's case to MDL No. 3047 is both unsurprising and irrelevant. The primary thrust of California's complaint is that the TikTok platform is "intended to be addictive" and "is severely harmful to the physical and psychological well-being of young users," and that Defendants deceive the public about these alleged risks. Applicants' Ex. 4 ¶¶ 1-3, Dkt. 55-4. California spends over 200 paragraphs elaborating on that theory. *Id.* ¶¶ 53-282. That makes the case a natural fit for MDL No. 3047, even if the complaint also makes allegations about COPPA. As Judge Gonzalez Rogers found when she related California's case to MDL No. 3047, "[a] central focus in both actions, as alleged, is TikTok's development of an intentionally addictive platform that harms, in particular, young users." Related Case Order, *California v. TikTok Inc.*, No. 4:24-cv-07942-WGR (N.D. Cal. Nov. 20, 2024), Dkt. 21. That "central focus" of MDL No. 3047 is entirely absent from the COPPA Actions.

Finally, the fact that MDL plaintiffs served requests seeking discovery about DOJ's COPPA case, Mot. at 15-16; Applicants' Ex. 13, Dkt. 57-6, does nothing to establish that DOJ's case, or any of the other COPPA Actions, should be part of MDL No. 3047. A discovery request is just that—*a request*. It is not a judicial finding or ruling. And even if the discovery requests were judicially determined to be relevant to and proportional to the needs of the MDL, that would not equate to a finding that centralizing the COPPA Actions in MDL No. 3047 is appropriate. As Applicants neglect to mention, the requests in question seek discovery relating to several *other* actions against Defendants as well. *See* Applicants' Ex. 13 at 7. Yet Applicants have not argued that *those* actions should also therefore be transferred to MDL No. 3047.

In the end, Applicants cannot fit a square peg into a round hole. The COPPA Actions have nothing to do with the MDL plaintiffs' central thesis: that various online services, including the TikTok platform, cause personal injuries because they

are designed to addict adolescents and encourage harmful behaviors. In light of that disconnect, Applicants' argument that this Court should stay this action until the JPML rules on the MDL Motion is even less compelling.

**4. Applicants are unlikely to be prejudiced absent a stay.**

Applicants claim that if the Court does not stay this action, they "may be prejudiced by inconsistent rulings"—"including on potential class certification"—or by "duplicative discovery." Mot. at 20. These arguments do not hold water. For one, as already noted, the JPML will very likely hear the *McKissick* plaintiff's MDL Motion by late March—meaning that the Court is unlikely to issue many (if any) rulings before the JPML issues its decision. While Defendants will not tell Applicants how to litigate their cases, it seems improbable that they or other plaintiffs in the COPPA Actions will move for class certification within the next few months. Of course, to the extent this Court *does* issue any rulings in the near future, those rulings will help elucidate the issues for the parties and any potential transferee court. *See Smokey Alley Farm P'ship*, 2018 WL 278624, at *4.

It is also not clear how "duplicative discovery" would prejudice Applicants. Mot. at 20. As they say in their very next sentence, the class actions are at an "early procedural posture." *Id.* Particularly because Defendants will be moving to dismiss the COPPA Actions, discovery most likely will not advance meaningfully, if at all, in the next few months. Even if discovery got off the ground in one or more of the actions, "discovery exchanged during the pendency of this action will benefit the parties … in the event an MDL is formed." *See Dang v. Honda Motor Co.*, 2015 WL 12830488, at *2 (M.D. Fla. Feb. 2, 2015) (denying motion to stay during pendency of JPML proceeding). The parties are perfectly capable of limiting burdens and minimizing duplication through informal coordination. *See Strumlauf*, 2016 WL 3645194, at *2 (suggesting that "with some foresight and organization," a party could minimize the expense of conducting discovery "in multiple actions").

### 5. Applicants' purported concern for Defendants' burden does not favor a stay.

Applicants finally contend that failing to issue a stay will prejudice Defendants, including by "forcing [them] to litigate the same issues in multiple forums." Mot. at 21. This concern rings hollow. Applicants filed copycat actions in other districts, despite the fact that the first-filed class actions were already pending before this Court. Applicants are also resisting transfer of their actions to this Court, which would eliminate duplicative litigation. And tellingly, the *McKissick* Applicant did not even move to stay *his own* case—he just wants to stay *this* case. *Cf. Terkel v. AT&T, Inc.*, 2006 WL 1663456, at *6 (N.D. Ill. June 9, 2006) (movants' "failure to seek a stay" in a parallel case made their arguments for a stay "difficult to accept at face value").[13] So while Defendants appreciate Applicants' apparent concern—and expect that Applicants will limit the burdens imposed on Defendants in these cases—that concern is no reason to stay this action.

## V. CONCLUSION

For these reasons, the Court should deny Applicants' Motion to Intervene. Even if intervention is permitted, the Court should not stay this action.

[13] On January 17, the Northern District court *sua sponte* stayed the *McKissick* action pending the JPML's decision. *See* Order, *McKissick v. ByteDance Inc.*, No. 3:24-cv-08051-JD (N.D. Cal. Jan. 17, 2025), Dkt. 25. For reasons explained, this Court should not stay this action.

Dated: January 21, 2025

Respectfully submitted,

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
STEPHEN J. McINTYRE
smcintyre@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

## CERTIFICATE OF SERVICE

I certify that on January 21, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: January 21, 2025

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,926 words, which complies with the word limit of Local Rule 11-6.1.

Dated: January 21, 2025

*<u>/s/ Daniel M. Petrocelli</u>*
Daniel M. Petrocelli