1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  STEPHEN J. McINTYRE (S.B. #274481)
   smcintyre@omm.com
3  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars
4  Los Angeles, California 90067-6035
   Telephone:  +1 310 553 6700
5  Facsimile:   +1 310 246 6779

6  STEPHEN D. BRODY (*pro hac vice*)
   sbrody@omm.com
7  O'MELVENY & MYERS LLP
   1625 Eye Street, NW
8  Washington, D.C. 20006-4001
   Telephone:  +1 202 383 5300
9  Facsimile:   +1 202 383 5414

10 *Attorneys for Defendants ByteDance Ltd.,*
   *ByteDance Inc., TikTok Ltd., TikTok Inc.,*
11 *TikTok LLC, TikTok Pte. Ltd., and*
   *TikTok U.S. Data Security Inc.*
12

13           **UNITED STATES DISTRICT COURT**

14           **CENTRAL DISTRICT OF CALIFORNIA**

15

16 | J.C., a minor, by and through their | Case No. 2:24-cv-06784-ODW(RAOx) |
17 | guardian ad litem, JODY |  |
   | VILLANUEVA, *et al.*, | **DEFENDANTS' MEMORANDUM** |
18 |  | **OF LAW IN SUPPORT OF THEIR** |
   |        Plaintiffs, | **MOTION TO DISMISS** |
19 |  | **PURSUANT TO FEDERAL** |
   |    v. | **RULES OF CIVIL PROCEDURE** |
20 |  | **12(b)(1) AND 12(b)(6)** |
   | BYTEDANCE LTD., BYTEDANCE |  |
21 | INC., TIKTOK LTD., TIKTOK INC., | Hon. Otis D. Wright II |
   | TIKTOK LLC, TIKTOK PTE. LTD., | Hearing Date: April 28, 2025 |
22 | and TIKTOK U.S. DATA SECURITY | Time: 1:30 p.m. |
   | INC., | Courtroom: 5D |
23 |  |  |
   |        Defendants. |  |
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................. 1

    A.      Defendants operate an online entertainment media platform ............... 1

    B.      Defendants take affirmative steps to protect children and families ...... 2

III.    PROCEDURAL HISTORY .................................................................. 3

IV.     LEGAL STANDARD ........................................................................... 4

V.      ARGUMENT ...................................................................................... 4

    A.      The Court should dismiss Plaintiffs' privacy claims ........................... 5

        1.      Plaintiffs do not plausibly allege Article III standing to bring any of their privacy claims ......................................................... 5

        2.      Plaintiffs fail to state a claim for intrusion upon seclusion or a violation of the California Constitution ....................................... 7

        3.      Plaintiffs fail to state a claim under of the New York Civil Rights Law .............................................................................. 9

    B.      The Court should dismiss Plaintiffs' unfair-competition claims ......... 11

        1.      Plaintiffs do not plausibly allege unfair-competition standing . 11

        2.      Plaintiffs do not plausibly allege Article III standing to pursue their unfair-competition claims ................................................. 17

    C.      The Court should dismiss Plaintiffs' unjust-enrichment claims ......... 17

        1.      Plaintiffs lack Article III standing to bring their unjust-enrichment claims ................................................................... 17

        2.      Plaintiffs do not plausibly allege that Defendants profited at *their* expense ........................................................................ 19

        3.      Plaintiffs do not plausibly allege that Defendants unjustly retained a benefit ................................................................... 20

    D.      Plaintiffs cannot pursue equitable relief because they fail to show that they lack an adequate remedy at law .................................................. 21

VI.     CONCLUSION ................................................................................. 22

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Abadi v. Am. Airlines, Inc.*,

5

   2024 WL 1346437 (S.D.N.Y. Mar. 29, 2024) .................................................9

6

*Aguilar v. Coast to Coast Comput. Prods., Inc.*,

   2024 WL 635314 (C.D. Cal. Jan. 8, 2024) .................................................4

7

*Ahringer v. LoanDepot, Inc.*,

8

   715 F. Supp. 3d 1274 (C.D. Cal. 2024) .................................................14

9

*Alderson v. United States*,

   718 F. Supp. 2d 1186 (C.D. Cal. 2010) .................................................16

10

*Ashcroft v. Iqbal*,

11

   556 U.S. 662 (2009) .................................................4

12

*Bass v. Facebook, Inc.*,

   394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................13

13

*Bell Atl. Corp. v. Twombly*,

14

   550 U.S. 544 (2007) .................................................4

15

*Best Carpet Values, Inc. v. Google, LLC*,

16

   90 F.4th 962 (9th Cir. 2024) .................................................16, 17

17

*Beverley v. Choices Women's Med. Ctr., Inc.*,

   78 N.Y.2d 745 (1991) .................................................9

18

*Burns v. Mammoth Media, Inc.*,

19

   2023 WL 5608389 (C.D. Cal. Aug. 29, 2023) .................................................17

20

*Byars v. Sterling Jewelers, Inc.*,

   2023 WL 2996686 (C.D. Cal. 2023) .................................................6

21

22

*Bytemark, Inc. v. Xerox Corp.*,

   342 F. Supp. 3d 496 (S.D.N.Y. 2018) .................................................21

23

*Cappello v. Walmart Inc.*,

24

   394 F. Supp. 3d 1015 (N.D. Cal. 2019) .................................................14

25

*Cho v. Hyundai Motor Co., Ltd.*,

   636 F. Supp. 3d 1149 (C.D. Cal. 2022) .................................................21

26

*Claridge v. RockYou, Inc.*,

27

   785 F. Supp. 2d 855 (N.D. Cal. 2011) .................................................12

28

*Coffee v. Google, LLC*,
2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ............................................. 20

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018) ......................................... 12

*Courser v. Mich. House of Reps.*,
404 F. Supp. 3d 1125 (W.D. Mich. 2019) ................................................ 7

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .................................................... 8

*Cousineau v. Microsoft Corp.*,
992 F. Supp. 2d 1116 (W.D. Wash. 2012) ............................................. 20

*Curtis v. City of New York*,
195 N.Y.S.3d 592 (Sup. Ct. 2023) ......................................................... 10

*Daniel v. Goodyear Tire/CBSD*,
2017 WL 9472892 (E.D. Mich. July 27, 2017) ....................................... 7

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) ........................................ 16

*Doe I v. Sutter Health*,
2020 WL 1331948 (Cal. Super. Jan. 29, 2020) ...................................... 16

*Duty Free World, Inc. v. Miami Perfume Junction, Inc.*,
253 So. 3d 689 (Fla. 3d DCA 2018) ...................................................... 19

*Edelman v. Starwood Capital Grp., LLC*,
892 N.Y.S.2d 37 (1st Dep't 2009) .......................................................... 19

*Eidelman v. Sun Prods. Corp.*,
2022 WL 1929250 (2d Cir. June 6, 2022) .............................................. 11

