David S. Golub, (pro hac vice)
Steven Bloch, (pro hac vice)
Ian W. Sloss, (pro hac vice)
Jennifer Sclar, (pro hac vice)
John Seredynski, (pro hac vice forthcoming)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com
sbloch@sgtlaw.com

Patrick Carey, (Bar No. 308623)
Mark Todzo, (Bar No. 168389)
**LEXINGTON LAW GROUP, LLP**
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

Eric Kafka (pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Karina Puttieva (SBN 317702)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kputtieva@cohenmilstein.com
jwaldman@cohenmilstein.com

*Attorneys for Plaintiffs and Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C., a minor, by and through their guardian ad litem, JODY VILLANUEVA; A.J., a minor, by and through their guardian ad litem, ALEXIS DOUGLAS; B.M., a minor, by and through their guardian ad litem, MARCELO MUTO; L.F., a minor, by and through their guardian ad litem, HEATHER BRESETTE; D.M., a minor, by and through their guardian ad litem, DARRYL MAULTSBY; D.R.H., D.W.H., and R.W., minors, by and through their guardian ad litem, RYAN HOYT; M.G., a minor, by and through their guardian ad litem, VALERIE GATES; C.P., a minor, by and through their guardian ad litem, LAMARTINE PIERRE, JR.; K.F., a minor, by and through their guardian ad | Case No.: 2:24-cv-06784-ODW-RAO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

litem, ANGELA FAUCETT; and J.W., a
minor, by and through their guardian ad
litem, KAYLA JARAMILLO,
individually and on behalf of all others
similarly situated,

                    Plaintiffs,

        v.

BYTEDANCE LTD; BYTEDANCE INC;
TIKTOK LTD; TIKTOK INC; TIKTOK
PTE. LTD; and TIKTOK U.S. DATA
SECURITY INC.,

                    Defendants.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................ 1

II.   FACTS ....................................................................................... 1

III.  STANDARD OF REVIEW ........................................................ 2

IV.   ARGUMENT ............................................................................. 3

    A.    Plaintiffs' Privacy Claims Should Be Sustained. ................................. 3

        1.    Plaintiffs have Article III standing to pursue their claims. ........ 3

        2.    Plaintiffs state cognizable privacy claims. ................................. 4

        3.    Plaintiffs state a cognizable claim under the New York Civil Rights Law. ................................................................................. 7

    B.    Plaintiffs Sufficiently Plead Consumer Protection Claims .................. 8

        1.    Plaintiffs have a property interest in their Personal Information. ................................................................................. 8

        2.    Plaintiffs sufficiently allege injury in fact. ................................. 9

        3.    Plaintiffs have suffered losses under the consumer protection laws of Connecticut, Florida, Michigan, New York, and Washington. ................................................................................. 12

    C.    Plaintiffs Sufficiently Plead Unjust Enrichment Claims. ................... 14

        1.    Plaintiffs have Article III standing to bring their unjust enrichment claims. ................................................................... 14

        2.    Plaintiffs are entitled to disgorgement of Defendants' unjust profits. ......................................................................................... 17

        3.    Plaintiffs allege that Defendants unjustly retained a benefit. ... 19

    D.    Plaintiffs lack an adequate remedy at law and are entitled to pursue equitable relief. ................................................................................. 19

V.    CONCLUSION ........................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Ambry Genetics Data Breach Litig.*,
    567 F. Supp. 3d 1130 (C.D. Cal. 2021) ......................................................................... 20

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 301 (S.D.N.Y. 2010) ............................................................................. 7

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................................... 13

*Arrington v. New York Times Co.*,
    55 N.Y.2d 433 (1982) .............................................................................................. 12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 663 (2009) ........................................................................................................ 3

*Bailey v. St. Louis*,
    268 So.3d 197 (Fla. App. 2018) .................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................... 2, 3

*Best Carpet Values, Inc. v. Google LLC*,
    90 F.4th 962 (9th Cir. 2024) ......................................................................................... 12

*Brown v. Google LLC*,
    2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ............................................. 9, 10, 11, 12

*Brown v. Google LLC*,
    685 F.Supp.3d 909 (N.D. Cal. 2023) ............................................................................ 10

*Byars v. Sterling Jewelers, Inc.*,
    2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .................................................................. 4

*C.M. v. MarinHealth Med. Group, Inc.*,
    2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ................................................................. 20

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................... 9, 11

*Castillo v. Costco Wholesale Corp.*,
　　2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........................................ 14

*Chapman v. Alawi*,
　　2018 WL 47211 (Mich. Ct. App. Jan. 18, 2018) ....................................... 14

*Chebul v. Tuft & Needle, LLC*,
　　2024 WL 5257021 (C.D. Cal. Oct. 9, 2024) ............................................. 20

*Cho v. Hyundai Motor Co., Ltd.*,
　　636 F. Supp. 3d 1149 (C.D. Cal. 2022) ................................................... 20

*Claridge v. RockYou, Inc.*,
　　785 F. Supp. 2d 855 (N.D. Cal. 2011) .................................................... 12

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
　　585 F. Supp. 3d 1111 (N.D. Ill. 2022) ................................................. 7, 8

*Coffee v. Google, LLC*,
　　2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .............................................. 19

*CTC Real Estate Servs. v. Lepe*,
　　140 Cal. App. 4th 856 (2006) ................................................................. 9

*Doe v. Meta Platforms, Inc.*,
　　690 F. Supp. 3d 1064 (N.D. Cal. 2023) ................................................. 20

*Douyon v. N.Y. Med. Health Care, P.C.*,
　　894 F. Supp. 2d 245 (E.D.N.Y. 2012) .................................................... 13

*Duty Free World, Inc. v. Miami Perfume Junction, Inc.*,
　　253 So. 3d 689 (Fla. 3d DCA 2018) ....................................................... 17

*In re Facebook, Inc. Internet Tracking Litigation* (*Facebook Tracking*),
　　956 F.3d 589 (9th Cir. 2020) ......................................................*passim*

*Farmer v. Humana, Inc.*,
　　582 F. Supp. 3d 1176 (M.D. Fla. 2022) ................................................. 13

*Gilkey v. Central Clearing Co.*,
　　202 F.R.D. 515 (E.D. Mich. 2001) ....................................................... 14

*In re Google Assistant Privacy Litigation*,
　　457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................. 16

iii

*Guy v. Convergent Outsourcing, Inc.*,
    2023 WL 4637318 (W.D. Wash. July 20, 2023) ........................................................... 18

*Haas v. Travelex Ins. Servs. Inc.*,
    555 F. Supp. 3d 970 (C.D. Cal. 2021) ................................................................ 19, 20

