DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

J.C., a minor, by and through their guardian ad litem, JODY VILLANUEVA, *et al.*,

Plaintiffs,

v.

BYTEDANCE LTD., BYTEDANCE INC., TIKTOK LTD., TIKTOK INC., TIKTOK LLC, TIKTOK PTE. LTD., and TIKTOK U.S. DATA SECURITY INC.,

Defendants.

Case No. 2:24-cv-06784-ODW(RAOx)

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

Hon. Otis D. Wright II
Hearing Date: April 28, 2025
Time: 1:30 p.m.
Courtroom: 5D

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 1
A. The Court should dismiss Plaintiffs' privacy claims. .......... 1
1. Plaintiffs do not plausibly allege Article III standing. .......... 1
2. Plaintiffs fail to state a claim for intrusion upon seclusion or a violation of the California Constitution. .......... 3
3. Plaintiffs fail to state a claim under the New York Civil Rights Law. .......... 5
B. The Court should dismiss Plaintiffs' unfair-competition claims. .......... 6
C. The Court should dismiss Plaintiffs' unjust-enrichment claims. .......... 9
1. Plaintiffs lack Article III standing to bring their unjust-enrichment claims. .......... 9
2. Plaintiffs do not plausibly allege that Defendants profited at *their* expense. .......... 9
3. Plaintiffs do not plausibly allege that Defendants unjustly retained a benefit. .......... 10
D. Plaintiffs cannot pursue equitable relief because they fail to show that they lack an adequate remedy at law. .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. by and through Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) .......... 3, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) .......... 8

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......... 6, 7, 8

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 6

*Claridge v. RockYou*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .......... 6

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 9

*Greenley v. Kochava*,
684 F. Supp. 1024 (S.D. Cal. 2023) .......... 7

*Griffith v. TikTok*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... 7

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 3

*Hazel v. Prudential*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 7

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 10

*Hubbard v. Google LLC*,
2025 WL 82211 (N.D. Cal. Jan. 13, 2025) .......... 4, 10

*In re Facebook, Inc. Internet Tracking*,
956 F.3d 589 (9th Cir. 2020) .......... 9

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 8

## TABLE OF AUTHORITIES
(continued)


**Page(s)**

*James v. Walt Disney*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) ..... 2

*Katz-Lacabe v. Oracle*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ..... 2

*Manigault-Johnson v. Google LLC*, 2019 WL 3006646 (D.S.C. Mar. 31, 2019) ..... 4

*Popa v. PSP*, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) ..... 1

*Rodriguez v. Autotrader.com*, 2025 WL 65409 (C.D. Cal. Jan. 8, 2025) ..... 1

*Rosal v. First Fed. Bank*, 671 F. Supp. 2d 1111 (N.D. Cal. 2009) ..... 10

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ..... 2

*Walker v. Thompson*, 404 F. Supp. 3d 819 (S.D.N.Y. 2019) ..... 5

*Yantha v. Omni*, 2013 WL 5327516 (E.D.N.Y. Sept. 20, 2013) ..... 5

**Other Authorities**

FTC, Complying With COPPA: Frequently Asked Questions (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions. ..... 2

**Regulations**

16 C.F.R. § 312.5(c)(7) ..... 3

# I. INTRODUCTION

Plaintiffs' opposition confirms that they have not stated an injury-in-fact or cognizable claim for relief. As Defendants' motion made clear, the principal flaw with the Complaint is that Plaintiffs fail to allege any facts showing that *they* suffered a real-world harm resulting from Defendants' conduct. That failure requires dismissal of all their claims for lack of standing. And even if Plaintiffs could overcome that threshold issue, Plaintiffs fail to state a claim for invasion of privacy or unjust-enrichment on the merits. Plaintiffs' claims must be dismissed.

# II. ARGUMENT

## A. The Court should dismiss Plaintiffs' privacy claims.

### 1. Plaintiffs do not plausibly allege Article III standing.

Plaintiffs contend that they have Article III standing to bring their privacy claims because they allege the "specific personal information" Defendants collected from them. Opp. 3-4. But to establish a privacy injury, Plaintiffs must "plead *facts* demonstrating that the [D]efendants' interception of *their* information amounts to an invasion of privacy interests." *Popa v. PSP*, 2023 WL 7001456, at *3 (W.D. Wash. Oct. 24, 2023) (collecting cases).[1] That is critical because "[w]hether the right to privacy is implicated … depends on the sort of information revealed"—without facts showing which information was collected, the Court cannot determine whether it is "sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez v. Autotrader.com*, 2025 WL 65409, at *3 (C.D. Cal. Jan. 8, 2025); *see* Mot. 6 & n.6.