*Election Integrity Project Cal., Inc. v. Weber*,
113 F.4th 1072 (9th Cir. 2024) ................................................................. 4

*Ellinghaus v. Educ. Testing Serv.*,
2016 WL 8711439 (E.D.N.Y. Sept. 30, 2016) ....................................... 13

*Esparza v. Kohl's Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ...................................................... 8

*Estate of Fluegge v. City of Wayne*,
442 F. Supp. 3d 987 (E.D. Mich. 2020) ................................................. 18

*Gallaher v. U.S. Bank Nat'l Ass'n*,
2017 WL 2111593 (D. Conn. May 15, 2017) .......................................... 7

*Granite Commc'n, Inc. v. One Commc'ns Corp.*,
2008 WL 4793729 (D. Conn. Oct. 31, 2008)................................................18

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023) ........................................................7

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022).........................................................17

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023)............................................................13

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022).........................................................................21

*Halpern 2012, LLC v. City of Ctr. Line*,
806 F. App'x 390 (6th Cir. 2020)...................................................................17

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2019)........................................................7, 8

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .................................................8

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .................................................14

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)...........................................................6

*Hendricks v. DSW Shoe Warehouse, Inc.*,
444 F. Supp. 2d 775 (W.D. Mich. 2006)........................................................11

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009).....................................................................................7

*Howell v. N.Y. Post Co.*,
81 N.Y.2d 115 (1993).......................................................................................9

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ..................................................22

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)...........................................................6

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023)...............................................................6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).....................................................................18, 19

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................ 14

*In re Gen. Motors LLC Ignition Switch Litig.*,
   339 F. Supp. 3d 262 (S.D.N.Y. 2018) ................................................................ 21

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) .......................................................... 18, 19

*In re Google Location History Litig.*,
   428 F. Supp. 3d 185 (N.D Cal. 2019) .................................................................. 7

*In re Google, Inc. Priv. Policy Litig.*,
   50 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................... 8

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................... 8

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ............................................................................... 9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ............................................................... 13

*Kane v. Orange Cnty. Publ'ns*,
   649 N.Y.S.2d 23 (2d Dep't 1996) ....................................................................... 9

*Lau v. Gen Digital Inc.*,
   2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ..................................................... 15

*Lemelson v. Wells Fargo Bank, N.A.*,
   641 F. Supp. 3d 1005 (W.D. Wash. 2022) ........................................................ 11

*Lochridge v. Quality Temp. Servs.*,
   2023 WL 4303577 (E.D. Mich. June 20, 2023) ................................................ 20

*Low v. LinkedIn*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................ 16

*Mack v. Amazon.com, Inc.*,
   2023 WL 2538706 (W.D. Wash. Mar. 16, 2023) .............................................. 14

*Mai v. Supercell Oy*,
   2021 WL 4267487 (N.D. Cal. Sept. 20, 2021) .................................................. 18

*Manigault-Johnson v. Google, LLC*,
   2019 WL 3006646 (D.S.C. Mar. 31, 2019) ........................................................ 9

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) ......................................................................... 17

*McCracken v. Verisma Sys., Inc.*,
 91 F.4th 600 (2d Cir. 2024) ...................................................................17

*McIntyre v. Am. Honda Motor Co., Inc.*,
 2024 WL 3324622 (C.D. Cal. July 3, 2024) ..........................................21

*Michel v. Yale Univ.*,
 2023 WL 1350220 (D. Conn. Jan. 30, 2023) ..........................................19

*Mikulsky v. Noom, Inc.*,
 682 F. Supp. 3d 855 (S.D. Cal. 2023) ......................................................5

*Mount v. PulsePoint, Inc.*,
 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ........................................20

*Mujo v. Jani-King Int'l, Inc.*,
 13 F.4th 204 (2d Cir. 2021) ...................................................................17

*Muy v. Int'l Bus. Machs. Corp.*,
 2019 WL 8161747 (N.D. Fla. June 5, 2019) ...........................................11

*Orlander v. Staples, Inc.*,
 802 F.3d 289 (2d Cir. 2015) ...................................................................11

*Parnoff v. Aquarion Water Co. of Conn.*,
 188 Conn. App. 153 (2019) ......................................................................7

*Perkins v. WellDyneRx, LLC*,
 2023 WL 2610157 (M.D. Fla. Mar. 23, 2023) ........................................18

*Phillips v. U.S. Customs & Border Protection*,
 74 F.4th 986 (9th Cir. 2023) .....................................................................6

*Popa v. PSP Grp., LLC*,
 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) ......................................5

*Rollolazo v. BMW of N. Am., LLC*,
 2017 WL 6888501 (C.D. Cal. May 2, 2017).............................................21

*Rosal v. First Fed. Bank of Cal.*,
 671 F. Supp. 2d 1111 (N.D. Cal. 2009)...................................................20

*Rynasko v. N.Y. Univ.*,
 63 F.4th 186 (2d Cir. 2023) ...................................................................18

*Schroeder v. United States*,
 596 F.3d 956 (9th Cir. 2009) ...................................................................21

*Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*,
 2024 WL 4507355 (E.D. Mich. Oct. 16, 2024) ......................................19

*Smith v. Chase Manhattan Bank, USA*,
  741 N.Y.S.2d 100 (2002) ............................................................................. 10, 11

*Spokeo v. Robins*,
  578 U.S. 330 (2016) ........................................................................................ 5

*Svenson v. Google Inc.*,
  65 F. Supp. 3d 717 (N.D. Cal. 2014) ............................................................. 14

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ........................................................................... 1

*Taylor v. Google LLC*,
  2021 WL 4503459 (N.D. Cal. Oct. 1, 2021) ................................................. 18

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................................................................ 5

*Vance v. Amazon.com Inc.*,
  525 F. Supp. 3d 1301 (W.D. Wash. 2021) .................................................... 19

*Walker v. Thompson*,
  404 F. Supp. 3d 819 (S.D.N.Y. 2019) ............................................................ 9

*Wallace v. Health Quest Sys., Inc.*,
  2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ............................................. 13

*Wesch v. Yodlee, Inc.*,
  2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) .............................................. 15

*Wesch v. Yodlee, Inc.*,
  2021 WL 6206644 (N.D. Cal. July 19, 2021) ......................................... 13, 15

*Yantha v. Omni Childhood Ctr., Inc.*,
  2013 WL 5327516 (E.D.N.Y. Sept. 20, 2013) .......................................... 9, 10

**Statutes**

Cal. Bus. & Prof. Code § 17204 .......................................................................... 11

Conn. Gen. Stat. § 42-110g(a) ............................................................................ 11

**Other Authorities**

FTC, Complying With COPPA: Frequently Asked Questions
  (July 2020), https://www.ftc.gov/business-guidance/resources/
  complying-coppa-frequently-asked-questions ..................................................... 2

## I.    INTRODUCTION

Plaintiffs are minor children who allegedly created TikTok accounts and accessed the TikTok platform while under the age of 13. According to the Complaint, Defendants collected "Personal Information" from Plaintiffs without parental consent.[1] But a glaring omission pervades the Complaint: Plaintiffs nowhere identify what personal information Defendants unlawfully collected *from them*, much less how Defendants caused them harm. That omission is critical, because online platforms have legitimate and lawful reasons to collect certain personal information from users, including users under 13. That is why courts have repeatedly held that, to state a cognizable injury or a claim for relief, a plaintiff must plead facts that identify the particular information that was collected, demonstrate that the information was economically valuable, and show how he or she was harmed by its collection. Those essential allegations are missing here. Their absence dooms each of Plaintiffs' claims, both for lack of standing and on the merits. The Court should dismiss the Complaint in full.