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2019) ............................................................... 4

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ....................................................................................... 4

*Howell v. N.Y. Post Co.*,
    81 N.Y.2d 115 (1993) .......................................................................................... 7

*Hubbard v. Google LLC*,
    2024 WL 3302066 (N.D. Cal. July 1, 2024) ...................................................... 5, 6, 20

*IntegrityMessageBoards.com v. Facebook, Inc.*,
    2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ..................................................... 20, 21

*Jackson v. Angela Kogan & Perfection Plastic Surgery, Inc.*,
    2022 WL 17582560 (S.D. Fla. Dec. 12, 2022) .................................................. 18

*James v. Walt Disney Co.*,
    701 F. Supp. 3d 942 (N.D. Cal. 2023) ............................................................... 4

*Kane v. Univ. of Rochester*,
    2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .................................................. 13

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................... 4

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ....................................................................................... 10

*Manigault-Johnson v. Google, LLC*,
    2019 WL 3006646 (D.S.C. Mar. 31, 2019) ....................................................... 6

*McDonald v. Kiloo ApS*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) ............................................................. 5

*McIntyre v. Am. Honda Motor Co.*,
    739 F. Supp. 3d 776 (C.D. Cal. 2024) ............................................................... 20

*In re Mednax Servs., Inc.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ........................................................... 14

*In re Meta Pixel Tax Filing Cases*,
   724 F. Supp. 3d 987 (N.D. Cal. 2024) ................................................... 10, 11, 12

*Mikulsky v. Noom, Inc.*,
   682 F. Supp. 3d 855 (S.D. Cal. 2023) ............................................................... 4

*Monarch Accounting Supplies, Inc. v. Prezioso*,
   170 Conn. 659 (1976) ..................................................................................... 15

*Nacarino v. Chobani, LLC*,
   668 F. Supp. 3d 881 (N.D. Cal. 2022) ............................................................ 20

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) .......................................................................... 6, 7

*People v. Ernst & Young, LLP*,
   114 A.D.3d 569 (N.Y. App. Div. 2014) ........................................................... 15

*Perkins v. WellDyneRx, LLC*,
   2023 WL 2610157 (M.D. Fla. Mar. 23, 2023) ................................................. 17

*Phillips v. U.S. Customs & Border Protection*,
   74 F.4th 986 (9th Cir. 2023) ............................................................................ 3

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................................................... 17, 19

*Raden v. Martha Stewart Living Omnimedia, Inc.*,
   2017 WL 3085371 (E.D. Mich. July 20, 2017) ............................................... 18

*Rogoff v. Transamerica Life Ins. Co.*,
   2024 WL 5010642 (C.D. Cal. Dec. 6, 2024) ................................................... 20

*Rosal v. First Fed. Bank of California*,
   671 F. Supp. 2d 1111 (N.D. Cal. 2009) .......................................................... 19

*Rudolph v. Hudson's Bay Co.*,
   2019 WL 2023713 (S.D.N.Y. May 7, 2019) .................................................... 18

*Rynasko v. N.Y. Univ.*,
   63 F.4th 186 (2d Cir. 2023) ........................................................................... 17

v

*Smith v. Chase Manhattan Bank, USA*,
   741 N.Y.S.2d 100 (2002) .................................................................................... 8

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
   613 F. Supp. 3d 1284 (S.D. Cal. 2020) ............................................................ 13, 14

*Souza v. Algoo Realty, LLC*,
   2020 WL 5300925 (D. Conn. Sept. 4, 2020) .......................................................... 18

*Svenson v. Google Inc.*,
   65 F. Supp. 3d 717 (N.D. Cal. 2014) .................................................................... 11

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................ 3

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ................................................................................. 3

*Vance v. Amazon.com Inc.*,
   525 F. Supp. 3d 1301 (W.D. Wash. 2021) .............................................................. 18

*Walker v. Thompson*,
   404 F. Supp. 3d 819 (S.D.N.Y. 2019) ..................................................................... 7

*Wesch v. Yodlee, Inc.*,
   2021 WL 6206644 (N.D. Cal. July 19, 2021) ......................................................... 11

*Wright v. Genesee Cnty.*,
   504 Mich. 410 (2021) ........................................................................................ 15

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* ..............................................................*passim*

Conn. Gen. Stat. § 42-110g(a) ................................................................................ 12,13

Fla. Stat. Ann. § 501.201, *et seq.* ...................................................................... 11, 12, 13

Mich. Comp. Laws Ann. § 445.901, *et seq.* ............................................................ 13, 14

N.Y. Civil Rights Law §§ 50-51 .............................................................................. 7, 8

N.Y. Gen. Bus. Law § 349, *et seq.* ......................................................................... 11, 13

Wash. Rev. Code. § 19.86.010, *et seq.* ................................................................... 13,14

## I.    INTRODUCTION

TikTok has profited off the systemic invasion of privacy of millions of children in the United States under the age of 13. This conduct violates privacy rights that Plaintiffs and absent class members enjoy over their Personal Information, as well as numerous statutes that protect individuals from unfair business practices. Plaintiffs have alleged sufficient facts to proceed with each of their causes of action.

## II.    FACTS

Defendants ByteDance Ltd., ByteDance, Inc., TikTok Inc., TikTok LLC, TikTok Ltd., TikTok Pte Ltd., and TikTok U.S. Data Security Inc. (collectively, "TikTok") operate one of the world's largest social media platforms that reaches millions of Americans under the age of 13. Compl. ¶ 4.[1] TikTok has knowingly permitted and encouraged children under the age of 13 to create user accounts on the TikTok app without parental notice or consent.  ¶¶ 76-99. TikTok thus violates the Children's Online Privacy Protection Act ("COPPA"). ¶¶ 13-15, 144, 166.

Defendants use this unlawfully collected information to serve children with targeted, behavioral advertising. ¶ 85. Plaintiffs allege that TikTok unlawfully collected the following Personal Information from child-users of TikTok, including themselves:

> first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and a profile image, as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created) … usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track user across different websites and platforms.

¶¶ 96-97; *see also* ¶¶ 162-66. Defendants engaged in this unlawful behavior for one reason — profit. Specifically, TikTok's primary revenue source is its advertising income

---

[1] All ¶ references in this brief refer to the Corrected Consolidated Class Action Complaint, ECF 73.

1

from third-party advertisements on its platform, ¶¶ 71-72, and one-third of TikTok's 49
million daily users are 14 or younger, ¶ 78. In fact, TikTok's U.S. revenue hit a record
$16 billion in 2023, and researchers estimated that 35% of TikTok's ad revenue is
derived from children and teenagers, ¶¶ 73-74.