Plaintiffs' opposition cites allegations that are nothing more than generic assertions that "are not entitled to the assumption of truth" at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Plaintiffs assert that Defendants "improperly collect[ed]" *all* of the same personal information from *every* Plaintiff and *every* proposed class member. Opp. 3-4. But Plaintiffs never allege that they

[1] Alterations, citations, and quotations are omitted.

actually provided the information Defendants' supposedly collected. For example, Defendants could not have collected "first and last name" from someone who used a fake name, or "the user's image and voice" from someone who did not upload any content of themselves. *See id.* And even if other putative class members provided that information, Plaintiffs would not have standing to bring claims on their behalf without their own injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."). It is implausible that every type of information that *could* possibly be collected from any TikTok user was *in fact* collected from every Plaintiff, much less that every supposed collection amounted to a privacy violation.

Plaintiffs cite two cases to defend their reliance on these conclusory assertions, but both cases involved allegations showing that the defendants collected *the plaintiffs'* information in a way that invaded their privacy. *See Katz-Lacabe v. Oracle*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (plaintiffs allegedly "discovered … tracking devices" on their personal computers); *James v. Walt Disney*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) (defendant allegedly collected "specific web pages viewed, search terms entered, and purchase behavior" from plaintiff who visited defendant's website). The same is not true here: Plaintiffs offer no reason to think that Defendants collected all of the information identified in the Complaint from each Plaintiff and every putative class member.[2]

[2] Even if Plaintiffs had pled facts about the specific personal information collected from them (they have not), that collection would not amount to a privacy harm for the reasons explained below. *Infra* § II.A.2-3. Indeed, Plaintiffs' information would not have been collected *at all* if Plaintiffs truthfully represented their age: Plaintiffs could only have joined the "13+ Experience" if they entered a false age at account creation. *See* Compl. ¶ 88. Defendants do not violate COPPA when they "rely on the age information [their] users enter, even if that information is not accurate." FTC, Complying With COPPA: Frequently Asked Questions (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions.

**2. Plaintiffs fail to state a claim for intrusion upon seclusion or a violation of the California Constitution.**

Next, Plaintiffs assert that they have stated an intrusion-upon-seclusion claim and a California Constitutional violation because collecting personal information from minors in violation of COPPA is "highly offensive." Opp. 5-6. But the "highly offensive" requirement is a very high bar. As courts have repeatedly recognized, "data collection and disclosure" is "routine commercial behavior," not a "highly offensive intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (collecting cases). Plaintiffs' argument to the contrary depends on two district court decisions. Both are readily distinguishable.

The first decision, *A.B. by and through Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024), involved the *opposite* of the facts alleged here. In *Turner*, plaintiffs alleged that Google affirmatively represented that certain apps were meant for children under 13, but then "surreptitiously collect[ed] data" from under-13 users of those apps. *Id.* at 875-76, 884-85. The court held that Google's conduct amounted to an "egregious intrusion into the minors' expectation of privacy." *Id.* at 884-85.

Here, Defendants never claimed that the "13+ Experience" was appropriate for under-13 users. To the contrary, unless users misrepresented their ages, Defendants placed under-13 users into a separate experience ("Kids Mode") that *was* "designed" for them. Compl. ¶¶ 100-08. Unlike Google, Defendants could not have "surreptitiously collect[ed] data" from under-13 users because Defendants never represented that the 13+ Experience was designed for children under 13. And while Plaintiffs allege that Defendants collected limited personal information from some users in Kids Mode,[3] Plaintiffs never allege that they used (or believed they

[3] Among other things, COPPA allows websites to collect persistent identifiers from under-13 users without parental consent when "such identifier[s] [are] used for the sole purpose of

were using) a Kids Mode account. *Id.* ¶¶ 334-94. Where, as here, collection of children's personal information is not premised on "alleged deceptive conduct," but instead "nothing more than alleged violations of COPPA," intrusion-upon-seclusion claims fail. *Manigault-Johnson v. Google LLC*, 2019 WL 3006646, at *6-7 (D.S.C. Mar. 31, 2019).

The second decision, *Hubbard v. Google LLC*, 2025 WL 82211 (N.D. Cal. Jan. 13, 2025) ("*Hubbard II*"), involved Google's collection of data from under-13 children who used YouTube. *Id.* at *2. The court reasoned that Google's data collection went beyond "ubiquitous, commercial behavior" because it involved two "plus factors": (1) "target[ing] children" on YouTube, evidenced by the fact that Google "develop[ed] and circulat[ed] an internal narrative explaining that 'YouTube is a MUST buy for kids 6-11,'" and (2) "knowing" violations of COPPA, evidenced by "several content creators notif[ying] Google" about potential violations. *Id.* at *4-5.