## II.    FACTUAL BACKGROUND

### A.    Defendants operate an online entertainment media platform.

The TikTok platform is an online entertainment media platform that users can access via a desktop application or a downloadable app. *See* Compl. ¶ 70. In keeping with its mission "to inspire creativity and bring joy,"[2] the TikTok platform provides a creative forum in which users can share their skills, passions, and ideas. *See* Compl. ¶ 70. Users can combine video, music, and graphics to create

---

[1] Complaint" or "Compl." refers to Plaintiffs' Corrected Consolidated Class Action Complaint, Dkt. 73. "Defendants" refers collectively to Defendants ByteDance Inc., ByteDance Ltd., TikTok Inc., TikTok Ltd., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. Unless otherwise noted, all alterations, citations, and quotations are omitted, and all emphases are added.

[2] New User Guide (cited in Compl.¶ 111), https://www.tiktok.com/safety/en/new-user-guide (under "What is TikTok?" heading). Because the Complaint references these materials, the Court can consider them at this stage. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

everything "from dance challenges to lip-syncing to DIY tutorials to historical parodies to internet memes."[3]

### B.    Defendants take affirmative steps to protect children and families.

Defendants take seriously their responsibility to protect children and their families. To that end, Defendants have implemented systems and processes to screen for children under 13, and to identify and remove users who accessed the full TikTok platform (the "13+ Experience") while under 13 in violation of TikTok's policies. Before creating a TikTok account, for example, each user must enter his or her birthdate—a feature known as an "age gate." Compl. ¶ 88. Only users who identify themselves as 13 or older can create a TikTok account that has access to the 13+ Experience. *See id.* ¶¶ 89-92.

Any user who indicates that he or she is under 13 is directed to a separate experience, sometimes referred to as "Kids Mode." *Id*. Kids Mode is a distinct portion of the TikTok platform that is specifically designed to allow users under 13 to experience the platform in an age-appropriate manner. *See id.* ¶¶ 89-90. For instance, users in Kids Mode can view videos from other creators, but "cannot upload videos, post information publicly, or message other users." *Id.* ¶ 90.

As the Federal Trade Commission (FTC) recognizes, online service operators "may rely on the age information [their] users enter, even if that age information is not accurate."[4] Nonetheless, Defendants take affirmative steps to remove child users who gain access to the 13+ Experience by misrepresenting their ages. For example, Defendants use "keyword matching" to help identify accounts that potentially belong to child users. *Id.* ¶ 122. Human moderators review these accounts and their content to determine whether they likely belong to children. *Id.* ¶ 123. And Defendants conduct "quality assurance reviews" in which content

---

[3] New User Guide (under "TikTok basics" heading).

[4] FTC, Complying With COPPA: Frequently Asked Questions (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions.

MEM. ISO MOT. TO DISMISS
No. 2:24-cv-06784 ODW(RAOx)

moderators "re-review a subset of previously reviewed accounts" with the goal of identifying any errors. *Id.* ¶ 131.

In addition to instituting these processes for flagging and removing underage accounts, Defendants enable parents and guardians to request the deletion of an account their child has created on the 13+ Experience. Parents or guardians can submit deletion requests through a web form. *Id.* ¶¶ 112-13.

*    *    *

In short, Defendants have implemented policies designed to protect children under 13, with the goal of providing a safe environment for users and their families.

## III.    PROCEDURAL HISTORY

On August 2, 2024, the U.S. Department of Justice (DOJ) filed a lawsuit against Defendants in this District, asserting a single claim under the federal Children's Online Privacy Protection Act (COPPA). *See* Compl., *United States v. ByteDance Ltd.*, No. 2:24-cv-06535-ODW-RAO (C.D. Cal. Aug. 2, 2024), Dkt. 1 ("DOJ Compl."). DOJ alleges that Defendants violated COPPA, as well as a prior Stipulated Order involving two of Defendants' predecessor entities. *See generally id.*; Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief, *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019), Dkt. 10 (the "2019 Stipulated Order").

Shortly after DOJ filed suit, two sets of private plaintiffs filed class actions against the same Defendants in this Court, based on the same alleged conduct, alleging analogous theories of liability under state law. *See* Class Action Compl., *A.A. v. ByteDance*, No. 2:24-cv-06784-ODW-RAO (C.D. Cal. Aug. 9, 2024), Dkt. 1; Class Action Compl., *Villanueva v. ByteDance*, No. 2:24-cv-07922-ODW-RAO (C.D. Cal. Sept. 17, 2024), Dkt. 1. On November 25, 2024, this Court consolidated the two actions. Civil Minutes, *A.A. v. ByteDance Inc.*, No. 2:24-cv-06784-ODW-RAO (C.D. Cal. Nov. 25, 2024), Dkt. 52.

On December 15, 2024, Plaintiffs filed their consolidated class-action complaint. Dkt. 53.[5] Plaintiffs are ten minors who reside in California, Connecticut, Florida, Michigan, New York, and Washington. Compl. ¶¶ 21-30. Each Plaintiff allegedly created and used a TikTok account while under age 13. *Id.* Purporting to represent a national class and several state-specific classes of persons "who were 13 or younger when they used TikTok," Plaintiffs assert invasion-of-privacy, unfair-competition, and unjust-enrichment claims under state law. *Id.* ¶¶ 317-25, 334-60.

## IV. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "If the allegations of the complaint are merely consistent with a defendant's liability, … or are more likely explained by lawful behavior," a district court must dismiss the complaint. *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024). The plausibility standard "appl[ies] with equal force to Article III standing when it is being challenged on the face of the complaint." *Aguilar v. Coast to Coast Comput. Prods., Inc.*, 2024 WL 635314, at *1 (C.D. Cal. Jan. 8, 2024).