Because children are so integral to TikTok's profitability, Defendants failed to
cease their unlawful business practices in the face of a Permanent Injunction, with a Civil
Penalty, that they entered into with the United States Government on March 27, 2019 (the
"2019 Permanent Injunction"). The 2019 Permanent Injunction prohibited Defendants
from their continued collection and use of the Personal Information of children without
verifiable parental consent. *See United States of America v. Musical.ly et. al.*, No. 2:19-
cv-1439 (C.D. Cal. Feb. 27, 2019), ECF 1. The order imposed a then record $5.7 million
civil penalty for violations of the COPPA Rule, 16 C.F.R. pt. 312, and Section 5 of the
Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45; required Defendants to destroy
personal information of users under the age of 13; required Defendants to remove
accounts of users whose age could not be identified; enjoined Defendants from violating
the COPPA Rule; and required Defendants to retain certain records related to compliance
with the COPPA Rule and the 2019 Permanent Injunction. ¶ 8.

TikTok has failed to abide by the 2019 Permanent Injunction, and as a result, has
violated the consumer protection statutes, or "Little FTC Acts", of California,
Connecticut, Washington, Michigan, New York, and Florida, and invaded the privacy of
class members in violation of the substantial protections California, Connecticut,
Michigan, and Washington provide to their citizens. TikTok has also been unjustly
enriched from this illegal conduct.

## III.    STANDARD OF REVIEW

To state a claim, plaintiffs need only allege "enough facts to state a claim to relief
that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A
claim is plausible when the facts alleged "allow[] the court to draw the reasonable

2

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009). "Heightened fact pleading of specifics" is not required. *Twombly*, 550 U.S. at 555, 570. Further, the Court "presume[s] all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

## IV.    ARGUMENT

### A.    Plaintiffs' Privacy Claims Should Be Sustained.

#### 1.    *Plaintiffs have Article III standing to pursue their claims.*

Plaintiffs have Article III standing to pursue common law claims for intrusion upon seclusion under California, Connecticut, Michigan, and Washington law, as well as a claim for violations of the California Constitution's right to privacy. The Supreme Court has recognized that "intrusion upon seclusion" is a concrete injury in fact for Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Plaintiffs "establish[] standing to bring claims for invasion of privacy [and] intrusion upon seclusion" when they adequately allege privacy harms. *In re Facebook, Inc. Internet Tracking Litigation* (*Facebook Tracking*), 956 F.3d 589, 598 (9th Cir. 2020). This is black letter law because "the right to privacy ha[s] long been actionable at common law." *Id.* (quoting *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019)). TikTok's cited authority confirms that an alleged "violation of the common law right to privacy" is a cognizable injury. *Phillips v. U.S. Customs & Border Protection*, 74 F.4th 986, 993 (9th Cir. 2023). Because Plaintiffs adequately allege a common law invasion of privacy, *infra* § IV.A.2, that alone is sufficient to establish standing. *See Facebook Tracking*, 956 F.3d at 598.

TikTok contends that Plaintiffs fail to identify which personal information TikTok collected from them. Not so. Plaintiffs allege that TikTok was "collecting" the specific Personal Information alleged in ¶¶ 96-97 and ¶¶ 162-66 of the Complaint. Furthermore, within their privacy causes of action, Plaintiffs allege that this same specific personal

information was improperly collected by TikTok from the named Plaintiffs. ¶¶ 337-41, 349-53, 403-07, 478-82, 566-70. These allegations are pled with sufficient specificity. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) ("Plaintiffs have sufficiently asserted personal information," including "specific web pages viewed, search terms entered, and purchase behavior."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023).

The cases cited by TikTok do not lend it any support. *See Br.* 5-6, ECF 77. In *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 862-65 (S.D. Cal. 2023), and *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023), the plaintiffs did not identify the types of personal information that they had disclosed. By contrast, here, Plaintiffs identified the personal information improperly collected from them.

### 2.    *Plaintiffs state cognizable privacy claims.*

Plaintiffs satisfy the elements of intrusion upon seclusion and a violation of the California Constitution. Plaintiffs allege that (1) TikTok intruded on "a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009); *Br.* 7 (collecting cases from Washington, Connecticut, and Michigan). Courts determine whether a defendant's actions are "highly offensive to a reasonable person" through a "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Facebook Tracking*, 956 F.3d at 606.

TikTok argues that "collecting personal information, like a user's name, email address, phone number, or persistent identifiers, does not amount to an invasion of privacy." *Br.* 7. And TikTok cites *Hammerling* for the proposition that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Id.* at 8 (citing *Hammerling v. Google LLC*, 615 F. Supp.

4

3d 1069, 1089 (N.D. Cal. 2019)). TikTok further argues that "collect[ing] personal information from children makes no difference." *Id.* at 9.

But courts have rejected these arguments and found that plaintiffs adequately alleged intrusion upon seclusion (and a violation of the California Constitution) in similar cases involving minors alleging COPPA violations. For example, in *A.B. By and Through Turner v. Google LLC*, the court denied the defendants' motion to dismiss that asserted the exact challenge raised by TikTok. *See* 2024 WL 3052969 (N.D. Cal. June 18, 2024). The court held that "[a] violation of federal law is generally considered egregious, and because COPPA prohibits such data collection from minors to protect their privacy, plaintiffs have adequately pleaded an egregious intrusion into the minors' expectation of privacy." *Id.* at *9. This intrusion was highly offensive "[n]o matter how un-sensitive or un-intimate the personal information collected here was." *Id.*

Similarly, in *Hubbard v. Google LLC*, the court found that plaintiffs had adequately alleged that defendants' conduct "constituted a highly offensive intrusion into an area where Plaintiffs maintained a reasonable expectation of privacy." 2025 WL 82211, *3 (N.D. Cal. Jan. 13, 2025). The *Hubbard* court grounded its decision on two "plus factors" that demonstrated the highly offensive nature of Google's conduct. *Id.* at *4; *see also McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1035 (N.D. Cal. 2019). First, the *Hubbard* plaintiffs alleged that Google "*targeted* children in connection with the main YouTube website and that platform's data tracking" that "extend[ed] beyond routine behavior that merely 'happens' to impact children in some instances." 2025 WL 82211, *4 (emphasis added). Second, the *Hubbard* plaintiffs alleged Google "*knew* it was collecting children's data through YouTube in violation of the COPPA" because Google had been notified of "concerns that YouTube did not comply with the COPPA" and Google "understood that young children regularly used YouTube." *Id.* at *5 (emphasis added).