Plaintiffs argue that the same "plus factors" are present here, Opp. 5-6, but that is incorrect. First, Plaintiffs say that they sufficiently allege that Defendants "targeted children" because Defendants "publicly host[] thousands of accounts" on the 13+ Experience promoting children's brands, like "My Little Pony." *Id.* at 6. But allowing users to post content that might appeal to children on the platform is a far cry from the "internal narrative" about using advertising to draw in child users at issue in *Hubbard II*— Plaintiffs plead no facts supporting a reasonable inference that accounts created by *users* amount to an effort by *Defendants* to bring children onto the platform. Indeed, there are perfectly plausible explanations for the existence of these accounts (e.g., marketing products to parents for their kids) that have nothing to do with collecting children's information.

---

providing support for the internal operations of the Web site or online service." 16 C.F.R. § 312.5(c)(7).

Second, Plaintiffs contend Defendants "knew" that they were "collecting children's data in violation of COPPA" based on allegations borrowed from the DOJ's Complaint. Opp. 6. But Plaintiffs acknowledge that TikTok undertakes extensive efforts to prevent, detect, and remove under-13 users from the 13+ Experience, including through the use of an age gate. *See* Mot. 1-3. As explained, Defendants do not violate COPPA where they "rely on age information [their] users enter, even if that information is inaccurate." *Supra* § II.A.1. And for all of Plaintiffs' general allegations about Defendants' "knowledge," Plaintiffs never allege that Defendants had any knowledge about *Plaintiffs'* use of the platform. Without indication that Defendants "knowingly" violated COPPA *with respect to Plaintiffs*, Plaintiffs have not identified highly offensive conduct.

### 3. Plaintiffs fail to state a claim under the New York Civil Rights Law.

To succeed on their New York Civil Rights claim, Plaintiffs must demonstrate that their "name, portrait, picture, or voice" was used "for purposes of advertising or trade." *Walker v. Thompson*, 404 F. Supp. 3d 819, 824 (S.D.N.Y. 2019). Relying on a single federal decision from Illinois with no real analysis, Plaintiffs contend that using their information to "build profiles and target advertisements to … children" for "profit" satisfies the advertising-or-trade requirement. Opp. 7.

As evidenced by their failure to cite any New York cases, Plaintiffs' broad interpretation has no support. Courts are clear that merely "profit[ing] from misuse of [a] plaintiff's name does not amount to a violation of the statute." *Yantha v. Omni*, 2013 WL 5327516, at *9 (E.D.N.Y. Sept. 20, 2013). Instead, the advertising-or-trade requirement is satisfied only where a plaintiff's identity is used as an "*endorsement* of the publication in question." *Id.*. Targeting Plaintiffs with an ad is obviously not an "endorsement" by Plaintiffs of the product in that ad. Mot. 9-11.

**B. The Court should dismiss Plaintiffs' unfair-competition claims.**

Plaintiffs contend that they sufficiently state their unfair-competition claims because, while their injuries may not be strictly economic, most of the relevant state laws do not require an economic injury. Opp. 12-14. That misses the point. Whether a statute's unfair competition law requires "lost money or property" (California), or an "ascertainable loss of money or property" (Connecticut), or some other "loss," (New York, Florida, Washington, Michigan), Mot. 11, Plaintiffs' alleged injuries are not cognizable injuries *at all*.[4]

***Loss-of-control.*** All Plaintiffs say in support of their loss-of-control theory is that losing control of personal information interferes with their "right to maintain the privacy of their Personal Information and NOT sell it." Opp. 12. But the Complaint contains no facts showing that any Plaintiff's personal information went "beyond [his or her] control." *Claridge v. RockYou*, 785 F. Supp. 2d 855, 862-63 (N.D. Cal. 2011).

***Loss-of-value.*** Plaintiffs reiterate that their "loss-of-value" theory applies because Defendants' conduct "impaired Plaintiffs' ability to participate in" the "well-established and readily available market for Personal Information." Opp. 9-11. Specifically, Plaintiffs cite *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021), *Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021), and *Turner* to contend that the "existence" of a market for their information is sufficient to establish injury. Opp. 10-11. Each of these cases are distinguishable, either because it was wrongly decided or involved different facts.