## V. ARGUMENT

The Court should dismiss the Complaint because Plaintiffs have not pleaded the facts necessary to support any of their causes of action. Plaintiffs never say what personal information they provided to Defendants, what Defendants did with that personal information, or how its collection harmed them. Without that "factual matter," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), Plaintiffs cannot maintain—and the Court should not conclude—that Defendants in any way

---

[5] Plaintiffs submitted a corrected class-action complaint following the Court's January 6, 2025, Order. *See* Compl. ¶ 1; Dkt. 62. Plaintiffs made no material changes to their allegations.

invaded Plaintiffs' privacy, caused Plaintiffs to sustain a cognizable loss, or unjustly received a tangible benefit at Plaintiffs' expense. And absent allegations showing that Plaintiffs lack an adequate remedy at law, the Court cannot sustain Plaintiffs' requests for equitable relief. Plaintiffs' claims should be dismissed.

### A.    The Court should dismiss Plaintiffs' privacy claims.

Plaintiffs bring claims for intrusion upon seclusion under California, Connecticut, Michigan, and Washington law, as well as claims for violations of the California Constitution's right to privacy and Sections 50 and 51 of the New York Civil Rights Law. These privacy claims fail for lack of standing and on the merits.

### 1.    Plaintiffs do not plausibly allege Article III standing to bring any of their privacy claims.

Every plaintiff must establish standing "for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To adequately plead standing, a plaintiff must identify a "concrete and particularized" harm that is "actual or imminent, not conjectural or hypothetical." *Spokeo v. Robins*, 578 U.S. 330, 339 (2016). In other words, the injury "must actually exist." *Id.* Though some "intangible harms," like invasions of privacy, *can* constitute a concrete injury, *TransUnion*, 596 U.S. at 425, a plaintiff asserting privacy claims must still "plead facts demonstrating that the defendants' interception of their information amounts to an invasion of privacy interests," *Popa v. PSP Grp., LLC*, 2023 WL 7001456, at *3 (W.D. Wash. Oct. 24, 2023) (collecting cases). In particular, "a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 862-65 (S.D. Cal. 2023).

The Complaint does no such thing. Plaintiffs offer only conclusory assertions that Defendants collected "Personal Information" from them without ever saying what that "Personal Information" is. Compl. ¶¶ 238, 245, 252, 259, 266, 275, 282, 289, 296, 303. Throughout the Complaint, Plaintiffs allege that Defendants collect

"Personal Information" from users, which can include things as varied as a user's name, username, address, email address, phone number, Social Security number, "persistent identifiers" (like cookies, IP addresses, and device identifiers), photographs, videos, audio, and geolocation information. *See* Compl. ¶¶ 96, 159, 162-63. But Plaintiffs do not specify *which*, if any, of this "Personal Information" Defendants supposedly collected from *them*. That omission is critical because many kinds of personal information—like names, email addresses, phone numbers, and persistent identifiers—do not implicate legally protected privacy interests. *See Phillips v. U.S. Customs & Border Protection*, 74 F.4th 986, 995-96 (9th Cir. 2023) (no standing because collecting "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations" does not create an "injury to privacy interests").[6]

Because Plaintiffs have not pleaded facts specifying which "Personal Information" Defendants collected from them, they have failed to plausibly allege a privacy harm sufficient to confer standing for any of their privacy claims. *See Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. 2023) (no standing for statutory privacy claim where plaintiff failed to "allege that she disclosed any sensitive information to [d]efendant"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (no standing for intrusion-upon-seclusion, California Constitution, and statutory privacy claims because alleged data collection did not amount to privacy injury).

---

[6] *See also, e.g.*, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (no standing because collecting "one's email address, phone number, or [social media] username" is not a privacy harm); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 355-56 (E.D. Pa. 2023) (no standing because "Website Users who d[o] not disclose highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards cannot establish concrete harm").

**2.    Plaintiffs fail to state a claim for intrusion upon seclusion or a violation of the California Constitution.**

To state a claim for intrusion upon seclusion, a plaintiff must plausibly allege that (1) the defendant intruded on "a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (California); *see also Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 860 (W.D. Wash. 2023) (Washington); *Parnoff v. Aquarion Water Co. of Conn.*, 188 Conn. App. 153, 172-73 (2019) (Connecticut); *Courser v. Mich. House of Reps.*, 404 F. Supp. 3d 1125, 1151 (W.D. Mich. 2019) (Michigan). The analysis of privacy claims brought under the California Constitution is "effectively identical." *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 196 (N.D Cal. 2019).

Even assuming Defendants collected from Plaintiffs *all* of the "Personal Information" referenced in the Complaint, Plaintiffs do not have a "reasonable expectation of privacy in that information," and collection of it is not "highly offensive." As explained, collecting personal information, like a user's name, email address, phone number, or persistent identifiers, does not amount to an invasion of privacy. *Supra* § V.A.1. Indeed, courts have held that accessing even more sensitive personal information, like credit reports, does not amount to intrusion upon seclusion. *See, e.g.*, *Daniel v. Goodyear Tire/CBSD*, 2017 WL 9472892, at *6-7 (E.D. Mich. July 27, 2017) (collecting cases) ("Obtaining a credit report is rarely an actionable intrusion."); *Gallaher v. U.S. Bank Nat'l Ass'n*, 2017 WL 2111593, at *10 (D. Conn. May 15, 2017) (similar).

The reasoning in *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2019), is instructive. There, users brought privacy, fraud, breach-of-contract, unfair-competition, and unjust-enrichment claims against Google, alleging that Google collected their personal information without their consent. *Id.* at 1078-79.

They alleged that Google invaded their privacy by collecting "usage and engagement data" that revealed "intimate details about users," like "their religious and political affiliations," their "sleep schedule," and "other habits and preferences." *Id.* at 1078. Nevertheless, the court held that the plaintiffs failed to state a claim for intrusion upon seclusion or a violation of the California Constitution because "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Id.* at 1089. Only when a privacy violation arises from "surreptitious" conduct, like secretly "recording … people's voices and conversations," does a privacy harm arise. *Id.* Collecting "general information" about a user "does not suffice." *Id.*

A similar analysis applies here. Because browsing the internet necessarily involves collection of users' data, Plaintiffs have no reasonable expectation of privacy in any "Personal Information" that Defendants allegedly could have collected from them. *See Hammerling*, 615 F. Supp. 3d at 1089 ("there is no reasonable expectation of privacy when the data collection is within users' common-sense expectation"). And collecting any of the information Plaintiffs identify is not "highly offensive." Courts have "consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Priv. Policy Litig.*, 50 F. Supp. 3d 968, 985 (N.D. Cal. 2014). As in *Hammerling* and other cases, Plaintiffs' allegations "are better characterized as data collection of routine commercial behavior," not "a highly offensive intrusion of privacy." *Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024).[7]

---

[7] *Accord Esparza v. Kohl's Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (collecting cases); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (collecting cases); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012).