Like in *Hubbard*, Plaintiffs here allege both "plus factors"—namely, that TikTok targeted children and that TikTok knowing violated COPPA. First, the Complaint includes extensive allegations regarding TikTok targeting children, ¶¶ 76-87, including that "TikTok publicly hosts thousands of accounts that feature content from well-known child brands such as My Little Pony, Pokémon, Cartoon Network, Bluey, and Kidzbop," and that these accounts contain "child-oriented subject matter, characters, activities, music and other content," ¶ 80. For example, Plaintiffs allege that TikTok "hosts, maintains, and promotes thousands of accounts on TikTok that are dedicated to child models and child celebrities and influencers." ¶ 82.

Second, Plaintiffs also include extensive allegations showing that TikTok knew it was collecting children's data in violation of COPPA. In 2019, TikTok paid a $5.7 million civil penalty for violating COPPA and entered into a Permanent Injunction with the United States government. ¶ 8. Nonetheless, TikTok knowingly created accounts for children and collected children's data without parental notice or consent, ¶¶ 88-99, including from "Kids Mode" accounts, ¶¶ 100-08. Plaintiffs also cite internal communications where TikTok employees acknowledge that the company is violating COPPA, including that TikTok "can get in trouble … because of COPPA" due to their failure to delete underage accounts. ¶ 134. TikTok also ignored parent requests to delete child users' data, ¶¶ 109-20, and even failed to delete children's accounts that were identified by its own system. ¶¶ 121-28. And TikTok had actual knowledge that it was collecting, storing and using the Personal Information of children under the age of 13, ¶¶ 129-44, yet made false claims to the FTC about its COPPA compliance. ¶¶ 145-146. The Complaint also identifies consumer surveys reflecting societal norms with respect to collection and commercial exploitation of the personal information of children. ¶¶182-91.

TikTok's citations to *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), and *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646 (D.S.C. Mar. 31, 2019) do not support dismissal. In those cases, there were no "plus factors," but the court

6

in *Nickelodeon* allowed plaintiffs to proceed based on defendant's "duplicitous tactics." 827 F.3d at 295. As discussed above, Plaintiffs here have adequately alleged plus factors because TikTok targeted children and knowingly violated COPPA.

### 3. Plaintiffs state a cognizable claim under the New York Civil Rights Law.

TikTok is correct that "the right to privacy is governed exclusively by [S]ections 50 and 51 of the [New York] Civil Rights Law." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 123 (1993). Plaintiffs have established the four elements of this claim: "(1) usage of plaintiff's name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without plaintiff's written consent." *Walker v. Thompson*, 404 F. Supp. 3d 819, 824 (S.D.N.Y. 2019). TikTok only challenges the third element—that Plaintiffs' information was used for "advertising or trade." *Id.*

Plaintiffs have adequately alleged that TikTok used their Personal Information for purposes of trade. The Complaint states that "TikTok used the identities, photographs, likenesses, and Personal Information of the New York Plaintiffs or members of the New York Class in connection with its business for the purposes of trade," specifically "to build profiles and target advertisements to those children." ¶ 528. By using Plaintiffs' data in this way, TikTok made a lucrative profit. In fact, "TikTok's primary source of income is advertising revenue, earned by showing third-party advertisements to users on its platform," and "TikTok generates this revenue via tracking, profiling, and targeting advertising based on Personal Information it collects from children." ¶ 529.

These allegations fit squarely within the definition of trade—namely, that Plaintiffs' Personal Information "would draw trade to the firm or use for the purpose of making profit." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 314 (S.D.N.Y. 2010). The court found this definition was met in the analogous case *In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111 (N.D. Ill. 2022). There, the court held that the plaintiffs "repeatedly alleged the Clearview defendants developed technology to

invade the privacy of the American public for their own profit." *Id.* Here too, TikTok has invaded Plaintiffs' privacy for their own profit.

TikTok only cites two cases to support its narrow reading. First, it selectively quotes *Curtis v. City of New York* (*Br.* 10), but omits the key "admonition" in that case that Sections 50 and 51 "are to be strictly limited to *nonconsensual commercial appropriations of the name, portrait or picture of a living person*," 195 N.Y.S.3d 592, 598 (Sup. Ct. 2023) (emphasis added). That is exactly what Plaintiffs have alleged here. Second, TikTok cites passing language in *Smith* for the proposition that, in that specific case, the New York Civil Rights Law was not "intended to address the wrongs complained of by plaintiffs." *Br.* 10 (citing *Smith v. Chase Manhattan Bank, USA*, 741 N.Y.S.2d 100, 103 (2002)). But *Smith* involved a complicated scheme concerning the sale of financial data to third party vendors, and the court provided no explanation for its dismissal of the claim. *See* 741 N.Y.S.2d at 103. Instead, the court cited prior decisions carving out exemptions to the law "where a plaintiff's photograph is used to illustrate a newsworthy article." *See id.* (citing *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 444 (2000); *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 (1982)). Without more, *Smith* does not implicate Plaintiffs' allegations in this case.

### B.    Plaintiffs Sufficiently Plead Consumer Protection Claims

Plaintiffs establish each of the elements under the consumer protection laws of California, Connecticut, Florida, Michigan, New York, and Washington. Defendants, however, ignore Plaintiffs' allegations showing economic harm and studiously avoid the mounting number of cases holding that improper collection and use of personal information can establish economic injury for purposes of statutory standing.

#### 1.    *Plaintiffs have a property interest in their Personal Information.*

Internet users have a property interest in their personal information, and thus, personal information is an asset with economic value. *See Facebook Tracking*, 956 F.3d

8

at 600 (economic injury where Facebook earned unjust profits from monetizing plaintiffs' personal information through advertising); *CTC Real Estate Servs. v. Lepe,* 140 Cal. App. 4th 856, 860 (2006) ("identifying information is a valuable asset….").

Courts further hold that diminishment of an individual's property interest in their personal information constitutes economic injury under the UCL. *See, e.g.*, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("plaintiffs who suffered a loss of their personal information suffered economic injury and had standing"); *Brown v. Google LLC*, 2021 WL 6064009, at *15-16 (N.D. Cal. Dec. 22, 2021) ("property interest" in personal information through Google's data collection and monetization practices); *Turner*, 737 F. Supp. 3d at 881-82 (plaintiffs can "no longer realize the full economic value of their Personal Information" due to Google's collection and use of children's personal information in violation of COPPA).

Plaintiffs here allege the loss of the value of their Personal Information because there is a "well-established and readily available market" for Personal Information, and it has economic value (including children's data). ¶221, 199-212, 214-16. Defendants' misappropriation and commercial exploitation of Plaintiffs' Personal Information without compensation—in violation of COPPA—has impaired Plaintiffs' ability to participate in that market. ¶¶ 212, 214, 217-27 ("once a child's Personal Information has been collected and exploited," it "diminishes the amount a knowledgeable buyer would be willing to pay for the Information"); ¶¶ 381-82, 384-85, 434-35, 465-68, 509-12, 552-55, 591, 593-95. These allegations fit squarely within the line of cases finding that the loss of personal information constitutes an economic injury.