*Calhoun*, for example, held that alleging a "loss of … personal information" alone was enough to establish a cognizable injury. 526 F. Supp. 3d at 636. But it did so based on three unpublished decisions and a decision from the District of

---

[4] Plaintiffs suggest that some unfair competition statutes have no injury requirement for seeking injunctive relief. *See* Opp. 13-14. But those claims still fail for lack of Article III standing because Plaintiffs do not plausibly allege that they suffered—or will suffer—any harm from Defendants' conduct. Mot. 17.

Maryland. *Id.* As courts have now recognized, those cases are outliers: "courts have consistently found that alleging the economic value of data is not enough" to establish an unfair-competition injury. *Greenley v. Kochava*, 684 F. Supp. 1024, 1054 (S.D. Cal. 2023); Mot. 12-13. Rather, a plaintiff must allege facts showing that the data has "economic value *to him*," *id.*—i.e., that he "wished to sell [his] browsing data but was unable to do so or would be paid less for the data." *Griffith v. TikTok*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023).

*Brown* is likewise distinguishable. There, the court found that a diminishment-in-value theory was an unfair-competition injury for two reasons. First, Google had previously paid individuals for their browsing histories, so it was plausible that if plaintiffs had been aware of Google's data collection, they would have demanded payment for their data. *Brown*, 2021 WL 6064009, at *15. Second, each plaintiff "alleged that he or she [was] aware of" other platforms that would have paid for their data, making it "plausible that Plaintiffs [would] decide to sell their data at some point." *Id.* Here, Plaintiffs do not allege that Defendants would have paid for any users' personal information, or that Plaintiffs were "aware" of platforms that would have done so. All they allege is that a "market" exists, without any suggestion of how Plaintiffs could "sell" their information, much less how prices on these "markets" have been lowered by Defendants' conduct. That Plaintiffs could *theoretically* sell their personal information "does not mean that [they] have lost money or property as a result." *Hazel v. Prudential*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023).

Finally, *Turner* was wrongly decided. In *Turner*, the court relied on *Calhoun* and *Brown* to conclude that merely alleging a "market for their data" was enough for under-13 plaintiffs to demonstrate unfair-competition standing. 737 F. Supp. 3d at 881-82. As explained, other courts have recognized that it is not. *Supra* § II.B. Even so, the reasoning in *Brown* and *Calhoun* is especially inapplicable because Plaintiffs are children—the whole purpose of Plaintiffs' lawsuit is that the

monetization of personal information from children is improper and illegal. *See, e.g.*, Compl. ¶ 3. Plaintiffs' assertion that they are "injured" because they (or their parents) would have sold their personal information is fundamentally at odds with their entire theory. Plaintiffs' conclusory assertion that a hypothetical "market" exists does not plausibly allege any lost value. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) ( "no standing" to bring unfair-competition claim because their theory of injury "rest[ed] on a hypothetical risk").

***Benefit-of-the-bargain.*** Plaintiffs' defense of their benefit-of-the-bargain theory merely reiterates the conclusory allegations in their Complaint: that they "acquire[d] in [the] transaction less … than [they] otherwise would have" because "Defendants' conduct was prohibited under COPPA." Opp. 11-12. But Plaintiffs cannot claim that they lost the benefit of any bargain where they did not pay for Defendants' services. *See* Mot. 15. Moreover, Plaintiffs' citation to *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024), is unavailing because they still fail to explain what they "otherwise would have" obtained in the alleged transaction. Opp. 12. *Meta Pixel* recognized a benefit-of-the bargain theory for a free service because users "provide[d] certain information with expectations of security" to tax websites. *Id.* at 1024. Here, it is implausible that Plaintiffs had any analogous expectation. Users who enter the platform *by misrepresenting their age* cannot have "expectations" that the website they enter will be designed for their age group.

***Right-to-exclude.*** Plaintiffs' only argument in support of their right-to-exclude theory is that *Brown* and *Meta Pixel* support it. Opp. 12. As Plaintiffs acknowledge, they have a "right to exclude" others from their property only if a property right exists in the first place. Compl. ¶¶ 384, 593-94. But the *Brown* court expressly stated that it "need not determine whether data constitutes property." 2021 WL 6064009, at *16. And while *Meta Pixel* endorsed a right-to-exclude theory, it ignored the Ninth Circuit's well-established test for determining whether

a property right exists. 724 F. Supp. 3d at 1024. Applying that test, courts have repeatedly held that there is no property right in personal information. *See* Mot. 16 (collecting cases). *Meta Pixel* instead relied on *Calhoun* to recognize a property right in personal information—a conclusion that other courts have criticized as "tenuous." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024).