1    That Defendants allegedly collected personal information from children

2    makes no difference. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262,

3    294 (3d Cir. 2016) (rejecting argument that "the use of cookies to track children is

4    particularly odious" because "Google used third-party cookies on Nick.com in the

5    same way that it deploys cookies on myriad other[] websites"). Nor does the fact

6    that Defendants allegedly violated COPPA matter for purposes of the analysis. *See*

7    *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646, at *6-7 (D.S.C. Mar. 31,

8    2019) (dismissing intrusion-upon-seclusion claim "based on nothing more than

9    alleged violations of COPPA").

10    For these reasons, the Court should dismiss Plaintiffs' intrusion-upon-

11    seclusion and California Constitution claims.

12    **3.    Plaintiffs fail to state a claim under the New York Civil Rights Law.**

13

14    New York "does not recognize a common law right of privacy." *Abadi v. Am.*

15    *Airlines, Inc.*, 2024 WL 1346437, at *51 n.51 (S.D.N.Y. Mar. 29, 2024). Rather,

16    "the right to privacy is governed exclusively by [S]ections 50 and 51 of the [New

17    York] Civil Rights Law." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 123 (1993). To

18    state a claim under Sections 50 and 51, a plaintiff must demonstrate: "(1) usage of

19    plaintiff's name, portrait, picture, or voice, (2) within the state of New York, (3) for

20    purposes of advertising or trade, (4) without plaintiff's written consent." *Walker v.*

21    *Thompson*, 404 F. Supp. 3d 819, 824 (S.D.N.Y. 2019).

22    To satisfy the "advertising or trade" requirement, a plaintiff must allege that

23    use of his likeness "appears in … an advertisement," *Beverley v. Choices Women's*

24    *Med. Ctr., Inc.*, 78 N.Y.2d 745, 751 (1991), or "draw[s] trade to the firm," *Kane v.*

25    *Orange Cnty. Publ'ns*, 649 N.Y.S.2d 23, 25 (2d Dep't 1996). Merely alleging that a

26    defendant "profited from misuse of plaintiff's name does not amount to a violation

27    of the statute." *Yantha v. Omni Childhood Ctr., Inc.*, 2013 WL 5327516, at *9

28    (E.D.N.Y. Sept. 20, 2013). Rather, Sections 50 and 51 apply "only in cases where

the defendant uses the plaintiff's identity in a manner that conveys or reasonably suggests the subject's *endorsement* of the publication in question." *Id.* New York courts have given "a repeated admonition" that Sections 50 and 51 "are to be strictly limited to … a business's dissemination of an individual's name and/or likeness to the public to promote a particular good or service." *Curtis v. City of New York*, 195 N.Y.S.3d 592, 598 (Sup. Ct. 2023).

Plaintiffs' New York Civil Rights Law claim flouts that clear directive. Plaintiffs nowhere allege that Defendants used *their* likenesses at all, much less used those likenesses in advertising. Instead, they make the general allegation that Defendants used "identities, photographs, and likenesses of children under the age of 13 to build profiles and target advertisements to those children" and "received revenues and profits" as a result. Compl. ¶¶ 527-28. But using unspecified children's likenesses to *target* them with advertisements is not the same as putting Plaintiffs *in* an advertisement. Plaintiffs do not allege, for example, that Defendants used Plaintiffs' videos in an ad campaign for the TikTok platform.

This case is similar to *Smith v. Chase Manhattan Bank, USA*, 741 N.Y.S.2d 100 (2002), where consumers alleged that Chase Bank sold their names, addresses, phone numbers, account numbers, credit-card usage, and other financial information to third-party vendors. *Id.* at 100. The third-party vendors allegedly used that information to create lists of Chase consumers, then provided those lists to telemarketing and direct mail representatives to conduct solicitations. *Id.* In return, Chase received a commission (of up to 24% per sale) if a product or service offered were purchased. *Id.* The court affirmed dismissal the plaintiffs' Section 50 and 51 claims, explaining that the statute "must be narrowly construed," and was "never intended to address the wrongs complained of by plaintiffs." *Id.* at 103.

So too here. Plaintiffs allege that Defendants profited by selling information to third parties for advertising revenue. Compl. ¶ 528. But Sections 50 and 51 were

"never intended to address [those] wrongs." *Smith*, 71 N.Y.S.2d at 103. Plaintiffs' New York Civil Rights Law claim should be dismissed.

### B.   The Court should dismiss Plaintiffs' unfair-competition claims.

Plaintiffs also contend that Defendants' alleged collection and use of their information without parental consent violate California's Unfair Competition Law (UCL), the Connecticut Unfair Trade Practices Act (CUTPA), the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the Michigan Consumer Protection Act (MCPA), the New York consumer protection law (NYCPL), and the Washington Consumer Protection Act (WCPA). These claims fail because Plaintiffs have not plausibly alleged any actionable injury.

### 1.   Plaintiffs do not plausibly allege unfair-competition standing.

To state a claim under any of these unfair-competition statutes, a plaintiff must satisfy a statutory injury requirement. *See* Cal. Bus. & Prof. Code § 17204 (UCL requires "injury in fact" and "lost money or property"); Conn. Gen. Stat. § 42-110g(a) (CUTPA requires "ascertainable loss of money or property"); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (NYCPL requires that "plaintiff suffered injury"); *Lemelson v. Wells Fargo Bank, N.A.*, 641 F. Supp. 3d 1005, 1012-13 (W.D. Wash. 2022) (WCPA requires injury to "plaintiff's business or property"); *Muy v. Int'l Bus. Machs. Corp.*, 2019 WL 8161747, at *2 (N.D. Fla. June 5, 2019) (FDUTPA requires plaintiff to be "financially deprived"); *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 781-82 (W.D. Mich. 2006) (MCPA "requires an allegation of 'loss'"). For every statute except the NYCPL, that injury must be economic. *See id.*[8]

---

[8] Under the NYCPL, "a plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *Eidelman v. Sun Prods. Corp.*, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022). For the reasons explained, *infra* § V.B.1, the loss-of-control and loss-of-value theories Plaintiffs assert in support of their NYCPL claim do not qualify as an "actual" injury, much less the economic injury required by the other unfair-competition statutes.

Plaintiffs do not allege that they ever paid Defendants for their services, or otherwise lost money or property as a result of Defendants' alleged conduct. Instead, Plaintiffs assert four abstract theories of economic injury. Each one is insufficient to establish unfair-competition standing.

**Loss-of-control.** In support of their UCL, FDUTPA, MCPA, and NYCPL claims, Plaintiffs allege that they have suffered an injury because they lost "the ability to control the use of their Personal Information." Compl. ¶¶ 381, 387-89, 465-67, 509-11, 552-54. But the Complaint is devoid of factual allegations indicating that Plaintiffs' personal information no longer belongs to them or is no longer in their "control." That defeats Plaintiffs' loss-of-control theory. *See Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862-63 (N.D. Cal. 2011) (dismissing unfair-competition claim for failure to plead injury where plaintiff's personal information "did not cease to belong to him, or pass beyond his control" as a result of defendant's alleged actions).