### 2.    Plaintiffs sufficiently allege injury in fact.

Courts recognize several privacy harms involving personal information. First, a "benefit-of-the-bargain" theory, applicable even to "free services," where "expectations regarding [a plaintiff's] personal data are not met as a result of conduct alleged to violate the UCL" because plaintiff had to "surrender…more, or acquire…less" than they

9

otherwise would have in the transaction. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1023-25 (N.D. Cal. 2024). Second, a "diminished value" theory, where the personal information has value on the marketplace, and plaintiff alleges that they either "attempted or intended to participate" in the market for their data, or can otherwise "derive economic value from their [personal information]." *Id*. Third, a "right to exclude" theory, where plaintiff's right to exclude a company from access to their personal information is violated, constituting the diminishment of a "present or future property interest." *Id*.; *see also Turner*, 737 F. Supp. 3d at 881-83 (same).

Courts that decline to recognize this property interest have done so based on a misreading of *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 324 (2011). As then-District Judge Koh explained in *Brown*, the distinction between UCL and Article III standing derived from Article III's inclusion of non-economic injuries, not on a constricted view of economic injury under the UCL. *Brown*, 2021 WL 6064009, at *17. Specifically, "there is no precedent that suggests that economic injury has a different meaning in the UCL context than it does in the Article III context," and thus, "cases discussing economic injury in the context of Article III have full application to a court's analysis of UCL standing." *Id.* at *16-17 (cleaned up).

Plaintiffs in *Brown*, like plaintiffs here (¶¶ 199-212, 214-227), alleged that there was an "active market" to "monetize" the data, and that plaintiffs could quantify its "value." 2021 WL 6064009, at *15. These allegations established "at least two cognizable theories of economic injury." *Id*. First, "had Plaintiffs been aware of Google's data collection, they would have demanded payment for their data," and thus, Google caused Plaintiffs to "acquire in a transaction less[] than [they] otherwise would have." *Id.* Second, "because there are several browsers and platforms willing to pay individuals for data," Google "diminished Plaintiffs' future property interest." *Id.* (cleaned up); affirmed at summary judgment, *Brown v. Google LLC*, 685 F.Supp.3d 909, 942 (N.D. Cal. 2023). Similarly, in *Turner*, a case involving violations of COPPA, the court followed *Brown*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 2:24-cv-06784-ODW-RAO

and found diminished value of analogous personal information. 737 F. Supp. 3d. at 882-83. The court in *Turner* also found that plaintiffs established standing for their claims under FDUTPA and the NYGBL. *Id*.

Here, Plaintiffs have sufficiently alleged economic injury for purposes of standing under the UCL, as Plaintiffs have alleged all three forms of economic harm: (1) loss of "benefit-of-the-bargain" because they were not compensated for their Personal Information; (2) loss of the value and/or diminishment in value of the Personal Information; and (3) loss of the "right to exclude" Defendants from their Personal Information, diminishing their "property interest" in their Personal Information. *See Brown,* 2021 WL 6064009, at *15; *Calhoun,* 526 F. Supp. 3d at 636; *Turner*, 737 F. Supp. 3d at 882-83; *Meta* Pixel, 724 F. Supp. 3d at 1024-25.

Defendants' arguments to the contrary are meritless. First, Plaintiffs alleged that TikTok collected children's specific Personal Information. ¶¶ 96-97. TikTok combined this information with persistent identifiers (as defined under COPPA), which Defendants monetized through behavioral advertising. ¶¶ 162-66. In addition, Plaintiffs alleged the "well-established" market for their Personal Information, its market *value*, and how Defendants' impaired Plaintiffs' ability to participate in that market because it diminished the value that buyers would now be willing to pay for Plaintiffs' Personal Information, depriving them of financial gain. ¶¶ 199-212, 214-227. Defendants' cases recognize that these facts are sufficient for economic injury under the UCL, but that plaintiffs did not include the necessary allegations in those cases. *See, e.g., Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *4-5 (N.D. Cal. July 19, 2021); *Griffith*, 697 F. Supp. 3d at 978 (C.D. Cal. Oct. 6, 2023); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014). And Defendants' argument that Plaintiffs' Personal Information has no "independent economic value" (*Br*. 14) has been rejected in *Brown*, *Calhoun*, and *Turner*.

Second, that Plaintiffs did not pay Defendants to use TikTok does not foreclose economic injury based on the "benefit of the bargain." *Br*. 14-15. Plaintiffs "acquire[d] in

transaction less…than [they] otherwise would have" even if they did not pay for TikTok. *Brown*, 2021 WL 6064009, at *15-17; *Meta Pixel*, 724 F. Supp. 3d at 1025 ("logic applies with equal force to free services…[and] can [] apply to transactions a user enters with an understanding that certain data will not be collected or shared …."). Here, of course, Defendants' conduct was prohibited under COPPA.

Third, Defendants wrongly contend that Plaintiffs' "right to exclude" theory of harm is not cognizable because "no such property right exists" in their Personal Information under the Ninth Circuit's "three-part test." *Br.* 15-16. But this form of economic harm—*i.e.*, Plaintiffs' "right to maintain the privacy of their Personal Information and NOT to sell it," ¶ 221—was upheld in *Meta Pixel*, *see* 724 F. Supp. 3d at 1025, and TikTok's argument was expressly rejected in *Brown*, *Brown*, 2021 WL 6064009, at *16. For the same reasons, Plaintiffs have suffered a cognizable injury in the form of "loss of control" of their Personal Information. *Br.* 12.[2] And for all of the reasons Plaintiffs establish economic injury, they establish Article III standing. *Br. 17.*

### 3. *Plaintiffs have suffered losses under the consumer protection laws of Connecticut, Florida, Michigan, New York, and Washington.*

Defendants rely almost exclusively on UCL cases to argue for dismissal of Plaintiffs' claims under five other states' consumer protection acts. But those statutes have been interpreted to contain far broader standing provisions than the UCL. Plaintiffs have alleged that they have suffered an "ascertainable loss of money or property," (¶¶ 434-35, 465-68, 509-12, 552-55, 591, 593-95), which as Defendants concede (*Br.* 11), is all that is generally required by the five other state consumer protection acts. The Connecticut Unfair Trade Practices Act (CUTPA), the Florida Deceptive and Unfair

---

[2] Defendants' citation to *Claridge v. RockYou, Inc.,* 785 F. Supp. 2d 855 (N.D. Cal. 2011) is inapt. There, because "plaintiff's PII—e.g., his login and password information—did not cease to belong to him, or pass beyond his control," the court found no UCL injury. *Id.* Notably, there were no allegations that such information could be monetized by the plaintiff. And *Best Carpet Values, Inc. v. Google LLC*, 90 F.4th 962, 969 (9th Cir. 2024), involved fair use of website copy, not personal information prohibited by statute from collection.