Because none of Plaintiffs' theories amount to a cognizable injury, this Court must dismiss their unfair-competition claims.[5]

### C. The Court should dismiss Plaintiffs' unjust-enrichment claims.

#### 1. Plaintiffs lack Article III standing to bring their unjust-enrichment claims.

Plaintiffs argue they have Article III standing for their unjust-enrichment claims because they allege that Defendants "realized millions of dollars in revenue" from collecting children's personal information, citing *In re Facebook, Inc. Internet Tracking*, 956 F.3d 589 (9th Cir. 2020). Opp. 15-16. In *Facebook*, plaintiffs had standing to bring an unjust-enrichment claim because they "allege[d] that their browsing histories carr[ied] financial value." 956 F.3d at 600. As explained, Plaintiffs fail to allege what specific personal information Defendants collected *from them*, much less what financial value that information had. *Supra* §§ II.A.1, II.B. Without some alleged injury as a result of the defendant's gain—i.e., that Plaintiffs "retain[ed] a stake in the profits garnered" by Defendants—Plaintiffs' have not sufficiently alleged standing. *Facebook*, 956 F.3d at 600; *see* Mot. 18.

#### 2. Plaintiffs do not plausibly allege that Defendants profited at *their* expense.

All of the states at issue besides California require Plaintiffs to plead that Defendants' unjust enrichment was at Plaintiffs' expense. Mot. 19.[6] Plaintiffs

[5] For all of the reasons stated, Plaintiffs also fail to allege an injury-in-fact sufficient to confer Article III standing. *See* Mot. 17.

[6] Plaintiffs call this a "sweeping contention" because the remedy for unjust enrichment, disgorgement, "is measured by the defendant's ill-gotten gains rather than the plaintiff's losses." Opp. 17. Plaintiffs confuse the remedy for a harm with the harm itself: loss is still an element of

purport to meet that standard by asserting that “Defendants commercial[ly] exploited” Plaintiffs’ privacy interest in their personal information and caused them to suffer an economic loss. Opp. 17-18. Plaintiffs have not sufficiently alleged either an invasion of privacy, an economic harm, or any harm specific to them. *Supra* § II.A-B. Their non-California unjust-enrichment claims must therefore be dismissed. *See* Mot. 20.

**3. Plaintiffs do not plausibly allege that Defendants unjustly retained a benefit.**

Plaintiffs say that they have sufficiently pled Defendants were unjustly enriched because they “explicit[ly] allege how Defendants profited from Plaintiffs’ Personal Information.” Opp. 19. But the Complaint provides no basis for determining whether or how Defendants profited from the collection of *Plaintiffs’* personal information. *Supra* § II.A.1. Listing types of personal information that *might* be collected from TikTok users is not enough to connect Plaintiffs’ personal information with Defendants’ supposed profits. Again, such “conclusory allegation[s]” are insufficient to plead unjust enrichment. *Rosal v. First Fed. Bank*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009).

**D. Plaintiffs cannot pursue equitable relief because they fail to show that they lack an adequate remedy at law.**

Finally, Plaintiffs contend that they are allowed to plead equitable and legal remedies “in the alternative” at the pleading stage. Opp. 19. Defendants do not disagree. The problem is that Plaintiffs do not plausibly allege that they actually lack an adequate remedy at law. That Defendants allegedly profited off of Plaintiffs’ personal information does not render damages an inadequate remedy. *Hubbard v. Google LLC*, 2024 WL 3302066, at *6 (N.D. Cal. July 1, 2024)

---

unjust enrichment in each relevant state except California, even if the ultimate remedy is not measured by it. Mot. 19.

("*Hubbard I*").[7] And an injunction is not necessary because Plaintiffs do not allege that they intend to use the TikTok platform in the future or that they will be under 13 years old when they intend to use it. *See* Compl. ¶¶ 235-306. That warrants dismissal of Plaintiffs' claims for equitable relief at the pleading stage. *See* Mot. 17-18.

[7] Plaintiffs argue that *Hubbard I* is inapplicable because *Hubbard II* allowed some requests for equitable relief to proceed. Opp. 20. But the equitable relief in *Hubbard II* was allowed to proceed because plaintiffs sufficiently alleged that there was no adequate remedy at law for their privacy harm, not for "ill-gotten profits." *Hubbard II*, 2025 WL 82211, at *14.

Dated: March 26, 2025

Respectfully submitted,

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

MATTHEW D. POWERS
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3832
Telephone: +1 415 984-8700
Facsimile: +1 415 984-8700

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

## CERTIFICATE OF SERVICE

I certify that on March 26, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: March 26, 2025

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing memorandum of law contains 3,300 words, which complies with the word limit set by the Court.

Dated: March 26, 2025

*<u>/s/ Daniel M. Petrocelli</u>*
Daniel M. Petrocelli