Plaintiffs' loss-of-control theory cannot support their UCL, FDUTPA, and MCPA claims for a separate reason: even if Plaintiffs *had* plausibly alleged that transmitting unspecified personal information to Defendants caused them to lose control of that information, loss of control does not amount to an *economic* injury, which is required to state a claim under each of those statutes. Plaintiffs simply do not point to any financial harm that could have resulted from losing their ability to control their personal information.

**Loss-of-value.** Plaintiffs' "loss-of-value" theory fares no better. Plaintiffs claim they have suffered an injury under the UCL, FDUTPA, MCPA, and NYCPL because they experienced a "loss of the value and/or diminishment in value of their Personal Information." Compl. ¶¶ 380, 464, 508, 551. But "lost value of a

---

To the extent Plaintiffs argue that their NYCPL claim survives based on their alleged privacy injuries, "[s]tate court judges in New York have held that similar invasion-of-privacy allegations do not meet the [NYCPL's] injury requirement." *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *7-9 (S.D.N.Y. July 12, 2018) (collecting cases).

plaintiff's personal information" does not amount to a cognizable injury under the unfair-competition laws. *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *4 (N.D. Cal. July 19, 2021) (UCL); *see Ellinghaus v. Educ. Testing Serv.*, 2016 WL 8711439, at *8 (E.D.N.Y. Sept. 30, 2016) ("loss of the value of [personal information] sold by Defendants" not an injury under NYCPL); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 992-93 (S.D. Cal. 2014) ("value of [plaintiffs'] personal information" insufficient to sustain FDUTPA claim).

To plead an unfair-competition injury, a plaintiff must allege something more concrete—for example, that plaintiffs "wished to sell [their] browsing data but [were] unable to do so or would be paid less for the data." *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023); *see Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *8 (S.D.N.Y. Mar. 23, 2021) ("lost value" theory insufficient where plaintiffs failed to "allege they could have monetized their private information" or that "their private information was actually monetized on the black market"). A plaintiff cannot "merely say the information was taken and therefore it has lost value"—he must allege facts showing that the "information has economic value *to him*." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019).

Plaintiffs plead no such facts here. All Plaintiffs say is that they suffered a "diminishment in value of their Personal Information." Compl. ¶¶ 381, 465, 509, 552. These conclusory allegations are untethered to any facts showing that Defendants' alleged conduct caused any diminishment in value. Plaintiffs do not, for example, identify the personal information that allegedly lost value, explain what that value might be, or describe whether they were unable to sell the information for the same value as before. Without those facts, their loss-of-value theory cannot support their unfair-competition claims. *See Griffith*, 697 F. Supp. 3d at 978; *Wallace*, 2021 WL 1109727, at *8; *Svenson v. Google Inc.*, 65 F. Supp. 3d

717, 730 (N.D. Cal. 2014) (unfair-competition claim dismissed because plaintiff had "not alleged any facts showing that [d]efendants' business practice—disclosing users' Contact Information to third-party App vendors—changed her economic position at all").

Plaintiffs cannot save this theory of injury by alleging that "Personal Information … has economic value" and citing studies to that effect. *See* Compl. ¶¶ 201-15, 221-27 & p. 43. Even if Plaintiffs' personal information had *some* value—which the Complaint's conclusory allegations do not demonstrate—that "does not mean that they lost money or property because [Defendants collected] their information." *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1284 (C.D. Cal. 2024); *see Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) ("just because Plaintiffs' data is [allegedly] valuable in the abstract … does not mean that Plaintiffs have 'lost money or property' as a result" of that value); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (although "each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information … has independent economic value to an individual user"). Because Plaintiffs do not plead facts showing that they were actually deprived of an opportunity to convert their information into financial gain, they have not alleged any injury on their loss-of-value theory.

***Benefit-of-the-bargain.*** The "benefit-of-the-bargain" theory Plaintiffs offer in support of their UCL and WCPA claims is no more viable. The "benefit-of-the-bargain" approach is rooted in the principle "that a plaintiff may demonstrate economic injury from unfair competition by establishing he or she 'surrender[ed]' in a transaction more, or acquire[d] in a transaction less, than he or she otherwise would have." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019-20 (N.D. Cal. 2019); *cf. Mack v. Amazon.com, Inc.*, 2023 WL 2538706, *2 & n.1 (W.D. Wash. Mar. 16, 2023) (similar). The theory is premised on the idea that a plaintiff "would

not have paid for" the defendant's services "had [he] known about the defendant's [misconduct]." *Wesch v. Yodlee, Inc.* ("*Wesch I*"), 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021).

A plaintiff, however, cannot claim that he lost the benefit of the bargain where he did not pay for the goods or services offered. It is common sense that a plaintiff has not demonstrated that he "surrender[ed] more or acquir[ed] less in a transaction than [he] otherwise would have" where he has not paid anything to the defendant. *See id.* ("[B]ecause Plaintiffs have not paid [defendant] any money" they "have not alleged how they lost money or property" under a benefit-of-the-bargain theory.); *Lau v. Gen Digital Inc.*, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024) ("plaintiffs' benefit-of-the-bargain theory fails because AOSP was free").

Here, Plaintiffs allege that Defendants deprived them of the "benefit-of-the-bargain" because they "received services from [Defendants] that were less valuable than the services they would have received if [Defendants] had abided by COPPA." Compl. ¶¶ 380-382, 590-91. But as explained, Plaintiffs never paid for their use of the TikTok platform, and they never plead what "value" they lost from their use of the platform. *Supra* § V.B.1. Not to mention that the "bargain" was likely based on Plaintiffs' misrepresentation—namely, that Plaintiffs were old enough to access the 13+ Experience. Because Plaintiffs' "bargain" with Defendants did not involve Plaintiffs forfeiting anything of monetary value, they have no colorable argument that they suffered a "benefit-of-the-bargain" injury. *Lau*, 2024 WL 1880161, at *4; *Wesch I*, 2021 WL 1399291, at *6.

***Right-to-exclude.*** The "right-to-exclude" theory Plaintiffs assert in support of their UCL and WCPA claims is not a cognizable injury either. Plaintiffs allege that they suffered an unfair-competition injury because they "have a property interest in the Personal Information collected by [Defendants]," and Defendants "deprived [them] of their right to exclude TikTok" from that information. Compl. ¶¶ 384, 593-94. This theory fails because no such property right exists.

The Ninth Circuit has established a three-part test for determining whether a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 969 (9th Cir. 2024). "Although this test is derived from California state law, it is based on well-established principles that are fundamental to the common law conception of property." *Alderson v. United States*, 718 F. Supp. 2d 1186, 1196 (C.D. Cal. 2010).