Trade Practices Act (FDUTPA), the Michigan Consumer Protection Act (MCPA), the New York Consumer Protection Law (NYGBL), and the Washington Consumer Protection Act (WCPA) authorize standing where a plaintiff has been "injured" or "damaged" or simply suffered some form of "loss."

**Connecticut**: CUTPA requires "ascertainable loss of money or property," *see* Conn. Gen. Stat. § 42-110g(a). (¶¶ 434-35). Defendants do not even address and thus concede CUPTA's broad applicability. *See, e.g., In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* 613 F. Supp. 3d 1284, 1304-05 (S.D. Cal. 2020).

**Florida**: Under FDUTPA, loss or diminishment in value and loss of the ability to control the use of Personal Information are sufficient to establish standing. *See, e.g., Turner*, 737 F. Supp. 3d at 883. Even assuming, *arguendo,* Plaintiffs did not suffer economic injury, their claim still survives because "[i]n the absence of actual damages, the FDUTPA permits any 'aggrieved party' to pursue injunctive relief." *Farmer v. Humana, Inc.,* 582 F. Supp. 3d 1176, 1191 (M.D. Fla. 2022).

**New York**: Loss of value or benefit of the bargain of Personal Information is an injury under NYGBL. *See, e.g., In re Anthem, Inc. Data Breach Litig.,* 162 F. Supp. 3d 953, 995 (N.D. Cal. 2016) ("Loss of Value of PII" injury under GBL § 349); *Turner*, 737 F. Supp. 3d at 883 (economic injury for collecting/monetizing personal information); *Kane v. Univ. of Rochester,* 2024 WL 1178340, at *17 (W.D.N.Y. Mar. 19, 2024) ("lost benefit of the bargain" injury). And Defendants concede that NYGBL does not require an economic injury. *See Br.* 11; *Douyon v. N.Y. Med. Health Care, P.C.,* 894 F. Supp. 2d 245, 264 (E.D.N.Y. 2012), order amended on reconsideration, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013).

**Michigan**: Plaintiffs have suffered an ascertainable loss that is more than sufficient under the MCPA's broad standing provisions, (¶¶ 509-12), which "should be construed liberally to broaden the consumer's remedy"; a "loss" under the MCPA "does not require injury to the plaintiff's pocketbook. Instead, the injury may consist in the plaintiff's

unfulfilled expectations." *See, e.g., Gilkey v. Central Clearing Co.,* 202 F.R.D. 515, 525-26 (E.D. Mich. 2001); *see also In re Solara*, 613 F. Supp. 3d at 1305 (same). Further, MCL 445.911(1), does not require that a plaintiff have suffered a loss caused by a violation of the MCPA to obtain injunctive relief. *Chapman v. Alawi*, 2018 WL 47211, at *3 (Mich. Ct. App. Jan. 18, 2018).

**Washington**: Plaintiffs were injured and lost money or property, including harm based on lost "benefit of the bargain" and the "right to exclude." ¶¶ 591, 593-95. The loss of value of Personal Information is an "injury to . . . property" under the WCPA. *See In re Mednax Servs., Inc.,* 603 F. Supp. 3d 1183, 1217-18 (S.D. Fla. 2022); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *8 (W.D. Wash. Nov. 14, 2024) (economic value of personal health data diminished); *Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *36 (N.D. Cal. Apr. 11, 2024) (deprivation of the "right to monetize [ ] personal health information").

### C.    Plaintiffs Sufficiently Plead Unjust Enrichment Claims

#### 1.    *Plaintiffs have Article III standing to bring their unjust enrichment claims.*

Plaintiffs sufficiently plead unjust enrichment claims under the laws of California, Connecticut, Florida, Michigan, New York, and Washington for disgorgement of gains realized by unlawfully collecting and commercially exploiting Plaintiffs' Personal Information in violation of COPPA. These claims provide a basis of recovery grounded in public policy—to prevent Defendants from profiting from their misconduct. This basis for recovery, independent of Plaintiffs' economic harm, is well-established. In *Facebook Tracking*—which involved Facebook's tracking of customers' browsing histories and monetization of Plaintiff's information to earn advertising revenue—the Ninth Circuit held that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." 956 F.3d at 599-600. These principles have been widely adopted. *See* Rest. (First) Restitution,

14

§ 1, cmt. e (1937); Rest. (Third) of Restitution and Unjust Enrichment § 3, reporter's note a. (2020) ("[I]t is clear … there can be restitution of wrongful gain…in cases where the plaintiff has suffered an interference with protected interests but no measurable loss whatsoever.").[3]

*Facebook Tracking* is instructive: "Because California law recognizes that individuals maintain an entitlement to unjustly earned profits, to establish standing, Plaintiffs must allege they retain a stake in the profits garnered from their personal browsing histories because the circumstances are such that, as between the two [parties], it is *unjust* for [defendant] to retain it." 956 F.3d at 600 (cleaned up). There, the Ninth Circuit held that plaintiffs "adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing" based on allegations that plaintiffs' "browsing histories carried financial value," and that "Facebook profited from this valuable data" by "[selling] it to advertisers to in order to generate revenue." *Id*.

Plaintiffs establish the same. "Defendants have realized millions of dollars in revenue from their collection and use of the Personal Information … through behavioral advertising and commercialization …." ¶ 396-97 ("Defendants' ill-gotten gains were monetary benefits conferred upon Defendants…they have obtained through advertising and commercialization derived from the Personal Information); ¶ 398 (similar).  Plaintiffs allege the *specific* Personal Information that Defendants collected and commercially exploited in violation of COPPA, and (1) that there is a "well-established" market for it;

---

[3] *See, e.g., Bailey v. St. Louis*, 268 So.3d 197, 201 (Fla. App. 2018) ("the point of disgorgement is to deter wrongdoers by stripping them of the gains from their conduct," "even if claimant did not sustain any loss"); *People v. Ernst & Young, LLP*, 114 A.D.3d 569 (N.Y. App. Div. 2014) ("Disgorgement is distinct from the remedy of restitution because it focuses on the gain of the wrongdoer as opposed to the loss to the victim"); *Monarch Accounting Supplies, Inc. v. Prezioso*, 170 Conn. 659, 665-67 (1976) ("measure of recovery in this case focuses on the benefit to the defendant rather than on the loss to the plaintiff. The damages should be the benefit received."); *Wright v. Genesee Cnty.*, 504 Mich. 410, 419 (Mich.) ("Unjust enrichment…doesn't seek to compensate for an injury but to correct against one party's retention of a benefit at another's expense. And the correction, or remedy, is therefore not compensatory damages, but restitution…[which] restores a party who yielded excessive and unjust benefits….")