Plaintiffs flunk this threshold test. Their broad definition of "Personal Information" is not sufficiently definite to establish a property right. *See Doe I v. Sutter Health*, 2020 WL 1331948, at *14-15 (Cal. Super. Jan. 29, 2020) (refusing to recognize property right in "personally identifiable information," including cookies, IP addresses, and device identifiers, because it was not "sufficiently certain"). And, more importantly, online information is not "capable of exclusive possession or control." *Best Carpet*, 90 F.4th at 969. Because the personal information at issue here, like persistent identifiers or social media information, is "generated *by*" or *with* the website a user visits, users are not the sole owners of that information. *See Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012). Indeed, courts have rejected the argument that users have a property right in "personal information" that would trigger a right to exclude. *See id.* (collecting cases); *see also Doe I v. Google LLC*, 2024 WL 3490744, at *7 (N.D. Cal. July 22, 2024).

Moreover, even if Plaintiffs could establish a property right in their personal information, their allegations do not plausibly show that Defendants "deprived" Plaintiffs of their right to exclude others from that information. To the contrary, Plaintiffs voluntarily joined the TikTok platform, and only were able to do so because they misrepresented their ages when making accounts.

* * *

Because Plaintiffs do not plausibly allege that they suffered any tangible injury as a result of Defendants' alleged conduct, the Court must dismiss their unfair-competition claims.

### 2.    Plaintiffs do not plausibly allege Article III standing to pursue their unfair-competition claims.

For substantially the same reasons, Plaintiffs have not plausibly alleged an injury-in-fact for purposes of Article III. Because none of Plaintiffs' theories amount to a cognizable injury, they lack standing to bring their claims—under both the unfair-competition statutes and Article III. *See, e.g.*, *Burns v. Mammoth Media, Inc.*, 2023 WL 5608389, at *4 (C.D. Cal. Aug. 29, 2023) (collecting cases) (no standing for similar theories of injury); *Greenstein v. Noblr Reciprocal Exch.,* 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (same).

### C.    The Court should dismiss Plaintiffs' unjust-enrichment claims.

Plaintiffs assert claims for unjust enrichment under California, Connecticut, Florida, Michigan, New York, and Washington law. The Court should dismiss these claims for lack of Article III standing and on the merits.

### 1.    Plaintiffs lack Article III standing to bring their unjust-enrichment claims.

"The elements of a cause of action for unjust enrichment are simply stated as [1] receipt of a benefit and [2] unjust retention of the benefit at the expense of another." *Best Carpet*, 90 F.4th at 973 (California); *see also McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 608 (2d Cir. 2024) (New York); *Mujo v. Jani-King Int'l, Inc.*, 13 F.4th 204, 213 (2d Cir. 2021) (Connecticut); *Marrache v. Bacardi U.S.A., Inc., 1*7 F.4th 1084, 1101 (11th Cir. 2021) (Florida); *Halpern 2012, LLC v. City of Ctr. Line*, 806 F. App'x 390, 397 (6th Cir. 2020) (Michigan).

"[S]imply alleging … an unjust enrichment theory" is not "sufficient to establish Article III standing." *Taylor v. Google LLC*, 2021 WL 4503459, at *4

- 17 -

(N.D. Cal. Oct. 1, 2021). Rather, to satisfy Article III's injury requirement, a plaintiff must plead that he suffered *some* harm as a result of the defendant's gain— i.e., that he "retain[ed] a stake in the profits garnered" by the defendant. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020); *see Rynasko v. N.Y. Univ.*, 63 F.4th 186, 195 (2d Cir. 2023) (dismissing unjust-enrichment claim where plaintiff did not suffer "an injury to her legally protected interest"); *Perkins v. WellDyneRx, LLC*, 2023 WL 2610157, at *1-3 (M.D. Fla. Mar. 23, 2023) (similar); *Estate of Fluegge v. City of Wayne*, 442 F. Supp. 3d 987, 997 (E.D. Mich. 2020) (similar); *Granite Commc'n, Inc. v. One Commc'ns Corp.*, 2008 WL 4793729, at *7 (D. Conn. Oct. 31, 2008) (similar).

Yet again, Plaintiffs fail to plead facts showing that Defendants' alleged collection of their "Personal Information" amounts to a cognizable injury. As explained, Plaintiffs never allege *which* personal information, if any, they provided to Defendants, much less any facts suggesting that they "retain[ed] a stake in the profits [allegedly] garnered" from that information. *Supra* § V.B.1. Plaintiffs do not even bother to plead any distinct injuries for their unjust-enrichment claims. *See* Compl. ¶¶ 395-401, 437-43, 470-76, 514-20, 558-64, 597-603. Their deficient injury allegations are no more viable when it comes to unjust enrichment. *See, e.g.*, *Mai v. Supercell Oy*, 2021 WL 4267487, at *3 (N.D. Cal. Sept. 20, 2021) ("plaintiffs [who] lack[] standing on their [unfair-competition] claim … thus also [lack standing to pursue] unjust enrichment claims").

This case is akin to *In re Google Assistant Privacy Litigation*, 457 F. Supp. 3d 797 (N.D. Cal. 2020), where the plaintiffs sought to recover "substantial profits" that Google had allegedly reaped from its "unauthorized" collection of undefined "personal information." *Id.* at 834-35. Because the plaintiffs failed to plead "any description of the 'personal information' that Defendants[] allegedly used," they could not plausibly allege that such "unspecified 'personal information' has financial value or that Defendants have profited from the information." *Id.*

The Complaint here suffers from the same flaw: it merely alleges that Defendants collected unspecified "Personal Information" from Plaintiffs, *e.g.*, Compl. ¶ 238, that this "Personal Information" has "value," *e.g.*, *id.* ¶ 388, and that Defendants "profit[] from" their "use of [that] Personal Information," *e.g.*, *id.* ¶ 398. Without identifying the "'personal information' that [Defendants] allegedly used," and without alleging facts demonstrating that such information had financial value, Plaintiffs' unjust-enrichment allegations are "purely conclusory" and do not amount to an unjust-enrichment injury. *In re Google*, 457 F. Supp. 3d at 834-35.

Because they have not plausibly alleged that their data has any value that Defendants caused them to lose, all of their unjust-enrichment claims should be dismissed for lack of standing.

### 2. Plaintiffs do not plausibly allege that Defendants profited at *their* expense.

These same defects preclude Plaintiffs' unjust-enrichment claims from succeeding on the merits. In all but one of the relevant jurisdictions,[9] unjust enrichment requires plaintiffs to plead "an 'expense' stemming from some tangible economic loss to a plaintiff." *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1315 (W.D. Wash. 2021); *see Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, 2024 WL 4507355, at *7 (E.D. Mich. Oct. 16, 2024) (Michigan); *Michel v. Yale Univ.*, 2023 WL 1350220, at *6 (D. Conn. Jan. 30, 2023) (Connecticut); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 694 (Fla. 3d DCA 2018) (Florida); *Edelman v. Starwood Capital Grp., LLC*, 892 N.Y.S.2d 37, 40 (1st Dep't 2009) (New York).