15

(2) the market *value* for it; and (3) how Defendants' misconduct impaired Plaintiffs' ability to participate in that market, and diminished the value of Plaintiffs' Personal Information, depriving them of financial gain. ¶¶ 199-212, 214-27.

Defendants also profited from their unlawful collection and use of Plaintiffs' and Class Members' Personal Information. ¶¶ 71-72 (TikTok's primary revenue source is its advertising income from third-party advertisements on its platform), ¶ 78 (one-third of TikTok's 49 million daily users were 14 or younger), ¶¶ 73-74 (TikTok's U.S. revenue hit a record $16 billion in 2023, and researchers estimated that 35% of TikTok's ad revenue is derived from children and teenagers). Thus, Plaintiffs establish that Defendants' ill-gotten profits were "garnered" from Plaintiffs' Personal Information, entitling Plaintiffs to a "stake in [those] unjustly earned profits." *Facebook Tracking*, 956 F.3d at 600. And this case does not suffer from the flaws in *In re Google Assistant Privacy Litigation*, 457 F. Supp. 3d 797 (N.D. Cal. 2020), where plaintiffs alleged that defendant's unauthorized voice recordings were disclosed to third parties, but failed to identify the personal information on the recordings. *Id.* at 834. Plaintiffs here have specifically identified the Personal Information Defendants unlawfully collected. ¶¶ 96-97, 162-66. And there, plaintiffs amended the complaint to assert specific recorded information, which established standing to seek disgorgement of Google's profits. *Google Privacy Litigation*, 546 F. Supp. 3d 945, 968 (N.D. Cal. 2021).

For the reasons discussed above, Plaintiffs are entitled to the disgorgement of the unjust profits regardless of whether Defendants caused Plaintiffs to "directly expend… financial resources" or "caused the plaintiff's property to become less valuable." *Facebook Tracking*, 956 F.3d at 600. And Defendants are wrong that "Plaintiffs do not even bother to plead any distinct injuries for their unjust enrichment claims." *Br*. 18. Plaintiffs' claims for unjust enrichment (on behalf of all Classes) seek "non-restitutionary disgorgement," which is independent of their claims "for their own economic harm." ¶¶

400-01 ("no adequate remedy...[to] divest Defendants of their ill-gotten and unjust profits").

Defendants' cases are distinguishable. *See, e.g.*, *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 195 (2d Cir. 2023) (parent had no legal interest affected by student's course changes); *Perkins v. WellDyneRx, LLC*, 2023 WL 2610157, at *1-3 (M.D. Fla. Mar. 23, 2023) (no information accessed in data breach).

### 2. *Plaintiffs are entitled to disgorgement of Defendants' unjust profits.*

Defendants concede that California law recognizes a right to disgorgement of profits from unjust enrichment, "even where an individual has not suffered a corresponding loss." *Facebook Tracking*, 956 F.3d at 599-600; *Br.* 19. Where "a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss, or in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust…[t]he defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched." *San Bernardino*, 158 Cal. App. 4th at 542; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 899-900 (C.D. Cal. 2024).

Defendants' sweeping contention that Connecticut, Florida, Michigan, New York, and Washington require Plaintiffs to have suffered an "economic loss" to plead that Defendants' profits were at Plaintiffs' "expense" is an overreach. *Br.* 19-20. Defendants' cases confirm this: "The equitable remedy of disgorgement is measured by the defendant's ill-gotten profits or gains rather than the plaintiff's losses." *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 698 (Fla. 3d DCA 2018) (collecting cases). Moreover, Restatement (Third) Restitution makes it clear that the term "'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." *Id.* § 1, cmt. A (cleaned up); Rest. (Third) Restitution § 3, cmt. A (same).

Plaintiffs have clearly established "legally protected rights" in their Personal Information, which Defendants commercial exploited to garner their ill-gained profits

through behavioral advertising. And, to the extent certain courts have held that unjust enrichment is only applicable where an "expense" stems from "some tangible economic loss to a plaintiff," *see Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1315 (W.D. Wash. 2021), Plaintiffs have in any event pled economic loss based on the diminished value of *their* Personal Information, through which Defendants unjustly profited.

Notably, in *Turner*, under substantially similar allegations, the court upheld claims for unjust enrichment not only under California law, but also New York and Florida law. 737 F. Supp. 3d. at 882-84. And courts in Connecticut, Florida, Michigan, New York, and Washington have upheld unjust enrichment claims arising from privacy violations. *See, e.g.*, *Souza v. Algoo Realty, LLC*, 2020 WL 5300925, at *1-2, *10-11 (D. Conn. Sept. 4, 2020) (photos used in advertising without authorization deprived plaintiffs of income from their images); *Jackson v. Angela Kogan & Perfection Plastic Surgery, Inc.*, 2022 WL 17582560, at *7 (S.D. Fla. Dec. 12, 2022) (plaintiff's photo misused for promotional purposes); *Raden v. Martha Stewart Living Omnimedia, Inc.*, 2017 WL 3085371, at *4 (E.D. Mich. July 20, 2017) (defendants disclosed plaintiffs' personal information to data mining companies); *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at *12 (S.D.N.Y. May 7, 2019) (unjust enrichment in data breach); *Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318, at *7 (W.D. Wash. July 20, 2023) (diminished value of personal information).

Most of Defendants' cited cases do not involve privacy violations. The two that do are distinguishable. In *Mount v. PulsePoint, Inc.*, plaintiffs failed to allege how they faced a deprivation or diminishment of the chance to profit from their browsing information. *See* 2016 WL 5080131, at *13 (S.D.N.Y. Aug. 17, 2016), aff'd, 684 F. App'x 32 (2d Cir. 2017). In *Cousineau v. Microsoft Corporation*, plaintiff alleged that her phone was devalued but made no allegations about her personal information. *See* 992 F. Supp. 2d 1116, 1130 (W.D. Wash. 2012).