---

[9] Though "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where [the plaintiff] has not suffered a corresponding loss," *In re Facebook Tracking*, 956 F.3d at 599, Plaintiffs still must show Article III standing. For the reasons discussed, the Court should dismiss Plaintiffs' California unjust-enrichment claim for lack of standing. *Supra* § V.C.1.

Plaintiffs fall short of this requirement because they do not plead facts showing that Defendants collected *their* data and thereby caused *them* to incur any financial loss. *Supra* § V.C.1. That warrants dismissal of their Connecticut, Florida, Michigan, New York, and Washington unjust-enrichment claims. *See, e.g.*, *Lochridge v. Quality Temp. Servs.*, 2023 WL 4303577, at *6-7 (E.D. Mich. June 20, 2023) (dismissal appropriate where plaintiff failed to allege that the defendant "received a benefit directly from the plaintiff"); *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *13 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x 32 (2d Cir. 2017) (dismissal appropriate because plaintiff "failed to plead injury based on misappropriation of the value of [plaintiff's] browsing information"); *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1130 (W.D. Wash. 2012) (dismissal appropriate because plaintiff failed to "offer any facts supporting a reasonable inference that she suffered an economic loss on account of Microsoft's purported appropriation of her data").

### 3. Plaintiffs do not plausibly allege that Defendants unjustly retained a benefit.

In the same vein, Plaintiffs' unjust-enrichment claims should be dismissed because the Complaint does not plausibly allege that Defendants obtained unjustly earned profits from Plaintiffs. Plaintiffs state in conclusory terms that Defendants collect and exploit children's personal information for "profit." *E.g.*, Compl. ¶ 3. But the Complaint provides no basis for determining whether or how Defendants profited from the alleged collection of *Plaintiffs'* personal information. *Supra* § V.C.1. As courts in this Circuit have explained, "conclusory allegation[s]" that defendants "retain[ed] profits, income[,] and ill-gotten gains at the expense of plaintiff" are not enough to establish unjust enrichment. *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009); *see also Coffee v. Google, LLC*, 2022 WL 94986, at *11 (N.D. Cal. Jan. 10, 2022) (dismissing unjust-enrichment

claim where plaintiffs had "not alleged facts showing that Google … profited from" the transactions in issue).

**D.    Plaintiffs cannot pursue equitable relief because they fail to show that they lack an adequate remedy at law.**

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 596 F.3d 956, 963 (9th Cir. 2009). Where there is an adequate remedy at law, it is appropriate to dismiss requests for equitable relief, including UCL and unjust-enrichment claims, at the pleading stage. *See McIntyre v. Am. Honda Motor Co., Inc.*, 2024 WL 3324622, at *15-16 (C.D. Cal. July 3, 2024) (equitable relief generally); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312-14 (9th Cir. 2022) (UCL); *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1172-73 (C.D. Cal. 2022) (California unjust enrichment); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) (New York unjust enrichment); *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 6888501, at *12 (C.D. Cal. May 2, 2017) (Florida, Michigan, and Washington unjust enrichment).[10]

Plaintiffs seek disgorgement arising from their unjust-enrichment claims, restitution arising from their UCL claim, and other equitable relief. Compl. ¶¶ 392, 401, 443, 475, 520, 564, 603 & p. 121. Plaintiffs claim that they lack an adequate remedy at law (1) because Defendants' "continued unlawful conduct in collecting and storing Personal Information of children under the age of 13" creates "continuing harm," and (2) because "[n]o remedy at law available to Plaintiffs … reaches [Defendants'] profits." Compl. ¶¶ 229-32. Neither of these arguments is persuasive.

Plaintiffs' only support for the allegation that they will be subject to "continuing harm" is that Defendants allegedly violated the 2019 Stipulated Order

---

[10] Although "an adequate legal remedy does not bar a damages claim for unjust enrichment under Connecticut law," *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 334 (S.D.N.Y. 2018), Plaintiffs' Connecticut unjust-enrichment claim should be dismissed for the reasons previously stated. *Supra* § V.C.

MEM. ISO MOT. TO DISMISS
No. 2:24-cv-06784 ODW(RAOx)

"as demonstrated by the DOJ's … Complaint." *Id.* ¶ 229. But *allegations* in a complaint, by definition, do not establish wrongdoing. Moreover, assertions that Defendants engaged in misconduct *in the past* does nothing to show that the conduct is ongoing. Indeed, the conduct alleged in DOJ's complaint is dated between 2019 and 2023. *E.g.*, DOJ Compl. ¶¶ 34, 66, 73, 75, 110.

As to Defendants' "profits," courts have rejected the argument that damages are inadequate when they do not disgorge ill-gotten gains, explaining that where damages and disgorgement remedy the same injury—here, the harm allegedly incurred from Defendants' alleged collection and use of personal information—a plaintiff cannot recover for both. *See Hubbard v. Google LLC*, 2024 WL 3302066, at *6 (N.D. Cal. July 1, 2024).

Since damages would be an available remedy if Plaintiffs were able to plead and prove up their claims, the Court should dismiss their pleas for equitable relief, as well as their UCL and unjust-enrichment claims.

## VI.   CONCLUSION

For these reasons, the Court should dismiss the Complaint.

1    Dated: January 29, 2025                    Respectfully submitted,

2

3                                              By:  */s/ Daniel M. Petrocelli*

4                                                   Daniel M. Petrocelli

5                                              DANIEL M. PETROCELLI
                                               dpetrocelli@omm.com
6                                              STEPHEN J. McINTYRE
                                               smcintyre@omm.com
7                                              O'MELVENY & MYERS LLP
                                               1999 Avenue of the Stars
8                                              Los Angeles, California 90067-6035
                                               Telephone:  +1 310 553 6700
9                                              Facsimile:   +1 310 246 6779

10                                             STEPHEN D. BRODY
                                               sbrody@omm.com
11                                             O'MELVENY & MYERS LLP
                                               1625 Eye Street, NW
12                                             Washington, D.C. 20006-4001
                                               Telephone:  +1 202 383 5300
13                                             Facsimile:   +1 202 383 5414

14                                             *Attorneys for Defendants ByteDance Ltd.,*
                                               *ByteDance Inc., TikTok Ltd., TikTok Inc.,*
15                                             *TikTok LLC, TikTok Pte. Ltd., and TikTok*
                                               *U.S. Data Security Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that on January 29, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: January 29, 2025                    */s/ Daniel M. Petrocelli*
                                           Daniel M. Petrocelli

MEM. ISO MOT. TO DISMISS
No. 2:24-cv-06784 ODW(RAOx)

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing memorandum of law contains 6,934 words, which complies with the word limit set by the Court.

Dated: January 29, 2025                              */s/ Daniel M. Petrocelli*
                                                     Daniel M. Petrocelli