### 3. *Plaintiffs allege that Defendants unjustly retained a benefit.*

Plaintiffs adequately allege that they "retain a stake in the profits garnered from their [Personal information] because the circumstances are such that, as between the two [parties], it is unjust for [Defendants] to retain it." *Facebook Tracking*, 956 F.3d at 600; *R.C.*, 733 F. Supp. 3d at 900 (same). Given that Defendants' misappropriation and commercial exploitation of Plaintiffs' Personal Information was in violation of COPPA and Plaintiffs well-established privacy rights, Defendants' profits were unjustly retained. *Turner*, 737 F. Supp. 3d at 884 ("defendants were unjustly enriched by collecting plaintiffs' personal information and employing it to target advertisements to children"). And contrary to Defendants' contention, Plaintiffs have explicitly alleged how defendants profited from Plaintiffs' Personal Information. *Br*. 20.[4]

### D. Plaintiffs lack an adequate remedy at law and are entitled to pursue equitable relief.

Plaintiffs lack an adequate remedy at law. On their unjust enrichment claim, Plaintiffs allege there is "[n]o remedy at law available to Plaintiffs [that] reaches [Defendants'] profits," ¶ 232, and Plaintiffs "have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits." ¶ 400, 442; 475, 519, 563; 602. On their UCL claim, Plaintiffs allege "that they lack an adequate remedy at law." ¶ 394. And the restitution Plaintiffs seek under the UCL is a different claim than invasion of privacy.

As this court has explained, *Sonner* does not reverse "clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation." *Haas v. Travelex Ins. Servs. Inc.*, 555 F. Supp. 3d 970, 980 (C.D. Cal. 2021) (Wright, J.); *see also* Fed. R. Civ. P. 8(a)(3) (authorizing Plaintiffs to plead "a demand for relief

---

[4]  Defendants' cases are inapt. *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009), was a foreclosure action and plaintiffs failed to allege any unjustly retained profits. *Coffee v. Google, LLC*, 2022 WL 94986, at *11 (N.D. Cal. Jan. 10, 2022) involved the purchases of gaming app "loot boxes," where plaintiffs received the exact amount of in-game currency had purchased.

---

sought, which may include relief in the alternative or different types of relief"); *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 896 (N.D. Cal. 2022). This Court sustained an unjust enrichment claim even where plaintiffs plead legal claims because the court was "unpersuaded that *Sonner* compels dismissal of [the unjust enrichment] claim at the pleading stage." *Haas*, 555 F. Supp. 3d at 980. Further, where the "lack of adequate legal remedy is plausible, [the plaintiff] should not be denied the opportunity to make this showing." *Id.*

"[A]t the pleading stage all a plaintiff needs to allege is inadequate remedies at law to pursue equitable claims." *C.M. v. MarinHealth Med. Group, Inc.*, 2024 WL 217841, at *6 (N.D. Cal. Jan. 19, 2024); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023). Here, Plaintiffs have set forth "specific allegations" as to why they lack an adequate remedy for their unjust enrichment claim and UCL restitution claim, *Chebul v. Tuft & Needle, LLC*, 2024 WL 5257021, at *2-4 (C.D. Cal. Oct. 9, 2024), including that Plaintiffs "have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits," ¶ 400, 442, 475, 519, 563, 602. TikTok primarily cites inapposite cases where plaintiffs failed to allege that they lacked an adequate remedy at law. *McIntyre v. Am. Honda Motor Co.*, 739 F. Supp. 3d 776, 804 (C.D. Cal. 2024); *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1173 (C.D. Cal. 2022). TikTok also cites *Hubbard v. Google LLC*, 2024 WL 3302066, at *6 (N.D. Cal. July 1, 2024), but that court later found that Plaintiffs could proceed on their equitable claims because "legal relief cannot adequately remedy a loss-of-privacy harm." *Hubbard*, 2025 WL 82211, at *14.

As for Plaintiffs' injunctive relief, courts routinely conclude that "Plaintiffs may seek both damages for past harm and injunctive relief to prevent future harm." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1151 (C.D. Cal. 2021); *Rogoff v. Transamerica Life Ins. Co.*, 2024 WL 5010642, at *3 (C.D. Cal. Dec. 6, 2024); *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *8 (N.D. Cal.

Nov. 6, 2020) (Plaintiffs "may pursue [] equitable claims for injunctive and declaratory relief to the extent it premises them on future harm."). Here, Plaintiffs allege that they lack an adequate remedy at law because TikTok's refusal to abide by the 2019 Permanent Injunction is a future harm. Namely "TikTok continues to profit off its unlawful business practices at the expense of the privacy of children," ¶¶ 229-30, and "TikTok has failed to implement adequate age gates, to identify and remove underage users of non-Kids Mode accounts, to delete data, even upon parental request, has taken steps to make deletion requests onerous, and has continued to collect data from purportedly deleted accounts." *Id.* Plaintiffs' equitable relief should survive dismissal.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny TikTok's motion to dismiss.

Pursuant to Local Rule 5-4.3.4, by my signature below, I, Eric Kafka, attest that all other signatories concur in the filing's content and have authorized this filing.

Dated:  March 5, 2025                    Respectfully submitted,

By: */s/ Steven L. Bloch*

David S. Golub, (pro hac vice)
Steven L. Bloch, (pro hac vice)
Ian W. Sloss, (pro hac vice)
Jennifer Sclar, (pro hac vice)
John Seredynski, (pro hac vice forthcoming)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com
sbloch@sgtlaw.com

Patrick Carey, (Bar No. 308623)
Mark Todzo, (Bar No. 168389)
**LEXINGTON LAW GROUP, LLP**
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

21

1

By: */s/ Eric Kafka*_____

2

Eric Kafka (pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Karina Puttieva (SBN 317702)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kputtieva@cohenmilstein.com
jwaldman@cohenmilstein.com

Paul Hoffman (SBN 71244)
**SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP**
200 Pier Ave., Suite 226
Hermosa Beach, CA 90254
Telephone: (424) 297-0114
Facsimile: (310) 399-7040
hoffpaul@aol.com

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 2:24-cv-06784-ODW-RAO

# CERTIFICATE OF SERVICE

I certify that on March 5, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.


Dated: March 5, 2025                    Respectfully Submitted,


COHEN MILSTEIN SELLERS & TOLL PLLC


By:     */s/ Eric Kafka*
        Eric Kafka
        Attorneys for Plaintiffs and Putative Class

23

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Plaintiffs, certifies that this brief contains 6,915 words, which complies with the word limit of L.R. 11-6.1.


Dated: March 5, 2025                    Respectfully Submitted,


                                        COHEN MILSTEIN SELLERS & TOLL PLLC


                                        By:     */s/ Eric Kafka*
                                                Eric Kafka
                                                Attorneys for Plaintiffs and Putative Class